**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br>　　　　　　　　Plaintiff, <br><br>　v. <br><br> APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY, and STEVEN KEENAN, <br><br>　　　　　　　　Defendants. | Case No. 4:21-cv-00575 <br><br> District Judge George C. Hanks, Jr. <br><br> Magistrate Judge Andrew M. Edison <br><br> CLASS ACTION |
| BRIAN SCHWEGEL, Individually and on Behalf of All Others Similarly Situated, <br><br>　　　　　　　　Plaintiff, <br><br>　v. <br><br> APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY, and STEVEN KEENAN, <br><br>　　　　　　　　Defendants. | Case No. 4:21-cv-00722 <br><br> District Judge Keith P. Ellison <br><br> CLASS ACTION |

**MOTION OF PLYMOUTH COUNTY RETIREMENT SYSTEM AND
THE TRUSTEES OF THE TEAMSTERS UNION NO. 142 PENSION FUND
FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD
<u>PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 2

    A.    Issues to be Decided and Standard of Review ............................................. 2

    B.    Summary of Argument ................................................................................. 3

II.    FACTUAL BACKGROUND ..................................................................................... 4

III.    ARGUMENT ............................................................................................................. 7

    A.    The Related Actions Should Be Consolidated ............................................. 7

    B.    The Pension Funds Satisfy the PSLRA's Requirements and Should Be Appointed Lead Plaintiff ............................................................. 8

        1.    The Pension Funds Timely Moved for Appointment as Lead Plaintiff ............................................................................................. 9

        2.    The Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class ................................................................. 9

        3.    The Pension Funds Satisfy the Requirements of Rule 23 ................ 10

            a.    The Pension Funds' Claims Are Typical .............................. 10

            b.    The Pension Funds Are Adequate ........................................ 11

    C.    The Pension Funds' Selection of Counsel Should Be Approved ................................................................................................... 15

IV.    CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................... 4, 13

*Kakkar v. Bellicum Pharms., Inc.*,
    No. 4:18-CV-00338, 2019 WL 1367653 (S.D. Tex. Mar. 26, 2019) .............. 10, 11, 13

*In re Kosmos Energy Ltd. Sec. Litig.*,
    No. 3:12-CV-373-B, 2012 WL 6199318 (N.D. Tex. Nov. 1, 2012) ............................ 13

*Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*,
    No. 4:17-CV-00449, 2017 WL 3780164 (E.D. Tex. Aug. 31, 2017)..........................8-9

*Parker v. Hyperdynamics Corp.*,
    No. 4:12-CV-999, 2013 WL 623164 (S.D. Tex. Feb. 19, 2013) ........................... 10, 15

*In re Universal Access, Inc. Sec. Litig.*,
    209 F.R.D. 379 (E.D. Tex. 2002)................................................................................ 7

**Statutes**

15 U.S.C. § 78u-4(a)....................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 42(a) .................................................................................................. 2

Fed. R. Civ. P. 23(a) ................................................................................................ 10

H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730 ....12-13, 13

ii

Plymouth County Retirement System ("Plymouth County") and the Trustees of the Teamsters Union No. 142 Pension Fund ("Teamsters 142") (collectively, the "Pension Funds") respectfully move this Court for entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions") pursuant to Federal Rule of Civil Procedure 42(a) ("Rule 42(a)"); (2) appointing the Pension Funds as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (3) approving the Pension Funds' selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Saxena White P.A. ("Saxena White") as Lead Counsel for the Class (defined below) and Ajamie LLP ("Ajamie") as Liaison Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that the Pension Funds timely filed this motion and are the "most adequate plaintiff" pursuant to the PSLRA. Specifically, the Pension Funds have the largest financial interest in the relief sought by the Class, and meet the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), as their claims are typical of the claims of the Class and they will fairly and adequately represent the interests of the Class. In fact, the Pension Funds are a paradigmatic Lead Plaintiff under the PSLRA because they are a small, cohesive partnership of sophisticated institutional investors with a substantial financial stake in the litigation, which guarantees effective monitoring and supervision of counsel. Moreover, the Pension Funds have selected and retained Kessler Topaz and Saxena White, law firms with substantial experience in prosecuting securities class actions, to serve as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

1

## I.   INTRODUCTION

The Related Actions—the first of which was filed by Plymouth County—are two related securities class actions brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), against Apache Corporation ("Apache" or the "Company") and certain of its current and former executive officers (collectively, "Defendants").  The Related Actions are brought on behalf of a proposed class (the "Class") of all persons and entities who purchased or otherwise acquired Apache common stock between September 7, 2016, and March 13, 2020, inclusive (the "Class Period").

