# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY, and STEVEN KEENAN,<br><br>Defendants. | Case No. 4:21-cv-00575<br><br>District Judge George C. Hanks, Jr.<br><br>Magistrate Judge Andrew M. Edison<br><br>CLASS ACTION |
| BRIAN SCHWEGEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY, and STEVEN KEENAN,<br><br>Defendants. | Case No. 4:21-cv-00722<br><br>District Judge Keith P. Ellison<br><br>CLASS ACTION |

**REPLY IN FURTHER SUPPORT OF THE MOTION OF PLYMOUTH COUNTY RETIREMENT SYSTEM AND THE TRUSTEES OF THE TEAMSTERS UNION NO. 142 PENSION FUND FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF <u>COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

    A.    Issues to be Decided and Standard of Review .....................................1

    B.    Summary of Argument ........................................................................1

II.   ARGUMENT ........................................................................................ 4

    A.    The Pension Funds' Financial Interest, Adequacy, and
Typicality Is Not Disputed ..................................................................4

    B.    Opposition Briefing Validates the Pension Funds' Arguments
against Ellis and Chiou .......................................................................5

        (1)    The Pension Funds and Chiou Have Each Established
that Ellis's Status as a "Net Seller" and a "Net Gainer"
Is Fatal to His Application..........................................................6

        (2)    The Pension Funds and Ellis Have Each Established
That Chiou's Options Trading Requires His
Disqualification...........................................................................9

III.  CONCLUSION ................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atlantic Power Corp. Sec. Litig.*,
   Nos. 13-cv-10537 DPW, *et al.*,
   2014 WL 12628589 (D. Mass. Mar. 31, 2014)............................................................ 11

*Born v. Quad/Graphics, Inc.*,
   No. 19-CV-10376 (VEC),
   2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ............................................................6, 7-8

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ........................................................................ 5

*Cambria Cty. Emps. Ret. Sys. v. Venator Materials PLC*,
   No. H-19-3464,
   2019 WL 5328877 (S.D. Tex. Oct. 21, 2019)............................................................. 8

*In re Cardinal Health, Inc. Sec. Litig.*,
   226 F.R.D. 298 (S.D. Ohio 2005) .......................................................................... 7, 8

*Cook v. Allergan PLC*,
   Nos. 18 Civ. 12089 (CM), *et al.*,
   2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019). .................................................. 6, 11, 12

*Deering v. Galena Biopharma, Inc.*,
   Nos. 3:14-cv-00367-SI, *et al.*,
   2014 WL 4954398 (D. Or. Oct. 3, 2014).................................................................... 7

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
   No. 20 Civ. 5865 (NRB),
   2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ................................................... 3, 10, 12

*Doshi v. Gen. Cable*,
   No. 2:17-cv-025 (WOB-CJS),
   2017 WL 5178673 (E.D. Ky. Nov. 7, 2017)............................................................ 7, 8

*Erickson v. Snap, Inc.*,
   No. 2:17-cv-03679-SVW-AGR,
   2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) ......................................................... 5

*Hull v. Kapstone Container Corp.*,
   No. 3:17-CV-0641-K,
   2018 WL 4409798 (N.D. Tex. Sept. 17, 2018)..........................................................4-5

*Marcus v. J.C. Penney Co., Inc.*,
   Nos. 6:13-cv-736, *et al.*,
   2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ............................................................ 9

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK,
   2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ................................................................ 8

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................. 6

**Statutes**

15 U.S.C. § 78u-4(a).................................................................................................. 1, 5

## I.    INTRODUCTION

Plymouth County and Teamsters 142 (collectively, the "Pension Funds") respectfully submit this reply in further support of their motion for consolidation of the related actions, appointment as Lead Plaintiff, and approval of selection of counsel, and in response to the opposition briefs filed by competing lead plaintiff movants Ellis (ECF No. 19) and Chiou (ECF No. 18).[1]

### A.    Issues to be Decided and Standard of Review

(1)    Whether consolidation is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).

