**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY, and STEVEN KEENAN, <br><br> Defendants. | Case No. 4:21-cv-00575 <br><br> Judge George C. Hanks, Jr. |
| BRIAN SCHWEGEL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY, and STEVEN KEENAN, <br><br> Defendants. | Case No. 4:21-cv-00722 <br><br> Judge Keith P. Ellison |

**DR. TERRY ELLIS'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD AND LOCAL COUNSEL**

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

STATEMENT OF THE ISSUES TO BE RULED ON ................................................. 2

SUMMARY OF THE ARGUMENT ............................................................................ 3

ARGUMENT .............................................................................................................. 6

I.    ELLIS HAS SHOWN THAT THE PSLRA'S PRESUMPTION OF MOST
      ADEQUATE MOVANT APPLIES TO HIM. ..................................................... 6

      A.    Ellis Has Losses Attributable To The Fraud During The Class Period ..................... 6

      B.    Ellis Is Not Subject To Any Unique Defense ............................................................. 9

II.   CHIOU SHOULD NOT BE APPOINTED LEAD PLAINTIFF BECAUSE HE
      HAS A SIGNIFICANTLY SMALLER FINANCIAL INTEREST THAN ELLIS
      AND IS SUBJECT TO UNIQUE DEFENSES ................................................... 11

III.  ELLIS SHOULD BE APPOINTED LEAD PLAINTIFF AND HIS SELECTION OF
      THE FARUQI FIRM AS LEAD COUNSEL AND TOM ALAN CUNNINGHAM
      PLLC AS LOCAL COUNSEL SHOULD BE APPROVED ......................................... 12

CONCLUSION............................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ........................................................................ 4, 5, 10

*Cambria Cty. Emps.' Ret. Sys. v. Venator Materials PLC*,
No. H-19-3464, 2019 WL 5328877 (S.D. Tex. Oct. 21, 2019) ..................................... 6

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003) ............................................................................ 5, 10

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................................... 8

*Ellenburg v. JA Solar Holdings Co. Ltd*,
262 F.R.D. 262 (S.D.N.Y. 2009) ................................................................................. 9

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015) ............................................... 11

*Frank v. Dana Corp.*,
237 F.R.D. 171 (N.D. Ohio 2006) ................................................................................ 8

*Kasper v. AAC Holdings, Inc.*,
No. 15-cv-00923-JPM-jsf, 2017 WL 3008510 (M.D. Tenn. July 14, 2017) .............. 10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .......................................................................... 8

*Montoya v. Mamma.com, Inc.*,
No. 05 Civ. 2313(HB), 2005 WL 1278097 (S.D.N.Y. May 31, 2005) ....................... 10

*In re Reliance Acceptance Grp., Inc. Sec. Litig.*,
No. SA-98-CV0044 OG, 1998 WL 388260 (W.D. Tex. June 29, 1998) ...................... 6

*Richardson v. TVIA, Inc.*,
No. C 06 06304 RMW 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ....................... 8, 9

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) .............................................................................. 4, 8

*Strong v. AthroCare Corp.*,
No. A-08-CA-574-SS, 2008 WL 11334942 (W.D. Tex. Dec. 10, 2008) ........ 2, 6, 9, 11

*Welch v. Meaux*,
   No. 19-1260, 2020 WL 4758269 (W.D. La. Aug. 17, 2020) .......................................... 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................... 2, 3, 12

**Other Authorities**

Fed. R. Civ. P. 42(a) ...................................................................................................... 2

Dr. Terry Ellis ("Ellis") respectfully submits this reply memorandum of law in further support of his motion (ECF No. 12) to: (1) consolidate the above-captioned actions ("Actions"); (2) appoint Ellis as Lead Plaintiff; and (3) approve Ellis' selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel and Tom Alan Cunningham PLLC as Local Counsel.[1]

## NATURE AND STAGE OF THE PROCEEDINGS

Currently before the Court are three motions filed by shareholders of Apache Corporation ("Apache" or the "Company") to consolidate the above-captioned Actions, to be appointed lead plaintiff and approve the selection of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B).  ECF Nos. 11, 12, 13.[2]

The movants agree that the Actions assert the same or similar allegations against the same defendants for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and that consolidation of the Actions under Fed. R. Civ. P. 42(a) is warranted. *See* ECF Nos. 11, 12, 13, 18, 19, 20.

