United States District Court
Southern District of Texas
**ENTERED**
October 06, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, | § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 4:21-cv-00575 |
| APACHE CORPORATION, ET AL., | § § § | |
| Defendants. | § | |

### ORDER CONSOLIDATING RELATED ACTIONS
### AND APPOINTING LEAD PLAINTIFF AND COUNSEL

This opinion addresses competing motions for consolidation, appointment of lead plaintiff, and approval of counsel.[1] *See* Dkts. 12, 13. Dr. Terry Ellis ("Ellis") and Plymouth County Retirement System and the Trustees of the Teamsters Union No. 142 Pension Fund (the "Pension Funds") are vying to be appointed lead plaintiff in this securities class action litigation.

After thoroughly evaluating the parties' submissions, analyzing the applicable law, and entertaining oral argument, I consolidate the two closely related securities class action lawsuits, appoint the Pension Funds as lead plaintiff, and approve the Pension Funds's selection of Kessler Topaz Meltzer & Check, LLP and Saxena White P.A. as lead counsel and Ajamie LLP as liaison counsel.

### BACKGROUND

Earlier this year, two securities class action lawsuits were filed in the Southern District of Texas against Apache Corp. ("Apache") and several of its officers. The cases are: (1) *Plymouth County Retirement System v. Apache Corp.,*

---

[1] Shang Chu Chiou, on behalf of himself and the Chiou Family Trust, initially also sought to be appointed lead plaintiff, *see* Dkt. 11, but he has since withdrawn his request. *See* Dkt. 21.

*et al.*, No. 4:21-cv-00575 ("Plymouth Lawsuit"), filed on February 23, 2021; and (2) *Schwegel v. Apache Corp., et al.*, No. 4:21-cv-00722 ("Schwegel Lawsuit"), filed on March 4, 2021.[2] Both lawsuits are brought on behalf of a putative class of those who purchased Apache common stock between September 7, 2016 and March 13, 2020. The complaints in both cases allege that Defendants engaged in a fraudulent scheme to artificially inflate Apache's stock price in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission.

The crux of the factual allegations in both lawsuits are identical. Both cases contend that throughout the class period Defendants issued materially false and misleading statements and failed to disclose that: (i) Apache intentionally used unrealistic assumptions regarding the amount and composition of available oil and gas in a purported large oil-and-gas resource play in the Permian Basin called Alpine High; (ii) Apache did not have the proper infrastructure in place to safely and economically drill and transport those resources even if they existed in the amounts purported; (iii) these misleading statements and omissions artificially inflated the value of Apache's operations in the Permian Basin; and (iv) as a result, Apache's public statements were materially false and misleading.

## DISCUSSION

### A.    CONSOLIDATION

Federal Rule of Civil Procedure 42(a) provides that consolidation is appropriate when two or more actions "involve a common question of law or fact." FED. R. CIV. P. 42(a). In deciding whether to consolidate actions, a federal district court is given broad discretion. *See Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 762 (5th Cir. 1989). Class action shareholder lawsuits are the quintessential type of cases in which consolidation is appropriate. *See Glauser v. EVCI Career*

---

[2] The Plymouth Lawsuit was randomly assigned to Judge George C. Hanks, Jr. while the Schwegel Lawsuit landed before Judge Keith P. Ellison. Judge Ellison transferred the Schwegel Lawsuit to Judge Hanks for further proceedings.

*Colls. Holding Corp.,* 236 F.R.D. 184, 186 (S.D.N.Y. 2006) ("[C]onsolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." (quotations omitted)).

The two cases at issue here name the same defendants and involve common questions of fact and law. This is a proverbial no-brainer. It makes no sense to have two separate virtually identical class action lawsuits proceeding simultaneously. Accordingly, I order that the Plymouth Lawsuit and the Schwegel Lawsuit be consolidated.[3]

## B.    APPOINTMENT OF LEAD PLAINTIFF

Having consolidated the two lawsuits, I now turn to selecting a lead plaintiff.

### 1.    The Legal Standard

Enacted roughly 25 years ago, the Private Securities Litigation Reform Act ("PSLRA") sets forth the procedure for selecting a lead plaintiff in a securities class action lawsuit. *See* 15 U.S.C. § 78u-4(a)(3)(B). The purpose of the PSLRA in selecting a lead plaintiff is "to have the plaintiff class represented by a member with a substantial financial interest in the recovery as incentive to monitor the litigation to prevent its being lawyer-driven." *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411–12 (S.D. Tex. 2000) (cleaned up). *See also Berger v. Compaq Comput. Corp.*, 279 F.3d 313, 313 (5th Cir. 2002) ("[T]he lead plaintiff should be an investor capable of understanding and controlling the litigation.").

