**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE APACHE CORP. SECURITIES LITIGATION | Civil Action No. 4:21-cv-00575 |
| | District Judge George C. Hanks, Jr. |
| | Magistrate Judge Andrew M. Edison |
| | <u>CLASS ACTION</u> |

**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION
REGARING MOTION TO DISMISS
<u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>**

**ORAL ARGUMENT REQUESTED**

TABLE OF CONTENTS

**Page**

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

STATEMENT OF THE ISSUE ................................................................................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................................................. 1

STANDARD OF REVIEW AND LEGAL STANDARD.................................................................... 4

ARGUMENT ........................................................................................................................... 5

I.      The Report erroneously relied on deficient scienter allegations to arrive at a
        perceived "tie" on scienter. .......................................................................................5

        A.      The Report erred by relying on scienter allegations that the PSLRA
                precluded the Court from crediting. ............................................................ 6

                1.      The PSLRA demands that courts exercise a gatekeeping function to
                        require reliable factual sources for allegations.................................. 6

                2.      The Report's centerpiece scienter allegations fail the PSLRA's
                        factual sourcing requirement.............................................................. 7

        B.      The Report erred by crediting allegations that were non-probative of the
                Individual Defendants' scienter. ..................................................................9

        C.      The Report erred by relying on the sort of conclusory, CW-derived
                "meetings" and "reports" allegations that the Fifth Circuit rejects............. 12

II.     The Report erred by finding an inference of scienter that is at least as compelling
        as the nonculpable inferences...................................................................................14

        A.      The absence of a cognizable motive should have elevated the required
                circumstantial showing of scienter even higher. ......................................... 14

        B.      The Report erred by analogizing to a "reckless gamble" theory and by
                ignoring the competing, nonculpable inferences......................................... 16

III.    At the very least, the Report erred by finding a strong inference of scienter as to
        Sullivan and Riney. ................................................................................................. 20

CONCLUSION .......................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) .................................................................... 6, 8

*Abrams v. Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) .................................................................. 13, 21

*Alaska Elec. Pension Fund v. Asar*,
    768 F. App'x 175 (5th Cir. 2019) ................................................................. 10

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
    915 F.3d 975 (5th Cir. 2019) .................................................................. 11, 13

*Brody v. Zix*,
    2006 WL 2739352 (N.D. Tex. Sept. 26, 2006)............................................ 15

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016) .................................................... 11, 12

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013)........................................................... 10

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)......................................................................... 18

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
    2022 WL 3227584 (S.D. Tex. Aug. 10, 2022) ............................................. 13

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
    579 F. Supp. 3d 933 (S.D. Tex. 2022) ......................................................... 20

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004).......................................................................... 17

*In re Am. Apparel, Inc. S'holder Litig.*,
    2013 WL 10914316 (C.D. Cal. Aug. 8, 2013)............................................. 21

*In re Key Energy Servs., Inc. Sec. Litig.*,
    166 F. Supp. 3d 822 (S.D. Tex. 2016) ............................................................ 8

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008).......................................................... 11

iii

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Cir. 2008) .................................................................. 4, 6, 7, 20

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
   237 F. Supp. 3d 492 (S.D. Tex. 2017) ..................................................... 6, 15

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) .................................................................. 16, 17

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) ....................................................................... 16

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ...................................................................... 14

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) ...................................................................... 15

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ................................................................... 4, 15

*Ramirez v. Exxon Mobil Corp.*,
   334 F. Supp. 3d 832 (N.D. Tex. 2018) ....................................................... 14

*Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*,
   935 F.3d 424 (5th Cir. 2019) ............................................................. 8, 14, 17

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ...................................................................... 17

*Salinger v. Projectavision, Inc.*,
   934 F. Supp. 1402 (S.D.N.Y. 1996).......................................................... 20

*Sgarlata v. PayPal Holdings, Inc.*,
   409 F. Supp. 3d 846 (N.D. Cal. 2019),
   *aff'd*, 831 F. App'x 366 (9th Cir. 2020)....................................................... 7

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)....................................................................... 19

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)......................................................................... 5

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
   365 F.3d 353 (5th Cir. 2004) ................................................................ 12, 20

iv

*Spitzberg v. Houston Am. Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) ................................................................. 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................. 3, 4, 18

*Wu Winfred Huang v. EZCORP, Inc.*,
   259 F. Supp. 3d 563 (W.D. Tex. 2017) ......................................................... 9

**STATUTES**

15 U.S.C. § 78u–4(b)(1) ..................................................................... 4, 6

28 U.S.C. § 636(b)(1) .......................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 72(b)(3) ....................................................................... 4

Apache Corporation ("Apache"), John J. Christmann IV, Timothy J. Sullivan, and Stephen J. Riney ("Individual Defendants," and with Apache, "Defendants") file these Objections to Magistrate Judge Edison's Memorandum and Recommendation ("Report," Dkt. 76), which recommends that Defendants' Motion to Dismiss ("Motion" or "MTD," Dkt. 71) Plaintiffs' Consolidated Class Action Complaint ("CCAC," Dkt. 65) be denied. Defendants request oral argument on these Objections.

