**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE APACHE CORP. SECURITIES LITIGATION | Case No. 4:21-cv-00575 |
| | District Judge George C. Hanks, Jr. |
| | Magistrate Judge Andrew M. Edison |
| | <u>CLASS ACTION</u> |

**LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS
TO MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION
<u>REGARDING MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

I.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS.......................... 1

II.     STATEMENT OF THE ISSUE ........................................................................... 1

III.    INTRODUCTION AND SUMMARY OF THE ARGUMENT.............................. 1

IV.     STANDARD OF REVIEW AND LEGAL STANDARD ...................................... 6

V.      ARGUMENT ...................................................................................................... 7

      A.      The Report's Falsity Determinations Undermine the Objections ................. 7

      B.      Judge Edison Correctly Approved of Plaintiffs' Scienter Theory ............... 9

            1.      Plaintiffs Allege a Reckless Gamble Theory .................................... 9

            2.      Judge Edison Applied the Correct Legal Standard ......................... 12

            3.      Plaintiffs Allege Cognizable Motive Allegations ........................... 14

      C.      The Complaint's Scienter Allegations Are More than Adequate ............... 15

            1.      Detailed Facts Demonstrate Defendants' Scienter........................... 15

            2.      Defendants' "Tie" Premise Is Wrong .............................................. 17

            3.      Defendants' CW Arguments Are Misguided .................................... 18

            4.      The Complaint's Allegations Regarding Project Neptune and Apache's Deficient Pre-Announcement Play Data Are Sound........ 20

VI.     CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ................................................................... 22

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003) .............................................................. 22

*In re Apple Inc. Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ........................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6

*Barrie v. Intervoice-Brite, Inc.*,
  397 F.3d 249 (5th Cir. 2005) ................................................................... 14

*Blessing v. Plex Sys., Inc.*,
  2021 WL 6064006 (N.D. Cal. Dec. 22, 2021) ........................................... 9

*In re Boeing Co. Aircraft Sec. Litig.*,
  2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) .......................................11-12

*Brody v. Zix Corp.*,
  2006 WL 2739352 (N.D. Tex. Sept. 26, 2006) ........................................... 8

*Budde v. Glob. Power Equip. Grp., Inc.*,
  2018 WL 4623108 (N.D. Tex. Sept. 26, 2018) ........................... 6, 18, 19, 22

*In re Cabletron Sys., Inc.*,
  311 F.3d 11 (1st Cir. 2002) ...................................................................... 22

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) ..................................................... 16

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
  2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ........................................... 6, 19

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020) ..................................................... 22

*Edwards v. McDermott Int'l, Inc.*,
  2021 WL 1421609 (S.D. Tex. Apr. 14, 2021) (Hanks, J.)........................... 6, 14, 18, 19

*In re Elec. Data Sys. Corp. Sec. Litig. & ERISA Litig.*,
  298 F. Supp. 2d 544 (E.D. Tex. 2004)......................................................... 23

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
  2004 WL 5278716 (E.D. Tex. 2004) ........................................................... 19

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
  514 F. Supp. 3d 942 (S.D. Tex. 2021) ................................................... 15, 19

*Hall v. Rent-A-Center, Inc.*,
  2017 WL 6398742 (E.D. Tex. Oct. 19, 2017) ............................................. 16

*Hill v. State St. Corp.*,
  2011 WL 3420439 (D. Mass. Aug. 3, 2011) ............................................... 22

*Holzwasser v. Staktek Holdings, Inc.*,
  2006 WL 897746 (W.D. Tex. Mar. 30, 2006) ........................................ 13, 15

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)................................................................... 15, 19

*KB Partners I, L.P. v. Barbier*,
  907 F. Supp. 2d 826 (W.D. Tex. 2012)........................................................ 18

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................... 5, 6, 17

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
  513 F.3d 702 (7th Cir. 2008) ...................................................................... 11

*Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*,
  935 F.3d 424 (5th Cir. 2019) ...................................................................... 12

*In re Myriad Genetics, Inc.*,
  2021 WL 977770 (D. Utah Mar. 16, 2021) ................................................ 22

*In re NetSolve, Inc. Sec. Litig.*,
  185 F. Supp. 2d 684 (W.D. Tex. 2001)........................................................ 15

*Patel v. Axesstel, Inc.*,
  2015 WL 631525 (S.D. Cal. Feb. 13, 2015)................................................ 12

iv

*In re Philip Services Corp. Sec. Litig.*,
  383 F. Supp. 2d 463 (S.D.N.Y. 2004)......................................................................22

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ................................................................................16

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) ...............................................................8, 16

*RFE Inv. Partners VI, L.P. v. Jacobs*,
  2006 WL 8435481 (E.D.N.Y. Sept. 15, 2006) .......................................................22

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ..................................................................................7

*Rougier v Applied Optoelectronics, Inc.*,
  2019 WL 6111516 (S.D. Tex. Mar. 28, 2019)........................................................18

*Schleicher v. Wendt*,
  529 F. Supp. 2d 959 (S.D. Ind. 2007)....................................................................16

*Shah v. Zimmer Biomet Holdings, Inc.*,
  348 F. Supp. 3d 821 (N.D. Ind. 2018) ...................................................................11

*Singh v. 21Vianet Grp., Inc*,
  2017 WL 4322483 (E.D. Tex. Sept. 13, 2017)..........................................................8

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
  545 F. Supp. 3d 120 (S.D.N.Y. 2021)....................................................................14

*Skiadas v. Acer Therapeutics, Inc.*,
  2020 WL 3268495 (S.D.N.Y. June 16, 2020) .........................................................11

*Smith v. Reg'l Transit Auth.*,
  756 F.3d 340 (5th Cir. 2014) ................................................................................20

*In re SolarWinds Corp. Sec. Litig.*,
  2022 WL 958385 (W.D. Tex. Mar. 30, 2022),
  *clarified*, 2022 WL 3699429 (W.D. Tex. Aug. 19, 2022) .......................................19

*Spitzberg v. Houston Am. Energy Co.*,
  758 F.3d 676 (5th Cir. 2014) .........................................................................*passim*

*In re St. Jude Med., Inc. Sec. Litig.*,
  836 F. Supp. 2d 878 (D. Minn. 2011)....................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................*passim*

*In re Venator Materials PLC Sec. Litig.*,
  547 F. Supp. 3d 624 (S.D. Tex. 2021) ................................................................. 8, 16

*Xiongen Jiao v. Ningbo Xu*,
  2020 WL 411060 (S.D. Tex. Jan. 24, 2020) ................................................................. 7

**Statutes**

15 U.S.C. § 78u–4 ..................................................................................................... 22

28 U.S.C. § 636 ............................................................................................................ 6

Lead Plaintiffs respectfully submit this Response in opposition to Defendants' Objections to the Report of Magistrate Judge Edison ("Objections" or "Obj."; Dkt. 79).[1]

## I.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

The Complaint, filed on December 17, 2021, alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 and seeks damages on behalf of a class of investors in Apache's common stock during the Class Period, September 7, 2016 through March 13, 2020. Defendants' Motion was fully briefed as of June 9, 2022. On September 15, 2022, Judge Edison issued the Report, recommending that the Motion be denied in full. On October 13, 2022, Defendants filed the Objections, conceding Judge Edison's determination that the Complaint adequately pled each of Defendants' false and misleading statements, and challenging only his scienter conclusion.

