


April 4, 2023

**VIA ECF**

U.S. Magistrate Judge Andrew M. Edison
United States Courthouse
601 Rosenberg, Seventh Floor
Galveston, TX 77550

    Re:  No. 4:21-cv-00575, *In re Plymouth County Ret. Sys. v. Apache Corp., et al.*

Dear Judge Edison:

Pursuant to the Court's March 31, 2023 Order, Lead Plaintiffs the Plymouth County Retirement System and the Trustees of the Teamsters Union No. 142 Pension Fund (collectively, "Plaintiffs") submit this letter brief outlining their position on disputed issues pertaining to the Search Protocol that will govern Defendants' production of documents.

### 1. Introduction

This is a large, high-value case concerning the most important project at Apache from 2015-2019, with likely class-wide damages well over a billion dollars. Defendants' document discovery will be complex, spanning eight years (2012-2020) and multiple offices and data sources, including 60 individual custodians. The fact discovery deadline is December 1, 2023. All this demands expeditious progress in discovery, and robust collection and search methods to handle the job. Yet, Defendants have produced just 19 documents. They also insist on inadequate and unreasonable search methods. Negotiations on Defendants' search protocol are at a near-standstill. Plaintiffs now ask the Court to order certain steps to help the parties move forward, applying minimum safeguards to ensure that Defendants' document collection is reasonable.

*First*, Plaintiffs ask the Court to resolve disputes on how the parties will collect and produce electronically stored information ("ESI"). For example, Defendants refuse to (i) collect files linked to emails in a way that preserves the document-family relationship; or (ii) discuss whether or how they will perform basic quality control ("validation") on their search. Plaintiffs ask the Court to enter an order that requires these basic steps.

*Second*, Plaintiffs ask the Court to remedy unreasonable deficiencies in the search methodology Defendants insist on using. Their search tool, Purview, cannot search key file types like audio files. Defendants have refused to engage with Plaintiffs to address this gap. Further, Defendants insist on using search terms to cull data within Apache's Microsoft 365 system before collecting it, rather than putting all files to be searched in a database,

U.S. Magistrate Judge Andrew M. Edison
April 4, 2023
Page 2




then running searches. A fatal flaw in Defendants' approach is that it makes validation impossible. Defendants contend validation is unnecessary, and refuse to engage about work-arounds to shore up their approach. Further, they have failed to identify the sources of relevant data that they will search outside of Microsoft 365 (let alone how), despite committing to do so. Plaintiffs ask the Court to order Defendants to employ a method that can capture all relevant ESI and be QC'd, and to meet and confer with Plaintiffs.

*Third*, the parties remain far apart on Defendants' proposed search terms. While Plaintiffs are seriously concerned that Defendants have proposed unduly restrictive terms, dragged their feet over several weeks, and refused to talk, on March 31, 2023, Defendants sent a new proposal on which the parties have not yet conferred. Plaintiffs ask the Court to direct the parties to meet and confer, disclosing relevant metrics, such as de-duplicated and unique hit counts, and regularly report to the Court on progress toward resolution.

*Fourth*, Plaintiffs ask the Court to order Defendants to immediately commence rolling productions of relevant documents that may be identified without resort to ESI methodologies, such as Board materials, annual audit files, and presentations and reports related to "Project Neptune" and "Project Phoenix." ESI searches may supplement these files, but their production need not wait until Defendants' search methodology is applied.

*Finally*, Plaintiffs ask the Court to modify the case schedule to make the fact discovery deadline six months from Defendants' substantial completion deadline.

**2. <u>Argument</u>**

    **a. Document Discovery Must be Reasonable Under Fed. R. Civ. P. 26**

Parties must conduct a "reasonable" search for responsive documents. Fed. R. Civ. P. 26(g). While a producing party has the general right in the first instance to decide how it will produce documents, it does not have "carte blanche." *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *6 (W.D. Pa. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4295719 (W.D. Pa. Sept. 21, 2021). "Rather, 'a producing party is best situated to determine its own search and collection methods *so long as they are reasonable*.'" *Id*. (citation omitted). "[T]he right of a producing party to choose a general search method – search terms rather than TAR, for example – does not mean that a court must blindly accept . . . the proffered methodology." *Id*.

