# EXHIBIT 3

# BAKER BOTTS LLP

| | | |
|---|---|---|
| 910 LOUISIANA | AUSTIN | MOSCOW |
| HOUSTON, TEXAS | BRUSSELS | NEW YORK |
| 77002-4995 | DALLAS | PALO ALTO |
| | DUBAI | RIYADH |
| TEL +1 713.229.1234 | HONG KONG | SAN FRANCISCO |
| FAX +1 713.229.1522 | **HOUSTON** | WASHINGTON |
| BakerBotts.com | LONDON | |

February 25, 2023

016858.0143

Amy Pharr Hefley
TEL +1 713.229.1270
FAX +1 713.229.2770
amy.hefley@bakerbotts.com

*VIA ELECTRONIC MAIL*

Joshua E. D'Ancona
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

David R. Kaplan
SAXENA WHITE P.A.
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, California 92075

> Re:  Civil Action No. 4:21-cv-00575; *In re Apache Corp. Securities Litigation*; In the U.S. District Court for the Southern District of Texas, Houston Division

Dear Josh and David:

We write in response to your February 20, 2023 letter regarding the discovery process, in which you state that you seek to memorialize certain aspects of the parties' February 7, 2023 and February 13, 2023 meet-and-confer conferences, as well as the parties' December 29, 2022 Rule 26(f) conference. Below, we correct, clarify, and confirm where appropriate your recounting of the parties' discussions and respond to any suggestion that Defendants have been less than diligent or forthcoming in their efforts to comply with discovery obligations.

***Availability of Documents/Custodial Sources***. Your allegation that Defendants have been dilatory in identifying reasonably available sources of discovery is incorrect. As a threshold matter, Plaintiffs did not ask merely whether relevant data sources were being preserved for this lawsuit—the answer to that would have of course been yes. Rather, Plaintiffs asked for details regarding what data was available for Apache's former employees (of which there are hundreds, given, among other things, Apache's restructuring in 2020, which included the closure of Apache's San Antonio office) generally. The notion that Defendants could or should have come to the meet and confer prepared to discuss that broad topic is off base, particularly when Defendants advised you at the outset that they were prepared to discuss what they understood to be on the agenda for the meet and confer—the document requests for which Defendants had requested a meet and confer.

**BAKER BOTTS** LLP

- 2 -

To set the discussions in their proper context, Plaintiffs did not serve their requests for production (comprising 56 categories of documents) until after the parties' December 29, 2022 Rule 26(f) conference. Thereafter, Defendants not only provided written responses and objections to those requests, but also identified 34 document custodians most likely to have information responsive to the requests and provided their names and titles to Plaintiffs. Defendants also promptly located and produced the organizational charts that Plaintiffs requested that Defendants prioritize to facilitate Plaintiffs' evaluation of Defendants' proposed custodian list. As you know, the parties have traded emails regarding Plaintiffs' request to add 58 additional custodians, but the parties have not yet settled on an agreed set of custodians. Once they do (or the Court orders a reasonable number of custodians), Defendants will identify the document sources being searched for those custodians.

Defendants also informed you that, as a practical matter, because Plaintiffs' requests go back a decade or more (to January 1, 2012 in many cases) and relate in large part to former employees in the San Antonio office (which closed a year before any conceivable duty to preserve attached), the natural possibility exists that there are former employees for whom Apache does not have data. We did not—and have never—foreshadowed "any issues about preserving discoverable information," Fed. R. Civ. P. 26(f)(3)(C), or other obstacles in Defendants' ongoing preservation efforts. To the extent Plaintiffs seek discovery on the nature of Defendants' "preservation, search for, collection, maintenance, destruction, or alteration of Documents," (Request No. 55), Defendants objected to that request as seeking privileged information—an objection that Plaintiffs did not broach during our multiple hours' worth of meet-and-confer conferences. Defendants have, however, agreed to produce any ESI policies and procedures applicable during the Relevant Period (*see* Response to Request No. 56) and will do so as part of their rolling productions.

