# EXHIBIT M

Page 1

```
 1       IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
 2                 HOUSTON DIVISION
 3
 4   In Re:                      )
                                 )
 5                               ) Civil Action No.
     APACHE CORP. SECURITIES     ) 4:21-cv-00575
 6   LITIGATION                  )
                                 )
 7
 8
 9        ORAL AND VIDEOTAPED DEPOSITION
                      OF
10               DAVID SULLIVAN
                 MAY 25, 2023
11
```

Page 2

```
 3        ORAL AND VIDEOTAPED DEPOSITION OF
 4   DAVID SULLIVAN, produced as a witness at the
 5   instance of the Defendant and duly sworn, was
 6   taken in the above-styled and numbered cause
 7   on May 25, 2023, from 9:05 a.m. to 11:57 a.m.,
 8   CDT, before KATERI A. FLOT-DAVIS, CSR, CRR, in
 9   and for the State of Texas, reported by
10   machine shorthand, pursuant to the Federal
11   Rules of Civil Procedure and the provisions
12   stated on the record herein.
```

Page 3

```
 1              A P P E A R A N C E S
 2
     FOR THE CO-LEAD PLAINTIFF TRUSTEES OF THE
 3   TEAMSTERS UNION NO. 142 PENSION FUND and
     CO-LEAD COUNSEL FOR THE CLASS:
 4
     RICHARD A RUSSO, JR., ESQ.
 5   Kessler Topaz Meltzer & Check, LLP
     280 King of Prussia Road
 6   Radnor, Pennsylvania 19087
     rrusso@ktmc.com
 7
 8   SARA DILEO, ESQ.
     Saxena White P.A.
 9   10 Bank Street
     Ste. 882
10   White Plains, New York 10606
     sdileo@saxenawhite.com
11
12
13   FOR DEFENDANTS APACHE CORPORATION, JOHN J.
     CHRISTMANN IV, TIMOTHY J. SULLIVAN AND STEPHEN
14   J. RINEY:
15   JOHN BAKER, ESQ.
     Baker Botts, L.L.P.
16   910 Louisiana Street
     Houston, Texas 77002
17   john.baker@bakerbotts.com
18
     JOHN B. LAWRENCE, ESQ.
19   Baker Botts L.L.P.
     2001 Ross Avenue
20   Ste. 900
     Dallas, Texas 75201
21   john.lawrence@bakerbotts.com
22
23   Also Present:
24   Caylob Suarez, Videographer
25
```

Page 4

```
 1                    INDEX
 2
                                            PAGE
 3
 4
 5   Appearances...........................    3
 6
 7
 8   DAVID SULLIVAN
 9
10       Examination by Mr. Lawrence..........   7
11       Examination by Ms. DiLeo.............  127
12
13   Signature and Changes...................  132
14   Reporter's Certificate..................  134
```

Page 5

```
 1                EXHIBITS
 2
    NO.       DESCRIPTION              PAGE
 3
 4
 5  Exhibit 1  Defendants' Amended Notice
                of Videotaped Deposition...  17
 6
 7
 8  Exhibit 2  Class Action Complaint.....   30
 9
10
    Exhibit 3  Consolidated Class Action
11              Complaint for Violations
                of the Federal Securities
12              Laws.....................    34
13
14
    Exhibit 4  Investment Management
15              Agreement, dated 3/27/07,
                Bates Stamped
16              PLYMOUTHCOUNTY_-00000276...  57
17
18
    Exhibit 5  Portfolio Analysis, dated
19              December 31, 2019,
                Bates Stamped
20              PLYMOUTHCOUNTY_00000098....  66
21
22
23
24
25
```

Page 6

```
 1
 2
 3  Exhibit 6  Plymouth County Retirement
                Board March 24, 2020
 4              Regular Meeting............  73
 5
 6  Exhibit 7  Portfolio Analysis, dated
                September 30, 2021.........  88
 7
 8
 9  Exhibit 8  Portfolio Analysis, dated
                December 31, 2021..........  93
10
11
12
    Exhibit 9  Plymouth County Retirement
13              Board August 31, 2021
                Regular Meeting............ 107
14
15
...
```

Page 7

```
 1              P R O C E E D I N G S
 2
 3        THE VIDEOGRAPHER:  We're on the
 4   record on May 25th, 2023, at 9:05 a.m.,
 5   Central Time, for the remote deposition
 6   of Mr. David Sullivan in the matter of
 7   In Re:  Apache Corp Securities
 8   Litigation.
 9        My name is Caylob Suarez and I am
10   the videographer on behalf of Lexitas.
11        All present will be noted on the
12   stenographic record.
13        Will the court reporter please
14   swear in the witness.
15        (Witness sworn.)
16
17        DAVID SULLIVAN,
18   having been first duly sworn, testified as
19   follows:
20              EXAMINATION
21   BY MR. LAWRENCE:
22      Q.   Good morning, Mr. Sullivan.
23           How are you?
24      A.   Good.
25      Q.   Have you been deposed before?
```

