# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE APACHE CORP. SECURITIES LITIGATION | Case No. 4:21-cv-00575 |
| | District Judge George C. Hanks, Jr. |
| | Magistrate Judge Andrew M. Edison |
| | <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF <u>CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT............................. 1

II.     ARGUMENT ..........................................................................................................4

        A.      Legal Standards for Evaluating Price Impact.................................................4

        B.      Defendants Concede Price Impact During the Class Period.........................8

                1.      Defendants' Concession of Front-End Price Impact Precludes
                        Showing a Complete Lack of Price Impact........................................9

                2.      Defendants' Concession of Price Impact for Two Corrective
                        Disclosures Precludes Showing a Complete Lack of Price
                        Impact..................................................................................................11

        C.      Defendants' Misguided "Focus Period" Arguments Fail............................11

                1.      Defendants Have Not Proven a Complete Lack of Price
                        Impact Based on the April 23, 2019 Partial Corrective
                        Disclosure...........................................................................................14

                2.      Defendants Have Not Proven a Complete Lack of Price
                        Impact Based on the October 25, 2019 Partial Corrective
                        Disclosure...........................................................................................19

                3.      Defendants Have Not Proven a Complete Lack of Price
                        Impact Based on the March 16, 2020 Partial Corrective
                        Disclosure...........................................................................................22

III.    CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ........................................................................................ 8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ................................................................................................. 15-16

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*,
   597 F.3d 330 (5th Cir. 2010) ........................................................................................ 7

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   2023 WL 5112157 (2d Cir. Aug. 10, 2023) ........................................................ 5-6, 7-8

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ...................................................................................................... 4

*Bing Li v. Aeterna Zentaris, Inc.*,
   324 F.R.D. 331 (D.N.J. 2018), *affirmed sub nom.*
   *Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019) .................... 15

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
   2023 WL 2932485 (D. Conn. Apr. 13, 2023) ................................................... 1, 4, 5, 11

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
   322 F. Supp. 3d 676 (D. Md. 2018) .............................................................................. 4

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
   2015 WL 5097883 (D.N.J. Aug. 31, 2015) .................................................................. 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   309 F.R.D. 251 (N.D. Tex. 2015) ............................................................................... 15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ................................................................................................. 8, 18

*Ferris v. Wynn Resorts Ltd.*,
   2023 WL 2337364 (D. Nev. Mar. 1, 2023) .............................................................. 8, 20

*FindWhat Inv. Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) .................................................................................... 7

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
  141 S. Ct. 1951 (2021) ................................................................................*passim*

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ............................................................................................. 4

*Heck v. Orion Grp. Holdings, Inc.*,
  468 F. Supp. 3d 828 (S.D. Tex. 2020) ........................................................... 20

*In re Acadia Healthcare Co., Inc.*,
  2023 WL 3620955 (6th Cir. May 23, 2023) ................................................. 11

*In re Allergan PLC Sec. Litig.*,
  2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)................................... 17, 21, 24

*In re Allstate Corp. Sec. Litig.*,
  2020 WL 7490280 (N.D. Ill. Dec. 21, 2020) ............................................... 17

*In re Apple Inc. Sec. Litig.*,
  2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ............................................. 4, 18

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  281 F.R.D. 134 (S.D.N.Y. 2012) ................................................................... 16

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  337 F.R.D. 193 (D. Minn. 2020)..................................................5, 11, 24-25

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019)....................................*passim*

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ....................................... 3, 10

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
  2017 WL 2608243 (S.D. Tex. June 15, 2017) ....................................... 18, 25

*In re Enron Corp. Sec.*,
  465 F. Supp. 2d 687 (S.D. Tex. 2006) ..................................................19-20

*In re EQT Corp. Sec. Litig.*,
  2022 WL 3293518 (W.D. Pa. Aug. 11, 2022) ............................................. 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  618 F. Supp. 2d 311 (S.D.N.Y. 2009)...................................................23-24

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ...................................................... 15

*In re Mattel, Inc., Sec. Litig.*,
   2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) .................................................... 7, 8

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
   424 F. Supp. 2d 880 (N.D. Tex. 2005) ........................................................ 20

*In re SunEdison, Inc. Sec. Litig.*,
   329 F.R.D. 124 (S.D.N.Y. 2019) .............................................................. 16

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   2014 WL 6661918 (N.D. Ala. Nov. 19, 2014) ................................................ 25

*Malriat v. QuantumScape Corp.*,
   2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) .............................................. 22

*Marcus v. J.C. Penney Co., Inc.*,
   2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) ............................................ 15-16

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) ....................................................... 11, 14, 16-17

*Pearlstein v. BlackBerry Ltd.*,
   2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ................................................. 18

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys*,
   769 F.3d 313 (5th Cir. 2014) ............................................................... 7, 22

*Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
   2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) ............................................. 13

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ....................................................... 15, 19, 24

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
   2023 WL 4865617 (S.D.N.Y. July 31, 2023) ................................................ 14

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
   2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022) ...................................... 8, 11, 15, 22

*Strougo v. Tivity Health, Inc.*,
   606 F. Supp. 3d 753 (M.D. Tenn. 2022), *vacated and remanded on
   other grounds sub nom. In re Tivity Health, Inc.*,
   2022 WL 17243323 (6th Cir. Nov. 21, 2022) ............................................... 23

iv

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ................................................................. 16

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    333 F.R.D. 39 (S.D.N.Y. 2019) ...................................................................................... 19

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ................................................................................................ 9

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) .................................................................................... 21

v

## NOTE ON CITATION FORMATS

Unless otherwise noted: (1) all emphasis is added; (2) all internal quotation marks, citations, and original emphases and alterations are omitted; and (3) capitalized terms have the meanings ascribed to them in Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel and Supporting Memorandum of Law ("Motion," Dkt. 101). Commonly used citations in this brief take the following form:

