IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

IN RE                              §     CASE NO. 4:21-cv-00575
                                   §     GALVESTON, TX
APACHE CORP. SECURITIES            §     FRIDAY
                                   §     SEPTEMBER 29, 2023
                                   §     11:30 AM to 11:50 AM

DISCOVERY HEARING

BEFORE THE HONORABLE ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

    FOR THE PARTIES:               SEE NEXT PAGE

    COURT REPORTER:                ANDY GOULD

    COURT CLERK:                   RUBEN CASTRO

TRANSCRIPTION SERVICE BY:

Veritext Legal Solutions
330 Old Country Road, Suite 300
Mineola, NY 11501
Tel: 800-727-6396 ▼ www.veritext.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

FOR THE PLAINTIFFS:            SAXENA WHITE, P.A.
                              David Kaplan
                              505 Lomas Santa Fe Drive
                              Suite 180
                              Solana Beach, CA 92075
                              858-987-4073

                              KESSLER TOPAZ MELTZER &
                              CHECK, LLP
                              Johnston de Forest Whitman, Jr.
                              Evan R. Hoey
                              280 King of Prussia Road
                              Radnor, PA 19087
                              484-270-1438

                              AJAMIE LLP
                              John S. "Jack" Edwards, Jr.
                              Pennzoil Place - South Tower
                              711 Louisiana Street, Suite 2150
                              Houston, TX 77002
                              713-860-1619


FOR THE DEFENDANTS:           BAKER BOTTS
                              Amy Pharr Hefley
                              Sarah Eilers Coble
                              One Shell Plaza
                              910 Louisiana Street
                              Houston, TX 77002
                              713-229-1270

GALVESTON, TEXAS; FRIDAY, SEPTEMBER 29, 2023; 11:30 AM

THE COURT:  Let me call Case 4:21-CV-575, In re Apache Securities Litigation.  Who do we have on the Plaintiff's side, please?

MR. KAPLAN:  Hello, this is -- hello, Your Honor. This is David Kaplan of Saxena White on behalf of (indiscernible).

THE COURT:  Hello, Mr. Kaplan.  Good to see you.  One (indiscernible) and one (indiscernible) today for you?

MR. KAPLAN:  A number of my co-counsel are also attending, but I don't expect that they're going to be arguing.

THE COURT:  Okay.

MR. WHITMAN:  Yeah.  For the record, Your Honor, this is Johnston Whitman from Kessler, Topaz, Meltzer & Check, also on behalf of the Plaintiffs.  I intend to remain silent.

THE COURT:  Okay.  I'm not sure how you can do that with what you just said, but fair enough.  I understand. Anybody else on the Plaintiffs' side?

MR. HOEY:  Good morning, Your Honor.  (Indiscernible) Kessler, Topaz, Meltzer & Check, also on behalf of the lead Plaintiffs, but I'll just be viewing and not arguing.

THE COURT:  Fair enough.  Okay.  Mr. Edwards, are you going to make an appearance?

MR. EDWARDS:  Yes, Your Honor.  Jack Edwards for the Plaintiffs.  Good morning.

THE COURT:  Good to see all of you.  How about on the defense side?

MS. HEFLEY:  Good morning, Your Honor.  It's Amy Hefley at Baker Botts, and Sarah Coble is on the line with me.

THE COURT:  Hello, Ms. Hefley and Ms. Coble.

MS. COBLE:  Good morning.

THE COURT:  Good to see you.  Okay.  We're here on Docket No. 129.  Obviously, this discovery issue -- I want to talk about that, and then secondly and briefly, I want to talk about our December 6th class certification hearing.  Okay.

To start off on the discovery issue, I guess I'm a little confused.  What's wrong with Apache's suggestion/recommend -- I mean, it seems to me that Apache's position is, hey, you're entitled to discovery.  We're just worried about attorney-client privileged documents.  So, what's wrong with having documents given to Ms. Coble and Ms. Hefley?  If there's no privileged documents, they're required to give you all the documents.  If there are, put them on a privilege log, hold them, and then you can fight over it.