### A.   Issues to be Decided and Standard of Review

This Motion requires the Court to decide the following issues:

(1)   Whether the Related Actions should be consolidated.  Under Rule 42(a), consolidation is appropriate where separate actions involve "a common question of law or fact."  Fed. R. Civ. P. 42(a).

(2)   Whether the Pension Funds should be appointed as Lead Plaintiff under the PSLRA, 15 U.S.C. § 78u-4.  The PSLRA requires a court to appoint as Lead Plaintiff the "person or group" who: (1) makes a timely motion under the PSLRA's sixty-day deadline; (2) asserts the largest financial interest in the litigation; and (3) satisfies the relevant requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

2

(3)     Whether the Pension Funds' selection of Kessler Topaz and Saxena White as Lead Counsel for the Class and Ajamie as Liaison Counsel for the Class should be approved.   The PSLRA grants the Lead Plaintiff the authority to select counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) (providing that the Lead Plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class").

**B.     Summary of Argument**

First, the Related Actions should be consolidated.  Both actions are brought on behalf of persons or entities that purchased or otherwise acquired Apache common stock from September 7, 2016, through March 13, 2020, and allege identical claims against identical defendants under the federal securities laws based on overlapping misstatements. Because the Related Actions involve common issues of law and fact, the Pension Funds respectfully suggest that consolidation is appropriate under Rule 42(a).

After consolidation, the Pension Funds should be appointed as Lead Plaintiff because: (1) the Pension Funds timely filed their motion for appointment as Lead Plaintiff; (2) with losses of $782,594 under a last-in, first-out ("LIFO") analysis, the Pension Funds assert the largest financial interest in the relief sought in this litigation; and (3) the Pension Funds meet the applicable requirements of Rule 23, as their claims are typical of all Class members and the Pension Funds will fairly and adequately represent the Class.  *See infra,* Section III.B.  Indeed, the Pension Funds are a paradigmatic lead plaintiff under the

PSLRA, because they are sophisticated institutional investors with a large financial interest in the Related Actions. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 439-40 (S.D. Tex. 2010) ("[T]he PSLRA expresses a strong preference for institutional investors to serve as lead plaintiffs.").[1]  Moreover, the Pension Funds fully understand the obligations of a lead plaintiff to the Class under the PSLRA and are committed to undertaking the responsibilities of the Lead Plaintiff here to ensure the vigorous prosecution of the Related Actions.  *See* Declaration of Thomas R. Ajamie in Support of the Motion of Plymouth County Retirement System and the Trustees of the Teamsters Union No. 142 Pension Fund for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Ajamie Decl."), Exs. A & B.  The adequacy of the Pension Funds is further established through their selection of Kessler Topaz and Saxena White as Lead Counsel for the Class and Ajamie as Liaison Counsel for the Class.  Each of these firms researched and filed the first of the Related Actions, and they have been actively developing the Class's claims in a coordinated manner.  Based on their financial interest and demonstrated ability to jointly oversee this litigation, the Pension Funds respectfully request that the Court appoint them Lead Plaintiff and approve their selection of counsel.

## II.   FACTUAL BACKGROUND

Apache, a Delaware corporation headquartered in Houston, Texas, is a multinational oil and gas exploration and production company.  During the Class Period, Apache's U.S. operations included extensive developmental efforts in the Permian Basin, a large oil-and-

---

[1]     Unless otherwise noted, all emphasis is added and internal citations are omitted.

4

gas producing area in the southwestern United States.  On September 7, 2016, the first day of the Class Period, Defendants announced Apache's discovery of a new resource play in the Permian Basin, which they called "Alpine High."  Defendants told investors that Alpine High had a "large inventory of repeatable, high-value drilling opportunities" and would deliver value for years to come.