(2)    Whether the Pension Funds should be appointed as Lead Plaintiff because they are the only movant that is qualified to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

(3)    Whether the Court should approve the Pension Funds' selection of Lead Counsel and Liaison Counsel for the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

### B.    Summary of Argument

As established in their prior briefing, the Pension Funds are the "most adequate plaintiff" and should be appointed Lead Plaintiff.  The Pension Funds have demonstrated

---

[1]    Unless otherwise noted: (1) all capitalized but undefined terms have the meanings ascribed in the Pension Funds' opening and response briefs (ECF Nos. 13 & 20); (2) all emphasis is added and all internal quotations and citations are omitted; and (3) all references to "ECF No. __" are to docket entries in *Plymouth County Retirement System v. Apache Corp.*, No. 4:21-cv-00575 (S.D. Tex.).

their substantial financial interest in this litigation and, as a cohesive pair of institutional investors, are precisely the type of lead plaintiff envisioned under the PSLRA.  *See* ECF Nos. 13-5, 13-3 ¶¶ 4-12, 13 at 9-15, 20 at 22-24.  The Pension Funds' significant financial interest in the claims asserted in the Action and their ability to meet all of the prerequisites of the PLSRA and Rule 23 are undisputed, and they are not subject to unique defenses that may impede their ability to prosecute the claims on behalf of the Class.  The Pension Funds are the only applicant whose qualifications are ***unchallenged*** by any competing movant.

In stark contrast to the consensus surrounding the Pension Funds' qualifications to serve as Lead Plaintiff under the PSLRA, the opposition briefs submitted by Ellis and Chiou confirm glaring deficiencies that doom their respective applications.  Indeed, through their own opposition briefs, Ellis and Chiou have ***validated*** and ***reinforced*** the Pension Funds' arguments as to why neither Ellis nor Chiou is fit to serve as Lead Plaintiff.

As for Ellis, his status as a "net seller" and "net gainer" is fatal to his motion.  Chiou, in his brief opposing Ellis's appointment, cites decades of "voluminous yet uniform . . . case law" that has "unanimously rejected" appointment of net sellers and net gainers because they are exposed to arguments that they actually "benefitted from the fraud" and "resultantly face extreme difficulty proving damages at trial."  *See* ECF No. 18 at 3-6 (Chiou's opposition collecting ten cases rejecting net sellers and net gainers); *accord* ECF No. 20 at 9-11 (Pension Funds' opposition collecting similarly abundant authority).  Both Chiou and the Pension Funds agree that Ellis's fraud-related gains resulting from highly

2

atypical trading[2] would trigger ancillary issues that are irrelevant to the prosecution of the Class's claims and would "jeopardiz[e] the Class' potential recovery."  ECF No. 18 at 4, 6 ("Defendants will hound" Ellis "at every possible turn in this litigation" with "personal arguments" about his "net gain on sales" at fraud-inflated prices).

Ellis, in turn, correctly asserts that Chiou is unfit to serve as Lead Plaintiff for a class of common stock purchasers because Chiou is a seller of put options.  Ellis, like the Pension Funds, cites on-point authority rejecting lead plaintiff motions by sellers of put options who, like Chiou, acquired significant quantities of the defendant company's common stock through forced contractual "assignments" at "pre-determined prices" in off-market transactions.  ECF No. 19 at 14-16 (citing *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020)); ECF No. 20 at 20 (analyzing *ProShares*).  Ellis, like the Pension Funds, confirms that such options traders are both outside the Class definition and subject to an array of unique defenses, including "motive[s]" and "incentives" that diverge from "class members who traded [stock] on the market."  ECF No. 19 at 15-16 (verifying that such differences "will likely threaten to become the focus of the litigation"); *see also* ECF No. 20 at 19-22.