---

[1]     Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to Dr. Terry Ellis' Appendix Accompanying His Reply Memorandum of Law in Further Support of His Motion for (1) Consolidation; (2) Appointment as Lead Plaintiff; and (3) Approval of Lead Counsel (the "Reply Appendix"), filed herewith.

[2]     Ellis also filed his motion to consolidate and to be appointed lead plaintiff in *Schwegel v. Apache Corp., et al.*, No. 4:21-cv-00722 ("*Schwegel*"). No other movant filed a motion or opposition in the *Schwegel* case. Because the other movants have raised arguments against Ellis motion only in the *Plymouth* case, Ellis is filing this Reply only in the *Plymouth* case.

Ellis has shown in his opening motion and his opposition papers that he suffered the largest losses and otherwise meets the adequacy and typicality requirements of Fed. R. Civ. P. 23 and therefore is entitled to the presumption that he is the most adequate movant to be appointed lead plaintiff and for his chosen counsel to be appointed lead counsel. *See* ECF Nos. 12 to 12-7, 19 to 19-4. The other movants, Plymouth County Retirement System and Trustees of the Teamsters Union No. 142 Pension Fund (the "Pension Fund Group") and Shang Chu Chiou ("Chiou"), have sought to rebut this presumption. *See* ECF Nos. 18 and 20.[3]

### STATEMENT OF THE ISSUES TO BE RULED ON

1. Whether consolidation is appropriate under Rule 42(a) because the above-captioned Actions "involve a common question of law and or fact[.]" *See* Fed. R. Civ. P. 42(a).

2. Whether Ellis is the presumptive lead plaintiff under the PSLRA and the other movants have rebutted the presumption. 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii).

3. Whether the Court should approve Ellis' selection of Lead Counsel and Local Counsel for the putative Class. 15 U.S.C. § 78u-4(a)(3)(B)(v).

---

[3]   Ellis erroneously misreported total net funds expended in his opening brief as $299,413.79, instead of the correct number: ($299,413.79). ECF No. 12, p. 13.  As discussed herein however, net funds expended, or in Ellis's case received, is just one of the four factors courts may consider to determine largest financial interest. The fourth factor, approximate losses suffered, is the most determinative in identifying the movant with the largest financial interest. *Strong v. AthroCare Corp.*, No. A-08-CA-574-SS, 2008 WL 11334942, at *5 (W.D. Tex. Dec. 10, 2008).

## SUMMARY OF THE ARGUMENT

The PSLRA provides that the "court shall adopt a presumption that the most adequate plaintiff" is the movant that: (1) "has the largest financial interest in the relief sought by the class"; and (2) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Both the Pension Fund Group and Chiou acknowledge that Ellis has claimed larger losses and tacitly concede that he should be treated as the presumptive lead. *See* Mem. of Law in Further Supp. of Mot. of Shang Chu Chiou, on Behalf of Himself and the Chiou Family Tr., for Consolid., Appointment as Lead Pl., and Approval of Selection of Lead Counsel ("Chiou LP Opp.") 3 (ECF No. 18); Mem. of Law in Further Supp. of the Mot. of Plymouth Cty. Ret. Sys. and the Trustees of the Teamsters Union No. 142 Pension Fund Mot. for Consolid. And Appointment as Lead Pl. and in Opp'n to the Competing Mots. ("Pension Fund Group LP Opp.") 2 (ECF No. 20).

Nevertheless, the Pension Fund Group and Chiou try to discredit Ellis in an effort to rebut the presumption in favor of his appointment as Lead Plaintiff. Neither the Pension Fund Group's nor Chiou's strained arguments withstand scrutiny.