For those well-versed in securities class action cases, the procedure for the appointment of lead plaintiff is routine and predictable. The plaintiff who files the initial lawsuit must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i). Within 60 days after publication of the

---

[3] Motions to consolidate are considered nondispositive matters which may be handled by a magistrate judge by an Order and Opinion, as opposed to a Memorandum and Recommendation. *See Tex. Dep't of Transp. v. Canal Barge Co., Inc.*, No. 4:20-CV-00868, 2020 WL 4335787, at *1 n.1 (S.D. Tex. July 28, 2020) (collecting cases).

required notice, any member or members of the proposed class may apply to the district court to be appointed as lead plaintiff, regardless of whether they have previously filed a complaint in the underlying action. *See id.* § 78u-4 (a)(3)(A)(i)(II). The district court is required to appoint a lead plaintiff "[a]s soon as practicable" after the consolidating related securities class actions. *Id.* § 78u–4(a)(3)(B)(ii).

The PSLRA provides that the lead plaintiff is to be the "most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that that the most adequate plaintiff is the person or group of persons that: (1) filed a complaint or a timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class;" and (3) "otherwise, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u–4(a)(3)(B)(iii)(I). *See also Berger v. Compaq Comput.ter Corp.*, 257 F.3d 475, 478 n.1 (5th Cir. 2001) (describing the PSLRA's process for selecting the most adequate plaintiff). This presumption may only be overcome upon proof that the presumptive lead plaintiff will not fairly and adequately represent the class or that the presumptive lead plaintiff will be subject to unique defenses that will render him incapable of adequately representing the class. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### 2.    Ellis is Atypical and Inadequate to be Lead Plaintiff

To select a lead plaintiff, I must first determine the applicant with the largest financial interest. Although "the PSLRA does not specify how a court should decide which plaintiff has the 'largest financial interest' in the relief sought," district courts in the Fifth Circuit often consider four factors to determine which plaintiff has the largest financial interest. *Welch v. Meaux*, No. CV 19-1260, 2020 WL 4758269, at *3 (W.D. La. Aug. 17, 2020). Those factors are: "(1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the plaintiff(s)." *In re Waste Mgmt.*, 128 F. Supp. 2d at 414. "Courts

consistently consider the fourth factor—the approximate losses suffered—as most determinative in identifying the plaintiff with the largest financial loss." *Strong v. AthroCare Corp.*, No. A-08-CA-574-SS, 2008 WL 11334942, at *5 (W.D. Tex. Dec. 10, 2008).

There are two methods for calculating losses: first in, first out ("FIFO") and last in, first out ("LIFO"). FIFO is a method of accounting "where stocks which were acquired first are assumed to be sold first for the purpose of loss calculations." *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 n.6 (S.D.N.Y. 2007). Under LIFO, "stocks which were acquired most recently are assumed to be sold first." *Id.* The LIFO method is often used by district courts trying to determine losses when deciding who to appoint as lead plaintiff.

Ellis claims he suffered LIFO losses of $2,576,861.63 attributable to the alleged fraud. Meanwhile, the Pension Funds contend that they sustained losses of $782,594 under a LIFO analysis. Because Ellis has the largest financial interest, he is presumptively entitled to lead-plaintiff status assuming he meets the requirements of Rule 23.

Under Rule 23(a), the party seeking certification must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Kakkar v. Bellicum Pharms., Inc.*, No. 4:18-cv-00338, 2019 WL 1367653, at *2 (S.D. Tex. Mar. 29, 2019) (quotation omitted).

> Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of

those of the putative class and has the capacity to provide adequate representation for those class members.

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 441 (S.D. Tex. 2002). The "test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (quotation omitted). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (quotation omitted).

There are two reasons why I conclude that Ellis cannot adequately represent the proposed class of Apache shareholders.

**Ellis is a "net seller" and "net gainer":** First, Ellis is subject to unique defenses as a "net seller" and "net gainer." A "net seller" is a party who sells more shares than he bought during the class period. "A net gainer is a party who profited from the purchase and sale of a defendant's stock during the class period." *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *8 (N.D. Cal. Feb. 15, 2011). "Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices." *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (collecting cases). Because "net sellers" and "net gainers" may have benefitted by selling shares purchased before the class period at allegedly inflated prices during the class period, they may have difficulty proving damages at trial and are subject to unique defenses that do not befall other class members. *See Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020); *Doshi v. Gen. Cable*, No. CV217025WOBCJS, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017); *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005). As one district court aptly

noted: "there is wisdom in the rule that net sellers who are also net gainers should not be lead plaintiffs." *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011).