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This is a putative class action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 thereunder.

## STATEMENT OF THE ISSUE

Whether the Report erred by recommending that Defendants' Motion be denied, when the CCAC failed to plead a strong inference of scienter with the particularity required by Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").

## INTRODUCTION AND SUMMARY OF THE ARGUMENT[1]

This case involves Apache's disclosures concerning a hydrocarbon play known as Alpine High, located in an area of the Permian Basin that had previously been thought nonviable. Apache announced that discovery in 2017 after it hired Steve Keenan—a geologist whose earlier unconventional work for EOG had helped uncover the prolific Eagle Ford shale play—and Keenan and his team conducted years of detailed geological and geophysical work. Eventually, amidst a collapsing commodities market, Apache

---

[1] Unless otherwise noted, all internal quotation marks, citations, and footnotes from quoted material have been omitted, and all emphases are as they appear in the original sources.

1

wound down development of Alpine High in 2019, before taking a $3 billion impairment on Alpine High-related assets in February 2020. Those events—which are detailed more fully in Defendants' Motion (at 3-12)—precipitated this putative securities class action against Apache, Christmann (its CEO), Riney (its CFO), and Sullivan (its former EVP of Operations). Specifically, the CCAC alleges that Defendants misrepresented Alpine High's prospects and results in a series of SEC filings, press releases, investor presentations, and earnings calls (the "Challenged Statements").

Defendants moved to dismiss the CCAC for failure to (i) identify an actionably false or misleading statement, (ii) overcome the PSLRA's safe harbor, (iii) satisfy the Supreme Court's *Omnicare* test for opinion statement liability, and (iv) plead the PSLRA-required "strong inference" of scienter as to each Defendant. Defendants' objections to the Report focus on the fourth element[2]—the one Judge Edison acknowledged grappling with the most and to which he attributed a tie-goes-to-the-runner result.

On September 15, 2022, Judge Edison issued the Report recommending that Defendants' Motion be denied, concluding in relevant part that the CCAC just barely "pass[ed] muster" with respect to the critical scienter element:

> Turning to the inference of scienter in this case, I concede that this is a close call. *A very close call*. As I examined the scienter issue, I went *back and forth* as to whether Lead Plaintiffs' scienter allegations pass muster. In the end, I rely heavily on the Fifth Circuit's instruction that where there are

---

[2] While Defendants respectfully disagree with the Report's conclusions regarding falsity, the PSLRA's safe harbor, and opinion-statement liability, they confine their Objections to the Report's scienter analysis, as it presents the clearest—and most categorical—basis for overruling the Report and dismissing the CCAC in its entirety.

competing inferences that establish or negate the scienter requirement, a ***tie*** favors the plaintiff on a motion to dismiss.

Report 13 (emphases added & citations omitted).

Defendants appreciate the Report's candidness in grappling with the CCAC's scienter allegations and vacillating between finding them adequate or deficient. The precariousness of the supposed "tie," in the context of a PSLRA case, and with the ramifications that flow from denying a motion to dismiss, demands this Court's *de novo* scrutiny. Judge Edison's tie-goes-to-the-plaintiff result means that removing even ***one*** of the credited scienter allegations from the scienter scale compels dismissal. And well-settled Fifth Circuit precedent requires removing ***several*** of the credited allegations. As explained below—and further in the Motion (at 27-55) and Reply (Dkt. 75, at 12-35)—the Report made at least the following errors in arriving at its perceived tie.

- The Report relied principally on scienter allegations—involving the purported "Project Neptune" report and pre-announcement "warnings" to Christmann—that were *totally unsourced* and thus categorically deficient under the PSLRA.

- The Report credited allegations that were not probative of Christmann's (let alone any other Individual Defendant's) scienter at the time of the Challenged Statements.

- The Report relied on conclusory "meetings" and "reports" allegations and speculative confidential-witness ("CW") accounts of the variety that courts in this Circuit repeatedly reject.

- The Report failed to appreciate that the absence of a cognizable motive to defraud required a "correspondingly greater" showing of circumstantial allegations of scienter.

- The Report erroneously found a "reckless gamble" theory plausible and compounded that error by failing to confront the competing, non-culpable inferences.

- The Report especially erred by finding a strong inference of scienter as to Sullivan and Riney despite the CCAC's precious few allegations concerning those Defendants, none of which reflects any intentional or severely reckless deceit.

For those reasons, the Court should overrule the Report's scienter recommendations and dismiss the CCAC with prejudice. At a bare minimum, it should do so with respect to Sullivan and Riney.