## II.     STATEMENT OF THE ISSUE

Whether Judge Edison correctly concluded that the Complaint adequately alleges Defendants' scienter.

## III.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

In 2016, Apache was mired in years of sluggish financial performance, having missed out on the U.S. shale oil boom of the early 2010s. Desperate to jumpstart Apache's fortunes, in September 2016, Defendants announced a purportedly "transformational discovery" of shale oil and gas that they claimed would drive shareholder value for years to come, which they dubbed "Alpine High." ¶¶24-42. Throughout the Class Period,

---

[1] Capitalized terms are as defined in the Objections, and all emphasis is added unless otherwise noted. The Report is cited as "Rep." "¶" refers to paragraphs in the Complaint.

Defendants touted Alpine High to investors, repeatedly citing impressive outputs, testing results, and projections that were supposedly based on well data and models for its "2,000 to more than 3,000 future drilling locations," while downplaying any seeming challenges or setbacks as immaterial. *See* ¶¶32-33, 71-84, 191-92. Defendants boasted of what they "conservatively" estimated as Alpine High's three billion-plus barrels of oil and significant amounts of "really rich gas" that would remain profitable even at rock-bottom commodity prices. *Id.* Defendants' statements had the intended effect: Apache's stock price "leap[ed]," and analysts specifically credited Defendants' representations; as the *Houston Chronicle* reported, Apache was "back in the game." *See* ¶¶32-36, 41-43, 65-84.

In reality, Defendants knew that Apache's geologic testing and analysis of Alpine High, developed over several years, did not support their public claims. ¶¶44-63. Defendants also knew that, after announcing the play, their intensive efforts to strike upon some economically viable oil and gas at Alpine High and vindicate their claims were a near-complete failure. ¶¶118-23, 127-28, 154-58, 168-74. The play's results and models did not match Defendants' representations. Defendants thus took great pains to conceal their poor production results and data from all scrutiny, even shielding them from standard internal peer reviews, and obscuring them from regulators and investors, as they feverishly searched for success at the play. ¶¶85-90, 98-99, 116-21, 133-51, 165-89.

Defendants' reckless gamble was revealed in late 2019, after three years in which they had touted Alpine High as a "world class resource play." ¶¶80, 229, 239. In October 2019, after an internal review ("Project Neptune") confirmed that Alpine High data had *never* supported Defendants' public representations, the face of the play, Steven Keenan,

2

abruptly departed Apache. ¶¶101-04. In the ensuing months, Defendants admitted the truth that Alpine High was a bust (it had produced well below 1% of the oil and "really rich gas" that Defendants told investors was recoverable) and shut down the play, taking a massive $3 billion impairment charge and slashing Apache's vaunted dividend by 90%. ¶¶105-12, 116, 192, 257. All told, Defendants' fraud wiped out $24 billion in shareholder value, as Apache's stock price dropped 93% from its Class Period high. *See* Rep. at 2-3 (citing Complaint at 8-9); *see also* ¶¶1-8, 113. This case seeks to vindicate investors' losses.

Defendants' Motion argued that the Complaint failed on two grounds: falsity and scienter. Defendants contended that not a single one of the dozens of statements challenged in the Complaint was actionable, asserting that Plaintiffs had pled no facts showing the statements were false or misleading (MTD at 15-27), or that any alleged misrepresentation was made with scienter (*id.* at 27-55).

In the Report, Judge Edison rejected Defendants' arguments, finding that the Complaint properly alleged both falsity and scienter "in great detail." Rep. at 6. Notably, after considering the Complaint and the parties' briefs, Judge Edison remarked on the uncommon strength of Plaintiffs' allegations:

> Over my career, both as a lawyer and as a judge, I have had the opportunity to review a vast number of securities class action lawsuits. . . . [M]any of those filings are cut-and-paste jobs that unquestionably fail to properly allege a false or misleading statement. ***This is not one of those Complaints***. The [Complaint] provides a detailed discussion of the alleged misrepresentations at issue and ***explains the reasons why Defendants allegedly knew at the time they spoke publicly that those statements were materially false***.

*Id.* at 7. Judge Edison determined that the Complaint's allegations showed that Defendants were presented with information demonstrating that their statements about Alpine High

3

were not supported by facts. *Id*. at 6-12. He concluded that the Complaint adequately alleged Defendants' materially false and misleading statements; that Plaintiffs' allegations as a whole supported "a strong inference of scienter by Defendants;" and that, in sum, Defendants' Motion should be denied. *Id.* at 1, 16-17.

Defendants' Objections abandon all arguments that the Complaint fails to allege a materially false or misleading statement. Defendants ***do not contest*** Judge Edison's conclusion that all of the Challenged Statements were false. Instead, Defendants ask this Court to conclude that, even though they made dozens of misstatements regarding Apache's single most important project over a three-year period, not one was made with scienter, and all were mere innocent falsehoods. Their arguments are meritless.

*First*, Defendants' concession regarding falsity fatally undermines their Objections. Consistent with Judge Edison's determinations, the same facts establishing that Defendants' statements were false or misleading also raise a strong inference of Defendants' scienter. Analyzing falsity, Judge Edison repeatedly recognized that Plaintiffs had amply alleged facts regarding Defendants' state of mind—e.g., that Defendants were "***fully aware***" that their public statements lacked supporting data (Rep. at 6-7), "***concealed material facts***" (*id.* at 11-12), and "***deliberately shielded*** critical Alpine High data" from standard peer review (*id.* at 7). Defendants' failure to challenge these determinations, which facially support findings of both falsity and scienter, dooms their Objections.