A search's reasonableness turns on its ability to capture relevant documents from custodians and other sources using the methodology applied. For example, a party using search terms cannot "specify terms that would exclude large swaths of relevant documents." *Id*. Further, the Federal Rules and prevailing e-discovery standards promote cooperation and transparency, including around procedures for ESI collection and search.

U.S. Magistrate Judge Andrew M. Edison
April 4, 2023
Page 3

    

*See, e.g.*, Fed. R. Civ. P. 26(f); The Sedona Conference, Cooperation Proclamation, 10 SEDONA CONF. J. 331 (2009 Supp.).

### b. Plaintiffs' Proposed ESI Order Should be Entered

The parties have agreed on certain provisions governing the collection, search, and production of ESI, but key disputes remain. Plaintiffs discuss several below, and request their proposed ESI protocol (Ex. 1) be entered as an order.

**Cloud Attachments**—Plaintiffs seek an order requiring that cloud attachments[1] (i.e., documents linked to emails) be collected and produced in a manner that preserves the "parent/child" relationships involved. Defendants refuse to collect these documents, arguing they are not attachments, and sometimes change location. None of these factors warrants exclusion of cloud attachments, whose inherent relevance Defendants do not dispute. Just like email attachments, a cloud attachment is an integral part of the document to which it is linked, and must be produced along with the parent document for both to be considered reasonably usable and complete. *See IQVIA, Inc. v. Veeva Sys., Inc.*, 2019 WL 3069203, at *5 (D.N.J. July 11, 2019) (ordering production of documents linked to emails, noting only producing party is capable of linking them).[2] In contrast, emails that contain embedded links, detached from their linked documents, are not documents "in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(ii).

Burden is no issue. Defendants' Purview tool can collect cloud attachments automatically, or allows users to add them by checking a box during collection. The fact that linked documents can change is also no impediment: Purview allows Defendants to collect the current version of the linked document, the version as-shared, and all other versions of the document.[3] Plaintiffs are willing to confer over any versioning issues, but they are entitled to complete relevant and responsive documents with cloud attachments.

**Use of TAR After Search Terms**—The ESI Protocol also must allow a party to cull responsive documents utilizing *either* search terms *or* TAR, but not *both*. Defendants disagree, claiming they may apply whatever search method they want, including search terms now and TAR later to double-cull the review set.[4] But applying TAR after search

---

[1] Cloud attachments in the Microsoft 365 environment are links to documents that are typically stored in SharePoint sites and OneDrive. Instead of attaching a copy in an email or chat, a link to the file is shared. *See* Robert Mazzoli, *Collect cloud attachments in Microsoft Purview eDiscovery (Premium)*, Microsoft (Feb. 20, 2023), https://learn.microsoft.com/en-us/microsoft-365/compliance/ediscovery-cloud-attachments?view=o365-worldwide.

[2] *See also Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at 5 (C.D. Cal. Nov. 30, 2009) (requiring emails and attachments to be produced together); *Shenwick v. Twitter, Inc.*, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (compelling production of hyperlinked documents within Google's GSuite environment).

[3] Mazzoli, *supra* note 1.

[4] Defendants' failure to disclose whether they intend to apply TAR in their search runs afoul of Rule 34(b)(2)(B)'s requirement that a party state how it will limit its search, and Rule 34(b)(2)(C)'s requirement that a party identify the limits on the basis of objections. *See also* Fed. R. Civ. P. 34(b)(2) Advisory Comm. Notes to 2015 Amendment.



terms to eliminate additional documents from review is not reasonable; they are separate methodologies that may not be applied cumulatively (unless TAR is merely used to prioritize the review of all documents identified by search terms). *See In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 2022 WL 16630821, at *4 2022 WL 16630821, at *4 (D.N.J. Oct. 25, 2022) ("Defendants' request to apply TAR after search terms have been applied is denied."). Using both to double-cull renders validation of the collection impossible, because the TAR review cannot be quality-checked against the party's original data set, but only the search-term-narrowed set.