With respect to backup tapes in particular, our recollection of the parties' discussion differs from yours. We never agreed to engage in a discussion on the availability of documents from sources like backup tapes—for the avoidance of doubt, Defendants will *not* be searching backup tapes absent an extraordinary showing that reasonably available sources are somehow deficient. Your seeming contention that Plaintiffs are per se entitled to backup tapes and other like sources gets the Sedona Principles backwards. *See The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production*, 19 SEDONA CONF. J. 1, 137 (2018) ("A party seeking relevant emails demands a search of backup tapes (used for disaster recovery purposes) for any relevant materials. No showing of special need or justification is made for the search, and the responding party took reasonable steps to preserve relevant emails in primary systems, including Exchange or Domino servers and active archives, by timely implementing a legal hold. The request should be denied.").

Ultimately, Plaintiffs' insistence on a detailed itemization of where information is stored and how it will be searched are inappropriate and improper discovery on discovery. *See, e.g.*, *id.* at 123 ("[N]either a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia

**BAKER BOTTS** LLP

- 3 -

(versus general allegations of deficiencies or mere 'speculation') of a material failure by the responding party to meet its obligations.'"). That being said, as I have stated multiple times on our calls, Defendants intend to be transparent and cooperative with Plaintiffs regarding the search process. That includes, as mentioned above, our proposal to identify available document sources on a custodian-specific level once the custodians are determined. And it also includes identifying any central files or document repositories (*e.g.*, shared drives) that will be searched.

*Text/Chat/BYOD Policy.* As we explained on our February 6 call regarding the ESI protocol, we questioned the accuracy of your assertion that text messages/chats/instant messages (IMs) were "prevalent" forms of relevant communications at Apache during the Relevant Period. As with many companies, use of communication platforms like Teams was not prevalent at Apache until after the COVID pandemic began. Regardless, as we explained, Apache's systems did not copy or retain non-Teams IMs in real time, so there will be no repository of IMs to search for most, if not all, of the Relevant Period. Defendants will cover Teams messages in any custodian interviews. And Defendants will communicate to Plaintiffs the custodians for whom those interviews prompt the need to search for responsive Teams messages.

With respect to Apache's "Bring Your Own Device" (BYOD) policy, during the Relevant Period, Apache employees were permitted to utilize their own devices, subject to certain security requirements and Apache's right to monitor usage on an as-needed basis. As we previously explained, some Apache employees used their own devices, and some did not. Likewise, some Apache employees communicated via text, and some did not. Once the relevant custodian set has been determined by the parties or the Court, devices and use of text messages are topics that Defendants will of course cover in any custodian interviews. And Defendants will communicate to Plaintiffs the custodians for whom those interviews prompt the need to search for responsive text messages.

*Ryder Scott/SEC.* Plaintiffs proposed to add Rick Molohan to the custodian list, and Defendants expect that he would be a good source to locate communications with Ryder Scott. Accordingly, Defendants will add him to the custodian list. As for communications with the SEC regarding Alpine High during the Relevant Period, Defendants believe those documents would consist of Defendants' SEC filings and be captured through searches for those documents. But to the extent the parties identify an employee who otherwise communicated with the SEC about Alpine High during the Relevant Period, Defendants will be happy to meet and confer with Plaintiffs regarding what, if any, additional searches need to be run.

*Objections/Responses to Definitions.* Defendants respond as follows to your summation of the parties' discussions of defined terms:

- Defendants will interpret the term "Alpine High" to include the surrounding region of Alpine High, even if the particular parcel was not ultimately acquired or leased.

**BAKER BOTTS** LLP

- 4 -

- Defendants will interpret the term "meeting" to encompass more than just prescheduled meetings, but not every chance encounter or interaction. Defendants agree that an "instant message" falls within the term "Communications."

- Defendants will produce policies and contracts, to the extent responsive, that were operative during the Relevant Period, even if prepared or published prior to January 1, 2016.

- Defendants agree that they are not excluding from their search policies and procedures relevant to Plaintiffs' allegation that Alpine High was treated differently than other regions. However, Defendants reassert their objection, discussed below, to Plaintiffs' Requests 16 and 17, which relate to organizing "super regions" and Apache's asset sales involving regions other than Alpine High.