Page 8

```
 1      A.   I have.
 2      Q.   About how many times?
 3      A.   I believe this is my seventh
 4   deposition.
 5      Q.   And were the other six also in
 6   connection with securities litigation?
 7      A.   They were.
 8      Q.   All of them, or are there any in
 9   addition to those?
10      A.   No.  All of them.
11      Q.   Okay.
12           When was the last time you were
13   deposed?
14      A.   I believe -- it was early in the
15   spring.  I believe it was March.
16      Q.   Where are you physically located
17   today?
18      A.   I'm in the Saxena White's office in
19   Boca Raton.
20      Q.   Who else is in the room with you?
21      A.   Saxena White's lawyer, Sara Dileo.
22      Q.   Do you have any documents or notes
23   with you?
24      A.   I do not.
25      Q.   Do you have any programs on your
```

Page 73

1 market as a whole.
2 Q. And what do you mean by "unusual
3 fluctuations in the market as a whole"?
4 A. That the, you know, case of March
5 of 2020, the decreases and the subsequent
6 increases were just, you know, more dramatic
7 than, you know, other periods -- or normal
8 periods of time.
9 MR. LAWRENCE: Why don't we do
10 this: Let's look at --
11 What are we on?
12 No. 5? Exhibit 5?
13 THE REPORTER: The next one will be
14 Six.
15 MR. LAWRENCE: Thank you.
16 Let's look at the March 24th, 2020,
17 Plymouth board members, which we'll mark
18 as Exhibit 6.
19 (Exhibit No. 6 Marked.)
20 Q. (BY MR. LAWRENCE) Do you recognize
21 this document, Mr. Sullivan?
22 A. I do.
23 Q. And if we -- I guess -- what is
24 the -- these are the minutes of the Plymouth
25 County Retirement Board from March 24th, 2020.

Page 74

1 A. Yes.
2 Q. What -- what is the -- what is the
3 purpose of this document?
4 A. Well, it's -- it's the official
5 record of our monthly meeting, you know, which
6 we're required to have a monthly meeting, once
7 a month.
8 MR. LAWRENCE: And if we scroll to
9 the last page in this document, I think
10 we'll see -- it says: "Minutes prepared
11 by: David J. Sullivan, Executive
12 Director."
13 Is that right.
14 MS. DILEO: If you want to take a
15 minute to just look through there.
16 Are you going to be asking more
17 questions about the content of the
18 document?
19 MR. LAWRENCE: I will.
20 But -- and I can direct him to
21 pages and he can look around.
22 But right now I'm just trying to
23 establish that he's the one who prepared
24 these minutes.
25 THE WITNESS: Yeah.

Page 75

1 No, I'm good.
2 I -- I sought board approval.
3 MR. LAWRENCE: Yeah.
4 Q. (BY MR. LAWRENCE) So is the way it
5 works, after each meeting you prepared the
6 minutes; but, of course, then the board, at
7 the next meeting, approves them as being the
8 appropriate; true?
9 A. Yeah. The preparation is a
10 collaborative effort by more than just myself.
11 But the -- you know, the final
12 review before it goes to the board was mine.
13 And that's why it says, "Minutes prepared by"
14 myself, because I -- I would sign off before
15 it would go to the board.
16 Q. So you're the one responsible for
17 preparing minutes.
18 People under you may do -- assist
19 in that process, but you're the one
20 responsible for preparing these and you make
21 sure that they're ready to go to the board
22 before the board sees them?
23 A. Correct.
24 Q. Okay.
25 If we go to the fifth page of this

Page 76

1 document, there are -- at the top of each page
2 there are numbers. It's the top-of-the-page
3 number 8539.
4 And we see something that says,
5 "Meketa Update."
6 Do you see that?
7 A. I do.
8 Q. And you mentioned Meketa before.
9 This is the consultant that oversaw
10 the managers?
11 A. Correct.
12 Q. Okay.
13 It starts with: "Prior to the
14 commencement of this update, board member
15 Mr. McDonough requested that the board freeze
16 all presentations for sixty days because of
17 the unprecedented market and circumstances."
18 Do you see that?
19 A. I do.
20 Q. And who is Mr. McDonough?
21 A. He's one of the elected board
22 members.
23 Q. How many board members are there?
24 A. Five.
25 Q. And do you know how long

Page 77

1 Mr. McDonough had been on the board?
2  A. I'm going to guess, at this stage,
3 over 30 years.
4  Q. Would you agree that there were,
5 quote, "unprecedented market and
6 circumstances" at this point in time?
7  A. I do remember this meeting. I
8 don't remember all my meetings there at
9 Plymouth County, but I remember this meeting.
10  But I remember not being in
11 agreement with Mr. McDonough's opinions at
12 this meeting.
13  Q. Not being in agreement with his
14 opinion that the board should freeze
15 presentations, or -- or not in agreement with
16 his assessment that the situation was
17 unprecedented?
18  A. Pretty much everything; that I was
19 just not in agreement with Mr. McDonough this
20 day.
21  Q. Okay.
22  So you did not think that the
23 situation in March of 2020 was unprecedented?
24  MS. DILEO: Objection to form.
25  THE WITNESS: I -- I did not.