| Citation/Reference | Description |
|---|---|
| ¶[•] | Paragraphs in the Complaint (Dkt. 65) |
| Opp. [•] | Defendants' Opposition to Plaintiffs' Motion (Dkt. 117) |
| Allen | Defendants' expert, Lucy P. Allen |
| Allen Rpt., ¶[•] | Paragraphs in the June 16, 2023 Expert Report of Lucy Allen (Ex. A (Dkt. 117-2)) |
| Allen Tr., [•] | Transcript of the July 27, 2023 deposition of Lucy P. Allen (PX 2) |
| Nye | Plaintiffs' expert, Zachary Nye, Ph.D. |
| Nye Reb., ¶[•] | Paragraphs in the accompanying August 11, 2023 Expert Rebuttal Report of Zachary Nye, Ph.D. ("Nye Rebuttal," PX 1) |
| Nye Rpt., ¶[•] | Paragraphs in the April 7, 2023 Expert Report of Zachary Nye, Ph.D. ("Nye Report," Dkt. 101-3) |
| Corrective Disclosures | The alleged partial corrective disclosures that occurred on October 9, 2017, February 22, 2018, April 23, 2019, October 25, 2019, and March 16, 2020 (¶¶304-16) |
| Defendants | Apache Corporation ("Apache"), John J. Christmann IV, Timothy J. Sullivan, and Stephen J. Riney |
| Plaintiffs | Court-appointed Lead Plaintiffs Plymouth County Retirement Association and the Trustees of the Teamsters Union No. 142 Pension Fund |
| Rule | Federal Rule of Civil Procedure |
| Ex. [•] | Exhibits to the Hefley Declaration (Dkt. 117-1) |
| PX [•] | Exhibits to the accompanying Declaration of Thomas R. Ajamie |

vi

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants concede that Plaintiffs satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy.[1] Defendants also do not contest Plaintiffs' showing that: (1) the Class meets Rule 23(b)(3)'s superiority requirement; (2) the market for Apache common stock was efficient during the entire Class Period, entitling the Class to invoke the fraud-on-the-market presumption of reliance (the "Presumption"); and (3) damages can be measured using a common methodology consistent with Plaintiffs' liability theory. The only disputed issue pertaining to the Motion is whether Defendants have met their heavy burden of rebutting the Presumption by proving a "***complete lack*** of price impact during the Class Period" by a "preponderance of the evidence." *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *11-12 (D. Conn. Apr. 13, 2023). The answer to this lone remaining question is a resounding "no."

As an initial matter, Defendants do not contest that the Court should certify a class of investors who purchased Apache common stock from the start of the Class Period through the first two Corrective Disclosures, i.e., from September 7, 2016, through February 22, 2018. In fact, Defendants *concede* both "front-end" and "back-end" price impact for this period, and limit their price impact challenge to just a portion of the Class Period—February 23, 2018, through March 13, 2020—which they dub the "Focus Period." Defendants' concession of price impact prior to the "Focus Period," however, dooms their attempts to rebut the Presumption, as the law requires Defendants to prove that their alleged

---

[1]    Defendants likewise do not challenge that Plaintiffs should be appointed as class representatives or that Lead Counsel should be appointed as Class Counsel pursuant to Rule 23(g).

1

misstatements had *no* price impact whatsoever during the *entire* Class Period. Defendants' gambit to carve up the Class Period and challenge only the final three Corrective Disclosures fails in any event, as Defendants' arguments misstate Plaintiffs' theory of liability, disregard the facts, and raise premature, Class-wide merits issues concerning loss causation and materiality that are inappropriate to resolve at class certification.

Defendants' failure to present a valid price impact challenge is understandable. Although discovery is still in its early stages, Defendants have already produced documents that support *both* front-end and back-end price impact for the entire Class Period. These documents, which were prepared for Apache's Board in January 2020, explicitly recognize that: (1) "*Alpine High has been the predominant element of shareholder value expectations and delivery for the majority of the last 5 years*"; and (2) "*Alpine High resulted in a material loss to APA shareholders*."[2] Unsurprisingly, under Nye's event study, Apache's common stock experienced large, statistically significant price increases on each of the three trading days following Defendants' September 7, 2016 misstatements announcing the "discovery" of a "world class resource play" at Alpine High. Neither Defendants nor Allen dispute that this "front-end" price reaction is compelling evidence of price impact, nor have they attempted to explain (let alone prove by a preponderance of the evidence) if, when, or how that admitted positive price impact was fully removed before the start of their "Focus Period." Allen Tr. 12:14-13:6; 75:18-76:4; 76:19-77:1. Thus, the Court need not consider Defendants' "back-end" price impact arguments as to the final

---

[2]    PX 3 ("5 Year Lookback on APA Performance With Primary Focus on Alpine High") at -752, -758. Allen did not review any internal Apache documents. Allen Tr. 34:25-35:13.

2

three Corrective Disclosures because "an absence of back-end price impact does not rebut [the] statistically significant front-end response[s] to the alleged misrepresentation[s]." *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980, at *24 (S.D.N.Y. Oct. 18, 2019), *R. & R. adopted in part by* 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020).

Even if the Court were to consider Defendants' selective "back-end" price impact arguments, they collapse upon scrutiny. According to Defendants, Apache's stock price declines following the three "Focus Period" Corrective Disclosures do not evidence price impact "due to a mismatch, lack of statistically significant price drop, or both." Opp. 14. In addition to studiously ignoring the persistence of positive front-end price impact during their "Focus Period," Defendants fail to sever the link between their alleged misstatements and the Corrective Disclosures, all of which relate to Alpine High and Defendants' fraud.

For instance, Defendants concede that the October 25, 2019 news of the abrupt resignation of Steve Keenan, hailed as the "Godfather of Alpine High," was followed by a statistically significant price decline (Nye Reb., ¶¶34-36, 40), but claim there was no price impact because the market's reaction to Keenan's departure was somehow unrelated to Alpine High. Opp. 19-20. Yet *every analyst report* issued that day explicitly linked Keenan to Alpine High, and news articles explicitly linked Keenan's departure to Defendants' alleged misstatements on the first day of the Class Period. Nye Reb., ¶¶38-39. Apache's internal documents also undermine their arguments. For example, an October 14, 2019 "Project Neptune Update" shows that a comprehensive, internal review of Alpine High data gathered since the play's inception concluded that the "*actual results*" at Alpine High were "*materially below the published [data]*" and "*not even in the ballpark*" of the

3

amounts Defendants' repeatedly hyped to the market throughout the Class Period. This and other Project Neptune documents corroborate Plaintiffs' allegations, and the timing of this damning presentation—just 10 days before Keenan's "resignation"—reinforces that Keenan's departure resulted directly from the Alpine High failure.

Thus, even if the Court were to consider Defendants' irrelevant "Focus Period" arguments, it will readily conclude that Defendants have not proved a complete lack of price impact from their Class Period misstatements.

## II.    ARGUMENT

### A.    Legal Standards for Evaluating Price Impact

***Defendants bear the burden of disproving price impact.*** The Supreme Court has consistently held that where a plaintiff has invoked the Presumption, the burden shifts to the defendant to rebut it by a preponderance of the evidence. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263-64, 283-84 (2014) ("*Halliburton II*") (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)); *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1963 (2021) ("*Goldman*"). To do so, a defendant must do more than merely "challenge plaintiff on the persuasiveness of its own price impact claim." *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *10 (N.D. Cal. Feb. 4, 2022). Instead, "the inquiry is whether Defendants have proven a ***complete lack*** of price impact ***during the Class Period***." *Alexion*, 2023 WL 2932485, at *12; *see also City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 687 (D. Md. 2018) (defendants must prove fraud-related news had "***no price impact whatsoever***").