But I guess I'm concerned.  It seems to me that your -- the Plaintiffs' proposal, make them give us all the documents, we'll look at them, and then if there are privileged documents, we'll give them to Baker Botts, two, to defeat the whole purpose of the attorney-client privilege to start off with.  So, what am I missing?  Help me out on that, Mr. Kaplan.

MR. KAPLAN:  Well, I just -- to sort of give some context, Your Honor, for the subpoenas, based on Defendant's document production, our own investigation, text messaging was a frequent way of communicating as a company, especially in relation to Alpine High, and this remote area in the county where the project was, and frequently, conversations -- relevant conversations -- we understand it could be a text message.  The company had a BYOB policy, where -- bring your own --

THE COURT:  Let me stop you there.  I'm with you.  I hear you loud and clear, and that's why I don't think there's a challenge to you getting the documents.  You're entitled to relevant information to help you pursue your case.  My only question is if there's privileged documents, why don't you let -- I mean, it should take no -- if there's privileged documents, let them put them on a privilege log.  If there are not, ship them to you and review them, analyze them, and you're off to the races.

MR. KAPLAN:  Well, the burden -- we don't believe that there's any privileged documents, and the burden is on Defendant to articulate --

THE COURT:  Who knows, right?  You -- if you're right -- I mean, who knows if there's privileged documents.  If you're right, then this is -- then there's no harm, right?  Because there's a -- just hypothetically, a box of documents

were given to Ms. Hefley and Ms. Coble.  They look at them; they go, there's nothing privileged, and then they give it to you.

MR. KAPLAN:  Well, the (indiscernible) case addresses this exact issue, Your Honor.  We included it in our letter, and it states very clearly -- we cited two Fifth Circuit cases that the burden is on the party claiming privilege to articulate particularized facts showing that there actually may be a privilege issue in dispute.  Here, during meet and confer calls, we specifically asked defense counsel, you know, was there any factual basis for their belief that there may potentially be privileged documents, and they weren't able to articulate a single fact.  They didn't say why they even believe any privileged communications occurred.

So, we don't believe that -- you know, we believe the case law -- the applicable case law is very clear that the burden is not on us to show prejudice, but on Defendants to actually articulate with facts a reason why they believe any privilege -- there is any privilege issue at all.  And here, we're talking about text messages primarily among operational-level people.  There's no -- you know, it just -- as a matter of logic, you know, it's sort of strange for -- truly -- to believe that they would be having text messages with company counsel, anything implicating privilege concerns, and --

THE COURT:  I can always predict -- I can already

predict Ms. Hefley's response. She's going to say, I'm not claiming the text messages are going to be -- most likely be lawyers. I just want to make sure I look at all documents, is what she's going to say. If there's any privileged documents, they'll put them on a privilege log, and if they're not privileged, give them to the Plaintiffs to review. What's -- I guess I'm having trouble. What's the possible negative to that approach? Like, what's the possible downside to that?

MR. KAPLAN: Well, they've asked us to hold off serving additional -- serving any additional subpoenas on former employees, so it introduces delay into the process, and --

THE COURT: But wait, wait. Wait, what's the delay? You -- issue the subpoenas now.

MR. KAPLAN: Well, they've asked us to hold off serving any individuals who haven't been served, and they've also asked us to forego serving any additional subpoenas.

They just want -- I mean, really the fear, I think, just to cut to the chase, and they admit as much in their letter, is to give them time to try to and go around and seek to represent as many former employees as possible, because many former employees were fired or quit precisely over the issues at issue in our case concerning Alpine High. So, it's not about privilege. Defendants are just asking for more time to bring as many former employees under their tent.

So, we believe that it's a manufacturing concern. Defendants haven't articulated any basis for their privilege assertion, and Rule 45 frankly sets forth a very simple procedure, how there's no exceptions for former employees of the Defendant's company that allows Defendant to the extent any document they -- you know, they intend to assert a privilege exemption as to, to designate those documents as privileged, for them to be sequestered, not to use in the litigation until their privilege concerns are addressed.