The Related Actions allege that, throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material adverse facts about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) Apache intentionally used unrealistic assumptions regarding the amount and composition of available oil and gas in Alpine High; (2) Apache did not have the proper infrastructure in place to safely and/or economically drill and/or transport those resources even if they existed in the amounts purported; (3) these misleading statements and omissions artificially inflated the value of the Company's operations in the Permian Basin; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.

Investors gradually began to learn the truth about Alpine High on April 23, 2019, when Apache announced that it had begun deferring natural gas production at Alpine High—a move that *Bloomberg* labeled "another blow to the Apache project."  On this news, the price of Apache common stock declined $0.66 per share, from a close of $37.09 per share on April 22, 2019, to close at $36.43 per share on April 23, 2019. This decline continued over the next three trading days, closing at $33.06 per share on April 26, 2019— for a four-day stock price decline of $4.03 per share, or nearly 11%.

Later that year, on October 25, 2019, media outlets reported that Defendant Steven Keenan—who had been credited with the discovery of Alpine High—had abruptly resigned from Apache.  On this news, the price of Apache common stock declined $1.16 per share, or approximately 5%, from a close of $23.23 per share on October 24, 2019, to close at $22.07 per share on October 25, 2019.

Then, on February 26, 2020, Apache disclosed a massive $3 billion write-down associated with Alpine High and revealed it had no plans for future drilling there.  Several weeks later, on March 12, 2020, Defendants disclosed that the Company had reduced its quarterly dividend per share from $0.25 to only $0.025 and would soon reduce its rig count in the Permian Basin to zero.  In response to these disclosures, the price of Apache common stock fell $0.49 per share, or approximately 6%, from a close of $8.25 per share on March 11, 2020, to close at $7.76 per share on March 12, 2020.

Finally, on March 16, 2020, *Seeking Alpha* reported that Apache carried "the highest debt-to-equity ratio among large-cap independent [exploration and production companies]" and "doesn't have a strong balance sheet," and that the Company's "financial health isn't great."  That same day, Susquehanna Financial Group downgraded Apache from positive to neutral, highlighting a lack of "balance sheet flexibility" and noting Apache's "net leverage exceeding 3.0x by the end of 2021," as well as the Company's "activity reduction" and the possibility of further cutbacks.  On this news, the price of Apache common stock fell $3.61 per share over two trading days, or approximately 45%, from a close of $8.07 per share on March 13, 2020, to close at $4.46 per share on March 17, 2020.

**III.   ARGUMENT**

**A.   The Related Actions Should Be Consolidated**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Under Rule 42(a), consolidation is appropriate "where there are actions involving common questions of law or fact." *In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 382 (E.D. Tex. 2002).

There are at least two related securities class actions pending in this District on behalf of investors who purchased Apache common stock during the Class Period:

| Case Caption | Date Filed | Claims / Class Period |
|---|---|---|
| *Plymouth County Retirement System v. Apache Corporation, et al.*, No. 4:21-cv-00575 | February 23, 2021 | Sections 10(b) and 20(a) of the Exchange Act; September 7, 2016, through March 13, 2020 |
| *Schwegel v. Apache Corporation, et al.*, No. 4:21-cv-00722 | March 4, 2021 | Sections 10(b) and 20(a) of the Exchange Act; September 7, 2016, through March 13, 2020 |

The Related Actions assert claims under the Exchange Act against identical defendants, across identical class periods, and concerning the same conduct. Accordingly, consolidation is appropriate under Rule 42(a). *See Universal Access*, 209 F.R.D. at 382 (consolidating actions that alleged "identical claims against identical parties").

**B.      The Pension Funds Satisfy the PSLRA's Requirements and Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action asserting claims under the federal securities laws.  *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days after the publication of the notice. *Id*. § 78u-4(a)(3)(A)(i).  Within sixty days after publication of the notice, members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by members of the class and shall appoint as lead plaintiff "the person or group" the court determines to be "most capable of adequately representing the interests of class members." *See id*. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the "most adequate plaintiff" in any private action arising under the PSLRA is "the person or group of persons that":

> (aa)    has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

8

*Id*. § 78u-4(a)(3)(B)(iii)(I); *see also Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2017 WL 3780164, at *4 (E.D. Tex. Aug. 31, 2017).