The Pension Funds are not subject to these or any other unique defenses.  There is no justification to saddle the Class with a deficient lead plaintiff given that the Pension Funds clearly are a suitable lead plaintiff, and no arguments whatsoever have been raised against the Pension Funds' typicality or adequacy, or the nature of the Pension Funds'

---

[2]    Ellis's highly atypical trading pattern provides an additional, independent basis for his disqualification.  *See* ECF No. 20 at 7-8, 12-15.

financial interest.  The Pension Funds therefore should be appointed Lead Plaintiff, and Ellis's and Chiou's motions for appointment should be denied.

## II.   ARGUMENT

### A.   The Pension Funds' Financial Interest, Adequacy, and Typicality Is Not Disputed

As noted in their opening brief, the Pension Funds suffered losses of $782,594 in connection with their purchases of Apache stock during the Class Period.  *See* ECF No. 13-5; ECF No. 20 at 22.  The Pension Funds are also a net purchaser of 24,081 Apache shares during the Class Period and a "net loser" on such transactions, with approximately $1 million in net expenditures.  *See* ECF No. 20 at 22; ECF No. 13-5.  Moreover, the Pension Funds unquestionably satisfy the PSLRA's requirements, as well as Rule 23's typicality and adequacy requirements, and have already demonstrated their commitment to vigorously advancing the Class's interests through their counsel's investigation and initiation of the first-filed Action.  *See* ECF No. 1 (Complaint); ECF No. 13 at 9-15 (motion papers setting forth the Pension Funds' qualifications and compliance).  Neither Ellis nor Chiou makes any arguments challenging the Pension Funds' financial interest or their adequacy and typicality.[3]  The absence of any argument from either competing movant questioning the Pension Funds' qualifications is a concession that there are no impediments to the Pension Funds' appointment as Lead Plaintiff under the PSLRA.  *See Hull v. Kapstone Container Corp.*, No. 3:17-CV-0641-K, 2018 WL 4409798, at *2 (N.D. Tex.

---

[3]     Ellis simply notes that the Pension Funds do not have the largest financial interest. *See* ECF No. 19 at 3, 16.

Sept. 17, 2018) (stating that "in failing to respond" a party "concedes . . . points on these two claims in its motion").

###### B.   Opposition Briefing Validates the Pension Funds' Arguments against Ellis and Chiou

In contrast to the consensus around the Pension Funds' undisputed financial interest, adequacy, and typicality, Ellis and Chiou both face fatal infirmities—including an array of unique defenses—that preclude either from being appointed under the PSLRA.  There is no reason to subject the Class to the many unique defenses that would be implicated by either Ellis's or Chiou's appointment.  *See Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, *4 (C.D. Cal. Sept. 18, 2017) ("There is no reason to subject the class to [movant's] unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court.").

The appointment of either Ellis or Chiou would all but guarantee that their unique issues would become the focus of this litigation, to the detriment of the Class.  *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 435 (S.D. Tex. 2010) (explaining that a prospective lead plaintiff cannot be "subject to unique defenses that render such plaintiff incapable of adequately representing the class").  Given the Pension Funds' undisputed qualifications, Ellis's and Chiou's motions for appointment must be denied.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) (stating that a movant lacks adequacy if it is "subject to unique defenses").[4]

---

[4]   While the PSLRA expresses a strong preference for institutional investor leadership of securities class actions, the Pension Funds' motion is not premised solely on their status

**(1)    The Pension Funds and Chiou Have Each Established that Ellis's Status as a "Net Seller" and a "Net Gainer" Is Fatal to His Application**

Ellis is the prototypical net seller and net gainer ***uniformly disqualified*** by courts. *See Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) (collecting cases finding that net seller/net gainer status "effectively disqualifies" an investor from serving as lead plaintiff). As explained by the Pension Funds, Ellis sold 950 more shares than he purchased, resulting in a net gain of $299,416 from his Class Period transactions. *See* ECF No. 20 at 6-11. Based on well-established precedent, Ellis cannot be appointed as a lead plaintiff. *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("there is wisdom in the rule that net sellers who are also net gainers should not be lead plaintiffs").