The Pension Fund Group and Chiou have argued that Ellis is disqualified because he is a "net seller" and a "net gainer." Pension Fund Group LP Opp. 6-12; Chiou LP Opp. 3-6.  While courts utilize these terms, there does not appear to be a uniform manner to apply these terms to all fact patterns that allow for an accurate determination of out-of-pocket losses arising from the alleged fraud during a class period. Indeed, courts consistently recognize that even if a movant may be treated as a "net seller", they will not

3

be disqualified from being appointed lead plaintiff so long as the movant can demonstrate he suffered a financial loss. *See e.g., Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) (appointing a group as lead plaintiff when one member was a "net seller," noting that "there is no good reason not to recognize losses which a net seller has incurred."). Here, as discussed below and reflected in the attached Loss Chart, Ellis has suffered actual losses on his Apache transactions as a result of the alleged fraud. *See* Ex. A.  Neither the Pension Fund Group nor Chiou have offered evidence that Ellis did not actually suffer losses attributable to the fraud. As such, the Court should reject the Pension Fund Group's and Chiou's arguments that Ellis is disqualified because he is a "net gainer" on his Class Period transactions. Ellis demonstrated that his LIFO losses (the gold standard for evaluating financial interest) far surpass the other movant's losses and therefore he is the presumptive most adequate movant under the PSLRA.

The Pension Fund Group also has argued that Ellis' "in-and-out transactions" and purchases after the fraud was disclosed render him atypical and disqualified under Rule 23. Pension Fund Group LP Opp. 12-15. This argument similarly fails upon closer examination. For purposes of Rule 23's typicality requirement, the frequency of Ellis' transactions during the Class Period are not relevant to whether he, like other Apache stockholders, relied on the fraud to make his purchases. At bottom, as shown in his PSLRA Certification (ECF No. 12-3), Ellis purchased a significant amount of Apache shares prior to the first partial disclosure, held his shares until the end of the Class Period, and suffered a loss on those shares. The Pension Fund Group does not dispute this fact or the fact that Ellis has the largest LIFO losses, the seminal factor. *See e.g., Bensley v.*

4

*FalconStor Software, Inc.*, 277 F.R.D. 231, 240-41 (E.D.N.Y. 2011) (rejecting lead plaintiff movant because it was a complete in-and-out trader who sold its entire position prior to the first disclosure). Moreover, Ellis' minimal Class Period purchases after the disclosure of the fraud do not subject him to any unique defense. Courts recognize that investors regularly employ "dollar cost averaging" and that does not make a movant atypical. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 493 (S.D. Fla. 2003) (finding plaintiff not atypical for purchasing additional shares after the fraud had been revealed in order to cut his cost average in half.). None of the Pension Fund Group's arguments are sufficient to rebut the presumption in favor of Ellis being appointed Lead Plaintiff.

Further, Chiou is disqualified because unique defenses that apply to him. As of this filing, he has submitted no evidence that he has authority to move on behalf of the Chiou Family Trust. Moreover, his numerous options transactions will subject him to a unique defense not faced by Ellis. He appears to have acquired Apache shares by assignment through put options which are not included in the Class.[4]

Ellis respectfully submits that the Actions should be consolidated and that as the movant with the largest financial interest in the recovery sought by the Class who meets the requirements of Rule 23, he should be appointed Lead Plaintiff and his choice of

---

[4]   The Pension Fund Group also has argued that Chiou should not be appointed Lead Plaintiff due to his transactions in options. *See* Pension Fund Group LP Opp. 16-22. On May 24, 2021, Chiou filed a notice of non-opposition to the competing motions for lead plaintiff acknowledging that he does not have the "largest financial interest in the relief sought by the class." ECF No. 21. Since Chiou's motion has not been withdrawn and he has offered to serve as lead plaintiff if the Court were to determine that the other movants are incapable or inadequate to represent the Class, Ellis addresses the factors about Chiou's motion for lead plaintiff that disqualify him.

counsel approved.