According to the certification submitted by Ellis in connection with his effort to garner the lead plaintiff role, he purchased 707,488 shares during the class period, but sold 708,438 shares during the same time period. *See* Dkt. 12-3 at 3. This means that Ellis sold 950 more shares than he bought during the class period. He is a net seller. The same certification reveals that the cost of the shares that Ellis purchased during the class period amounted to $44,971,093 while the proceeds from his stock sales during the class period equaled $45,270,509. *See id*. This means Ellis gained $299,416 during the class period. He is also a net gainer.

Ellis argues that he is not a net gainer because he suffered losses under a LIFO analysis of his transactions during the class period. But that argument goes nowhere. LIFO losses are completely irrelevant to the net gainer analysis. "The purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud. This is **not the same** as determining whether a party lost or earned money trading in a particular stock." *Perlmutter*, 2011 WL 566814, at *9 (citation omitted and emphasis added). *See also Scheller v. Nutanix, Inc.*, 19-CV-01651-WHO, 2021 WL 2410832, at *7 (N.D. Cal. June 10, 2021) (rejecting prospective lead plaintiff's argument that he should not be considered a "net gainer" because he had "suffered sizeable [LIFO] losses").

In short, my determination that Ellis is a "net seller" and a "net gainer" disqualifies him from serving as lead plaintiff.

**Ellis's numerous in-and-out transactions**: There is a second reason Ellis should not be appointed lead plaintiff. His frenzied trading activity in Apache stock renders him atypical and subject to unique defenses.

During the first three months of the class period, Ellis repeatedly bought and sold large portions of Apache stock (usually in the range of 55,000+ shares) on the

same day or within a matter of days. He actually purchased and completely liquidated his Apache stock holdings a dozen times during this period: (1) Ellis bought 59,500 shares on September 15, 2016, then sold a combined 59,500 shares on September 15 and 16; (2) bought 55,400 shares on October 3 and sold the same number of shares later that same day; (3) bought 55,900 shares on October 4 and sold the same number of shares one day later; (4) bought 56,000 shares on October 6 and liquidated the position on October 19; (5) bought 58,600 shares on October 21 and sold those same shares on November 15; (6) bought 56,000 shares on November 17 and sold those shares on November 21; (7) bought 57,800 shares on November 22 and sold those shares the next day; (8) bought 58,00 shares on November 28 and sold an equivalent number of shares on November 30; (9) bought 19,905 shares on December 7 and sold those shares on December 9; (10) bought 56,900 shares on December 9 and sold the shares on December 13; (11) bought 57,883 shares on December 13 and sold those shares on December 14; and (12) bought 58,300 on December 16 and liquidated the position on December 19.

These repeated in-and-out stock transactions "raise serious concerns about [a potential lead plaintiff's] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions" of the Defendants. *Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010). *See also Shaffer v. Digit. Generation, Inc.*, No. 3:13-CV-1684-N, 2013 WL 12430537, at *3 (N.D. Tex. Sept. 19, 2013) ("Alavi's high volume trading activity, including buying and selling Digital Generation stock on the same day, raises serious concerns about his typicality and his susceptibility to unique defenses."); *Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 WL 91099, at *6 (N.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high-frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions."); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM,

2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself").

There is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage if Ellis were appointed lead plaintiff. This is especially true given that there is a non-conflicted candidate for lead plaintiff available and willing to assume such responsibilities.

### 3. The Pension Funds Adequately Represent the Interests of the Putative Class Members

Having concluded that Ellis is subject to unique defenses that render him unfit to be appointed lead plaintiff, the Pension Funds are the next presumptively most adequate lead plaintiff. The Pension Funds are sophisticated institutional investors with combined assets under management of more than $1.7 billion. They are committed to pursuing this litigation on behalf of the class, willing to supervise lead counsel, and able to commit the resources necessary to seek the best possible recovery. Tellingly, Ellis does not challenge the adequacy or typicality of the Pension Funds.[4] And for good reason. The record does not reveal any conflicts between the Pension Funds and the proposed class, nor does it appear that the Pension Funds suffer from any unique defenses that would render them unable to serve as lead plaintiff. Appointing the Pension Funds as lead plaintiff has the added benefit of furthering the PSLRA's clear preference for institutional investors to serve as lead plaintiff. *See Knisley v. Network Assocs., Inc.*, 77 F. Supp. 2d 1111, 1115–1116 (N.D. Cal. 1999) ("In enacting the PSLRA, Congress unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors." (quotation omitted)); *Tumolo v. Cymer, Inc.*, No. 98-CV-1599 TW (POR), 1999 WL 1567741, at *2 (S.D. Cal. Jan. 22, 1999) ("One of the