## STANDARD OF REVIEW AND LEGAL STANDARD

A magistrate judge's report and recommendation is subject to *de novo* review for "those portions of the report ... to which objection is made."[3] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Relevant to these Objections, and as explained more fully in the Motion (at 13-14), a Section 10(b) claim under the Exchange Act requires the plaintiff to state with particularity facts giving rise to a "strong inference" that *each* defendant acted with scienter with respect to *each* alleged misrepresentation. *See* 15 U.S.C. § 78u-4(b)(2); *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008). Scienter is "an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). The requisite "strong inference" of scienter cannot be met with "facts

---

[3] Defendants' Objections are timely. *See* Dkt. 78 (order granting extension of objection deadline to October 13, 2022).

4

from which an inference of scienter rationally *could* be drawn," nor will an inference of scienter that is "merely 'reasonable' or 'permissible'" suffice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). Rather, a 10b-5 claim can survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

## ARGUMENT

### I.   The Report erroneously relied on deficient scienter allegations to arrive at a perceived "tie" on scienter.

Judge Edison wrestled mightily with the CCAC's scienter allegations, going "back and forth as to whether" they "pass[ed] muster," before ultimately relying on the principle that "a tie favors the plaintiff on a motion to dismiss." Report 13. But the Report erroneously achieved that "tie"—finding that the CCAC pleaded an inference of scienter that was purportedly "at least as compelling as any alternative inference," *id.* at 16—by relying on several categories of scienter allegations that were defective as a matter of law. If any one of those categories of allegations falls by the wayside, then the purportedly "equal" inference of scienter necessarily is less than that, and the Report's perceived tie goes away. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (dismissal required even in "a close case" when "the inference of fraudulent intent is not 'at least as compelling as any opposing inference'") (quoting *Tellabs*, 551 U.S. at 324). That is exactly the situation here—there is no tie because several scienter allegations must come off the scales, leaving the nonculpable inference of no scienter as the weightier one.

5

**A.     The Report erred by relying on scienter allegations that the PSLRA precluded the Court from crediting.**

**1.     The PSLRA demands that courts exercise a gatekeeping function to require reliable factual sources for allegations.**

The PSLRA modifies the default pleading standards in several critical respects. One such requirement is that any pleading "made on information and belief"—as the CCAC undisputedly is[4]—"shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). To "provide [that] adequate [factual] basis," a complaint must identify personal *sources*—that is, named or "confidential personal sources" that are sufficiently pleaded—or "other facts, *i.e.*, documentary evidence." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 348, 353 (5th Cir. 2002).

Just as the PSRLA does not permit factual allegations to be pulled from thin air, it requires allegations derived from supposed CWs to be scrupulously vetted and "discount[ed]." *Shaw*, 537 F.3d at 535. That is because "[i]t is hard to see how information from anonymous sources could be deemed compelling or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 510 (S.D. Tex. 2017). In order to receive even steeply discounted weight, CW allegations must be accompanied by particularized allegations to "support the probability that a person in the position occupied by the source ... would possess the

---

[4] Complaints based on the "investigation of … counsel" (CCAC at p. 1) are "equivalent to those made on 'information and belief' for purposes of the heightened pleading requirements under 15 U.S.C. § 78u–4(b)(1)." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 351 n.70 (5th Cir. 2002).

6

information" ascribed to him. *Shaw*, 537 F.3d at 535, 539 (alteration in original). Without those details, courts must disregard CW accounts. *E.g.*, *Owens v. Jastrow*, 789 F.3d 529, 542 n.13 (5th Cir. 2015).

### 2. The Report's centerpiece scienter allegations fail the PSLRA's factual sourcing requirement.

Defendants' Motion explained at length why three of the CCAC's prominent-but-*unsourced* scienter allegations failed under the above principles. MTD 37-41. The Report did not address those gating questions. Instead, it adopted two categories of the CCAC's allegations—the (a) alleged Project Neptune "internal investigation" and (b) purported pre-announcement "warnings" from San Antonio personnel—that were unsourced and should have been categorically excluded.[5] Report 13. That was error.

***The "Project Neptune" report.*** The CCAC alleges that a summer 2019 internal investigation titled "Project Neptune" purportedly "confirmed that Apache's own data did not support, had never supported, and in fact contradicted" Apache's representations concerning Alpine High. CCAC ¶ 6 (emphasis omitted). But the CCAC tellingly does not attribute that supposedly "alarming" allegation, Report 7, to any of its 24 CWs—not a single CW claims to have participated in Project Neptune or even seen or heard of its conclusions. Nor does the CCAC base that accusation on documentary evidence. The fact that the Project Neptune allegations are entirely unsourced—much less credibly sourced,

---

[5] The Report was correct not to rely on the CCAC's alleged "forensic analysis" of Apache's Alpine High Wells—an ostensible expert analysis for which the CCAC provides no description whatsoever of the purported expert's qualifications, sources, or methods. *See Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 859-60 (N.D. Cal. 2019) (expert allegations "must be described with sufficient particularity to establish [the expert's] reliability and personal knowledge"), *aff'd*, 831 F. App'x 366 (9th Cir. 2020).

as required by the PSLRA—is fatal under Fifth Circuit precedent, something the Report overlooked. *E.g.*, *Shaw*, 537 F.3d at 538-39 (rejecting strong inference of scienter where "Plaintiffs do not … supply documentary or personal sources for the majority of these allegations"); *ABC Arbitrage*, 291 F.3d at 348, 353, 358 (disregarding allegation that "losses had increased to approximately 400 million French francs" by a specific date when lacking an "adequate [factual] basis").