*Second*, distorting Plaintiffs' claims, Defendants assert that the Complaint does not allege a recklessness theory of scienter, but rather one akin to a nonsensical "suicide mission" in which Defendants always knew Alpine High would fail. Obj. at 3, 16-19. But

4

Judge Edison correctly recognized that the play was allegedly a gamble that failed: Defendants' public representations were not supported by actual testing data, scientific analyses, or production, and Defendants' desperate efforts to validate their reckless claims by drilling and stimulating wells across the play before the truth came out did not succeed. Rep. at 15; *see also* ¶¶118-21, 172-74. This Court should likewise reject Defendants' distortion of Plaintiffs' theory.

*Third*, Judge Edison did not rely on "deficient" scienter allegations. Obj. at 5-13. To the contrary, a wealth of valid, mutually corroborating allegations establish a strong inference of Defendants' scienter, including the detailed reports of *24* former Apache employees, and Plaintiffs' forensic analyses of Apache's own obfuscated and belated regulatory filings. These allegations are particularized and consistent, they contain multiple indicia of reliability, and they combine to raise the requisite inference of scienter. Defendants' contention that each and every fact be sourced is belied by the PSLRA's plain terms and applicable case-law.

*Fourth*, and furthermore, Defendants criticize individual scienter allegations, asserting that the failure of any *one* would compel dismissal. Obj. at 3. This approach contradicts binding precedent requiring that scienter allegations be assessed "holistically, not in isolation." Rep. at 12 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007) & citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009)). Judge Edison properly applied this authority. Defendants also argue from the false premise that Judge Edison actually found a "tie" between Defendants' and Plaintiffs' proposed scienter inferences. This misreads the Report, which concludes with clarity: "evaluating

5

the facts as a whole, I conclude [the Complaint's] allegations are sufficient to support a strong inference of scienter by Defendants." Rep. at 16.

Defendants' Objections should be overruled and the Complaint sustained.

## IV.    STANDARD OF REVIEW AND LEGAL STANDARD

The portions of the Report to which Defendants object are reviewed *de novo*. 28 U.S.C. § 636(b)(1)(C).

To survive a motion under Fed. R. Civ. P. 12(6)(6), complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "complaint must be liberally construed in favor of the plaintiff." *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *2 (S.D. Tex. Jan. 19, 2016). Even "the rigorous standards for pleading securities fraud do **not** require a plaintiff to plead evidence." *Budde v. Glob. Power Equip. Grp., Inc.*, 2018 WL 4623108, at *4 (N.D. Tex. Sept. 26, 2018).

A court must analyze all of a complaint's scienter allegations "holistically," and may not "scrutinize" individual allegations "in isolation." *Tellabs*, 551 U.S. at 326. Scienter allegations "need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences." *Lormand*, 565 F.3d at 251. The inference need only be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged," and "a tie favors the plaintiff." *Spitzberg v. Houston Am. Energy Co.*, 758 F.3d 676, 684, 686 (5th Cir. 2014). Scienter is alleged through intentional misconduct **or** recklessness. *Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421609, at *7 (S.D. Tex. Apr. 14, 2021) (Hanks, J.).

6

## V.   <u>ARGUMENT</u>

Judge Edison correctly determined that the Complaint should be sustained because it adequately alleges that Defendants made materially false or misleading statements—a point Defendants do not now contest—and because, assessed holistically at this pre-discovery stage, its allegations support "a strong inference of scienter by Defendants." Rep. at 1, 7-8, 16-17. In their Objections, Defendants mischaracterize Plaintiffs' claims and allegations, ignore the Report's highly significant falsity conclusions, and misapply Supreme Court precedent and other authority governing the Court's evaluation of scienter allegations.

### A.   The Report's Falsity Determinations Undermine the Objections

Courts have long recognized that "falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001); *accord Xiongen Jiao v. Ningbo Xu*, 2020 WL 411060, at *1 (S.D. Tex. Jan. 24, 2020) ("same alleged events" showing falsity "support a cogent and compelling inference of scienter").

This case is no exception. In determining that Plaintiffs adequately alleged falsity, Judge Edison noted well-pled facts that also establish scienter. For example, Judge Edison observed that Plaintiffs allege, "in great detail, that ***Defendants were fully aware that there was no reliable data to support*** the wildly enthusiastic claims for Alpine High" (Rep. at 6-7); "that Apache's top executive, Christmann, ***deliberately shielded critical Alpine High data from the rest of the company for years***, thus ***precluding*** standard peer review practices from occurring" (*id.* at 7); and that, "***at the start of the Class Period, Defendants***

7

***had years of data*** indicating that Apache would not encounter commercially productive oil and gas reservoirs" (*id.* at 10 (italics on "years" in original)). Judge Edison also determined that Defendants "***concealed material facts***, including that (i) the Apache geologists responsible for exploring and developing Alpine High did not believe the data supported the Company's grandiose predictions; (ii) top management ***blocked Alpine High data from being vetted*** under the standard peer review processes that were otherwise utilized at Apache; and (iii) the underlying data never supported" Defendants' representations. *Id*. at 11-12. These conclusions were supported by highly particularized allegations. *See* ¶¶44-62, 85-101, 116-21, 127-28, 134-50, 154-59, 165-74.

These same facts establish scienter. Relying on well-settled authority, Judge Edison correctly determined that allegations showing that Defendants knew or had access to information directly contradicting their public statements raise a strong inference of scienter:

> Viewing Lead Plaintiffs' allegations as true and evaluating the facts as a whole, I conclude that Consolidated Class Action Complaint's allegations are sufficient to support a strong inference of scienter by Defendants. *See, e.g.*, *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 663 (S.D. Tex. 2021) ("[I]f a plaintiff can show that a defendant received and had actual knowledge that statements to investors were materially misleading, such facts would give rise to a strong inference of scienter."); *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 853 (N.D. Tex. 2018) (holding that defendants' access to contradictory information provided "more than mere conclusory allegations that Defendants . . . must have had knowledge" of the information); *Singh v. 21Vianet Grp., Inc*, No. 2:14-cv-00894, 2017 WL 4322483, at *3 (E.D. Tex. Sept. 13, 2017) (a strong inference of scienter may arise when defendants knew facts or had access to information suggesting that their public statements were not accurate (quotation omitted); *Brody v. Zix Corp.*, No. 3:04-CV-1931, 2006 WL 2739352, at *7 (N.D. Tex. Sept. 26, 2006) (finding it reasonable to assume defendants had actual knowledge of material misstatements because they regularly received reports showing the

8

statements were false).