**Validation**—The ESI Protocol also should require the parties to meet and confer regarding appropriate search validation measures. Defendants reject this, claiming (i) if they utilize TAR, they will conduct validation testing of that tool; but (ii) any other validation testing is a costly waste of time. In fact, validation is fundamental to quality assurance in e-discovery. *Diisocyanates*, 2021 WL 4295729, at *6 (noting "obligation for the producing party to validate its search"). Defendants provided no support for their waste arguments, or for why validation is appropriate for TAR but not search terms. Their refusal to validate their search term methodology runs afoul of Rule 26(g)'s "reasonable inquiry" requirement, and should be rejected. *See Diisocyanates*, 2021 WL 4295729, at *6 ("This requirement for validation applies to search terms just as it does to TAR.") (citing *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process…. Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness.")).[5]

### c. Defendants' Proposed Search Methodology Is Not Reasonable

Based on the limited information Defendants have disclosed, Defendants' search methodology is not reasonable, including in light of the serious limitations of Defendants' proposed eDiscovery tool, Purview. This case presents complex document discovery challenges and there is severe risk of prejudice if these issues go unaddressed.

*First*, as noted, Defendants' proposed method would exclude from their collection indisputably responsive documents, including documents hyperlinked to responsive documents, and data from sources outside the Microsoft 365 environment. *See* Ex. 2, 3/10/23 Hefley Email (admitting Purview excluded "external content"). Sources beyond Microsoft 365 are highly relevant in this litigation, but Defendants have not disclosed

---

[5] The parties must also provide FilePath metadata for documents produced. Such metadata is important because it shows the path or location of the file as it resided in its original environment, including folder structure. Defendants argue FilePath metadata *may* reveal privileged information. This does not justify excluding a standard, metadata field from production. As to any particular document, Defendants can assert privilege, redact privileged information, and provide a log. *See Javo Beverage Co., Inc. v. Cal. Extraction Ventures, Inc.*, 2020 WL 2062146, at *9 (S.D. Cal. Apr. 29, 2020) (compelling production of filepath metadata field, notwithstanding broad privilege objection).




which additional sources they will search (let alone how), despite representing to Plaintiffs that they would. *See, e.g.*, Ex. 3, 2/25/23 Hefley Letter (promising to identify the document sources being searched for agreed custodians as well as any central files or document repositories). Defendants must include hyperlinked documents, and disclose a reasonable search method addressing all relevant data sources.

*Second*, Defendants intend to apply Purview to run their search terms against documents "where they live" in Microsoft 365 and thus cull the data set—instead of applying customary date filters to collect documents and then applying search terms to identify responsive documents in a controlled set. While the latter (customary) approach allows for validation and other quality controls, Purview is ***incapable*** of standard validation—and Defendants have refused to confer regarding appropriate measures to ensure their search's reasonableness. *See, e.g.*, *Deal Genius, LLC v. O2Cool, LLC*, 2022 WL 17418933, at *2 (N.D. Ill. Oct. 24, 2022) ("Microsoft 365 does not allow users to validate their search and production results."). Defendants have also failed to account for other limitations in Purview, including that it does not index all data (including audio and video files), ***meaning that such data cannot be searched*** using search terms. *See id.*

*Third*, particularly given Purview's limitations, the search terms Defendants have proposed are unduly narrow and require significant expansion. For example, at least 68 of the search strings in Defendants' latest proposal identified less than 100 documents, while more than 20 strings identified zero. Meanwhile, Defendants have largely rejected Plaintiffs' proposed search terms without articulating burden or any other argument. Notably, Defendants sent their latest proposal the evening of Friday, March 31, 2023, and Plaintiffs have not had adequate time to review it. As with "workarounds" for Purview's limitations, the parties have not met and conferred on search terms, although this may yield results. Accordingly, Plaintiffs request that the Court order the parties to meet and confer regarding solutions to address Purview's limitations and search terms to be applied to Defendants' documents, including requiring calls at least bi-weekly to discuss the parties' proposals.