*Wholly Unrelated Documents.* Our identification (and your recitation) of illustrative examples of "wholly unrelated" categories of documents is exactly that. It does not exhaust every conceivable instance of such documents, and Defendants are under no obligation to itemize the entire universe of such documents before the search process has even begun. Instead, Defendants will propose search terms intended to capture the documents relevant to this case—principally, Alpine High's production and economic performance in conjunction with Defendants' statements. And Plaintiffs will then undoubtedly respond with additional/refined terms intended to capture relevant, responsive documents, with the parties working cooperatively towards an agreeable set.

*Central Whistleblower File.* In response to your inquiry on our second meet-and-confer call, we have determined that Apache maintains a hotline run by a third party, Convercent, that receives incident reports or complaints. This third-party hotline was launched by Apache in late 2017. Defendants agree to check with Convercent to confirm whether any non-privileged, responsive documents exist.

*Specific Requests.* We will produce responsive documents consistent with our responses and objections to Plaintiffs' Requests for Production and our duties under the Federal Rules of Civil Procedure. With respect to your summation of the parties' discussions of specific requests and/or requests for Defendants to reconsider certain objections, we respond as follows:

- Request 15: We believe that your discussion of Request 15 is actually in reference to Request 16 (concerning Apache's super regions). With respect to Request 15, we appreciate your clarification that Plaintiffs are not currently requesting lease negotiations documents and documentation of Apache's ultimate land acquisitions for Alpine High, and with that clarification, Defendants will agree to search for reports and presentations regarding analysis and strategy for Apache's Alpine High acquisitions.

- Requests 16/17: Following our prior discussions, we are still struggling to understand what specific documents Plaintiffs seek with respect to Requests 16 and 17. A request for "all" documents concerning Apache's reorganization into international super regions, and "all"

**BAKER BOTTS** LLP

- 5 -

documents concerning Apache's sales of billions of dollars' worth of assets, remain patently overbroad—and you continue to offer no guidance reasonably cabining those requests. Still, in the spirt of compromise, Defendants will agree to search for reports and presentations discussing analysis and strategy regarding Apache's formation of certain super regions and planned budget/capital expenditures for those super regions, as they relate to Alpine High.

- <u>Request 21</u>: With respect to systems relevant to Alpine High, Defendants will propose search terms geared at capturing alleged implementation or roll-out protocols or manuals (if any) for such systems.

- <u>Request 22</u>: We appreciate your clarification regarding the categories of production/geological data sought. As you can imagine, given the volume of that data, Defendants are still working to assess the best mechanism for collecting, reviewing, and producing such data, and intend to work cooperatively with Plaintiffs on that front.

- <u>Requests 24/43</u>: With respect to Requests 24 (related to "infrastructure") and 43 (related to Altus Midstream), Defendants continue to object that "all" documents related to those broad topics is overbroad and unduly burdensome. Nevertheless, Defendants will propose search terms geared at narrowing those categories to documents related to volume commitments and infrastructure issues, insofar as they relate to Defendants' statements challenged in the Complaint (e.g., at CCAC ¶ 256).

- <u>Request 25</u>: Defendants confirm Plaintiffs' clarification of the documents sought with respect to Request 25 and will include such documents within their search.

- <u>Requests 30/34</u>: Defendants confirm Plaintiffs' clarification of the documents sought with respect to Requests 30 and 34 and will include such documents within their search.

- <u>Request 37</u>: Defendants will propose search terms related to the alleged termination of the individuals identified in Request 43.

- <u>Request 50</u>: Defendants confirm Plaintiffs' clarification of the documents sought with respect to Requests 50, insofar as those Strategic Goals relate to Alpine High, and will include such documents within their search.

\* \* \*

Subject to the clarifications and discussion above, Defendants reserve all objections contained in their Responses and Objections to Plaintiffs' Requests for Production. We reiterate our desire to continue to work with you in good faith to resolve and refine any outstanding discovery issues moving forward.

**BAKER BOTTS** LLP

- 6 -

Sincerely,

Amy Pharr Hefley