Page 78

1  But I also recognized, with
2 relation to, you know, investments and
3 investment managers' decisions, I was
4 not a voting member. So any opinion
5 that I had was mine, and my own, and
6 generally kept to myself.
7  Q. (BY MR. LAWRENCE) Do you recall
8 why Mr. McDonough believed that the market was
9 unprecedented?
10  MS. DILEO: Objection to form.
11  Calls for speculation.
12  THE WITNESS: I just believe it was
13  COVID-related.
14  Q. (BY MR. LAWRENCE) What did he say
15 in the meeting about that?
16  A. It -- it's -- these -- these
17 minutes, you know, do speak for themselves.
18 We've always, you know, attempted to be
19 transparent at our meetings.
20  And maybe it's not a complete
21 transcript, but we do -- I do believe that,
22 you know, everything that's written in this
23 meeting is -- is fair of what happened that
24 day.
25  And, you know, I can see, coming

Page 79

1 down another couple paragraphs, he's stating
2 something else, as well.
3  So I do believe these minutes speak
4 for themselves.
5  Q. A couple paragraphs down, it says,
6 quote: "Board member Mr. McDonough stated
7 that we are in uncharted territory and
8 reiterated putting a moratorium in place for
9 sixty days..."
10  Is that what you're referring to?
11  A. That's a snippet of -- of this.
12  MS. DILEO: And, again, if you want
13  to read this whole -- these paragraphs,
14  take your time and read them.
15  And we can continue with questions
16  when you're ready.
17  THE WITNESS: Yeah. I mean, I can
18  see that.
19  Again, I do specifically remember
20  this meeting.
21  Q. (BY MR. LAWRENCE) March 2020 was a
22 momentous time in your career?
23  MS. DILEO: Objection to form.
24  THE WITNESS: I would use -- I
25  would use the word "memorable," not

Page 80

1  "momentous."
2  Q. (BY MR. LAWRENCE) Why was it
3 memorable?
4  A. What was going on with COVID was --
5 was pretty memorable, and it's -- it was
6 just -- it was a time I remember.
7  And, as I said, I don't remember
8 all the meetings, but I do remember this one.
9  Q. Why do you remember this one?
10  MS. DILEO: Objection to form.
11  THE WITNESS: First and foremost,
12  it was the first board meeting we ever
13  did remotely; and just scrambling to get
14  it onto -- go to meeting format and
15  pulling everything off was memorable, in
16  itself.
17  Q. (BY MR. LAWRENCE) In the fourth
18 paragraph we see minutes discussing
19 Mr. Manning's comments.
20  And remind me, Mr. Manning, is the
21 title director of investments?
22  Is that -- what was his title?
23  A. Director of investments.
24  Q. Okay.
25  And where does that sit?

Page 81

1 Does that -- does he report
2 directly to you?
3  A. He does.
4  Q. Okay.
5   MS. DILEO: Did.
6   THE WITNESS: Did. Sorry.
7  Q. (BY MR. LAWRENCE) And -- and these
8 minutes, it says: "Mr. Manning" --
9 acknowledges -- "acknowledged that this is
10 something brand new to capital markets..."
11   Did you agree with Mr. Manning,
12 that this was something brand new to capital
13 markets?
14   MS. DILEO: Objection to form.
15   THE WITNESS: I wouldn't have used
16  the word "brand new."
17  Q. (BY MR. LAWRENCE) What is -- what
18 is the "this" that Mr. Manning was referring
19 to?
20   MS. DILEO: Objection to form.
21   THE WITNESS: Again, I just think
22  all, you know, the -- the COVID-related,
23  you know, of the day, you know, what was
24  going on with COVID in March of 2020.
25  Q. (BY MR. LAWRENCE) And, in

Page 82

1 particular, how it was impacting the capital
2 markets.
3   MS. DILEO: Objection to form.
4  Q. (BY MR. LAWRENCE) That's what he's
5 talking about, right?
6  A. That's what Mr. Manning is talking
7 about here, yes.
8  Q. And, in Mr. Manning's view, the
9 impact of COVID on the capital markets was,
10 quote, "extremely unprecedented"; is that
11 right?
12  A. That -- that's Mr. -- that was
13 Mr. Manning's view.
14  Q. And it was also Mr. Manning's view
15 that, quote, "...fear was a factor..."?
16  A. That was Mr. Manning's view that
17 day.
18  Q. Do you recall him explaining what
19 he meant by "fear was a factor"?
20  A. I do not.
21  Q. Was -- was there a belief by
22 Mr. Manning and others that, during this
23 timeframe, some investors were trading based
24 on fear rather than facts?
25   MS. DILEO: Objection to form.