To meet their heavy burden, Defendants must "***disprove both***" front-end price impact (i.e., that their misstatements caused Apache's stock price to increase) ***and*** back-end price impact (i.e., that Apache's stock price declined in response to disclosures of information relating to the earlier misstatements). *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 209 (D. Minn. 2020); *see also Chi. Bridge*, 2019 WL 5287980, at \*24 (similar). This is a "daunting task." *Alexion*, 2023 WL 2932485, at \*11.

***Assessing Defendants' "mismatch" arguments.*** Relying on the Supreme Court's decision in *Goldman*, Defendants contend that the existence of a "mismatch" between their Class Period misstatements and "Focus Period" Corrective Disclosures disproves price impact. They are wrong.

In *Goldman*, the Supreme Court addressed whether evidence of back-end price impact may infer front-end price impact where the alleged misstatements are highly generic and the corrective disclosures are specific. 141 S. Ct. at 1958-61. Under those particular facts, the *Goldman* Court explained, "it is ***less likely*** that the specific disclosure actually corrected the generic misrepresentation" because "there is a mismatch between the contents of the misrepresentation and the corrective disclosure." *Id.* at 1961. The Court held that in such circumstances, "the generic nature of a misrepresentation often is important evidence of price impact that courts should consider." *Id.* at 1958. *Goldman* is factually and legally inapposite, including for two principal reasons.

*First*, as the Second Circuit recently confirmed, the *Goldman* "mismatch" analysis pertains to the assessment of back-end price impact in a price-maintenance case ***where the alleged misstatements are generic and there is no front-end price impact***. *See Ark. Tchr.*

5

*Ret. Sys. v. Goldman Sachs Grp., Inc.*, 2023 WL 5112157, at *9, 11, 13, 18, 19, 22 (2d Cir. Aug. 10, 2023) ("*Goldman II*") (repeatedly explaining that in pure price-maintenance cases with only generic misstatements, "courts generally look to the back-end price drop ***as a proxy*** for front end price impact"). Defendants concede as much in their brief. Opp. 7 (acknowledging that "mismatch" arguments are designed to undermine notion that a "back-end decline may imply front-end price inflation"). Here, Defendants concede that evidence of "front-end" price impact exists as of September 7, 2016—***the very first day of the Class Period***—thus there is no need to look to a back-end price drop "as a proxy" for front end price impact. *See, e.g.*, Allen Tr. 50:25-51:10; 53:1-10 (positive front-end price movement is evidence of price impact); 106:17-24 (Allen did not analyze front-end price impact during pre-"Focus Period" portion of Class Period); *see infra* Section II.B.1. This undisputed front-end price impact evidence renders Defendants' "mismatch" arguments irrelevant.

*Second*, there is no "genericness" issue here. Unlike the exceedingly generic statements in *Goldman*, such as "integrity and honesty are at the heart of our business" or "we have faith in our business model" (*Goldman II*, 2023 WL 5112157, at *9, 14), the misstatements here are highly specific, such as Defendants' repeated claims throughout the Class Period—including on September 7, 2016, and during the "Focus Period"—that Alpine High was an immense oil and wet gas field, holding an estimated "3 billion barrels of oil" and "75 trillion cubic feet (Tcf) of rich gas."[3] Defendants have not argued otherwise,

---

[3]   Defendants made virtually identical, false statements both prior to the "Focus Period" (*see* ¶¶191-

and the Court has itself confirmed that Defendants' misstatements were "***highly specific and authoritative***." Dkt. 76 at 11. The Corrective Disclosures were similarly specific and directly concerned Alpine High. *See, e.g.*, *In re Mattel, Inc., Sec. Litig.*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) ("The generic representations in *Goldman* . . . are nothing like highly specific financial statements[.]"). Accordingly, *Goldman* involves precisely the opposite situation as here.

In any event, even if the Court were to consider Defendants' "mismatch" arguments, which are rendered irrelevant by their concessions, they fail. Specifically, Defendants' contention that if a corrective disclosure does not reveal "the pertinent truth" misrepresented or concealed by the alleged misstatement, there is a "mismatch" that disproves price impact (Opp. 8), is wrong.[4]

*First*, the Court should reject Defendants' attempt to import Fifth Circuit loss causation precedent into the price impact analysis. Opp. 8.[5] *Goldman* neither articulated

---

93, 231, 248) and during the "Focus Period" (*see* ¶¶266, 275). In fact, many of Defendants' "Focus Period" misrepresentations similarly repeated or affirmed their pre-"Focus Period" misrepresentations, including those made on September 7, 2016, where undisputed evidence of front-end price impact exists. *Compare* ¶¶191-94, *with* ¶¶254-56, 261, 266-67. Thus, at a minimum, price impact exists for the "Focus Period" misstatements because they maintained the front-end price impact that existed in Apache's stock price as a result of Defendants' September 7, 2016 misstatements.

[4]     *Goldman* only observed that a "mismatch" between specific corrective disclosures and earlier, generic misstatements may make price impact "less likely;" it did not hold the opposite—that a precise match, even between highly specific alleged misstatements and corrective disclosures, is required to demonstrate price impact. 141 S. Ct. at 1961.

[5]     In addition, the "pertinent truth" that Defendants claim a corrective disclosure must reveal (Opp. 7-8) is not the standard for assessing a corrective disclosure in the Fifth Circuit. Rather, the language Defendants purport to quote from *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys*, 769 F.3d 313, 321 (5th Cir. 2014), is a quotation of *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311-12 (11th Cir. 2011). In *Amedisys*, the Fifth Circuit held that a corrective disclosure is one where the "truth that emerged was 'related to' or 'relevant to' the defendants' fraud and earlier misstatements." 769 F.3d at 321. *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330, 336 (5th Cir. 2010) (Opp. 8, 24-25) also concerned loss causation, not price impact.

nor embraced Defendants' conflation of price impact and loss causation, and the Supreme Court has made clear that "loss causation is a familiar and distinct concept in securities law; *it is not price impact*." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 814 (2011) ("*Halliburton I*"); *see also St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2022 WL 4598044, at *7 (M.D. Tenn. Sept. 30, 2022) (price impact concerns "*whether the alleged misrepresentations affected the market price in the first place*").[6]

*Second*, Defendants' invented "match" standard effectively requires that alleged misstatements and corrective disclosures be mirror images. This conflicts directly with Fifth Circuit law that a corrective disclosure "need not precisely mirror an earlier misrepresentation." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009). For this reason, courts addressing "mismatch" routinely reject arguments that corrective disclosures must mirror alleged misstatements. *See, e.g.*, *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *10 (D. Nev. Mar. 1, 2023) ("[A] corrective disclosure need not precisely mirror the earlier misrepresentation.") (cited at Opp. 8); *Mattel*, 2021 WL 4704578, at *5 ("This Court does not read *Goldman* to contradict that a corrective disclosure need not be a mirror image disclosure[.]").