So, it's a very simple procedure that Rule 45 expressly addresses, and we don't believe, respectfully, that there's any basis here in law or in fact to depart from Rule 45. And with respect to a privilege prejudice, Your Honor, it's just a question of delay and it's really just a tactic for Apache to go around and, you know, try, and bring as many former employees under its tent so they can control the flow of documents and the flow of information, and that prejudices our case significantly.

THE COURT: Understood.

Let me ask you this, Ms. Hefley. I guess you're -- the letter -- the way I read it, there were two issues that came up. One was this issue about -- the privilege issue, but is there a separate argument on the scope of the -- of the subpoena?

MS. HEFLEY: These subpoenas are objectionable in

terms of threat.  So, for example, all of the Request Phase 1 asks for documents concerning the lawsuit or communications with Apache concerning the lawsuit.  One of the requests also asks -- or I think all of the core requests, actually, ask for all documents about a particular employee, a former Senior Vice President being --

THE COURT:  Steven Keenan --

MS. HEFLEY:  Exactly, Steven Keenan, who oversaw not just Alpine High but global work for Apache.  So, there are scope issues to be sure, and I'm sure that the objections that are served from the people that we represent anyway, will raise those scope issues.  Our primary concern, though, is that these requests on their face call for privileged information -- potentially privileged information.  There's no disclaimer in the subpoena for these non, you know, these non-party employees who are individuals, who are going to read this document, be worried -- you know, there's nothing in there to indicate to them they should not turn over Apache's privileged information.

One of the subpoenaed parties is the former CEO of the company.  Another is a former Executive Vice President and Executive Advisor to the CEO.  So, we're not talking about only line people or people out on job sites.  They were high-ranking individuals that were targeted with these subpoenas.

THE COURT:  Is that -- hold on.  Mr. Kaplan, is that true?  You've got the CEO and the --

MS. HEFLEY:  Former CEO.

MR. KAPLAN:  Those are already -- those are not in dispute, because they're already represented by Baker Botts. If you look at -- I believe, there's seven individuals left that we're talking about --

MS. HEFLEY:  No, there's 10.  There are 10 left.

MR. KAPLAN:  -- (indiscernible) that don't have representation.

MS. COBLE:  Correct.

MS. HEFLEY:  There are 10.

MR. KAPLAN:  And those are the operational -- those are operational-level people.

THE COURT:  Okay, I got --

MR. KAPLAN:  The folks that Ms. Hefley just referenced I believe are already individuals that Baker Botts represents.

MS. HEFLEY:  Not so.  We do not represent the EVP that I was referring to.  We do not represent the investor relations manager, other executives.

MR. KAPLAN:  The geologist, a completions engineer, an engineer reservoir -- are those -- those are executive-level positions that you're concerned about?

THE COURT:  Okay, let me say this.  One, I think the Plaintiffs are certainly entitled to pursue discovery and get documentation as quickly as possible.  So, I do not want any

delay under the (indiscernible) with Plaintiffs to get discovery.  Tell them to do it.  At the same time, I just see no downside whatsoever to making sure that Apache's privileged information is not disclosed.

So, I agree with the Defendants in this case that -- and I'll issue a separate order that, you know, parties should jointly inform unrepresented former employees that they should produce the documents -- responsive documents to Baker Botts.  Baker Botts has been instructed to -- to be clear, provide Plaintiffs with all non-problem privileged documents.  In other words, it is not Baker Botts' right or ability to go through the documents and decide what should or should not be given.

It's simply -- and I know Ms. Coble and Ms. Hefley as officers of the Court will turn it over but for documents that they think are privileged, whether work product or attorney-client privilege.  They should -- those documents should be promptly put on a privilege log, provided to the Plaintiffs and then obviously if there's objections to the privilege log, we can decide those.  But I just want to emphasize -- and I'm hesitant to say how long, because I don't know how many documents there are.  There might be this much; there might be -- I have no clue.  But just -- make no bones about it, it should be a quick turnaround.  This should not be a long, drawn-out process.  Candidly, it should be flipping through and if it's privileged, it's privileged and on the log.  Otherwise,

ship them all over to the Plaintiffs to get the show on the road.