### 1. The Pension Funds Timely Moved for Appointment as Lead Plaintiff

On February 23, 2021, Plymouth County filed the first securities class action asserting claims under Sections 10(b) and 20(a) of the Exchange Act against Defendants. *See Plymouth Cnty. Ret. Sys. v. Apache Corp., et al.*, No. 4:21-cv-00575, ECF No. 1. That same day, counsel for Plymouth County published a notice in *Business Wire* alerting investors to the pendency of Plymouth County's operative complaint and informing them of the April 26, 2021 deadline to seek appointment as Lead Plaintiff. *See* Ajamie Decl., Ex. C; 15 U.S.C. § 78u-4(a)(3)(A)-(B). Accordingly, the Pension Funds have timely moved this Court for appointment as Lead Plaintiff.

### 2. The Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA provides a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, the Pension Funds suffered substantial losses of $782,594 under a LIFO analysis. *See* Ajamie Decl., Ex. D. The Pension Funds are unaware of any other movant with a greater financial interest in the litigation. Accordingly, the Pension Funds are the movant with the largest financial interest in the litigation and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3.    The Pension Funds Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy.  *See id*.

Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Of these requirements, only a "preliminary showing" of typicality and adequacy is required at this stage of the litigation.  *See Kakkar v. Bellicum Pharms., Inc.*, No. 4:18-CV-00338, 2019 WL 1367653, at *2 (S.D. Tex. Mar. 26, 2019); *Parker v. Hyperdynamics Corp.*, No. 4:12-CV-999, 2013 WL 623164, at *3 (S.D. Tex. Feb. 19, 2013).

### a.    The Pension Funds' Claims Are Typical

The typicality requirement is satisfied when the movant's claims have "the same essential characteristics of those of the putative class." *Parker*, 2013 WL 623164, at *3.

That requirement is met here because the Pension Funds, which are not subject to any unique or special defenses, seek the same relief and advance the same legal theories as other Class members.  Indeed, Plymouth County's complaint was the first action to set

10

forth the theory of liability on the Class's behalf.  Like all members of the Class, the Pension Funds: (1) purchased Apache common stock during the Class Period; (2) at prices that Defendants allegedly inflated with their false and misleading statements; and (3) suffered damages once the truth about Alpine High and the Company's financial condition came to light.  These shared claims, which arise under a common legal theory and from the same events and course of conduct as those of other Class members, satisfy Rule 23(a)(3)'s typicality requirement.

### b.      The Pension Funds Are Adequate

The adequacy element of Rule 23 is satisfied upon a preliminary showing of the following: (1) "the zeal and competence of the [movant's] counsel"; (2) "the willingness and ability of the [movant] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) that the movant is an "active, able class representative[] who [is] informed and can demonstrate [that it is] directing the litigation." *Kakkar*, 2019 WL 1367653, at *3.

The Pension Funds are clearly adequate because their substantial interest in pursuing claims against Defendants—as evidenced by their significant losses on their investments in Apache stock—is aligned with the interests of the other members of the Class who were similarly harmed by Defendants' false and misleading statements.  There is no potential conflict between the Pension Funds' interests and those of the other members of the Class. Moreover, the Pension Funds have duly signed certifications under the PSLRA and a joint declaration stating that they will actively monitor and vigorously pursue the litigation for the benefit of the Class.  *See* Ajamie Decl., Exs. A & B.

11

The Pension Funds will fairly and adequately represent the interests of the Class. The Pension Funds' interests are perfectly aligned with the other members of the Class and are not antagonistic in any way.  Indeed, the Pension Funds have the same interest as all members of the Class—to maximize the recovery for the Class—and there are no facts that indicate any conflicts of interest between the Pension Funds and the other Class members. Moreover, because of the Pension Funds' substantial financial interest in this litigation, Class members can be assured that the Pension Funds have the incentive to vigorously represent the Class's interests.  Indeed, Plymouth County has already demonstrated its commitment to prosecuting this litigation by filing the first complaint.