Chiou independently confirms the validity of the Pension Funds' arguments against Ellis, correctly asserting that Ellis's status as a net seller and a net gainer "warrant[s] immediate disqualification of his motion." ECF No. 18 at 2. As both the Pension Funds and Chiou recognize, net sellers who are also net gainers—like Ellis—expose absent class members to considerable risks given their potential inability to establish damages. *See*

---

as institutional investors. *See* ECF No. 19 at 10-11, 16. Here, the Pension Funds are the ***only*** movant before the Court meeting ***all*** of the criteria required for appointment under the PSLRA. The fact that the Pension Funds are also the preferred investor Congress envisioned when enacting the PSLRA (a fact not disputed by Ellis) provides the Court and the Class further assurance that the Pension Funds will zealously represent the Class and effectively oversee Lead Counsel's prosecution of the Action. *See Cook v. Allergan PLC*, Nos. 18 Civ. 12089 (CM), *et al.*, 2019 WL 1510894, at *1 (S.D.N.Y. Mar. 21, 2019) ("Congress expressed a particular interest in seeing sophisticated institutional investors, rather than individuals, take control of securities fraud class actions.").

6

*Deering v. Galena Biopharma, Inc.*, Nos. 3:14-cv-00367-SI, *et al.*, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) (explaining that the rationale for "courts around the country consistently . . . reject[ing]" net seller and net gainer applicants is "the difficulty [they have] proving damages at trial"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (stating that "proving damages and typicality" will be an issue for net sellers/net gainers).

Like the net sellers/net gainers disqualified by ***virtually every court to consider the issue***,[5] Ellis's appointment would give Defendants a prime target to distract from—and undermine—the prosecution of the case, because Ellis would be forced to address unique issues that are irrelevant to the Class. The overwhelming weight of case law rejecting net gainers guarantees that Ellis's appointment would trigger a series of litigation sideshows that would "siphon substantial time and resources" resulting from Defendants raising the "debilitating unique defense" that Ellis "in fact benefitted from the alleged fraud." ECF No. 18 at 2, 6; *see also* ECF No. 20 (detailing "litigation sideshows" created by net sellers/net gainers); *Doshi v. Gen. Cable*, No. 2:17-cv-025 (WOB-CJS), 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) (noting that net sellers and net gainers "may be subject to unique defenses because they may have benefitted by selling . . . shares at allegedly inflated prices"). There is no reason to subject the Class to such distractions given the Pension Funds' undisputed qualifications. *See Quad/Graphics*, 2020 WL

---

[5]    *See* ECF No. 20 at 9 ("courts across the country have uniformly concluded that movants who are both net sellers and net gainers ***must be disqualified***"); ECF No. 18 at 4 ("courts across the country have ***unanimously rejected*** applications from net sellers/net gainers to serve as lead plaintiff").

994427, at *2 (disqualifying net seller and net gainer movant and appointing institutional investor that "comes with no such risks, as it is neither a net gainer nor a net seller, and its loss is substantial").

Ellis cannot avoid rejection by arguing that he is somehow not a net gainer because he suffered losses under a LIFO analysis of his Class Period transactions. Net gains and out-of-pocket (LIFO) losses are distinct financial interest factors, and the presence of LIFO losses are irrelevant to the net gainer analysis. *See Cambria Cty. Emps. Ret. Sys. v. Venator Materials PLC*, No. H-19-3464, 2019 WL 5328877, at *2 (S.D. Tex. Oct. 21, 2019) (listing "the approximate losses suffered" separately from "the number of net shares purchased" and the "total net funds expended"). As succinctly explained by the court in *Perlmutter v. Intuitive Surgical, Inc.*, "[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud. . . . This is ***not the same*** as determining whether a party lost or earned money trading in a particular stock." No. 10-CV-03451-LHK, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) (emphasis added). Indeed, courts have rejected net sellers/net gainers who ***also*** claimed the largest LIFO losses. *See, e.g.*, *Gen. Cable*, 2017 WL 5178673, at *2 (rejecting net seller/net gainer ***after*** determining that it "suffered the largest financial loss during the Class Period"); *see also Cardinal Health*, 226 F.R.D. at 308 (rejecting net gainers claiming $1.9 million and $2.1 million in losses). No amount of legal or mathematical gymnastics can salvage Ellis's motion. His status as both a net seller and a net gainer—the result of a highly atypical speculation strategy belying any reliance on Defendants' alleged