## ARGUMENT

### I.   ELLIS HAS SHOWN THAT THE PSLRA'S PRESUMPTION OF MOST ADEQUATE MOVANT APPLIES TO HIM.

As shown in his opening motion papers, during the Class Period, Ellis suffered LIFO losses of **$2,576,861.63**, which is significantly larger than Chiou's claimed loss of $1,160,589.52 and the Pension Fund Group's loss of $782,593.90. *See* Ex. B to Dr. Terry Ellis' App'x Accompanying Mot. for (1) Consolidation; (2) Appointment As Lead Plaintiff; and (3) Approval of Lead And Local Counsel (ECF No. 12-1) ("Opening App'x"), ECF No. 12-3; *see also Welch v. Meaux*, No. 19-1260, 2020 WL 4758269, at *3 (W.D. La. Aug. 17, 2020); *Cambria Cty. Emps.' Ret. Sys. v. Venator Materials PLC*, No. H-19-3464, 2019 WL 5328877, at *2 (S.D. Tex. Oct. 21, 2019). "[C]ourts consistently consider the fourth factor—the approximate losses suffered—as most determinative in identifying the plaintiff with the largest financial loss." *Strong*, 2008 WL 11334942, at *5; *In re Reliance Acceptance Grp., Inc. Sec. Litig.*, No. SA-98-CV0044 OG, 1998 WL 388260, at *3 (W.D. Tex. June 29, 1998).

Furthermore, Chiou's and the Pension Fund Group's argument that he is a "net seller" and a "net gainer," do not disqualify Ellis because he suffered significant *actual dollar* losses arising from his Class Period transactions.

### A.   Ellis Has Losses Attributable To The Fraud During The Class Period

Chiou and the Pension Fund Group argue that because Ellis is a "net seller" and a "net gainer" he should be disqualified. Pensions Fund Group LP Opp. 6-12; Chiou LP

6

Opp. 3-6. However, a review of Ellis' Class Period transactions demonstrate that the rational underpinning the "net seller" and "net gainer" arguments do not apply to Ellis.

The complaint alleges that the truth began to leak into the market and cause the stock price to decline starting on April 23, 2019, when Apache made a partial disclosure of the alleged fraud by announcing that it would began deferring natural gas production at Alpine High. Complaint ¶ 42 (ECF No. 1). The complaint alleges there were three other disclosures that caused the stock price to decline, on October 25, 2019, March 12, 2020 and March 16, 2020. Complaint ¶¶ 46-53. Based on the aggregate dollar amount of stock price decline arising from these disclosures, Apache's stock was inflated by a total of $9.29 per share. In other words, based on the Complaint's allegations, $9.29 is the amount by which Apache share price was artificially inflated due to the alleged fraud. By the first disclosure, Apache stock lost $4.03 of the $9.29 total inflation, leaving $5.26 of inflation left. By the second disclosure, Apache stock lost an additional $1.16 of the inflation, leaving $4.10 of inflation left. By the third disclosure, Apache stock lost $0.49 of inflation, leaving $3.61 of inflation left. On the last disclosure, the remaining $3.61 of artificial inflation was removed from Apache's stock.

Ellis started the class period holding 58,500 shares, and during the class period he sold an additional 950 more shares than he purchased at Apache stock's fully inflated value. He also held 57,550 shares at the end of the class period that suffered the full loss due to inflation due to fraud on those shares. Looking at Ellis' gains and losses on a transaction-by-transaction basis during the Class Period, Ellis lost $525,814 due to fraud-induced inflation of share prices. This amount is Ellis' recoverable loss, and further

7

exemplifies the fact that Ellis did in fact lose money due to the fraud. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (noting that a movant's losses at the lead plaintiff stage must be "*Dura* eligible" under the principles of *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)).  *See* Ex. A.