---

[4] Ellis simply argues that the Pension Funds should not be appointed lead plaintiff because they have smaller financial interest than Ellis. That might be true, but the Pension Funds still sustained significant aggregate losses ($782,593.90) as a result of the alleged fraud.

primary purposes of the lead plaintiff provisions of the PSLRA was to encourage a meaningful investor with a substantial stake in the litigation, preferably a large institutional investor, to initiate and control the litigation (and the lawyers who are behind it).”). Accordingly, I grant the Pension Fund's request to be appointed lead plaintiff in this litigation.[5]

## C.   APPOINTMENT OF LEAD COUNSEL

I now turn to the last issue before me: Who should be selected as lead counsel?

### 1.   The Legal Standard

The PSLRA provides that “[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.” 15 U.S.C. §78u-4(a)(3)(B)(v). “While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff.” *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002). A district court should defer to the lead plaintiff's choice of counsel unless it is necessary to “protect the interests of the [plaintiff] class.” *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d at 411.

### 2.   Analysis

In the present case, the Pension Funds have selected Kessler Topaz Meltzer & Check, LLP and Saxena White P.A. to act as co-lead counsel and Ajamie LLP to

---

[5] Motions for appointment of plaintiff and approval of lead counsel are nondispositive matters properly addressed by a magistrate judge in an Order and Opinion, rather than a Memorandum and Recommendation. *See Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917 (ENV), 2021 WL 1026567, at *1 n.3 (E.D.N.Y. Mar. 17, 2021) (“An order appointing lead plaintiff and approving lead counsel qualifies as a nondispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation).”); *Ross v. Abercrombie & Fitch Co.*, No. 05-819, 2007 WL 895073, at *3 (S.D. Ohio Mar. 22, 2007) (“[A]ppointment of lead Plaintiff is not a dispositive matter.”); *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849 NGG RER, 2006 WL 3511375, at *2 (E.D.N.Y. Dec. 6, 2006) (holding that “[t]he parties' nondispositive motions to . . . appoint a lead plaintiff and lead counsel were thus properly addressed by” the magistrate judge).

serve as liaison counsel. These law firms have substantial experience in securities class action lawsuits and possess the resources necessary to pursue this action. It is not my role to conduct a nationwide search to determine the best lawyer or law firm to represent the class. I am satisfied that the Pension Funds have made a reasonable choice of counsel, and I will not disturb their selection.[6]

## CONCLUSION

For the reasons stated above, I order the following:

- The cases styled *Plymouth County Retirement System v. Apache Corp., et al.*, No. 4:21-cv-00575 and *Schwegel v. Apache Corp., et al.*, No. 4:21-cv-00722 are consolidated for all purposes with all pleadings to be filed under No. 4:21-cv-00575. The style of the consolidated case shall have the following caption: *In re Apache Corp. Securities Litigation*, No. 4:21-cv-00575.

- Plymouth County Retirement System and the Trustees of the Teamsters Union No. 142 Pension Fund are appointed lead plaintiff.

- Kessler Topaz Meltzer & Check, LLP and Saxena White P.A. are appointed as co-lead counsel. Ajamie LLP is appointed as liaison counsel.

- The parties are ordered to confer and provide my case manager, Ruben Castro, a proposed schedule addressing deadlines for (1) an amended complaint in the consolidated case; (2) a motion to dismiss; (3) a response to the motion to dismiss; and (4) a reply in support of the motion to dismiss. This shall be done by October 13, 2021.

SIGNED this 6th day of October 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[6] Like motions to appoint lead plaintiff, motions to approve lead counsel are nondispositive and can, thus, be addressed by a magistrate judge by an Opinion and Order. *See Salim v. Mobile TeleSystems PJSC*, No. 19CV1589AMDRLM, 2019 WL 11095253, at *1 n.2 (E.D.N.Y. Sept. 11, 2019).