*"Warnings" from San Antonio.* The same goes for the Report's reliance on the CCAC's allegations that Keenan's team purportedly warned Christmann against announcing the Alpine High discovery. Report 13; CCAC ¶¶ 54-63. The vast majority of those allegations (*id.* ¶¶ 54-58)—including, for example, that "the technical team specifically reported to Apache senior management, including Christmann," that Alpine High data was insufficient—derive from ***no factual source at all***, requiring the Court to disregard them. *See, e.g.*, *ABC Arbitrage*, 291 F.3d at 348, 358 (When "no source is provided, documentary or personal," allegations must be disregarded as "conclusory," even when "masquerading" as an attempt to smuggle in purportedly specific facts).

The only thing left in the CCAC on this point are two patently insufficient CW accounts. The first is CW 5's supposition that Apache's announcement was "premature," CCAC ¶ 59, which both (a) lacks a requisite connection to any Individual Defendant, and (b) is precisely the type of bare CW opinion courts uniformly reject. *See Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 434 (5th Cir. 2019) ("[T]hese statements are all from [CWs] who do not relate any interaction with [individual defendants], so we must discount them."); *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 862

8

(S.D. Tex. 2016) ("[c]ase law standardly finds such opinions" from CWs "add nothing to the scienter analysis"). The second is CW 8's speculation—likewise unconnected to the Individual Defendants and bound up in layers of hearsay[6]—that "Keenan himself was not ready to announce Alpine High," an allegation supposedly "based on [CW 8's] conversations with other [unnamed] Apache employees." CCAC ¶ 59. The Report credited these accounts without filtering them through the Fifth Circuit's rubric for CW allegations, and then conflated them with the (unsourced) allegation above to arrive at an allegation the CCAC simply *never made*: that "Keenan … repeatedly told senior management in 2016 that the company did not have the data to announce the play." Report 7. In fact, the CCAC makes *no such allegation*.

Taking that nonexistent allegation off the scales necessarily ends the scienter "tie" and tips the balance decidedly in favor of the nonculpable inference. And that compels dismissal of this case.

**B.      The Report erred by crediting allegations that were non-probative of the Individual Defendants' scienter.**

Even setting aside the CCAC's fatal sourcing problems, these scienter allegations also are substantively deficient. MTD 39-41.

*The "Project Neptune" report.* The CCAC couches the Project Neptune report as a retrospective analysis of Alpine High data that purportedly "contradicted Defendants' representations" about Alpine High. CCAC ¶ 6. Even accepting that (egregiously false)

---

[6] *See, e.g.*, *Wu Winfred Huang v. EZCORP, Inc.*, 259 F. Supp. 3d 563, 578 (W.D. Tex. 2017) (rejecting "hearsay-within-hearsay account" as "too unreliable to give rise to a[] [sufficient] inference of scienter").

allegation as true at the pleading stage, as Defendants must, it lacks the requisite link to the Individual Defendants' states of mind when the *earlier* Challenged Statements were made. The Fifth Circuit has rejected similar allegations about retrospective reports for exactly that reason—they "say nothing about [a defendant]'s individual intent" at the requisite time. *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 178, 186 (5th Cir. 2019) (allegations based on Audit Committee report's finding that CFO "engaged in inappropriate historical accounting practices" "do not adequately address [the CFO]'s individual state of mind"). The Report should have done the same.

*"Warnings" from San Antonio.* Taking the CCAC's multi-hearsay and unsourced speculation at face value, *supra* 8-9, it amounts to an allegation that certain employees disagreed that Apache's (uncontested) two-plus-years of Alpine High diligence, CCAC ¶ 32, was *enough* diligence before making a public disclosure. But "a clear difference of opinion between [the defendant], on the one hand, and [certain] former employees, on the other, as to the adequacy of the company's diligence" does not create scienter. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 299 (S.D.N.Y. 2013) ("differences of opinion, even stark differences, between employees do not reveal scienter"). The Fifth Circuit routinely rejects scienter theories predicated on internal disagreement. *E.g.*, *Owens*, 789 F.3d at 542 (5th Cir. 2015) (rejecting scienter allegation, even while crediting allegation that defendants "were aware of internal warnings regarding the MBS valuation" from a CW). The Report did not grapple with that well-settled precedent.