*Id.* at 16-17 (ellipse in original). Accordingly, Judge Edison recommended that the MTD be denied with respect to the asserted ground "that Lead Plaintiffs failed to adequately plead scienter." *Id.* at 17.

The Court should adopt the carefully-reasoned Report. Alpine High was by far the most significant operation in Apache's portfolio—one Defendants repeatedly touted as "transformational" for the Company. ¶¶28-43. Because Plaintiffs adequately allege materially false or misleading statements for the reasons Judge Edison identified—e.g., Defendants were "fully aware" that they lacked reliable data to support their claims—there is **no logical way** to conclude those statements were **innocently** false. Rep. at 6; *see Blessing v. Plex Sys., Inc.*, 2021 WL 6064006, at *11 (N.D. Cal. Dec. 22, 2021) ("Analyzing [falsity and scienter allegations] together is especially appropriate where the allegations are so important to the company that it was absurd to suggest that management would not discuss them."). This powerfully supports an inference of scienter.

### B.    Judge Edison Correctly Approved of Plaintiffs' Scienter Theory

#### 1.    Plaintiffs Allege a Reckless Gamble Theory

In the Objections, Defendants contend Plaintiffs assert an "implausible" scienter theory in which Defendants knew Alpine High was "doomed" from the start and a "suicide mission." Obj. at 16-18. Defendants' argument distorts the Complaint and ignores contrary facts; as Judge Edison put it, "[t]his argument goes a bit too far." Rep. at 15.

Judge Edison accurately summarized Plaintiffs' fraud theory: "[i]n a nutshell, Lead Plaintiffs contend that Defendants [were] desperate to reverse Apache's slumping

performance and announce a major U.S. shale play," and thus "initially touted" and then relentlessly promoted "Alpine High as a huge prospect[,] although such statements lacked any reasonable basis." *Id.* at 13; *see also* ¶¶24-70, 85-101, 118-21, 127-28, 133-50, 154-58, 168-71. Over direct warnings from seasoned industry veterans who had prospected and analyzed Alpine High, Defendants "moved forward with a major public announcement and glowing reports on how Alpine High would drive shareholder value for years to come." Rep. at 13. Defendants gambled that their clandestine efforts to drill and stimulate Alpine High wells would strike upon some success before their misrepresentations were exposed. *Id.* at 13-14; *see also* ¶¶29-30, 118-21, 172-74.

Judge Edison noted that Plaintiffs' scienter allegations are based, in part, "on statements from a bevy of confidential witnesses"—"many of whom confirm[ed] that the Individual Defendants received regular reports and updates on Alpine High," making them "fully aware of the play's limitations." *Id.* at 14; *see also* ¶¶59-61, 133-48. He highlighted that Keenan was "intimately aware" of these facts, and "routinely updated Defendants Christmann and Sullivan regarding Alpine High throughout the Class Period," and that "Riney also allegedly 'closely tracked the status of each Alpine High well.'" Rep. at 14. Judge Edison further noted that "[d]espite this alleged knowledge, the Individual Defendants . . . made repeated statements promoting Alpine High's performance and profitability." *Id*. at 14-15.

Judge Edison appropriately considered "the totality" of these allegations and Defendants' arguments (re-hashed in the Objections), and concluded that, "[w]hile the course of conduct allegedly pursued by Defendants might not have been a wise one, it was

10

rational (though reckless) . . . [and] ***the inference that Defendants acted recklessly is at least as compelling as any alternative inference***." Rep. at 16. In so holding, Judge Edison cited Judge Posner's opinion in *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008), which explained "that a gamble—concealing bad news in the hope that it will be overtaken by good news" is a perfectly sound fraud theory, "like embezzling in the hope that winning at the track will enable the embezzled funds to be replaced before they are discovered to be missing." Rep. at 15.

Judge Edison's and Judge Posner's reasoning is in accord with other decisions,[2] and reflects precisely what Plaintiffs allege here: Defendants, under the gun to boost the Company's outlook, misrepresented Alpine High's performance and prospects, hoping they would hit upon economically viable wells in the West Texas shale before the market found out, and took its capital elsewhere. Defendants got "back into the game of risk" as the market had urged (¶¶26-29, 42)—but went too far, and failed "to substantiate the . . . irresponsible statements they had made." *Spitzberg*, 758 F.3d at 686. "Such gambles need not be perfectly rational to support a 10b-5 claim." *In re Boeing Co. Aircraft Sec. Litig.*, 2022 WL 3595058, at *27 (N.D. Ill. Aug. 23, 2022) (defendant's "alleged actions are consistent with him taking a gamble that he could cover up damning

---

[2] *See, e.g.*, *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 845 (N.D. Ind. 2018) ("Defendants claim plaintiffs' theory is farfetched and completely illogical. But it does not require much of an inferential leap to surmise that ZBH may have held out hope yet that . . . the extent of the problems could be kept under wraps . . . failing to succeed at fraud does not obviate the fact there may have been fraudulent intent."); *Skiadas v. Acer Therapeutics, Inc.*, 2020 WL 3268495, at *11-12 (S.D.N.Y. June 16, 2020) (similar); *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 907 (D. Minn. 2011) ("[P]erhaps management simply hoped that . . . [the] company's share of the market [would] grow fast enough to absorb the excess inventory.").

information until" a solution presented itself). And the "fact that Defendants' gamble" failed is not inconsistent with a "considered," albeit reckless, bet. *Patel v. Axesstel, Inc.*, 2015 WL 631525, at *13 (S.D. Cal. Feb. 13, 2015).

Defendants erroneously argue this case does not involve a reckless gamble because Plaintiffs allege "Apache knew from the outset that Alpine High was doomed to fail, before voluntarily announcing the discovery." Obj. at 17. This distorts the Complaint, which instead alleges that Defendants lacked sufficient data to support their claims about Alpine High. ¶¶44-53, 55-56, 59, 101. Plaintiffs do not allege that Alpine High produced nothing, or that its projections showed no yield, but that, despite Defendants' desperate efforts to unearth some viable resources (¶¶29-30, 118-21, 172-74), its models and production fell far short of Defendants' gaudy claims (*see, e.g.,* ¶¶98-99 (Project Neptune identified some viable wells), 120-21, 158, 168-72 (type curves were fudged upwards)). These allegations render Defendants' proposed analogue, *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 436 (5th Cir. 2019), factually inapposite.