### 3. Conclusion

For the reasons stated, Plaintiffs request the relief requested above. Further, Plaintiffs request that: (i) Defendants be required to produce documents that can be located without the application of search terms by April 28, 2023; and (ii) the parties submit bi-weekly status reports to the Court identifying progress made regarding the negotiation of a reasonable search protocol and any issues that require Court intervention, with a concrete deadline of April 28, 2023 to reach agreement or present unresolved issues to the Court for resolution. Finally, Plaintiffs request that the Court extend the deadline for completing fact discovery to six months after Defendants substantially complete their document production.

U.S. Magistrate Judge Andrew M. Edison
April 4, 2023
Page 6




        Respectfully submitted,

        *s/ Joshua E. D'Ancona*
        **KESSLER TOPAZ**
        **MELTZER & CHECK, LLP**
        Gregory M. Castaldo (admitted *pro hac vice*)
        Johnston de F. Whitman, Jr. (admitted *pro hac vice*)
        Joshua E. D'Ancona (admitted *pro hac vice*)
        Michelle M. Newcomer (admitted *pro hac vice*)
        Richard A. Russo Jr. (admitted *pro hac vice*)
        Daniel B. Rotko (admitted *pro hac vice*)
        Austin W. Manning (admitted *pro hac vice*)
        280 King of Prussia Road
        Radnor, PA 19087
        Telephone: (610) 667-7706
        Facsimile: (610) 667-7056
        gcastaldo@ktmc.com
        jwhitman@ktmc.com
        jdancona@ktmc.com
        mnewcomer@ktmc.com
        rrusso@ktmc.com
        drotko@ktmc.com
        amanning@ktmc.com

        **SAXENA WHITE P.A.**
        David R. Kaplan (admitted *pro hac vice*)
        Wolfram T. Worms (admitted *pro hac vice*)
        Hani Farah (admitted *pro hac vice*)
        505 Lomas Santa Fe Dr., Suite 180
        Solana Beach, CA 92075
        Telephone: (858) 997-0860
        Facsimile: (858) 369-0096
        dkaplan@saxenawhite.com
        wworms@saxenawhite.com
        hfarah@saxenawhite.com

        -and-

        Steven B. Singer (*pro hac vice* forthcoming)
        Joshua H. Saltzman (admitted *pro hac vice*)
        Sara DiLeo (admitted *pro hac vice*)

 

    10 Bank Street, 8th Floor
    White Plains, NY 10606
    Telephone: (914) 437-8551
    Facsimile: (888) 631-3611
    ssinger@saxenawhite.com
    jsaltzman@saxenawhite.com
    sdileo@saxenawhite.com

    -and-

    Maya Saxena (*pro hac vice* forthcoming)
    Joseph E. White, III (*pro hac vice* forthcoming)
    Lester R. Hooker (*pro hac vice* forthcoming)
    7777 Glades Road, Suite 300
    Boca Raton, FL 33434
    Telephone: (561) 394-3399
    Facsimile: (561) 394-3382
    msaxena@saxenawhite.com
    jwhite@saxenawhite.com
    lhooker@saxenawhite.com

    *Co- Lead Counsel for Lead Plaintiffs*

    **AJAMIE LLP**
    Thomas R. Ajamie, Attorney-in-Charge
    Texas Bar No. 00952400
    S.D. Tex. No. 6165
    John S. "Jack" Edwards, Jr.
    Texas Bar No. 24040851
    S.D. Tex. No. 38095
    Pennzoil Place – South Tower
    711 Louisiana, Suite 2150
    Houston, TX 77002
    Telephone: (713) 860-1600
    Facsimile: (713) 860-1699
    tajamie@ajamie.com
    jedwards@ajamie.com

    *Liaison Counsel for Lead Plaintiffs*

U.S. Magistrate Judge Andrew M. Edison
April 4, 2023
Page 8

 

## CERTIFICATE OF SERVICE

I certify that on April 4, 2023, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

<u>s/ Joshua E. D'Ancona</u>
Joshua E. D'Ancona