Page 83

1  Calls for speculation.
2   THE WITNESS: Yeah, I -- I wouldn't
3  make that leap. I'm -- I'm not exactly
4  sure what he specifically was referring
5  to.
6  Q. (BY MR. LAWRENCE) Well, what did
7 you understand him to mean?
8  A. Just the -- the overall market,
9 that there were factors that, in his opinion,
10 you know, influenced people.
11  Q. And in his opinion one of those
12 factors influencing people was fear?
13   MS. DILEO: Objection to form.
14   THE WITNESS: I believe in his
15  opinion on that day, yes.
16  Q. (BY MR. LAWRENCE) And then the
17 sentence concludes: "...and that volatility
18 in unpredictable."
19   I assume that should be "...is
20 unpredictable"?
21  A. It -- it looks like a typo, yes.
22   And, again, that would be, you
23 know, his view.
24  Q. Why is -- why would unpredictable
25 volatility be relevant to someone in

Page 84

1 Mr. Manning's job as director of investments?
2  A. I think, again, his job was solely
3 related to the -- you know, the investments
4 and, you know, he -- he's entitled to, and
5 quite often did, give opinions on -- on the
6 markets and the portfolio as a whole.
7  Q. And -- and how would -- how would
8 unpredictable volatility be relevant to the
9 assessments he was making?
10   MS. DILEO: Objection. Form.
11   THE WITNESS: I didn't hear the
12  last part of your sentence. I'm sorry.
13  Q. (BY MR. LAWRENCE) How would
14 unpredictable volatility be relevant to the
15 assessments Mr. Manning was making in his job?
16   MS. DILEO: Same objection.
17   THE WITNESS: It's, you know, to --
18  to his opinion, and not just his opinion
19  that day, but, you know, perhaps his
20  opinion the next month or the next
21  months, as well.
22  Q. (BY MR. LAWRENCE) Is volatility
23 something that somebody overseeing investments
24 likes to see or doesn't like to see?
25   MS. DILEO: Objection to form.

Page 133

```
 1        I, DAVID SULLIVAN, have read the
   foregoing deposition and hereby affix my
 2 signature that same is true and correct,
   except as noted above.
 3
 4
   _____
 5 DAVID SULLIVAN
 6
 7
   THE STATE OF _____)
 8 COUNTY OF _____)
 9
          Before me,
10 _____, on this day
   personally appeared DAVID SULLIVAN, known to
11 me (or proved to me under oath or through
   _____) (description of
12 identity card or other document) to be the
   person whose name is subscribed to the
13 foregoing instrument and acknowledged to me
   that they executed the same for the purposes
14 and consideration therein expressed.
          Given under my hand and seal of
15 office this _____ day of
   _____, _____.
16
17
   _____
18 NOTARY PUBLIC IN AND FOR
   THE STATE OF _____
19 COMMISSION EXPIRES: _____
20
21
22
23
24
25
```

Page 134

```
 1         IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                  HOUSTON DIVISION
 3
   In Re:                   )
 4                          )
                            ) Civil Action No.
 5 APACHE CORP. SECURITIES  ) 4:21-cv-00575
   LITIGATION               )
 6                          )
 7
              REPORTER'S CERTIFICATION
 8                  DEPOSITION
                       OF
 9                DAVID SULLIVAN
                  MAY 25, 2023
10
11
12         I, Kateri A. Flot-Davis, Certified
13    Shorthand Reporter in and for the State of
14    Texas, hereby certify to the following:
15       That the witness, DAVID SULLIVAN, was duly
16    sworn by the officer and that the transcript
17    of the oral deposition is a true record of the
18    testimony given by the witness;
19       There was a request for examination and
20    signature of the witness to the deposition
21    transcript.  The original transcript was sent
22    for review on _____ to the
23    witness or to the attorney for the witness for
24    examination, signature and return to me by
25    _____;
```

Page 135

```
 1      I further certify that I am neither counsel
 2 for, related to, nor employed by any of the
 3 parties or attorneys in the action in which
 4 this proceeding was taken, and further that I
 5 am not financially or otherwise interested in
 6 the outcome of the action.
 7      Certified to by me this ___ of _____
 8 ,_____.
 9
10  /s/ Teri Davis
11 _____
   Kateri A. Flot-Davis
12 Texas CSR No. 8462
   Expiration Date: 09-30-24
```