## B.   Defendants Concede Price Impact During the Class Period

Defendants do not contest that their alleged misstatements impacted Apache's stock price during the first 17 months of the Class Period, or that the October 9, 2017 and February 22, 2018 Corrective Disclosures also demonstrate price impact. *See, e.g.*, Allen

---

[6]      While *Goldman* instructs courts to consider all evidence relevant to price impact, it also admonishes courts to "resist[] the temptation to draw what may be obvious inferences for the closely related issues that must be left for the merits." 141 S. Ct. at 1961 n.2.

Tr. 12:14-13:6; 76:19-77:25. These concessions provide two independent bases for the Court to conclude that Defendants have failed to meet their burden, rendering their arguments concerning the "Focus Period" irrelevant.

### 1. Defendants' Concession of Front-End Price Impact Precludes Showing a Complete Lack of Price Impact

Defendants wrongly claim that Plaintiffs pursue only an inflation-maintenance theory.[7] Opp. 7. In so doing, Defendants ignore, and thus concede, that: (1) Plaintiffs' allegations that Defendants' September 7, 2016 statements announcing the "world-class" Alpine High play would "deliver significant value for our shareholders for many years" (¶¶191, 192) caused Apache's stock price to increase 14% (¶39); and (2) Nye's findings that Apache's stock price increases on September 7, 8, and 9, 2016, were statistically significant at the 99.96%, 97.58%, and 98.16% confidence levels, respectively. Nye Rpt., Ex. 11B; Nye Reb., ¶13.[8] Moreover, analysts and financial media attributed Apache's stock price increase to its announcement of Alpine High, with some directly linking it to Defendants' alleged false statements. Nye Reb., ¶13. Allen's event study also found statistically significant price increases for Apache common stock *on all three days*. *Id.*

This undisputed evidence of front-end price impact renders each of Defendants'

---

[7]     The price-maintenance (or inflation-maintenance) theory recognizes "that statements that merely maintain inflation already extant in a company's stock price, but do not add to that inflation, nonetheless affect a company's stock price." *Waggoner v. Barclays PLC*, 875 F.3d 79, 104 (2d Cir. 2017).

[8]     Defendants' contention that Plaintiffs pursue only an inflation-maintenance theory (Opp. 7) is further belied by the paragraph of the Complaint they cite, which specifically alleges that Defendants' Class Period misrepresentations "*created or* maintained artificial inflation in the price of Apache common stock." ¶319; *see also* ¶¶301, 303; Nye Reb., ¶¶9-14. Defendants also cite a paragraph from the Nye Report addressing how *damages* "may" be calculated in this case—an issue distinct from price impact and one Defendants do not challenge. Opp. 7.

back-end price impact arguments irrelevant because "when Plaintiffs are able to show an alleged misrepresentation had a statistically significant front-end price impact, ***Defendants are not entitled to rely on [] additional back-end arguments to rebut the Basic presumption***." *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at \*3 (S.D.N.Y. Mar. 23, 2020); *see also Chi. Bridge*, 2019 WL 5287980, at \*24 (similar); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at \*12 (D.N.J. Aug. 31, 2015) (Presumption not rebutted where plaintiffs "establishe[d] positive, statistically significant price movements").

Defendants nowhere demonstrate that the first two alleged Corrective Disclosures removed all of the statistically significant positive price impact that the September 7, 2016 misstatements created. Allen Tr. 12:14-13:6; 75:18-76:4; 77:1-7; 106:17-24. This is a fatal error, as Plaintiffs allege that Apache's stock price remained artificially inflated during the "Focus Period," including as a result of Defendant Christmann's February 22, 2018 misstatements (i.e., the date of the second alleged Corrective Disclosure, and the day before the start of Defendants' "Focus Period"), where ***he repeated*** certain representations made on September 7, 2016, including that Alpine High was "a world-class resource play that will change the course of Apache." ¶254.[9] At a minimum, this statement maintained the positive price impact created by the September 7, 2016 misstatements, which the "Focus

---

[9]    Defendants' front-end price impact argument for *post*-February 23, 2018 statements ignores Plaintiffs' allegations that Apache's stock price remained inflated from Defendants' *pre*-February 23, 2018 misstatements throughout the Class Period. ¶¶111, 113, 301, 303; Nye Reb., ¶¶10, 12.

Period" Corrective Disclosures removed, thus eviscerating Defendants' price impact challenge. *See* Nye Reb., ¶¶10, 12, 18.

### 2.     Defendants' Concession of Price Impact for Two Corrective Disclosures Precludes Showing a Complete Lack of Price Impact

Defendants' concession of back-end price impact for the October 9, 2017 and February 22, 2018 Corrective Disclosures likewise "dooms Defendants' attempt to rebut the [P]resumption" because "[D]efendants must show that the alleged misstatements caused no price impact whatsoever and the ***[D]efendants must make this showing as to all of the alleged corrective disclosures***." *Alexion*, 2023 WL 2932485, at *11; *see also In re Acadia Healthcare Co., Inc.*, 2023 WL 3620955, at *2, 4 (6th Cir. May 23, 2023) (denying Rule 23(f) petition "because Acadia did not challenge the price impact of the earliest corrective disclosure"). Defendants do not attempt to make the required showing here.

Defendants' challenges to the last three Corrective Disclosures under the guise of price impact are also improper because "whether [Apache's] stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, [] is a loss causation analysis not appropriate at this stage." *Alexion*, 2023 WL 2932485, at *12; *Acadia*, 2022 WL 4598044, at *5 (same); *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395-96 (N.D. Ga. 2019) ("*Southern*") (same); *CenturyLink*, 337 F.R.D. at 210-11 (rejecting price impact argument where defendants' expert conceded statistically significant stock price declines following two of three alleged corrective disclosures).

### C.     Defendants' Misguided "Focus Period" Arguments Fail

As discussed above, Defendants' price impact concessions and resulting challenges

11

aimed at their self-made "Focus Period" do not carry their burden of proving a complete lack of price impact. Nevertheless, if the Court chooses to consider Defendants' "Focus Period" arguments, it will readily conclude that they all fail.