MS. HEFLEY:  Understood, and we propose five business days to turn it around upon our receipt of any documents from the former employees.

THE COURT:  Okay, I see that.  That's fair enough. And candidly, the only issue I have, Ms. Hefley, in the language in your letter -- I think I'm going to basically take that language and put it in an order.  The only thing I have -- the concern I had was the word "discoverable."  In other words, you said -- you said that you would provide Plaintiffs with all non-privileged "discoverable" documents.  I'm going to take the word "discoverable" out, just because -- and that's to my point --

MS. HEFLEY:  Understood.

THE COURT:  I'm not having you make some sort of determination of whether you think it's relevant.  It's whatever documents are given, they should be given to the Plaintiffs, but for attorney-client privileged documents.

MS. HEFLEY:  Understood, subject to any objections -- if those parties have their own counsel, for example.  I don't know what's going on with the 10 that we have now that we don't represent.  They can make an objection --

THE COURT:  Let me -- let me be clear.  If you're representing folks, if you make objections, you probably won't

produce documents, and we can have a fight over that at the appropriate time of whether documents be produced. But if those people who are not represented produce documents, even if you look at the document and go, oh, I don't think that's relevant, that's not your position, place to make that determination is to give all those documents to the Plaintiffs in response to the subpoena.

MS. HEFLEY: Understood. And Your Honor, the only other issue is that the way we understand the Plaintiffs sent out those subpoenas was pursuant to a certified letter that told the recipient they had until September 27th to get in touch with Plaintiffs' counsel or else they would be served with a -- by a process server. So, we don't know if they've already received documents since we spoke with them last week and since that September 27th deadline has passed. So, I just wanted -- if they have any such documents, we obviously need the chance to look at those. I understand that Plaintiffs would have already looked at them at this point, but we'd still like the opportunity to --

THE COURT: Mr. Kaplan, have you received any documents yet?

MR. KAPLAN: No, and we -- just to be clear, we've done everything by the book. The letter simply states --

THE COURT: I'm not -- wait -- hold on, hold on. There is no accusation or suggestion you aren't doing

everything by the book, so I want to just dispose of that. I don't think there's anything wrong with what you -- with what you've done, so I just want --

MR. KAPLAN:  (Indiscernible) --

THE COURT:  -- (indiscernible). I just want -- if there's any documents that you have reviewed -- that you have received to date, I just want those shipped over to Ms. Hefley and Ms. Coble so they can do the privilege review. Anything coming forward, I'm just going to make sure that my order says, hey, if any documents are provided to you, you all are instructed not to read those documents, but rather turn them over to Baker Botts, let them do that privilege log and then they'll basically ship them right back, either all of them within five days or all of them minus those documents that are put on the privilege log.

MR. KAPLAN:  I understand, Your Honor, and we will certainly do so. My understanding is we haven't received any documents. And I was responding, just to be clear, to a line in the letter that was submitted to Your Honor where there was some suggestion that we were telling former employees that if they didn't contact us by a certain date, they were going to be served by a process server. They're taking every effort to attempt to minimize, you know, any burden on them and just letting them know that --

THE COURT:  I understand.

MR. KAPLAN:  -- (indiscernible) service by responding to the email, because we didn't want to have to chase them down with process servers.  We were, you know, fully compliant with the Federal Rules.  So, I just wanted to -- that's what I was addressing, not, you know, any statement by Your Honor.

THE COURT:  Understood.

MR. KAPLAN:  So -- I -- we understand Your Honor's ruling and we understand that the order will provide the five-day period the Defendants represented, and we will produce -- will comply, you know, with your last statement and provide Baker Botts any documents that we receive from subpoenaed witnesses to allow for this privilege review to occur.