The Pension Funds have further demonstrated their adequacy through the selection of Kessler Topaz and Saxena White to serve as Lead Counsel for the Class and Ajamie to serve as Liaison Counsel for the Class.  As discussed below, Kessler Topaz, Saxena White, and Ajamie are highly qualified and experienced in the area of securities class action litigation and have consistently demonstrated their ability to prosecute securities class action lawsuits.  Kessler Topaz, Saxena White, and Ajamie have already demonstrated their commitment to the Class by researching and filing the first complaint and continuing to cooperatively develop the Class's claims after the complaints were filed.

In addition to satisfying the requirements of Rule 23, the Pension Funds, which are sophisticated institutional investors, are precisely the type of investors Congress sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of

12

institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, 1995 U.S.C.C.A.N. at 733-34. To this end, many courts have recognized that the legislative history reflects a "strong preference" for institutional investors to be appointed as lead plaintiff in securities class actions. *See BP*, 758 F. Supp. 2d at 439 ("[T]he PSLRA expresses a strong preference for institutional investors to serve as lead plaintiffs."); *In re Kosmos Energy Ltd. Sec. Litig.*, No. 3:12-CV-373-B, 2012 WL 6199318, at *2 n.2 (N.D. Tex. Nov. 1, 2012) (noting that "through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

The Pension Funds are aware of Lead Plaintiff's duties to oversee and supervise the litigation separate and apart from counsel, and have submitted sworn certifications and a joint declaration attesting to their willingness and ability to fulfill those duties here. *See* Ajamie Decl., Exs. A & B; *see also Kakkar*, 2019 WL 1367653, at *3-4 ("[T]he PSLRA expressly allows for a 'person or group of persons' to be appointed lead plaintiff. . . . The joint declaration submitted by the group demonstrates their plan to 'coordinate their efforts, oversee counsel, and diligently prosecute this litigation for the benefit of the class.' . . . Furthermore, the four members are informed and experienced investors.").

13

As stated in their joint declaration, the Pension Funds are sophisticated institutional investors with combined assets under management of more than $1.7 billion. Ajamie Decl., Ex. B. They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of the Related Actions. *Id.* ¶¶ 4-5.

Moreover, the Pension Funds have already taken measures to ensure that the claims of the Class are vigorously and effectively prosecuted in the best interests of the Class. For example, as part of their effort to formalize their oversight of this litigation and before seeking appointment as Lead Plaintiff, representatives of the Pension Funds held a conference call during which they discussed the claims against Defendants, their strategy for jointly prosecuting the action, the benefits that the Class will receive from the leadership of institutional investors, their proposed Lead Counsel's (ongoing) development of the Class's claims in a coordinated manner, and the measures the funds have taken and will take to ensure that the Class's claims will be zealously and efficiently litigated (including their directive to counsel to implement protocols to eliminate any duplication). *Id.* ¶¶ 8-9, 12. The Pension Funds have also exchanged contact information and are fully able to communicate with and without counsel as needed as well as in emergency situations. *Id.* ¶ 9. Through these and other measures, the Pension Funds have ensured that the Class will receive the best possible representation.

In sum, the Pension Funds have demonstrated their willingness, resources, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class. The Pension Funds are precisely the type of

institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.

### C.     The Pension Funds' Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Parker*, 2013 WL 623164, at *4 ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").  Here, the Pension Funds have selected Kessler Topaz and Saxena White to serve as Lead Counsel for the Class and Ajamie to serve as Liaison Counsel for the Class.  The Pension Funds' selection of counsel should be approved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

As detailed in its firm résumé, Ajamie Decl., Ex. E, Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery).  Kessler Topaz is also currently serving as lead or co-lead counsel in several high-profile securities class actions across the country,

15

including: *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB) (S.D.N.Y.); *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (RMD) (N.D. Ill.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.). Additionally, Kessler Topaz has experience prosecuting securities actions in this District, as it served as counsel for a class representative in *In re Cobalt International Energy, Inc. Securities Litigation*, No. 4:14-cv-03428 (S.D. Tex.). The *Cobalt* action was litigated before the Honorable Nancy F. Atlas and settled for more than $170 million.