misstatements[6]—is fatal.   *See* ECF No. 18 at 5 n.3 (collecting case law rejecting net gainers).  The Pension Funds and Chiou agree on this point.  *See* ECF No. 18 at 3-6 (arguing Ellis must be rejected); ECF No. 20 at 6-11 (same).

> **(2)     The Pension Funds and Ellis Have Each Established That Chiou's Options Trading Requires His Disqualification**

Just as Chiou's opposition confirms the wisdom of the Pension Funds' arguments against Ellis, Ellis's opposition confirms why Chiou must be disqualified.  As explained by the Pension Funds, more than **93 percent** of Chiou's claimed losses were incurred as the result of his **sale** of put **options** and the resulting forced, off-market assignments of Apache shares to Chiou at predetermined prices.  *See* ECF No. 20 at 16-22.  Chiou's extensive options trading subjects him to an array of unique defenses that undermine his ability to meet Rule 23's adequacy and typicality requirements.

---

[6]      As described in detail in the Pension Funds' opposition brief, Ellis's inadequacy to serve as Lead Plaintiff is compounded by his highly atypical trading pattern, which Defendants will invariably argue demonstrates a complete and total **lack** of reliance on their alleged misstatements.  *See* ECF No. 20 at 12-15.  Notwithstanding Ellis's frenzy of trading activity at the very start of the Class Period—including buying and selling his entire Apache portfolio a dozen times during the first three months of the Class Period—Ellis may argue that he is able to invoke the fraud-on-the-market presumption of reliance because he purchased shares on December 22, 2016, and held these shares through the end of the Class Period.  However, Ellis's retention of these shares—which represent just 8 percent of his overall position—cannot erase his extraordinarily anomalous trading and exposes him to a cogent argument that his losses are the product of a speculation strategy gone bad.  *See* ECF No. 13 at 13; *Marcus v. J.C. Penney Co., Inc.*, Nos. 6:13-cv-736, *et al.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (rejecting lead plaintiff applicant as atypical due to its "active trading practices," including buying and selling his "entire . . . portfolio on the same or next trading day on a least ten different instances," which evinced a strategy based on "speculation" and "daily volatility" rather than reliance on defendants' statements).  This provides an independent basis to reject Ellis's motion for appointment as Lead Plaintiff.

First, in their opposition briefs, the Pension Funds and Ellis demonstrated that Chiou's **put options sales** are "**not** . . . included in the [C]lass definition" and cite identical recent on-point authority for the proposition that Choiu's options trading disqualifies him from representing a class of **common stock purchasers**. ECF No. 19 at 15; *see also* ECF No. 20 at 18 ("Chiou's transactions are outside of the Class definition"); *ProShares*, 2020 WL 7698321, at *4 (declining to appoint put options seller as lead plaintiff given his inadequacy and atypicality to represent a class of "investors who purchased or otherwise acquired [company] securities") (emphasis in original). For the same reason, both the Pension Funds and Ellis assert that Chiou's options should not be included in his loss calculation as those securities "have not been included in the class definition." ECF No. 19 at 15; *accord* ECF No. 20 at 18. Significantly, with options removed, Chiou's financial interest declines to just $76,793—a mere 10% of the loss incurred by the Pension Funds. ECF No. 20 at 18.