Neither Chiou nor the Pension Fund Group have cited to any authority where a movant's status as a numerical net seller of shares without being a *net gainer of money* was sufficient to disqualify the movant. In fact, courts regularly state the opposite. The only reason courts disqualify net sellers is because they cannot prove they were damaged by the fraud. *Richman*, 274 F.R.D. at 479 ("there is no good reason not to recognize losses which a net seller has incurred"); *Frank v. Dana Corp.*, 237 F.R.D. 171, 173 (N.D. Ohio 2006) ("though [movant] may have been a net seller, it should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff"); *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW 2007 WL 1129344, at *3-4 (N.D. Cal. Apr. 16, 2007) (noting that courts' express disapproval towards net sellers who profited from the purchase and sale of shares during the class period and appointing a net seller with the largest LIFO loss as lead plaintiff because "courts consider the fourth [Olsten-Lax factor], the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss"). Therefore, the only determinative factor is whether or not Ellis profited from defendants' fraud. He absolutely did not.  Using a direct share for share analysis of purchases and sales of stock at fraud-induced inflated prices, he lost $525,814.

Ellis has demonstrated that he is the movant with the largest losses calculated

8

under a traditional LIFO loss methodology which is sufficient to demonstrate that he has a recoverable loss. *See Richardson*, 2007 WL 1129344, at \*3-4; *Strong*, 2008 WL 11334942, at \*5("[C]ourts consistently consider the fourth factor—the approximate losses suffered—as most determinative in identifying the plaintiff with the largest financial loss."). However, alternatively, Ellis asserts that when analyzing the inflationary effect on defendants' fraudulent conduct, it is clear that he has a recoverable loss and is not a net gainer.

### B.    Ellis Is Not Subject To Any Unique Defense

The Pension Fund Group argues that even if Ellis is accepted as having the largest financial loss, Ellis' "numerous in-and-out transactions" and purchases after the fraud make him atypical, and therefore Ellis fails to meet Rule 23's requirements. Pension Fund Group LP Opp. 12-15. As explained further below, Courts have found that neither of these arguments are sufficient to establish a unique defense, and therefore not sufficient to rebut Ellis' status as the presumptive most adequate plaintiff.

First, Ellis is not an "in-and-out trader." Ellis held 57,550 shares for over three years of the Class Period's duration. That fact alone is sufficient to demonstrate that Ellis was a long-term investor in Apache that was not trading on day-to-day market fluctuations.  Indeed, regardless of terminology that the Pension Fund Group seeks to attach to Ellis based on his intra-Class Period transactions, the bottom line is that he maintained a significant amount of Apache shares through the corrective disclosures at the end of the Class Period. *Ellenburg v. JA Solar Holdings Co. Ltd*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009) ("selling shares during the class period does not disqualify a class

9

member from being appointed lead plaintiff"); *Montoya v. Mamma.com, Inc.*, No. 05 Civ. 2313(HB), 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) ("[I]n-and-out purchasers do not appear to be unique and, thus render such plaintiff incapable of adequacy representing the class").  As the Pension Fund Group doesn't dispute that Ellis purchased a significant amount of Apache shares prior to the first partial disclosure, held his shares until the end of the class period, and suffered a loss on those shares, the frequency of his transactions during the Class Period are not pertinent to serving as Lead Plaintiff. *Bensley*, 277 F.R.D. at 241 (rejecting lead plaintiff movant because it was a complete in-and-out trader who sold its entire position prior to the first disclosure).

Second, Ellis' minimal purchases after the disclosure of the fraud do not subject him to a unique defense. As Ellis had a substantial amount of shares at the end of the Class Period, he sought to take advantage of the lower priced shares to lower the average cost of his holdings. This strategy is called "dollar cost averaging" and courts recognize that this is a regular trading strategy that does not make a movant atypical. *Cheney*, 213 F.R.D. at 493 (finding plaintiff not atypical for purchasing additional shares after the fraud had been revealed in order to cut his cost average in half); *Kasper v. AAC Holdings, Inc.*, No. 15-cv-00923-JPM-jsf, 2017 WL 3008510, at *10 (M.D. Tenn. July 14, 2017) ("in the Rule 10b-5 context, our sister courts find that purchasing stock subsequent to a materially adverse disclosure, averaging down, is a common technique used to decrease the average cost of an investment and which cannot [automatically] be used to defeat a proposed class representative's typicality.") (collecting cases).