***Prior "rejections" of Alpine High.*** Finally, the Report latched onto the CCAC's allegations that Apache's pre-Class Period "extensive geologic testing" of Alpine High in 2012 and 2014 indicated that it "was not a viable play." Report 13. Those allegations are attributed to CWs, but, critically, they say nothing about scienter "at the time" of the challenged statements. *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 985 (5th Cir. 2019). Allegations "probative of what [Christmann supposedly] knew or believed" vis-à-vis conventionally minded testing in 2012 and 2014 "reveal comparatively little about [his] state of mind … when he allegedly issued a false statement" years later. *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 280 (S.D.N.Y. 2008). As the CCAC pleaded, those prior "rejections" of Alpine High occurred well *before* Apache self-professedly hit the "reset" button by hiring Keenan and his team and conducting two more years of diligence to test industry "perceptions." CCAC ¶¶ 199-201. Given that chronology, an inference far more compelling than Apache's pouring billions of dollars into a play it continued to "reject[]," *infra* § II.B, is that Keenan's unconventional analysis *changed* perceptions about the play's viability. *See Carlton v. Cannon*, 184 F. Supp. 3d 428, 476-77 (S.D. Tex. 2016) (rejecting CW accounts regarding data shared with individual defendant that "antedat[ed] his challenged statements by more than a year" when more "plausible, nonculpable explanation" was that he "reasonably relied on [intervening] data"). The Report stepped over that chronological disconnect in the CCAC's theory.

11

**C.     The Report erred by relying on the sort of conclusory, CW-derived "meetings" and "reports" allegations that the Fifth Circuit rejects.**

The Report also relied on alleged "statements from a bevy of confidential witnesses, many of whom confirm that the Individual Defendants received regular reports and updates on Alpine High, making the Individual Defendants fully aware of the play's limitations." Report 14. But the Report never identified any particular CWs among the so-called "many." Nor could it. *See* MTD 43-48 (cataloguing all the CW accounts and their deficiencies). Only CW 7 even tries to connect Christmann[7] to a report or meeting involving purportedly contrary information. CAC ¶ 155. But that hearsay allegation about "fierce arguments on the 14th floor" and unnamed executives "trying to make Christmann aware of these things," *id.*, failed to specify when those meetings occurred or the contents of the supposed conversations. *See, e.g., Southland Sec. Corp. v. INSpire, Ins. Sols. Inc.*, 365 F.3d 353, 382 (5th Cir. 2004) (rejecting "overly vague identification of [a] meeting, [because] it contain[ed] no information suggesting such knowledge on the part of any identified individual").

If the Report instead is referring to the CCAC's declaration (sans any CW source) that certain "quarterly business review meetings" occurred involving "Apache's management" from "2016 to early 2019," CCAC ¶ 152, that, too, was error under binding Fifth Circuit precedent. *See Owens*, 789 F.3d at 542 & n.13 (rejecting allegations that individual defendants "attended [certain meetings] … in which potential MBS write-downs were discussed" because the complaint did "not plead with particularity the dates of the

---

[7] *See infra* § III (discussing the lone CW account involving Riney's alleged attendance at a meeting).

12

ALCO meetings or the substance of the conversations, alleging only that they began in the fourth quarter of 2007 and continued into 2008").

The same goes for the Report's apparent greenlighting of the CCAC's mere-access-to-contrary-information theory.[8] *E.g.*, CCAC ¶ 290 (alleging that the "Individual Defendants had access to and received regular reports concerning Alpine High") (capitalization omitted). In this Circuit, "[t]o the extent that a plaintiff's scienter argument is based on the availability of some internal document setting out certain facts, the complaint must make specific allegations about the document, its author, contents, and character, and when and by whom it was received, to link it to the person making the challenged statement, at the time the statement was made." *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2022 WL 3227584, at *9 (S.D. Tex. Aug. 10, 2022); *see also Flotek*, 915 F.3d at 984 (rejecting scienter allegation premised on existence of correct data that purportedly "would have been very easy to check"). The CCAC's oblique reference to the Individual Defendants' alleged receipt of "regular reports and updates on Alpine High," CCAC ¶ 290, falls well short of that standard. *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431-32 (5th Cir. 2002) (allegations that defendants "were senior level executives … who were intimately familiar with the inner workings of the company" and "allegedly received unidentified daily, weekly and monthly financial reports that apprized them of the company's true financial status" were too general to plead scienter).

---

[8] *In re Venator Materials PLC Securities Litigation* (cited at Report 16) does not support a mere-access-to-data theory for scienter. *See* 547 F. Supp. 3d 624, 663-64 (S.D. Tex. 2021) (relying on allegations that "a defendant *received and had actual knowledge* that statements to investors were materially misleading" and acknowledging that "scienter can't be shown by mere inference that a corporate defendant *somehow* surely *must* have known of a misrepresentation or omission") (emphases added).