### 2.    Judge Edison Applied the Correct Legal Standard

Defendants' assertion that Judge Edison misunderstood the appropriate legal standard for recklessness is based on their improper parsing of how he quoted an applicable Fifth Circuit decision. Obj. at 17-19. Their related claim that Plaintiffs do not allege "stark misrepresentations of contemporaneous facts" (Obj. at 18), simply ignores a parade of such allegations that amply support an inference of scienter (*see* ¶¶61, 92-93, 101, 120-28, 133, 155-58, 168-71). Indeed, as noted above, the Report identifies detailed allegations demonstrating Defendants' contemporaneous state of mind. Rep. at 6-7 ("***Defendants were***

*fully aware* that there was no reliable data to support the wildly enthusiastic claims for Alpine High.").

Similarly, while Defendants assert that "severe recklessness cannot result from internal differences of opinions" (Obj. at 18-19), Plaintiffs make *no such allegation*; rather, Plaintiffs allege a uniform recognition by knowledgeable professionals—including veteran geologists who *personally* explored Alpine High—that Apache did not have the data necessary to back up its public representations (¶¶10, 61, 92-93, 101, 120-28, 133, 155-58, 168-71). As the Supreme Court has instructed, when evaluating scienter, courts must "constantly assum[e] the plaintiff's allegations to be true." *Tellabs*, 551 U.S. at 326-27. The Court should reject Defendants' effort to inject unpled "differences of opinion" into the scienter analysis. *Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) ("The strong-inference pleading standard does not license the Court to resolve disputed facts.").

Defendants next argue Judge Edison did not duly consider their proposed competing inference of non-culpable behavior. Obj. at 19. But Judge Edison considered this argument, citing the very section of Defendants' MTD where they argue competing inferences. Rep. at 15. Defendants also misstate the Supreme Court's decision in *Tellabs*, which directs that to find scienter, the court must "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." 551 U.S. at 324. Judge Edison's determination that "the inference that Defendants acted recklessly is at *least as compelling as any alternative inference*" reflects a faithful application of *Tellabs*'s balancing test.

13

### 3.      Plaintiffs Allege Cognizable Motive Allegations

Defendants overreach in asserting that Judge Edison did not "assign any value" to allegations regarding Defendants' massive compensation tied to the "discovery" of Alpine High (*see* ¶¶31, 295-99), and found a "lack of cognizable motive allegations" (Obj. at 14-15). Based on Plaintiffs' allegations (including the Individual Defendants' "actual knowledge" that their statements to investors were materially misleading), Judge Edison concluded that the scienter inference was sufficiently pled that he did not need to expressly reach the question of how much weight to assign to allegations of motive. Rep. at 13-16. Plaintiffs, however, alleged powerful motive allegations, including that Defendants received $78 million in Class Period compensation tied to Alpine High-related performance goals.[3] Judge Edison did ***not*** find that these allegations were ***not*** cognizable— let alone that Plaintiffs had failed to allege motive; he determined that the *Tellabs* scienter standard was met based on the Complaint's particularized allegations, without explicitly addressing motive.[4] Defendants' reliance upon cases with inadequate motive allegations (Obj. at 15) are therefore misplaced.[5]

---

[3] ¶¶31, 295-99; *see* Opp. at 61-62; *see also Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 261, 264 (5th Cir. 2005) (bonuses tied to achieving company performance goals support scienter); *Edwards*, 2021 WL 1421609, at *9 (incentive of bonuses support scienter).

[4] Notably, in addition to motive, Judge Edison's scienter analysis also did not need to consider numerous other well-pleaded scienter facts, including Plaintiffs' forensic analysis, which confirmed through Apache's own subsequent filings with the TRC that, contrary to Defendants' public assertions, Alpine High produced miniscule amounts of oil and wet gas, many of its "successful" wells were failures, and the play was riddled with dry holes. ¶¶117-33, 175-89.

[5] Defendants' stock purchases and Apache's buybacks (*see* Obj. at 19) merit little consideration. Issuer stock repurchases are "not . . . dispositive" of scienter. *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *13 (N.D. Cal. Nov. 4, 2020); *see also Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 146 (S.D.N.Y. 2021) (similar). Here, Apache's buybacks enriched Defendants, propping up Apache's stock price where Defendants' compensation was tied in part to Apache's stock price performance. ¶299; *see also Apple*, 2020 WL 6482014, at *13.

14

C. **The Complaint's Scienter Allegations Are More than Adequate**

1. **Detailed Facts Demonstrate Defendants' Scienter**

The allegations supporting a strong inference of scienter are compelling. *First*, Defendants' concession that the Complaint adequately alleges falsity, and the fact that Judge Edison's falsity determinations were based on facts that also demonstrate Defendants' knowledge of the misrepresented and concealed facts, combine to support a strong inference of scienter.

*Second*, mutually corroborating facts support that Defendants knowingly or recklessly misrepresented the true prospects and production at Alpine High. These facts include that: (i) Apache hurriedly unveiled Alpine High, "willfully ignoring" data from its own 2012 and 2014 explorations of the area showing that it held few valuable resources, in a "Hail Mary to the end zone";[6] (ii) Alpine High was Apache's centerpiece operation, constituting 40% of Apache's planned capital expenditures during the Class Period;[7] (iii) Defendants made repeated, authoritative, and specific representations about the play, including in response to securities analysts;[8] (iv) Defendants, particularly Christmann, controlled Alpine High data, kept it from internal peer review, and concealed it from

---

[6] ¶¶44-53; Opp. at 49-52, 57-58; *see also Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 955-56 (S.D. Tex. 2021) (scienter inferred where defendants ignored contrary evidence presented by company scientist).

[7] ¶¶30, 284.

[8] ¶¶36-38, 284, 291-93; *see also Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (analyst questions and defendants' repeated responses supported scienter inference); *Holzwasser*, 2006 WL 897746, at *4 (fact that misstatements "pertained to [company's] core business" supported scienter); *In re NetSolve, Inc. Sec. Litig.*, 185 F. Supp. 2d 684, 697 (W.D. Tex. 2001) (scienter where misstatements concerned "lifeblood of the company").