To start, Defendants argue that "[n]one of the last 3 disclosures corrected any statement in any of the alleged misrepresentations." Opp. 14. Defendants base this contention on the incorrect and unsupported notion that by February 22, 2018, Apache fully and publicly revealed what Plaintiffs claim Defendants misrepresented (in Defendants' telling, that Alpine High was gassy), such that no additional relevant information was disclosed during the "Focus Period." Opp. 23-24. Defendants' argument not only mischaracterizes Plaintiffs' allegations, but also ignores the Court's recommendation that Defendants' motion to dismiss be denied in full. Indeed, the Court recommended that all of Defendants' alleged false statements about Alpine High, including those made *after* February 22, 2018, be sustained and, in so doing, recognized that "Defendants *repeatedly* made highly specific and authoritative Alpine High estimates, including about its *volumes of recoverable oil and gas*, drilling locations, *and commercial viability*." Dkt. 76 at 11; *see also* ¶107 (February 27, 2020 *Bloomberg* article: "[u]ntil recently, Apache executives defended the Alpine High, saying in May [2019] that investors didn't yet have an appreciation for the potential cash flow generation from the *liquids play* at Alpine High").

Specifically, Defendants' litigation-crafted blinders cause them to ignore many misstatements, including their repeated reassurances that Alpine High would thrive even in a low commodity price environment. *See, e.g.*, ¶256 (Christmann stating on February 22, 2018, that Alpine High "is going to really hum below $2 [prices] on the gas side" and

12

assuring that Apache's investment in Alpine High was warranted because it would "**work under very, very low gas and NGL and oil prices**") (alteration in original); *see also* ¶¶194, 206, 224. Defendants also fail to address their continued assurances that the play would "drive incremental growth and returns for years to come." ¶208; *see also* ¶¶192, 229, 231, 239, 254 (touting Alpine High as "world-class"). Thus, Defendants' core contention—that no "Focus Period" Corrective Disclosure revealed additional information about Alpine High relating to Defendants' Class Period misstatements—is false.

Relatedly, Defendants claim they have completely disproven price impact during the "Focus Period" because commodity price fluctuations purportedly explain the movement in Apache's stock price during that time, and that declining commodity prices "did not relate in any away to the alleged misrepresentation[s]." Opp. 23-25.[10] Here, too, Defendants ignore their repeated misstatements that Alpine High would be economic even with ultra-low commodity prices. ¶¶194, 206, 224, 256. Thus, even assuming (incorrectly) that falling commodity prices *caused the entirety of* Apache's stock price declines following the three "Focus Period" Corrective Disclosures, that price impact would still link directly to the alleged misstatements.[11]

---

[10]    Although Defendants argue that Apache's stock moved "in virtual lockstep" with Allen's industry index, Apache's internal documents tell a different story. For example, the 5-Year Lookback prepared for the Company's Board shows that during the NGL/natural gas price "blowout" in 2019, Apache underperformed its market peers (on an averaged basis) *by 19%*. *See* PX 3 at -767.

[11]    Moreover, even if they were correct that declining commodity prices were unrelated to Plaintiffs' fraud theory (which they are not), Defendants do not show that commodity prices explain the entirety of the price declines following the three "Focus Period" Corrective Disclosures. Thus, they cannot disprove price impact. *See Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 2022 WL 17920570, at *11 (N.D. Ga. Nov. 28, 2022) (rejecting Allen's opinion attributing stock price decline to non-fraud-related factors where plaintiff's expert found portion of stock price decline was fraud-related).

13

### 1.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the April 23, 2019 Partial Corrective Disclosure

On April 23, 2019, Defendants disclosed that Apache was deferring gas extraction efforts at Alpine High due to low prices at the Waha Hub. ¶310; Nye Reb., ¶19. In response to this news, Apache's stock price declined nearly 11% over four trading days (April 23 through April 26). ¶311; Nye Reb., ¶19. Defendants raise several arguments claiming they have proven a complete lack of price impact. As discussed below, each fails.

*First*, Defendants look at each day from April 23 through April 26 individually, claiming that no price decline on any one date was statistically significant at or above the 95% confidence level. Opp. 15-16; Allen Rpt. ¶¶49, 51. But, when evaluating this Corrective Disclosure using a multi-day event window, Apache's stock price declines ***are*** statistically significant. Courts routinely hold that multi-day event windows are appropriate to evaluate stock price declines, including where defendants argue there was no statistically significant price decline on the first day of the window. *See, e.g.*, *Southern*, 332 F.R.D. at 391 ("[T]here are many cases that find that multi-day event windows are appropriate[.]") (collecting cases); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 2023 WL 4865617, at *7 (S.D.N.Y. July 31, 2023) ("[C]ourts have permitted multi-day event windows[.]") (collecting cases); *In re EQT Corp. Sec. Litig.*, 2022 WL 3293518, at *18, 25-26 (W.D. Pa. Aug. 11, 2022) (rejecting argument that lack of statistically significant market reaction on first day of two-day event window rendered analysis unreliable); *see also* Nye Reb., ¶¶22, 70-75. Nye's analysis shows that the 2-, 3-, and 4-day returns for this disclosure are significant at the 92.58%, 98.96%, and 99.01% confidence levels, respectively. Nye Reb.,

14

¶23. Allen's event study yields similar results, with 3- and 4-day returns significant at the 94.33% and 96.56% confidence levels, respectively. *Id.* Those declines demonstrate price impact. *See Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019) (statistically significant price decline "is evidence the original misrepresentation did, in fact, affect the stock price").

In any event, while Defendants and their expert contend statistical significance at or above the 95% confidence level is required to show price impact (Opp. 15-16), numerous courts have explicitly rejected this argument. *See Acadia*, 2022 WL 4598044, at *6 (finding Allen's opinion that lack of statistically significant price decline proves no price impact "rel[ies] on a statistical fallacy"); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 345 (D.N.J. 2018) (contrary to Allen's claim, price movement at 84% confidence level "[did] not demonstrate the absence of a price impact"), *affirmed sub nom. Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019).[12]

*Second*, Defendants' argument that the natural gas production deferral at Alpine High was fully expected, and therefore not new news, is a truth-on-the-market defense, which is a "materiality" argument that "has no bearing on the predominance inquiry of class certification." *Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *8 (E.D. Tex. Aug. 29, 2016) (materiality is "common to . . . the class" and does not implicate

---

[12]    It is a bedrock principle of economics that the absence of statistically significant price declines does not demonstrate a lack of price impact. Nye Reb., ¶¶21, 61-69 (collecting economic literature and cases). Defendants' authorities (Opp. 10) are readily distinguishable. In *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 270 (N.D. Tex. 2015) ("*Halliburton III*"), the plaintiffs' expert **conceded** that 95% statistical significance was required to demonstrate price impact, and the court in *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *15 (N.D. Cal. Dec. 22, 2016) simply cited, without analysis, *Halliburton III* as the basis for requiring 95% statistical significance.

predominance) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 480-81 (2013)), *R. & R. adopted by* 2017 WL 907996 (E.D. Tex. Mar. 8, 2017). Thus, the Court should reject Defendants' attempt to shorten the Class Period with merits arguments about what the market knew or expected. *See In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 135, 138 (S.D.N.Y. 2019) (refusing to shorten class period where defendant argued misstatement was corrected before end of class period).