THE COURT:  Great.  Okay, next issue real quick.  I just want to briefly -- I know we have a class certification coming up December 6th at the Houston Federal Courthouse, and I'll issue the order on this that will sort of specify it.  But just so you all are ready ahead of time, I think I sort of learned the hard way and on these class certification hearings I've now concluded that the best way to do this is to -- we will start off the class certification hearing.  I'll give you each an opportunity to make whatever argument -- you know, I'll have read everything and be ready to go.  But give you all an opportunity to make whatever sort of opening statement if you will.

However, I just -- I personally find it -- I won't

say a waste of time, but it's just not useful, and Ms. Hefley has already heard me say this in a previous hearing, to have direct examination go on and on and on with the witnesses because a lot of times you already know what that witness is going to say based on what's in their expert report.

So, what I want to do is -- we'll try this out -- is a week before the class certification hearing, the parties are going to be required to turn over all exhibits they intend to use and a Q&A of here's the question, and here's the answer that the expert would give, on basically the direct examination. Instead of doing it live and in person, we're going to do it like they do at Federal Energy Regulatory Commission hearings where they basically prepackage the initial testimony. And so, a week before, everyone will have the direct examination of your expert in Q&A, boom, boom, boom. That will give me time to read it. I will read it, review it, get a look at the exhibits, compare. You all will have an opportunity to do that.

And then when we get to the hearing, after you do your opening statements and I -- I usually will ask questions that I have, but then when we turn to witnesses, I'll say, okay, who does the Plaintiff call, you know, the Plaintiff calls Joe Schmoe. Okay, Mr. Schmoe, we have your prepackaged testimony. Raise your right hand. Do you swear that that test -- you know, do you acknowledge that's your testimony and you

adopt it under penalty of perjury?  Yes.  And then I just turn it over to cross-examination.

And then same thing on the other side when the defense calls their witness.  Hey, we already got the prepackaged testimony that we've all had a chance to review.  And I just think that will spur actually better argument and be more on point, both on the cross -- a lot of people -- you're going to prepare anybody for direct examination.  It just allows you to prepackage it, and then allows sort of each side to really give a thorough thought process into the cross-examination.  Does that make sense?

MS. HEFLEY:  That sounds great, Your Honor.  On the exhibits, I assume you mean the ones for the direct examination are what would be submitted, and -- or not cross exhibits.

THE COURT:  Correct.  Correct.  Correct, and as I said, I'll put -- I'll put an order together.  We're going to put an order together and sort of -- it's (indiscernible) a work in progress.  I'll probably do this on all class certification hearings going forward, so I'll put a standard order together, and to be honest, I'm curious as to both sides, on the plaintiff and defense side, you know, I'm not claiming perfection.  So, if there's things that you think that are wrong and can be improved, I am not one to avoid constructive criticism, so don't be afraid to let me know or clarifications or anything of the sort.

MS. HEFLEY: Thank you.

THE COURT: Hold on one second. Anytime I get a message from my case manager, it means I need to respond immediately, so -- hold on one second. Let's go off the record one second.

(Recess)

THE COURT: Okay. Nothing further. That is all I have. Any other questions, Mr. Kaplan, Ms. Hefley?

MR. KAPLAN: No.

MS. HEFLEY: None here.

THE COURT: Thanks a bunch. Have a great weekend. Be safe.

MS. HEFLEY: Thank you.

THE COURT: We are off the record.

(Hearing adjourned at 11:50 a.m.)

* * * * *

I N D E X

RULINGS

|  | Page | Line |
|---|---|---|
| Parties are to jointly inform unrepresented former employees that they should produce responsive documents to Baker Botts and Baker Botts will produce the documents and a privilege log within five days | 11 | 7 |

CERTIFICATION


    I, Sonya Ledanski Hyde, certified that the foregoing
transcript is a true and accurate record of the proceedings.


Sonya Ledanski Hyde











Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501


Date:  October 5, 2023