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Saxena White has also achieved substantial recoveries on behalf of investor classes when serving as lead or co-lead counsel in securities class actions. *See* Ajamie Decl., Ex. F. For instance, Saxena White, acting as co-lead counsel, secured a $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-00990-ER (D. Del.), which represented the second-largest securities class action recovery in Delaware

history.   Saxena White's track record serving as lead or co-lead counsel in securities litigation also includes the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-1395-TJC-JBT (M.D. Fla.); the $53 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04 C-7644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-CV-02587-ELR (N.D. Ga.); and the $37.5 million recovery in *City Pension Fund for Firefighters & Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*, No. 1:08-cv-23317-JAL (S.D. Fla.). Moreover, Saxena White, serving as co-lead counsel, recently achieved a historic shareholder derivative settlement that included a $240 million monetary recovery, representing the largest insurer-funded monetary recovery in a derivative settlement in history, as well as meaningful corporate governance reforms and executive clawbacks.  *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-JST (N.D. Cal.).

Significantly, Kessler Topaz and Saxena White have experience jointly prosecuting securities fraud class actions, including *In re Sadia S.A. Securities Litigation*, No. 1:08-cv-09528-SAS (S.D.N.Y.), where Kessler Topaz and Saxena White served as co-lead counsel and achieved a $27 million recovery on behalf of the class, and *Longo v. OSI Systems, Inc.*, No. 2:17-cv-08841-FMO-SK (C.D. Cal.), where Kessler Topaz is serving as lead counsel and Saxena White is serving as additional counsel, and where the court recently denied defendants' motion to dismiss in its entirety.

Ajamie also has substantial experience litigating complex actions, including within this District, and is well qualified to represent the Class as Liaison Counsel.  *See* Ajamie

17

Decl., Ex. G.  Among other matters, Ajamie acted as liaison counsel for the class in the *Cobalt* action.

Thus, the Court can be assured that, in the event this Motion is granted, the Class will receive the highest caliber of legal representation available.  Accordingly, the Pension Funds' selection of counsel should be approved.

## IV.    CONCLUSION

For these reasons, the Pension Funds respectfully request that the Court enter an Order consolidating the Related Actions, appointing the Pension Funds as Lead Plaintiff, approving the Pension Funds' selection of Kessler Topaz and Saxena White as Lead Counsel for the Class and Ajamie as Liaison Counsel for the Class, and granting such other relief as the Court may deem just and proper.

DATED:  April 26, 2021                 Respectfully submitted,

**AJAMIE LLP**

*s/ Thomas R. Ajamie*
Thomas R. Ajamie, Attorney-in-Charge
Texas Bar No. 00952400
S.D. Tex. No. 6165
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
S.D. Tex.  No. 30895
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Proposed Liaison Counsel for the Class*

18

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

**SAXENA WHITE P.A.**
Steven B. Singer
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

-and-

David R. Kaplan
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Plymouth County Retirement System and the Trustees of the Teamsters Union No. 142 Pension Fund and Proposed Lead Counsel for the Class*

19

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1.D
## <u>AND COURT PROCEDURES 6.C.1-2</u>

This Motion has been filed under Section 21D(a)(3)(A) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA.  Section 21D(a)(3)(A) of the Exchange Act provides that within sixty days after publication of the required notice, any member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the underlying action. Consequently, counsel for the Pension Funds has no way of knowing who the competing lead plaintiff candidates are, if any, at this time.  As a result, counsel for the Pension Funds is unable to confer with opposing counsel as prescribed in Local Rule 7.1.D and Court Procedures 6.C.1-2, and respectfully requests that the conference requirements of Local Rule 7.1.D and Court Procedures 6.C.1-2 be waived for this Motion.

DATED:  April 26, 2021                          _s/ Thomas R. Ajamie_
                                                 Thomas R. Ajamie

20

## CERTIFICATE OF SERVICE

I certify that on April 26, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

DATED:  April 26, 2021

*s/ Thomas R. Ajamie*
Thomas R. Ajamie

21