Second, even if put options sales and/or their resultant forced above-market assignments of Apache shares were somehow included in the Class definition, the Pension Funds and Ellis have each demonstrated that Chiou's motion would still fail because his heavy reliance on options trading subjects him to numerous unique defenses. For example, Ellis and the Pension Funds corroborate each other's assertions that Defendants will invariably challenge Chiou's reliance on the integrity of the market price of Apache's common stock because Chiou's options contracts obligated him to "purchase shares at pre-agreed upon prices" that "had nothing to do with" the price at which Apache stock was trading when the assignments occurred. ECF No. 19 at 15; *accord* ECF No. 20 at 16. As

Ellis confirms, "there are questions as to whether or not [Chiou] was motivated by the same market incentives as class members who traded on the market that will likely threaten to become the focus of the litigation." ECF No. 19 at 15-16.

The Pension Funds and Ellis cite recent cases involving analogous circumstances that verify the common sense conclusion that put options traders like Chiou are unfit to serve as lead plaintiffs for classes of common stock investors. In addition to being subject to the defense that they did not rely on Defendants' alleged misstatements or the market price of Apache shares at all when they were contractually obligated to purchase Apache shares, courts regularly reject options traders of all types because their appointment would introduce a host of irrelevant issues that distract from the prosecution of an action.[7] *See id.*; ECF No. 20 at 19-21; *see also Allergan*, 2019 WL 1510894, at *2 (declining to appoint as lead plaintiff an options investor because he was atypical in that his appointment "would introduce factual issues irrelevant to stockholder class members like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict").

---

[7]   Depending on the timing of his sales of put options, Chiou also may be subject to additional unique defenses as to reliance. *See* ECF No. 20 at 18 n.8. To date, Chiou has not provided the Court with important information regarding the timing of his sales, despite having two opportunities to do so. Chiou's failure to timely inform the Court of these crucial facts reflects poorly on his ability to adequately represent the Class, and any belated attempt in a reply brief to explain away this omission should not be credited. *See In re Atlantic Power Corp. Sec. Litig.*, Nos. 13-cv-10537 DPW, *et al.*, 2014 WL 12628589, at *1 (D. Mass. Mar. 31, 2014) (rejecting movant who, *inter alia*, submitted incomplete information on claimed losses).

The unique defenses associated with Chiou's status as a seller of put options, as recognized by Ellis, expose the Class to unnecessary risks that do not accompany the appointment of the Pension Funds—who, like other class members, purchased Apache *common stock* on the *open market*. *See ProShares*, 2020 WL 7698321, at *4 (rejecting investors whose losses were primarily from options trading); *Allergan*, 2019 WL 1510894, at *2 (same). Chiou's motion for appointment as Lead Plaintiff therefore must be denied. *See ProShares*, 2020 WL 7698321, at *4.

## III.   CONCLUSION

The Pension Funds have a significant financial interest in this litigation and, critically, are the *only* movant whose appointment would comport with the typicality and adequacy requirements of Rule 23—a point conceded by competing movants Ellis and Chiou. Accordingly, the Pension Funds respectfully request that the Court enter an Order: (1) consolidating the above-captioned actions; (2) appointing the Pension Funds as Lead Plaintiff; (3) approving the Pension Funds' selection of Kessler Topaz and Saxena White as Lead Counsel for the Class and Ajamie as Liaison Counsel for the Class; and (4) denying all competing motions.

DATED:  May 24, 2021

Respectfully submitted,

**AJAMIE LLP**

*s/ Thomas R. Ajamie*
Thomas R. Ajamie, Attorney-in-Charge
Texas Bar No. 00952400
S.D. Tex. No. 6165
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
S.D. Tex.  No. 30895
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

**SAXENA WHITE P.A.**
Steven B. Singer
Rachel A. Avan
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611

13

ssinger@saxenawhite.com
ravan@saxenawhite.com

-and-

David R. Kaplan
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Plymouth County Retirement System and the Trustees of the Teamsters Union No. 142 Pension Fund and Proposed Lead Counsel for the Class*

14

**CERTIFICATE OF SERVICE**

I certify that on May 24, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

DATED:  May 24, 2021                          *s/ Thomas R. Ajamie*
                                             Thomas R. Ajamie