10

**II.   CHIOU SHOULD NOT BE APPOINTED LEAD PLAINTIFF BECAUSE HE HAS A SIGNIFICANTLY SMALLER FINANCIAL INTEREST THAN ELLIS AND IS SUBJECT TO UNIQUE DEFENSES**

Chiou's motion to be appointed Lead Plaintiff should be denied because Ellis has demonstrated that he has a larger financial loss than Chiou. That alone is sufficient to select Ellis over Chiou. *Strong*, 2008 WL 11334942, at *5 ("[C]ourts consistently consider the fourth factor—the approximate losses suffered—as most determinative in identifying the plaintiff with the largest financial loss."). However, even if Chiou's motion were to be considered, Chiou is subject two unique defenses that render him atypical and unsuitable to lead the class.

First, Chiou has acquired almost all of his Class Period shares from the assignment of put options. The Pension Fund agrees that Chiou should be disqualified for his put option assignments because it is not clear that Chiou was motivated by the same market factors as a typical investor, making him unfit to serve as lead plaintiff. Pension Fund LP Opp. 16-22.

Second, Chiou has not demonstrated that he has the authority to move on behalf of the Chiou Family Trust because he has not presented any formal assignment of the other co-trustee's claims or proof of power of attorney for the trust. *See In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 WL 918535, at *3 (D.N.J. Mar. 3, 2015) (finding movant was subject to a unique defense because its certification did not indicate that the signer was authorized to sign on the movant's behalf).

11

**III.	ELLIS SHOULD BE APPOINTED LEAD PLAINTIFF AND HIS SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND TOM ALAN CUNNINGHAM PLLC AS LOCAL COUNSEL SHOULD BE APPROVED**

Ellis is the proposed lead plaintiff with the highest losses and otherwise meets Rule 23's adequacy and typicality requirements. Furthermore, Ellis is not subject to any unique defenses and no evidence has been produced to rebut the presumption under the PSLRA that he is the most adequate movant to fully and fairly represent the interests of the Class. Therefore, Ellis is the presumptive most adequate plaintiff and should be selected as lead plaintiff.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. Ellis has selected the Faruqi Firm to be Lead Counsel for the Class and Tom Allan Cunningham, PLLC to be Local Counsel. The Faruqi Firm is a highly experienced minority-owned and woman-owned law firm whose adequacy to serve as lead counsel in this case has not been challenged and, as reflected in the firm's resume, possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Opening App'x (ECF No. 12-1), Ex. C, Firm Resume, Ex. D, Women's Business Enterprise National Council Certificate, and Ex. E, Firm Resume of Tom Alan Cunningham, PLLC.

## CONCLUSION

For the foregoing reasons and the reasons set forth in his Opening Memorandum of Law (ECF No. 12), Ellis respectfully requests that the Court: (1) consolidate the

above-captioned Actions; (2) appoint him as Lead Plaintiff; (3) approve his selection of

the Faruqi Firm as Lead Counsel and Tom Alan Cunningham PLLC as Local Counsel for

the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: May 24, 2021                  Respectfully submitted,

**TOM ALAN CUNNINGHAM, PLLC**

By:      */s/ Tom Alan Cunningham*
              Tom Alan Cunningham
              (S.D. Tex. ID No. 1383)
              (Tex. State Bar No. 05244700)

919 Milam, Suite 575
Houston, Texas 77002
Telephone: 713-255-5500
Facsimile: 713-255-5555
Email: tac@tomalancunningham.com

James M. Wilson, Jr. (*pro hac vice* forthcoming)
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com
            rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff and [Proposed] Lead Counsel for the putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Tom Alan Cunningham
(S.D. Tex. ID No. 1383)
(Tex. State Bar No. 05244700)

14