**II.     The Report erred by finding an inference of scienter that is at least as compelling as the nonculpable inferences.**

    **A.     The absence of a cognizable motive should have elevated the required circumstantial showing of scienter even higher.**

The Report mentioned the CCAC's motive allegations, including that Defendants' "compensation structures" supposedly "strongly incentivized [them] to inflate Apache's stock price by hyping Alpine High." Report 16 (finding "Lead Plaintiffs have done enough at the pleading stage" "[e]ven if [the court] completely discount[s] these additional[9] scienter allegations"). The Report was correct not to assign any value to these allegations because, as Defendants' briefing explained, the vast majority of the performance-based "incentive compensation" at issue was tied to the *general performance* of Apache and its stock, with only a minimal fraction related to Alpine High-related developments. MTD 32-34; *see also id.* at App'x B (cataloguing Individual Defendants' executive compensation). Fifth Circuit authority precludes such motive allegations from adding to the scienter analysis. *See, e.g.*, *Pier 1*, 935 F.3d at 431 ("incentive compensation can hardly be the basis on which an allegation of fraud is predicated because the vast majority of corporate executives receive this type of compensation"); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 420 (5th Cir. 2001) ("allegations that corporate officers and directors would benefit from

---

[9] Also in this same boat of mentioned-but-not-credited scienter allegations are non-defendant Keenan's October 2019 resignation and Apache's $3 billion write-down on Alpine High amid a collapse in the commodities market. Report 16. The Report was correct not to put weight on these allegations. *See* MTD Reply 34 (citing *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *29 (S.D.N.Y. May 10, 2012) (resignation of someone who was "not a named defendant ... creates no inference of scienter on the part of any of the named defendants")); *id.* at 35 & n.24 (collecting cases dismissing for lack of scienter when faced with much larger write-downs).

enhancing the value of their stock and/or stock options … are likewise insufficient to support a strong inference of scienter").

The Report erred, however, by treating the lack of cognizable motive allegations as a non-event.[10] In the Fifth Circuit, when a plaintiff fails to allege "a clear motive for the alleged misstatements or omissions, the strength of its circumstantial evidence of scienter must be ***correspondingly greater***." *R2 Invs.*, 401 F.3d at 644 (emphasis added). The Report neither recognized nor applied that "correspondingly" higher bar to the CCAC. Nor did it address the reality—prominently highlighted by Defendants, MTD 34-35—that the motive pendulum can swing both ways, and (a) the Individual Defendants' net *addition* of stock holdings and (b) Apache's $300-plus million in stock repurchases during the period of allegedly fraudulent inflation are classic scienter-negating factors in the Fifth Circuit. *See, e.g.*, *Owens*, 789 F.3d at 545 n.18 (if executives "kept [their] holdings through the price drop," it "would be some evidence of lack of scienter"); *Izadjoo*, 237 F. Supp. 3d at 518 ("company's stock repurchase program rebuts a finding of scienter"). In a case where Judge Edison perceived scienter to hang in perfect balance, those errors take on a profound importance.

---

[10] The absence of cognizable motive allegations also sets the CCAC apart from multiple cases that the Report cited as purportedly analogous. *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 853 (N.D. Tex. 2018) (crediting a motive that was "uniquely important" to defendants); *Brody v. Zix*, 2006 WL 2739352, at *1-2, *7 (N.D. Tex. Sept. 26, 2006) (defendants unloaded 85.7%, 80.8%, and 86.2% of their company stock, respectively, in 6 months before corrective disclosure).

**B.**　　**The Report erred by analogizing to a "reckless gamble" theory and by ignoring the competing, nonculpable inferences.**

The *Tellabs* balancing test requires an examination of two inferences—the culpable ones alleged in the complaint and any non-culpable ones. The Report made missteps at both of those junctures.

1.　　Starting with the allegedly culpable inference, Defendants' Motion highlighted the implausibility of the CCAC's narrative that Defendants "*knew*" that Alpine High would never be an economic play and "lacked any scientific or factual basis" for their statements, concealed the truth from investors, and yet continued to "pour[] money into the ground" to the tune of *more than $3 billion*. MTD 29 (citing CCAC ¶¶ 128, 281); *see id.* at 29-30 & n.11 (collecting cases like *Melder v. Morris*, 27 F.3d 1097, 1104 n.10 (5th Cir. 1994), in which the scienter theory "present[ed] an inference of irrationality [the court] refuse[d] to indulge"). Plaintiff opposed that argument by reversing course on the self-sabotage gist of the CCAC, proceeding as though it never alleged that "Defendants knew Alpine High was destined to fail." Opp., Dkt. 74 at 72. The Report was rightly "puzzled" by and rejected that reformulation, observing that Defendants' supposedly knowing Alpine High to be "destined to fail" is "*exactly* what the lawsuit alleges." Report 16 (emphasis added).

Yet, despite rejecting Plaintiffs' about-face on the scienter narrative, the Report nevertheless found it "not wholly illogical" that Defendants supposedly went "all in" on Alpine High, "gambling that they would figure something out, even though the Company's extensive explorations repeatedly failed to produce scientific support for their bold claims."