15

Company scientists;[9] (v) Alpine High's actual performance lagged far below what Defendants publicly represented, as reported both by Alpine High-based professionals and confirmed by Plaintiffs' forensic analysis showing unheard-of well failure rates;[10] (vi) Defendants knew these facts from their control of Alpine High data and direct receipt of regular reports on the play;[11] (vii) Defendants purged managers and executives who questioned Apache's approach at Alpine High;[12] (viii) in response to internal pressure, Christmann begrudgingly permitted a standard RTA data analysis of Alpine High data (i.e., Project Neptune) in mid-2019, which confirmed the play's consistent underperformance to Defendants' public statements;[13] and (ix) Keenan then departed within weeks, and soon thereafter, Apache took a massive $3 billion charge and wrote off the entire play.[14]

These scienter allegations are reinforced by press reports, including from mainstream financial news outlets such as *Bloomberg*, which wrote pointedly upon Defendants' abandonment of Alpine High in early 2020 that the reality of the situation was "***in stark contrast***" to Defendants' repeated statements and assurances over the prior three

---

[9] ¶¶134-64, 171-72, 288, 290; *see also Schleicher v. Wendt*, 529 F. Supp. 2d 959, 971 (S.D. Ind. 2007) (skirting internal policies supports scienter).

[10] ¶¶59-62, 116-33, 154-55, 168-71; *see also Spitzberg*, 758 F.3d at 682-84 (scienter found for statements on oil and hydrocarbon success when CW reported the actual data did not match the claims).

[11] ¶¶55-56, 136, 148, 152, 290; *see also Ramirez*, 334 F. Supp. 3d at 853 (access to information contradictory to public statements supported scienter inference); *Venator*, 547 F. Supp. 3d at 663 (receipt of information on issue supported scienter inference).

[12] ¶¶159-64, 289; *see also Hall v. Rent-A-Center, Inc.*, 2017 WL 6398742, at *34 (E.D. Tex. Oct. 19, 2017) (forced departures supported scienter); *Carlton v. Cannon*, 184 F. Supp. 3d 428, 483 (S.D. Tex. 2016) (terminating employees "who came forward with concerns" supported scienter).

[13] ¶¶85-101.

[14] ¶¶102-08; *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 698 (5th Cir. 2005) (scienter supported "when a company's big deal collapses so fast").

years steadfastly "***defending the play***." ¶107. Reviewing these allegations "as a whole," Judge Edison correctly determined that scienter was adequately pled. Rep. at 16-17.

### 2. Defendants' "Tie" Premise Is Wrong

Defendants mischaracterize the Report in asserting it relied on "deficient" scienter allegations to arrive at a "tie." Obj. at 2-3, 5-6. Judge Edison referred to a "tie" in his review of authority—which provides that scienter allegations need only support an inference that is "at least as compelling" as any alternative inference: in other words, per the Fifth Circuit, "a tie favors the plaintiff." Rep. at 12-13 (citing *Tellabs*, 551 U.S. at 324 & *Spitzberg*, 758 F.3d at 686). But Judge Edison did not find a tie in this case. He instead engaged closely with the parties' arguments, concluded it was a "very close call," and, after determining that falsity was convincingly alleged and evaluating Plaintiffs' allegations as a whole, concluded that they were "***sufficient to support a strong inference of scienter by Defendants***." *Id.* at 13-16.

Ignoring these findings, Defendants press their faulty "tie" premise to argue that "removing even ***one*** of the credited scienter allegations from the scienter scale compels dismissal." Obj. at 3 (emphasis in original). This argument should be rejected not only because it depends on a false predicate, but also because Defendants' insistence that this Court evaluate Plaintiffs' interrelated scienter allegations in isolation violates the governing legal standard requiring a "holistic" review. Judge Edison relied upon binding law: "The inquiry is whether all of the facts alleged, taken collectively, give rise to a strong plausible inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Rep. at 12 (quoting *Lormand*, 565 F.3d at 251). Plaintiffs'

17

allegations amply meet this standard. Opp. at 49-65.

### 3.    Defendants' CW Arguments Are Misguided

Plaintiffs' allegations are further buttressed by the internally consistent, mutually corroborative first-hand reports of 24 CWs, each of whom held relevant responsibilities at Apache in and/or around the Class Period. *See Edwards*, 2021 WL 1421609 (sustaining claims based upon facts reported by 24 CWs); *KB Partners I, L.P. v. Barbier*, 907 F. Supp. 2d 826, 831, 831 n.2 (W.D. Tex. 2012) ("corroborating" CW allegations made scienter inference "more compelling"). The CWs include: (i) exploitation managers that led Alpine High prospecting teams, including reservoir engineers, geologists, and petrophysicists; (ii) drilling engineers and reservoir stimulators who worked on Alpine High well pads and who attempted to extract oil and wet gas from the barren rock; (iii) technology production managers and directors who oversaw the customized tools used to track and report in real-time Alpine High's abysmal well production data to Keenan and the Individual Defendants; and (iv) high-ranking executives in Apache's Houston headquarters and its Alpine High-dedicated San Antonio office, including Ph.D.'s with decades of industry experience who personally interacted with Christmann.[15]

Judge Edison concluded that the information provided by this "bevy of confidential witnesses" showed "the Individual Defendants [were] fully aware of the play's

---

[15] These individuals were described with particularity in the Complaint. *See* ¶¶45-46, 51, 62, 101, 133, 145, 149, 151, 155, 159-60, 162-64; Opp. at 30-33 & n.22; *see also Rougier v Applied Optoelectronics, Inc.*, 2019 WL 6111516, at *11 (S.D. Tex. Mar. 28, 2019) (CWs described with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information pleaded"); *Budde*, 2018 WL 4623108, at *4 (CW allegations credited where complaint "provides each CW's job description, period of employment, and the bases of the CW's knowledge in the information pleaded").

limitations." Rep. at 14. Ignoring these interrelated facts, Defendants isolate certain CW-based scienter allegations, claiming they are "deficient" and not legally cognizable. Obj. at 3-4. This fails. Consistent with applicable case-law, Plaintiffs extensively detailed the basis of each witness's knowledge, including their titles, responsibilities, and employment tenure. Nothing more is required, particularly where the CW accounts are mutually consistent and supported by other allegations. Defendants' categorical claim that CW facts must, as a rule, be "steeply discounted" (*id.* at 6) is wrong on the law.[16]

Moreover, in arguing that CW allegations cannot be credited unless the CW reported directly to, and recounted personal interaction with, an executive defendant (Obj. at 8-9), Defendants misstate the law. *See Spitzerg*, 758 F.3d at 682 (crediting reports of CW who did not communicate with defendant); *Avaya*, 564 F.3d at 268-69 (plaintiff alleging scienter not required to "point to" a "conversation"); Opp. at 60. Indeed, allegations reflecting that "others at [Apache] believed the statements about [Alpine High] were incorrect" properly support a finding of scienter. *Anadarko*, 514 F. Supp. 3d at 956. Similarly, courts recognize that "CWs are often reporting hearsay, but that does not automatically disqualify [their] statement[s] from consideration in the scienter calculus" because ***plaintiffs are not required to plead evidence at the pleading stage***.[17]

---

[16] *See, e.g.*, *In re SolarWinds Corp. Sec. Litig.*, 2022 WL 958385, at *7 n.6 (W.D. Tex. Mar. 30, 2022) (rejecting argument that court "must discount allegations from [CWs] generally."), *clarified*, 2022 WL 3699429 (W.D. Tex. Aug. 19, 2022); *Cobalt*, 2016 WL 215476, at *3 (proper CWs reports "will not be discounted"); *Edwards*, 2021 WL 1421609 (relying on facts from well-pled CW reports).