Even if it were permissible at this stage, Defendants' argument that the market fully expected the deferral announced on April 23, 2019 is premised on just three analyst reports (Opp. 16-17), in which each analyst speculates that investors *may* have expected the announced deferral. *See Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at *14 (S.D. Fla. Mar. 16, 2016) (defendants failed to rebut Presumption where their expert "relied exclusively on market commentary"); *Chi. Bridge*, 2019 WL 5287980, at *36 ("[T]he presence or absence of analyst commentary, while of interest, is not a scientifically accepted method of demonstrating price impact or its absence."). Further undermining Defendants' claim, at least eight analysts and several news outlets characterized this Corrective Disclosure as unexpected, negative news. *See* Nye Reb., ¶¶24-31; ¶312; *see also* Nye Reb., ¶25 (noting that three analysts lowered their Alpine High production estimates following Corrective Disclosure). These facts further evidence price impact.[13] *See Southern*, 332 F.R.D. at 396 ("[W]hen considering price impact, the existence of a

---

[13]    The divergence of views among analysts also highlights why Defendants' materiality challenge is improper at this stage. *See Amgen*, 568 U.S. at 480-81; *see also In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 144-45 (S.D.N.Y. 2012) (rejecting argument that market knew the relevant truth where "analysts had a range of expectations").

price decline and analyst commentary highlighting the negative news is, of course evidence of price impact.").

Tellingly, neither Defendants nor Allen identify any other news that caused Apache's stock price to decline between April 23 and April 26, 2019 (Nye Reb., ¶20), further demonstrating Defendants' failure to prove a complete lack of price impact. *See In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, *10 (S.D.N.Y. Sept. 8, 2021) ("to erase the inference that [a] corrective disclosure had price impact . . . [Defendants] must demonstrate . . . that [] *other events* explain the *entire price drop*"); *see also In re Allstate Corp. Sec. Litig.*, 2020 WL 7490280, at *5 (N.D. Ill. Dec. 21, 2020) ("Allen does little to explain this drop, operating as if it did not occur because it could not occur. Without a disaggregation analysis or event study to offer an alternative explanation for the decline in Allstate's stock price, defendants cannot rebut the *Basic* presumption.").

Defendants' fallback suggestion that "common sense" supports that the market expected the Alpine High deferral (Opp. 17-18) is also meritless. Apache did not announce the deferral until *well after* the Waha Hub natural gas spot price was negative, at which point it had turned positive. Opp. 18 (graphic). In fact, on April 23, 2019, the Waha Hub natural gas spot price was roughly the same as it had been in November 2018 and February 2019, and Apache did not defer gas extraction at Alpine High during either period. *Id.* "Common sense" instead dictates that, in the face of Defendants' repeated reassurances that Alpine High would perform well even at low commodity prices, investors viewed the April 23, 2019 Corrective Disclosure as new, negative news. Nye Reb., ¶33.

*Third*, Defendants contend that this Corrective Disclosure did not correct any

17

alleged misstatement. Opp. 15, 18-19. But their argument raises a premature loss causation challenge. *See Halliburton I*, 563 U.S. at 807 (plaintiffs need not prove loss causation at class certification); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *6 n.2 (S.D. Tex. June 15, 2017) ("[W]hether the statements were corrective . . . does not defeat predominance.").[14] When assessing price impact at this stage, "Plaintiffs are not required to show loss causation – the alleged disclosure need only relate to, concern, or be linked to a specific alleged misrepresentation." *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *18 (S.D.N.Y. Jan. 26, 2021).

Moreover, Defendants are wrong, as the April 23, 2019 Corrective Disclosure relates directly to Defendants' repeated assurances that Alpine High: (1) would thrive under "very, very low gas and NGL and oil prices," such that Alpine High would "really hum below $2 [prices] on the gas side" (¶256; *see also* ¶¶194, 224); (2) was a "world class" play (¶¶192, 208, 229, 231, 239, 254); and (3) would drive shareholder value for years to come (¶¶191, 239, 254, 256). Nye Reb., ¶¶32-33; *Apple*, 2022 WL 354785, at *9 (rejecting argument "that alleged corrective disclosures had no price impact because they were not actually corrective" where "partial disclosures . . . were directly related to the subject matter of defendants' false assurance"). Thus, Defendants' counterfactual assertion that the Alpine High gas deferral did not reveal a "pertinent truth" regarding their false statements

---

[14] Confirming that they are asking the Court prematurely to rule on a merits issue, Defendants cite procedurally inapposite cases evaluating **loss causation**. Opp. 16-17 (citing *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 507-08 (2d Cir. 2010) (summary judgment opinion concerning loss causation); *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013) (motion to dismiss opinion concerning loss causation); *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 314 (5th Cir. 2008) (same); *Ark. Pub. Emps.' Ret. Sys. v. Bristol-Meyers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022) (same)).

because the deferral purportedly was caused by "slumping commodity prices – a topic untethered to the alleged misrepresentations," misunderstands the legal standard, ignores Plaintiffs' allegations, and fails to disprove price impact. Opp. 14-15, 18.

### 2. Defendants Have Not Proven a Complete Lack of Price Impact Based on the October 25, 2019 Partial Corrective Disclosure

On October 25, 2019, Apache's stock price declined by approximately 5% after media reports disclosed that Steve Keenan, Apache's head geologist in charge of its "Unconventional Resources" team, resigned. ¶¶27, 313. Defendants do not dispute that: (1) Keenan's departure was the only value-relevant news concerning Apache issued that day; or (2) the announcement of Keenen's departure caused a statistically significant decline in Apache's stock price. Allen Rpt., ¶65; Allen Tr. 155:25-156:11; Nye Reb., ¶¶34-36, 43. These facts alone demonstrate price impact. *See Rooney*, 330 F.R.D. at 450 (statistically significant price decline after corrective disclosure evidences price impact).