16

Report 15 (citing Opp., Dkt. 74 at 73). The Report borrowed that theory from Judge Posner's opinion in *Makor Issues & Rts., Ltd. v. Tellabs Inc. ("Tellabs II")*, 513 F.3d 702 (7th Cir. 2008), which speaks in terms of a "reckless gamble"—that is, "concealing bad news in the hope that it will be overtaken by good news." *Id.* at 710. But that analogy falls apart for two reasons.

First, a theory of reckless gambling and "hope" that Alpine High would some day be successful is fundamentally incompatible with the CCAC's "doomed to fail" allegations that the Report itself recognized. Case law helps illustrates that disconnect. In *Tellabs II*, for example, a fiber optics company touted demand for its 10-plus-year-old "flagship product" and the successor product, but concealed that "the bursting of the fiber-optics bubble" was well underway and resulted in the market for the flagship product's "evaporating" and the company's not having shipped a single one of the successor products. 513 F.3d at 706-07, 709-10. The CCAC, by contrast, does not allege that Apache concealed bad news thrust upon it midstream (hoping results might improve); it alleges that Apache **knew from the outset** that Alpine High was doomed to fail, **before** voluntarily announcing the discovery.[11] Chronologically, that makes this case much more like *Pier 1*, in which the Fifth Circuit recently rejected a scienter theory as illogical when it failed to "explain[] why Pier 1 executives kept ordering more inventory when they supposedly *knew deep down* that they would not be able to sell it." 935 F.3d at 436 (emphasis added); *see*

---

[11] To the extent the Report attributes Apache's announcement to Defendants' supposed desire to keep "Apache's stock [from] languishing," Report 15, that is a nonstarter under Fifth Circuit precedent. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003) (rejecting "motive to artificially inflate the stock price" when, as here, the complaint lacks any "allegations that defendants sold their … shares").

*also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 244 (3d Cir. 2004) (rejecting implausible inference that defendant voluntarily pushed through an acquisition despite allegedly knowing that "its due diligence had been materially obstructed" as akin to a "suicide mission").

Second, the standard for what constitutes "severe recklessness" is extraordinarily high, applying only to

> ***those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but*** an extreme departure from the standards of ordinary care***, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it***.

*Compare Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 684 (5th Cir. 2014) (emphases added), *with* Report 5 (including only the non-bolded portion of the standard). Severe recklessness requires a truly egregious misrepresentation for which the speaking defendants *must* have been aware of the risk of misleading investors. *See* MTD Reply 18-19.[12] The CCAC has nothing resembling those stark misrepresentations of contemporaneous facts; instead, it attacks Apache's predictive, evaluative approach on Alpine High as purportedly made without a "reasonable basis" given allegations of internally conflicting opinions. But severe recklessness cannot result from internal differences of opinions. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 187 (2d Cir. 2014) (holding UBS was not reckless in relying on its mortgage-

---

[12] *E.g.*, *Spitzberg*, 758 F.3d at 681, 684 (involving statements touting oil inflows when in fact *no* oil had flowed, along with a statement touting more "recoverable reserves" than "all of Colombia"—with "reserves" being a term of art that conveyed a certain level of production or testing—when in fact "*no* such production or geological testing had yet occurred"); *see generally* Opp., Dkt 74 (citing *Spitzberg* over 10 times).

18

related asset portfolio's AAA rating in the face of "uncertainty and disagreement, within UBS and in the market at large" about the valuation of mortgage-related assets); *Owens*, 789 F.3d at 541 (rejecting plaintiff's analogy to severe recklessness theories in a case involving "valuations [that] were far from certain").

2. In any event, whether the CCAC's culpable inference was "wholly illogical" is not the ultimate litmus test, as the Report (at 15) seems to suggest. *See Tellabs*, 551 U.S. at 323-34 (a "merely 'reasonable' or 'permissible'" inference may not suffice). Whatever the cogency of the alleged culpable inference, it still must be "at least as compelling" as the opposing, nonculpable inference. *Tellabs*, 551 U.S. at 324. And while the Report declared that such an inference-weighing resulted in a tie, it never acknowledged (much less confronted) what those non-culpable inferences were. As Defendants' Motion explained, the ***more compelling***, nonculpable inference that arises from the CCAC is that Apache placed faith in a "unique team," CCAC ¶ 37, to discover a play through unconventional means and to test entrenched industry perceptions—including internal perceptions at Apache—only for a confluence of factors to manifest in Alpine High not reaching its predicted potential. MTD 31. That, coupled with giving proper credit to the Individual Defendants' stock ***purchases*** and Apache's significant ***stock buybacks*** during the Class Period, *supra* 15, at most amounts to an allegation of "misguided optimism," which "does not support an inference of fraud." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). The Report gave short shrift to those competing inferences, overlooked the mandate in *Tellabs*, and therefore erred.