[17] *Budde*, 2018 WL 4623108, at *4 (first brackets in original); *see also In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *6 (E.D. Tex. 2004) (Pleading scienter does not "require the pleading of facts which, because of the lack of discovery, are in defendants' exclusive possession.").

19

### 4.    The Complaint's Allegations Regarding Project Neptune and Apache's Deficient Pre-Announcement Play Data Are Sound

Defendants seek to diminish Plaintiffs' detailed allegations regarding "Project Neptune"—a months-long, comprehensive internal investigation conducted during the Class Period, which confirmed that Apache's own internal data and analyses from Alpine High had *never* supported Defendants' public claims. *See* ¶¶85-98. Defendants incorrectly argue that these facts are deficient as "entirely unsourced" and purportedly not corroborated by "any" CWs. Obj. at 7-8.

As an initial matter, Defendants tellingly do not dispute that Project Neptune *in fact occurred* and was *presented in person* to Apache's senior management, including Christmann, in mid-October 2019. ¶100. Nor do Defendants dispute how extraordinarily particularized these allegations are, easily meeting Defendants' *own* description of what the PSLRA requires. *See* Obj. at 6 (quoting statute). Defendants instead object to allegations about Project Neptune's *conclusions*. Defendants' arguments are not only premature, but they ignore the fundamental requirement that, when evaluating scienter, courts must "constantly assum[e] the plaintiff's allegations to be true." *Tellabs*, 551 U.S. at 326-27; *see also Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) ("[D]isputed questions of fact are anathema to Rule 12(b)(6) jurisprudence[.]").

Moreover, the Project Neptune allegations *are*, in fact, corroborated by detailed CW allegations. Defendants overlook, for example, the report of CW 6, a Reservoir Stimulation Lead at Apache from January 2012 until December 2020, who states that she personally worked on the RTA analysis of Alpine High data which, as Plaintiffs allege, was a key part

20

of Project Neptune. ¶¶52, 89-93. Defendants also ignore other detailed allegations based on reports of CWs responsible for tracking and reporting Alpine High production statistics (including CWs 4, 8, 13, & 14), which similarly corroborate Project Neptune's findings, including that Alpine High never came *close* to meeting Apache's "systemically inflated" published type curves. ¶¶94-98, 157-58, 166-71. These allegations mesh entirely with other deeply sourced allegations, including that Christmann dropped a "cone of silence" over Alpine High, walling off critical data from internal review, which caused widespread executive discontent—including, per the COO's Chief of Staff, among "over a dozen Vice Presidents" who either were fired or retired early after they "raised concerns" about Alpine High. ¶¶134-64. Project Neptune marked the first time such internal review was permitted.

Project Neptune's findings are further corroborated by Plaintiffs' forensic analysis (*see* ¶¶116-33) based on Apache's own belated and obfuscated regulatory filings concerning Alpine High drilling and production data (¶¶175-89). This information, not available to investors during the Class Period, confirms Project Neptune and the CW accounts that Alpine High *never* produced oil and wet gas remotely close to what Defendants claimed.[18] Many other undisputed public facts support Project Neptune's findings, including Keenan's departure on October 25, 2019 (¶103), Apache's $3 billion impairment charge and attendant disclosure that "there were no rigs drilling at Alpine High" as of the end of 2019 (¶106), and reports by *Bloomberg* and other media outlets that

---

[18] Plaintiffs' forensic analysis confirmed, for example, that the total oil produced across the *entire* Alpine High field during the Class Period was just 2.9 million barrels—a miniscule 0.8% of the amount Defendants claimed they expected from two geologic formations *alone*. ¶116.

21

the Alpine High debacle stood "in stark contrast" with management's public statements "vehemently defending the play's prospects for about three years" (¶107).

Defendants have no legal basis for claiming that the Project Neptune allegations may be credited only if the Complaint pleads the actual Project Neptune report. *See Budde*, 2018 WL 4623108, at *4 (securities fraud pleading standards "do not require a plaintiff to plead evidence"); *Tellabs*, 551 U.S. 324 n.5 (similar).[19] The notion that every allegation must be sourced (Obj. at 6-9) finds no support in the PSLRA, which requires only that "information and belief" allegations be pleaded "with particularity." 15 U.S.C. § 78u–4(b)(1)(B); *see also Hill v. State St. Corp.*, 2011 WL 3420439, at *14 (D. Mass. Aug. 3, 2011) ("[P]lacing the source of each individual allegation under a microscope distorts Plaintiffs' obligations under Rule 9 and the PSLRA."). Courts consistently hold that where, as here, the "accumulated amount of detail" in a complaint is "particularized" and "tends to be self-verifying," it is "unnecessary for plaintiffs to disclose the sources of their beliefs at the pleading stage." *In re Philip Services Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 479-80 (S.D.N.Y. 2004); *In re Cabletron Sys., Inc.*, 311 F.3d 11, 33 (1st Cir. 2002) (similar).[20]

---

[19] *See also RFE Inv. Partners VI, L.P. v. Jacobs*, 2006 WL 8435481, at *2 (E.D.N.Y. Sept. 15, 2006) (plaintiff "need only allege—not prove—the specific facts supporting scienter at this juncture").

[20] Even Defendants' cited case, *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, found that unsourced allegations supported scienter where other allegations provided sufficient indicia of reliability. 291 F.3d 336, 357 (5th Cir. 2002). Indeed, the salient issue under the PLSRA is whether the fraud allegations are "particularized" and "non-conclusory," "regardless of their alleged source." *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 542, 548 n.24 (S.D.N.Y. 2020); *see also In re Myriad Genetics, Inc.*, 2021 WL 977770, at *18 (D. Utah Mar. 16, 2021) ("[P]ersonal or documentary sources for the key allegations in a complaint need not be disclosed[.]"); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1102 (10th Cir. 2003) (declining to add a "*per se* judicial requirement that the source of facts must always be alleged"); *Philip Servs.*, 383 F. Supp. 2d at 479 ("[D]isclosure of sources in all securities fraud Complaints is too restrictive a response to the PSLRA's particularity requirement.").