Unable to dispute these facts, Defendants try to shift their burden by arguing that Plaintiffs do not explain how the announcement of Keenan's resignation corrected any alleged misstatements. Opp. 19. While this is yet another improper loss causation argument (*supra* Section II.C.1), courts regularly sustain as corrective disclosures resignations of corporate executives, like Keenan's here. *See Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 52, 59 (S.D.N.Y. 2019) (certifying class where alleged corrective disclosure was "resignation of the Potash directors and the rationale behind the move"); *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 724 n.47 (S.D. Tex. 2006) ("the market may learn of

19

possible fraud [from] . . . resignations of CFOs").[15]

Here, Keenan's resignation plainly "render[ed] some aspect of the defendant's prior statements false or misleading." *Ferris*, 2023 WL 2337364, at *10. From the beginning of the Class Period, Keenan was lauded as the face of Alpine High, with Christmann publicly attributing discovery of the play to Keenan's efforts. ¶37; *see also* ¶¶7, 27, 103, 314.[16] As the Class Period proceeded, Apache continued publicly linking Keenan with Alpine High, including by presenting him with Apache's President's Award during the May 11, 2017 Annual Shareholder Meeting. Dkt. 71-1 at 25-26; PX 5 at 6-7. Securities analysts and the media also repeatedly connected Keenan to Alpine High, issuing reports and articles throughout the Class Period crediting Keenan with "discovery" of the play and dubbing him the "Godfather of Alpine High." Nye Reb., ¶¶38-40, 43; *see also* Exs. I, J, K (analyst reports linking Keenan to Alpine High).[17] Thus, the evidence shows that Keenan's sudden resignation relates to, and directly called into question, Defendants' repeated assurances about Alpine High. ¶¶191-92, 208, 229, 231, 239, 254, 256, 313; Nye Reb., ¶¶37-43.

Attempting to dodge the wealth of facts connecting Keenan's resignation to Alpine High, Defendants implausibly contend that they have disproven price impact because three

---

[15]    *Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 861-62 (S.D. Tex. 2020) and *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 887-88 (N.D. Tex. 2005) (Opp. 19) addressed whether the plaintiff adequately alleged loss causation at the pleading stage (not price impact at class certification). Unlike here, neither case presented sufficient facts linking the resignation to the alleged misrepresentations.

[16]    Defendants admit that Alpine High resulted from the work of "Steve Keenan and his team." Opp. 2. Keenan also accompanied Christmann at the September 7, 2016 Barclays Investor Conference, where Apache first announced Alpine High. PX 4 at 5.

[17]    For instance, noting that "the outcome of results from Alpine High have not met high expectations," RBC Capital Markets likewise reported that "Keenan was a major part to the team that discovered the Alpine High play" and his resignation "Caus[ed] Stock Weakness." Ex. J.

20

analyst reports speculated that the resignation might have fueled investor concerns regarding Apache's work in Suriname. Opp. 19-20. But each of those three analyst reports acknowledged that Apache had made clear that Keenan's departure was **unrelated to Suriname**. *See* Exs. I, J, K; *see also* Nye Reb., ¶38. Embracing speculation, while ignoring important analyst report contents, does not prove a complete lack of price impact. *See Allergan*, 2021 WL 4077942, *10 ("Merely suggesting that another factor also contributed to an impact on a security's price does not establish that the fraudulent conduct complained of did not also impact the price of the security."); *Wallace v. IntraLinks*, 302 F.R.D. 310, 317 (S.D.N.Y. 2014) ("defendants' speculation that factors unrelated to the [alleged fraud] . . . exclusively caused the drop in [] share price" insufficient to show lack of price impact).

Neither Defendants nor Allen provides any basis to conclude that speculation about Suriname was responsible for any, let alone all, of Apache's stock price decline on October 25, 2019. Nor could they. An analyst report published at 10:19 a.m.—approximately 35 minutes after the market first learned of Keenan's resignation—disclosed to the market that the resignation was **unrelated to Suriname**. Nye Reb., ¶¶34, 37-38. Thus, any Suriname-related price impact was removed well before the market closed on October 25, 2019, and could not have caused the statistically significant decline Nye (and Allen) found in Apache's stock price at market close on October 25. *See id.*, ¶¶34, 37, 43.

Lastly, Apache's own documents belie Defendants' claim that Keenan's departure was unrelated to the alleged misstatements. Indeed, just 10 days earlier, a draft Apache Board presentation acknowledged that Alpine High's "**actual results are materially below the published 'Typical Well'**" and "**not even in the ballpark**" of the estimated recoveries

21

Defendants reaffirmed throughout the Class Period. PX 6 at -840, -853.

### 3. Defendants Have Not Proven a Complete Lack of Price Impact Based on the March 16, 2020 Partial Corrective Disclosure

On March 16, 2020, a *Seeking Alpha* article disclosed that, due to lack of production from Alpine High amidst declining oil prices, Apache was severely financially strained and not competitive, with the highest debt-to-equity ratio of all large-cap independent oil producers. ¶315. The same day, Susquehanna analysts downgraded Apache, also reporting on Apache's stressed balance sheet and exceedingly high net leverage—the highest of all international/diversified E&P companies. *Id.*; Nye Reb., ¶45.

These disclosures revealed the falsity of Defendants' representations that Alpine High was, among other things, a world class resource that "put[] Apache in one of the most exciting and competitive positions in the industry" and would drive shareholder value for years to come. ¶¶191-92, 208, 223, 229, 231, 239, 254, 256. As *Seeking Alpha* revealed, the opposite was true—Alpine High caused Apache to lose ground to its E&P peers and put it in a "severely constrained financial position relative to its competitors." ¶316; Nye Reb., ¶¶44-45. In response, Apache's stock fell roughly 45% over two trading days on March 16 and 17, 2020—declines that were statistically significant at the 100% and 99.9% confidence levels, respectively. ¶¶315-16; Nye Reb., ¶¶44-46 & n.174.[18]

Contrary to Defendants' suggestion (Opp. 21), a lack of analyst commentary does

---

[18]     Defendants' efforts to discredit *Seeking Alpha* (Opp. 21-22) fall flat, as courts regularly certify classes with corrective disclosures from numerous sources, ***including Seeking Alpha***. *See, e.g.*, *Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *14-15 (N.D. Cal. Dec. 19, 2022) (granting class certification where an alleged corrective disclosure was a *Seeking Alpha* report); *Acadia*, 2022 WL 4598044, at *7-8 (rejecting argument that *Seeking Alpha* corrective disclosure lacked price impact); *see also Amedisys*, 769 F.3d at 322 ("A corrective disclosure can come from any source[.]").

not prove a lack of price impact. *See Chi. Bridge*, 2019 WL 5287980, at \*36. Moreover, Susquehanna downgraded Apache the same day and for similar reasons as the *Seeking Alpha* disclosures—Apache's lack of "balance sheet flexibility" and high net leverage. ¶315; Nye Reb., ¶45. Defendants ignore the Susquehanna report. Allen Tr. 187:13-19.