19

**III.    At the very least, the Report erred by finding a strong inference of scienter as to Sullivan and Riney.**

Scienter is not an all-defendants-or-none analysis. Courts must be careful to distinguish between scienter "allegations that apply to more than one defendant" and those that are "unique to [a particular] defendant," proceeding "defendant by defendant" for the latter category before "comprehensively determin[ing] if plaintiffs have alleged facts that give rise to a strong inference of scienter as to any defendant." *Owens*, 789 F.3d at 538. Naturally, that defendant-specific scienter requirement often results in dismissal as to certain defendants, while allowing a complaint to proceed against others. *See, e.g.*, *Southland Sec. Corp.*, 365 F.3d at 383 (affirming dismissal on scienter grounds as to all but one individual defendant).

While Defendants maintain that the CCAC is deficient as to all the Individual Defendants, it is at a ***bare minimum*** deficient as to Riney and Sullivan, who are treated as mere afterthoughts in the voluminous CCAC. Indeed, not a single one of the Report's centerpiece scienter allegations concerning Project Neptune, San Antonio "warnings," and prior "rejections" of Alpine High (discussed *supra* § I) is even tangentially connected to Riney or Sullivan. In fact, the CW accounts that even mention Riney or Sullivan at all are as sparse as they are deficient.

- ***Sullivan.*** CW 6 conclusorily suggests that Christmann and Sullivan "made th[e] call" that Alpine High would not be subject to peer review, CCAC ¶ 148, without (i) pleading facts to corroborate that assertion, (ii) explaining when that decision occurred, or (iii) suggesting how CW 6 was in a position to know Sullivan's involvement in that alleged decision. *Shaw*, 537 F.3d at 535, 539. CW 8 simply concludes that Alpine High production data was made "available" to Sullivan, CCAC ¶ 136, which plainly does not demonstrate his scienter. *See Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 579 F. Supp. 3d 933, 954 (S.D. Tex. 2022)

("Simply pleading that a defendant had access to internal information that contradicted that individual's public statements is not enough.").

- **_Riney._** CW 15 refers to a July 2018 meeting in which Riney allegedly asked Keenan "when are we going to start drilling economic wells." CCAC ¶ 290. At most, that alleged statement suggests strategic disagreement over the speed at which Apache was moving from the delineation phase (drilling wells designed to test the geology) to the development phase (optimizing completion and well economics). *See Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1415 (S.D.N.Y. 1996) (explaining that "ordinary disagreements among executives about internal company administration does not raise a strong inference of fraud"). The CCAC never attempts to connect that statement—or, frankly, any of the CCAC's factual allegations—to a Challenged Statement that Riney made or approved. *See Cabot*, 579 F. Supp. 3d at 955 (rejecting scienter allegations tied to an executive who was not alleged to have "himself made any misstatement or misrepresentations").

The Report's scienter analysis for Riney and Sullivan consists entirely of crediting conclusory allegations that (a) Riney "closely tracked the status of each Alpine High well" and "attended meetings," and (b) Sullivan was "routinely updated" on the status of Alpine High. Report 14. But neither allegation supports any inference of scienter at all, much less the requisite strong one. *See, e.g.*, *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *25 (C.D. Cal. Aug. 8, 2013) (rejecting allegation that "defendants 'had been closely tracking inventory'" when it was a mere "conclusion ... not supported by any particularized facts"). Given the utter lack of particularized factual allegations supporting those conclusions and showing Sullivan or Riney actually learned something in the meetings or updates that was contrary to statements they themselves made or approved, the CCAC's scienter strategy for Sullivan and Riney boils down to merely relying on their corporate positions—a total nonstarter in the Fifth Circuit. *See Abrams*, 292 F.3d at 432 ("A pleading of scienter may not rest on the inference that defendants must have been

21

aware of the misstatement based on their positions within the company."). As to Sullivan and Riney, a strong inference of scienter is not a "close call." *Contra* Report 13.

## CONCLUSION

For these reasons, Defendants request that the Court overrule the Report, grant Defendants' motion to dismiss, and dismiss the CCAC with prejudice. Alternatively, Defendants request that the Court overrule the Report with respect to Sullivan and Riney and grant the motion to dismiss the CCAC with prejudice as to those defendants.

Respectfully submitted,

BAKER BOTTS L.L.P.

By:  */s/ David D. Sterling*
    David D. Sterling
     Attorney-In-Charge
    State Bar No. 19170000
    Federal I.D. No. 07079
    Amy Pharr Hefley
    State Bar No. 24046046
    Anthony J. Lucisano
    State Bar No. 24102118
    Federal I.D. No. 3369146
    C. Frank Mace
    State Bar No. 24110609
    Federal I.D. No. 3385915
    910 Louisiana Street
    Houston, Texas 77002
    (713) 229-1946
    (713) 229-7946 (Fax)
    david.sterling@bakerbotts.com
    amy.hefley@bakerbotts.com
    anthony.lucisano@bakerbotts.com
    frank.mace@bakerbotts.com

ATTORNEYS FOR DEFENDANTS APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or electronic mail on all counsel of record on this 13th day of October, 2022.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley

23