Defendants' argument that the Project Neptune allegations lack "the requisite link" to Defendants' misrepresentations (Obj. at 9-10) ignores the Complaint's allegations that: (i) Project Neptune was a comprehensive analysis of data dating from the play's inception; and (ii) Defendants had personally received and controlled access to play performance data over the same period (¶¶89-101, 136, 138-41, 145-48, 151-52, 171-72). Thus, contrary to Defendants' argument, "[w]hen coupled with allegations that Defendants knew of [the allegedly misrepresented] problems," such allegations amply support an inference of scienter. *In re Elec. Data Sys. Corp. Sec. Litig. & ERISA Litig.*, 298 F. Supp. 2d 544, 559 (E.D. Tex. 2004).

Defendants' arguments seeking to undermine allegations concerning "[w]arnings from San Antonio," i.e., from Keenan's team (Obj. at 10), are similarly flawed. The allegations detail Christmann's direct knowledge about the shortcomings of Alpine High data in 2016. ¶¶54-58, 63; Opp. at 49-51. These allegations are corroborated by other allegations, including: (i) Apache's 2012 and 2014 explorations, which found minimal support for pursing a play in the area; (ii) CW reports that Apache's announcement of Alpine High was "premature" and "shocked" employees; and (iii) the fact that Keenan regularly and exclusively reported to Christmann about Alpine High performance. ¶¶44-51, 58-61, 101, 134, 136-37, 290. Further, CW accounts and Plaintiffs' forensic analysis corroborate that Alpine High produced very low amounts of valuable resources and contained dozens of dry holes, leading Apache to admit that the play was commercially non-viable just three years after its unveiling. ¶¶116-18, 127-28.

Next, in response to allegations that Apache explored the Alpine High area in 2012

23

and 2014, and determined that it contained too few valuable resources to be commercially viable, Defendants assert that Apache's data and Christmann's conclusions from these studies "say nothing" about Defendants' scienter. Obj. at 11. Putting aside the notion that Defendants entered the Class Period as a blank slate, this argument contradicts detailed allegations in the Complaint, including that: (i) Keenan and his team did not think they had identified resources sufficient to support announcing the play; (ii) numerous CWs reported Apache's announcement was premature; (iii) drilling across Alpine High was a "Hail Mary to the end zone"; and (iv) Apache never saw Alpine High production come close to supporting Defendants' public representations. *See, e.g.*, ¶¶46, 53, 58-61, 101, 120-28. Defendants' proposed alternative facts are wholly deficient when compared against Plaintiffs' comprehensive, internally consistent allegations of fraud.[21]

Finally, Defendants baselessly claim that Plaintiffs fail to support allegations that Defendants attended meetings or received information about Alpine High performance. Obj. at 12-13. This is demonstrably wrong, not only because Defendants repeatedly touted the play to investors and media, citing purported specific facts and figures (*e.g.*, ¶¶66-68, 75-76, 80-81, 107), but also because Defendants do not challenge Judge Edison's sound determinations about Defendants' knowledge of Alpine High data and their actions to "deliberately shield[] critical Alpine High data from the rest of the company for years" (Rep. at 7). Defendants' argument also ignores allegations to the contrary. For example, Plaintiffs cite a CW account of a "second quarter review meeting in July 2018" ***in which***

---

[21] Defendants' argument (Obj. at 9) that the Complaint does not allege Keenan told management in 2016 that Apache did not yet have data to support announcing the play—is wrong. *See* ¶¶57-60.

24

***Defendant Riney heatedly addressed Alpine High data and results in an exchange with Christmann*** and Keenan. ¶133. And, Plaintiffs allege not just that Defendants had "access" to Alpine High data, or periodically received it, but that they ***controlled*** it, deciding who else could see it, and blocking standard internal peer review and scientific vetting. ¶¶55-56, 136-37, 148, 290.

Notably, the powerful allegation of the July 2018 meeting alone suffices to support an inference of Riney's scienter (¶¶133, 152, 290) contrary to Defendants' strained arguments that at least Riney (and Sullivan) should be dismissed from the case (Obj. at 20-21). The Complaint also alleges that both executives received reports on Alpine High data, a subject about which ***they spoke publicly***, and that Sullivan worked alongside Christmann to ***control*** who else could access Alpine High data and block peer review. ¶¶136, 148, 290.

In sum, Defendants' improper effort to pick apart individual scienter allegations should be rejected, and the conclusions of Judge Edison as to all Defendants should stand.

## VI.    CONCLUSION

For these reasons, the Objections should be overruled, and the Complaint sustained.

Dated: November 10, 2022                 Respectfully submitted,

                                         **AJAMIE LLP**

                                         *s/ Thomas R. Ajamie*
                                         Thomas R. Ajamie
                                         Attorney-in-Charge
                                         Texas Bar No. 00952400
                                         S.D. Tex. No. 6165
                                         John S. "Jack" Edwards, Jr.
                                         Texas Bar No. 24040851
                                         S.D. Tex. No. 38095
                                         Pennzoil Place – South Tower

711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Liaison Counsel for Lead Plaintiffs*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted *pro hac vice*)
Johnston de F. Whitman, Jr. (admitted *pro hac vice*)
Joshua E. D'Ancona (admitted *pro hac vice*)
Michelle M. Newcomer (admitted *pro hac vice*)
Daniel B. Rotko (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jwhitman@ktmc.com
jdancona@ktmc.com
mnewcomer@ktmc.com
drotko@ktmc.com

**SAXENA WHITE P.A.**
David R. Kaplan (admitted *pro hac vice*)
Wolfram T. Worms (admitted *pro hac vice*)
Hani Farah (admitted *pro hac vice*)
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
wworms@saxenawhite.com
hfarah@saxenawhite.com

-and-

Steven B. Singer (*pro hac vice* forthcoming)
Joshua H. Saltzman (admitted *pro hac vice*)

26

10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com

-and-

Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White, III (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Co- Lead Counsel for Lead Plaintiffs*

27

**CERTIFICATE OF SERVICE**

I certify that on November 10, 2022, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Thomas R. Ajamie*
Thomas R. Ajamie