Defendants' claim that the *Seeking Alpha* article did not disclose any new news (Opp. 21) also fails. *First*, this is an off-limits materiality challenge. *See supra* Section II.C.1. *Second*, Defendants' bald assertion that the "market rightly regarded" the *Seeking Alpha* article as "a blog post summarizing already public information" (Opp. 21) lacks any citation or factual support. Indeed, a plain reading of the article and the Nye Rebuttal show that the *Seeking Alpha* article (and the Susquehanna report) synthesized disparate information about Apache's financial condition and concluded that it was in the worst financial position relative to its peers due to Alpine High's poor performance, combined with the then-current economic environment. Nye Reb., ¶¶44-45, 47; Ex. L at 5 (noting Apache had "a lofty debt-to-equity ratio of almost 250% - the highest among all large-cap independent oil producers"); *see also Strougo v. Tivity Health, Inc.*, 606 F. Supp. 3d 753, 765-66 (M.D. Tenn. 2022) (rejecting argument that investors "should have known" relevant truth based on information contained in SEC Form 8-K because "[w]hy reasonable investors would necessarily take it upon themselves to make the [relevant] calculation is unclear"), *vacated and remanded on other grounds sub nom. In re Tivity Health, Inc.*, 2022 WL 17243323 (6th Cir. Nov. 21, 2022); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 325 (S.D.N.Y. 2009) ("This Court cannot rule that the scattered disclosures in various amendments, annexes and exhibits . . . were sufficient as a matter of

23

law to disclose the material facts to reasonable investors.").

In a last-ditch effort to show no price impact with respect to the March 16, 2020 Corrective Disclosure, Defendants complain that the ensuing statistically significant declines in Apache's stock price are unreliable because Nye did not control for volatility resulting from COVID and an oil price war. Opp. 22-23. This argument also fails.

*First*, Defendants concede a statistically significant Apache stock price decline following the March 16, 2020 Corrective Disclosure. Opp. 22-23. In fact, Allen's ***own analysis*** found the declines on March 16 and 17, 2020, statistically significant at the ***100%*** level. Nye Reb., ¶46 n.174. This should end the inquiry. *See Rooney*, 330 F.R.D. at 450 ("A statistically significant price adjustment following a corrective disclosure is evidence the original misrepresentation did, in fact, affect the stock price.").

*Second*, merely throwing up one's hands in the face of market volatility is not expert evidence supporting Defendants' burden to prove a complete lack of price impact. *See, e.g.*, *Allergan*, 2021 WL 4077942, *10 (to disprove price impact for a corrective disclosure defendant must show "other events explain the entire price drop"). Tellingly, Allen does not opine that market volatility caused the entirety of Apache's price decline, and she ***did no analysis*** to evaluate whether adjusting for COVID and oil market volatility would alter Nye's (or her own) finding that Apache's stock price declines in response to the March 16, 2020 disclosure were statistically significant. Allen Tr. 177:1-7; 178:12-16. Thus, her claim that Nye needed to control for COVID and oil price volatility is simply a suggestion that something "other [non-fraud-related] factors [] contributed . . . to the price drops," which is "insufficient to rebut the *Basic* presumption." *CenturyLink*, 337 F.R.D. at 211. As a

24

result, Defendants have not discharged their burden of proving a complete lack of price impact. *See id.* (rejecting price impact argument where defendants' expert "d[id] not opine that fear, uncertainty, and doubt caused ***all*** of the declines" and "did not attempt to quantify the amount of the price drop that was caused by other factors"); *Cobalt*, 2017 WL 2608243, at *6 (defendants did not show complete lack of price impact where they "d[id] not provide an alternate explanation for these significant declines in the Cobalt stock price").

*Third*, the Nye Rebuttal shows that, even after adjusting for COVID and oil price volatility, Apache's stock price declines on March 16 and 17, 2020, are statistically significant between 92.7%–100%, demonstrating price impact. Nye Reb., ¶49 (chart).

*Fourth*, because determining whether a company's stock price declined as a result of an alleged corrective disclosure or broader market conditions is a merits issue, courts often certify classes with corrective disclosures that occurred during periods of intense market volatility. *See, e.g.*, *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2014 WL 6661918, at *8 (N.D. Ala. Nov. 19, 2014) (rejecting argument that stock price decline was due to "across the board investor panic" and holding "[w]hether this tumble was due to . . . corrective disclosures . . . or due to the overall market conditions on that day, is an ultimate question in this action, and . . . reserved for a jury").

## III.    CONCLUSION

For the foregoing reasons and those set forth in the Motion, Plaintiffs respectfully request that the Court grant the Motion in its entirety.

Dated: August 11, 2023

Respectfully submitted,

**AJAMIE LLP**

s/ Thomas R. Ajamie
Thomas R. Ajamie, Attorney-in-Charge
Texas Bar No. 00952400
S.D. Tex. No. 6165
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
S.D. Tex. No. 38095
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

Liaison Counsel for Lead Plaintiffs

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted pro hac vice)
Johnston de F. Whitman, Jr. (admitted pro hac vice)
Joshua E. D'Ancona (admitted pro hac vice)
Richard A. Russo, Jr. (admitted pro hac vice)
Evan R. Hoey (admitted pro hac vice)
Austin W. Manning (admitted pro hac vice)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jwhitman@ktmc.com
jdancona@ktmc.com
rrusso@ktmc.com
ehoey@ktmc.com
amanning@ktmc.com

**SAXENA WHITE P.A.**
David R. Kaplan (admitted pro hac vice)

26

Wolfram T. Worms (admitted *pro hac vice*)
Hani Farah (admitted *pro hac vice*)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
wworms@saxenawhite.com
hfarah@saxenawhite.com

-and-

Steven B. Singer (*pro hac vice* forthcoming)
Joshua H. Saltzman (admitted *pro hac vice*)
Sara DiLeo (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com
sdileo@saxenawhite.com

-and-

Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White, III (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Co- Lead Counsel for Lead Plaintiffs*

27

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on August 11, 2023, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Thomas R. Ajamie*
Thomas R. Ajamie

28