**NYE-DT 20**

Nye
**6**
11/8/2023 - AG

330 F.R.D. 439
United States District Court, W.D. Texas, Austin Division.

John ROONEY, Individually and on Behalf of All Others Similarly Situated, Plaintiff,
v.
EZCORP, INC. and Mark E. Kuchenrither, Defendants.

Cause No.: A-15-CA-00608-SS
|
Signed 02/19/2019

**Synopsis**
**Background:** Investor brought putative securities fraud class action under, inter alia, § 10(b) and Rule 10b-5, against corporation and its officer, alleging that defendants made material misrepresentations to artificially inflate price of corporation's stock, which resulted in financial losses following release of corporation's restated financial reports. Investor moved to certify class.

**Holdings:** The District Court, Sam Sparks, Senior District Judge, held that:

[1] numerosity requirement was satisfied;

[2] commonality requirement was satisfied;

[3] typicality requirement was satisfied;

[4] adequacy requirement was satisfied;

[5] predominance requirement was satisfied; and

[6] superiority requirement was satisfied.

Motion granted.

**Procedural Posture(s):** Motion to Certify Class.

West Headnotes (23)

[1] **Federal Civil Procedure** ⟶ Evidence; pleadings and supplementary material

Plaintiffs seeking to certify a class under the rule governing class certification bear the burden of establishing the prerequisites to certification have been met. Fed. R. Civ. P. 23.

[2] **Federal Civil Procedure** ⟶ Stockholders, investors, and depositors

Proposed class was so numerous so as to render joinder impracticable, as required for certification of proposed class consisting of those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in investor's putative class action against corporation and its officer alleging, inter alia, that defendants made material misrepresentations to artificially inflate corporation's stock price in violation of § 10(b) and Rule 10b-5, even though exact number of class members was unknown; corporation had more than 50 million shares of Class A common stock outstanding during class period, and the average weekly trading volume on stock exchange during class period was roughly 2.7 million shares. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(a)(1).

[3] **Federal Civil Procedure** ⟶ Stockholders, investors, and depositors

Commonality requirement was satisfied, as required for certification of proposed class consisting of those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in investor's putative class action against corporation and its officer alleging, inter alia, that defendants made material misrepresentations to artificially inflate price of corporation's stock in violation of § 10(b) and Rule 10b-5; investor alleged uniform representations and omissions made to class concerning accuracy of corporations' publicly reported financial results, and allegations implicated multiple questions common to class, including whether defendants' statements

or omissions violated federal securities law. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(a)(2).

[4]   **Federal Civil Procedure** Stockholders, investors, and depositors

Investor, named plaintiff, established that his claims were typical of those of proposed class, as required for certification of class consisting those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in putative class action against corporation and its officer alleging, inter alia, that defendants made material misrepresentations to artificially inflate corporation's stock price in violation of § 10(b) and Rule 10b-5; all putative class members and investor allegedly purchased corporation's stock during class period at prices inflated by defendants' misstatements and omissions, investor presented classwide legal theory, and investor did not appear to be subject to any unique defense inapplicable to class as a whole. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(a)(3).

[5]   **Federal Civil Procedure** Representation of class; typicality; standing in general

The purpose of the adequacy requirement for class certification is to uncover conflicts of interest between named parties and the class they seek to represent. Fed. R. Civ. P. 23(a)(4).

[6]   **Federal Civil Procedure** Representation of class; typicality; standing in general

In order to meet the adequacy requirement for class certification, the plaintiff must show that he is willing and able to vigorously prosecute the interests of the class through qualified counsel. Fed. R. Civ. P. 23(a)(4).

[7]   **Federal Civil Procedure** Representation of class; typicality; standing in general

Although class representatives need not be legal scholars and are entitled to rely on counsel, in order to satisfy the adequacy requirement for class certification, the plaintiff must at least know more than that they were involved in a bad business deal. Fed. R. Civ. P. 23(a)(4).

[8]   **Federal Civil Procedure** Stockholders, investors, and depositors

The Private Securities Litigation Reform Act (PSLRA) provisions governing the selection of class representatives do not affect the inquiry into whether a proposed class representative has met adequacy requirement of the rule governing class certification. Securities Exchange Act of 1934, § 21D, as amended, 15 U.S.C.A. § 78u-4; Fed. R. Civ. P. 23(a)(4).

1 Case that cites this headnote

[9]   **Federal Civil Procedure** Stockholders, investors, and depositors

Residency of investor, the named plaintiff, in Ireland, did not render investor an inadequate class representative, for purposes of certification of proposed class consisting of those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in putative class action against corporation and its officer alleging, inter alia, that defendants made material misrepresentations to artificially inflate price of corporation's stock in violation of § 10(b) and Rule 10b-5; investor was able to easily correspond with counsel through email, telephone, and video chat, and there was little reason to believe investor's residence posed obstacle to his ability to appear in court as needed since investor declared he would be available to travel. Securities Exchange Act of 1934, § 10(b),

15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(a)(4).

[10] **Federal Civil Procedure** Stockholders, investors, and depositors

Investor, named plaintiff, demonstrated sufficient knowledge regarding subject matter of litigation to serve as adequate class representative, as required for certification of proposed class consisting of those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in putative class action against corporation and its officer alleging, inter alia, that defendants made material misrepresentations to artificially inflate corporation's stock price in violation of § 10(b) and Rule 10b-5; investor demonstrated that he knew more than that he was involved in a bad business deal, including by testifying at deposition that he believed corporation violated federal securities law by misleadingly classifying some of company's loans in order to report profit. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(a)(4).

[11] **Federal Civil Procedure** Stockholders, investors, and depositors

Investor, named plaintiff, met the adequacy requirement, as required for certification of proposed class consisting of those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in putative class action against corporation and its officer alleging that defendants made material misrepresentations to artificially inflate price of corporation's stock in violation of § 10(b) and Rule 10b-5; district court was not aware any conflicts between investor and members of proposed class, as best court could tell investor's interests were aligned with those of the class as a whole, and investor demonstrated he was both willing and able to vigorously prosecute interests of class through qualified counsel. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(a)(4).

[12] **Federal Civil Procedure** Common interest in subject matter, questions and relief; damages issues

The inquiry to determine whether the predominance requirement for class certification is satisfied tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Fed. R. Civ. P. 23(b)(3).

[13] **Federal Civil Procedure** Stockholders, investors, and depositors

In securities law cases, predominance, for purposes of class certification, often hinges upon whether or not class members will need to individually demonstrate they relied upon a misrepresentation or omission made by the defendant. Fed. R. Civ. P. 23(b)(3).

1 Case that cites this headnote

[14] **Federal Civil Procedure** Stockholders, investors, and depositors

If the class members in a securities fraud class action cannot establish they are entitled to rely on the presumption that an investor who buys or sells stock at the market price has relied on any public material misrepresentations, or if the defendant successfully rebuts it, class members must individually establish reliance, and in practice, such individual inquiries almost inevitably prevent the plaintiff from establishing predominance requirement for class certification by overwhelming whatever common questions may exist. Fed. R. Civ. P. 23(b)(3).

1 Case that cites this headnote

[15] **Federal Civil Procedure** Stockholders, investors, and depositors

**Securities Regulation** ⚿ Fraud on the market

To establish that the class in a securities class action is entitled to rely on the presumption that an investor who buys or sells stock at the market price has relied on any public material misrepresentations, for purposes of the predominance requirement for class certification, the plaintiff must demonstrate: (1) the alleged misrepresentations were publicly known; (2) the alleged misrepresentations were material; (3) the stock traded in an efficient market; and (4) putative class members traded the stock between the time the misrepresentations were made and when the truth was revealed. ⚑ Fed. R. Civ. P. 23(b)(3).

1 Case that cites this headnote

[16] **Federal Civil Procedure** ⚿ Stockholders, investors, and depositors
**Securities Regulation** ⚿ Fraud on the market

Investor, named plaintiff, established that proposed class was entitled to rely on presumption that an investor who buys or sells stock at market price has relied on any public material misrepresentations, for purposes of predominance requirement for certification of class consisting of those who purchased and acquired corporation's class A common stock and who were damaged as result, in putative class action against corporation and officer alleging, inter alia, material misrepresentations to artificially inflate corporation's stock price in violation of § 10(b) and Rule 10b-5; alleged misrepresentations were publicly known, alleged misrepresentations were presumed to be material at class certification stage, corporation's stock traded in efficient market, and proposed class traded the stock between time misrepresentations were made and when they were corrected. Securities Exchange Act of 1934, § 10(b), ⚑ 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; ⚑ Fed. R. Civ. P. 23(b)(3).

1 Case that cites this headnote

[17] **Securities Regulation** ⚿ Fraud on the market

The presumption, that an investor who buys or sells stock at the market price has relied on any public material misrepresentations, relies upon indirect evidence of stock price impact to establish reliance on misrepresentations; direct evidence that the misrepresentation did not affect the price of the stock severs that link.

6 Cases that cite this headnote

[18] **Federal Civil Procedure** ⚿ Stockholders, investors, and depositors
**Securities Regulation** ⚿ Presumptions and burden of proof

Defendants, corporation and officer, did not rebut presumption, as would preclude investor from relying on presumption that an investor who buys or sells stock at market price has relied on any public material misrepresentations, for purposes of establishing predominance requirement for certification of proposed class consisting those who purchased or acquired corporation's class A common stock during certain time period and who were damaged as result, in putative class action alleging, inter alia, that defendants made material misrepresentations to artificially inflate corporation's stock price in violation of § 10(b) and Rule 10b-5, despite contention that there was no statistically significant price adjustment following certain corrective disclosure dates; defendants did not point to evidence that alleged misrepresentations did not affect stock price. Securities Exchange Act of 1934, § 10(b), ⚑ 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; ⚑ Fed. R. Civ. P. 23(b)(3).

6 Cases that cite this headnote

[19] **Federal Civil Procedure** ⚿ Stockholders, investors, and depositors
**Securities Regulation** ⚿ Presumptions and burden of proof

Defendants can rebut the presumption that an investor who buys or sells stock at the market price has relied on any public material misrepresentations, at the class certification

stage in a securities class action by showing a lack of stock price impact following a misrepresentation, and not following a corrective disclosure.

6 Cases that cite this headnote

[20] **Securities Regulation** Presumptions and burden of proof

The presumption that an investor who buys or sells stock at the market price has relied on any public material misrepresentations can be rebutted by evidence that the asserted misrepresentation, or its correction, did not affect the market price of the defendant's stock, at the merits stage of a securities class action.

[21] **Federal Civil Procedure** Common interest in subject matter, questions and relief; damages issues

In order to establish that the calculation of damages is a common question susceptible of measurement on a classwide basis, for purposes of the predominance requirement for class certification, plaintiffs must demonstrate that their theory of damages is consistent with their theory of liability. Fed. R. Civ. P. 23(b)(3).

3 Cases that cite this headnote

[22] **Federal Civil Procedure** Stockholders, investors, and depositors

Investor's theory of damages was consistent with proposed theory of liability, so that investor established that calculation of damages was common question susceptible of measurement on classwide basis, for purposes of the predominance requirement for certification of proposed class consisting of those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in putative class action against corporation and its officer alleging, inter alia, that defendants made material misrepresentations to artificially inflate corporation's stock price in violation of § 10(b) and Rule 10b-5; investor's expert analysis clearly articulated means by which investor intended to go about calculating damages on a classwide basis, including accounting for how stock-price inflation varied during class term. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(b)(3).

2 Cases that cite this headnote

[23] **Federal Civil Procedure** Stockholders, investors, and depositors

Investor established that class certification was superior to other available methods of adjudication, for purposes of certification of proposed class consisting of those who purchased or otherwise acquired corporation's class A common stock within certain time period and who were damaged as a result, in putative class action against corporation and its officer alleging, inter alia, that defendants made material misrepresentations to artificially inflate price of corporation's stock in violation of § 10(b) and Rule 10b-5; investor's arguments included that there was no other ongoing litigation, that cost of bringing individual suits would outweigh recovery, and that action presented no likely management difficulties. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j; 17 C.F.R. § 240.10b-5; Fed. R. Civ. P. 23(b)(3).

1 Case that cites this headnote

**Attorneys and Law Firms**

*443 Jennifer Barrett Poppe, Vinson & Elkins, Alithea Z. Sullivan, Gary Ewell, Ewell, Brown, Blanke & Knight LLP, Austin, TX, Michael C. Holmes, Stephen S. Gilstrap, Vinson & Elkins LLP, Dallas, TX, for Defendants.

## ORDER

SAM SPARKS, SENIOR UNITED STATES DISTRICT JUDGE

BE IT REMEMBERED on this day the Court considered the file in the above-styled cause, and specifically Plaintiff John Rooney's Amended Motion to Certify Class [# 113], Defendants EZCORP, Inc. (EZCORP) and Mark Kuchenrither (collectively, Defendants)'s Response [# 114] in opposition, Plaintiff's Reply [# 115] in support, and Defendants' Surreply [# 116] in opposition. Having reviewed the documents, the governing law, the arguments of counsel, and the file as a whole, the Court now issues the following opinion and order.

## Background

This is a securities fraud class action brought on behalf of all persons who purchased Class A common stock of EZCORP—a company which provides "instant cash" services like payday loans and pawn loans—between January 28, 2014 and October 20, 2015 (the Class Period). Plaintiff alleges that during the Class Period, EZCORP CEO Mark Kuchenrither [1] made material misrepresentations to shareholders regarding the impact of a subsidiary's loan portfolio upon EZCORP's reported financials and thereby violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

[1] Kuchenrither has served in several executive positions for EZCORP from the time he was hired as Senior Vice President, Strategic Development in March 2010. Second. Am. Compl. [# 47] ¶ 34. In October 2012, Kuchenrither assumed the role of CFO, and served as EZCORP's CFO until May 26, 2015. *Id.* ¶¶ 34, 149. Kuchenrither also served as EZCORP's CEO from July 18, 2014, to February 1, 2015, and as a director from August 12, 2014, to February 3, 2015. *Id.* ¶ 34. Moreover, Kuchenrither was appointed as a member of both EZCORP's and Grupo Finmart's Board of Directors during the Class Period. *Id.* ¶ 5.

**I. Alleged Accounting Failures**

Between January 2012 and June 2014, EZCORP acquired a 94 percent ownership interest in Grupo Finmart. Grupo Finmart is a Mexican company which issues small consumer loans to Mexican governmental employees. The loans issued by Grupo Finmart are backed by payroll withholding agreements ("convenios") with Mexican employers, and under these agreements, interest and principal payments are collected by the employers through payroll deductions and then remitted to Grupo Finmart. Plaintiff alleges that throughout the Class Period, EZCORP's lack of internal controls over financial reporting gave rise to two primary accounting errors **\*444** in connection with Grupo Finmart's loans.

First, Plaintiff alleges EZCORP failed to properly account for Grupo Finmart's non-performing payroll loans (Non-Performing Loans). Non-Performing Loans are "loans that were being carried as active loans but with respect to which Grupo Finmart was not currently receiving payments." Second Am. Compl. [# 47] ¶ 99. Further, there are two types of Non-Performing Loans: in-payroll loans and out-of-payroll loans. Out-of-payroll loans are outstanding loans from customers who are no longer employed. "Under Grupo Finmart's historic accounting policy," "[i]f one payment of an out-of-payroll loan is delinquent, that one payment is considered in default; if two or more payments are delinquent at any time, the entire loan is considered in default." *Id.* Upon default of an out-of-payroll loan, Grupo Finmart ceased accruing future interest revenue. *Id.* However, "[d]ue to the likelihood of ultimately receiving payment if the customer remains employed, [Grupo Finmart] continue[d] to accrue interest on all in-payroll loans, even though Grupo Finmart may not be currently receiving payments." *Id.* In its corrective disclosures, EZCORP determined Grupo Finmart's Non-Performing Loans included a number of out-of-payroll loans that had not been properly classified as such, and some in-payroll loans that had been in non-performing status for some time. *Id.* By failing to properly account for the Non-Performing Loans, Plaintiff argues, EZCORP was able "to artificially maintain its ratio of bad debt expense to consumer loan fees and interest – a measure of health of the underlying loan portfolio." *Id.* ¶ 108.

Second, Plaintiff contends EZCORP failed to properly account for the sale of Grupo Finmart loans (Loan Sales). Between 2014 and 2015, EZCORP executed five separate sales of Grupo Finmart loans. Under the terms of the Loan Sales, third-party purchasers retained a right to return non-performing loans to EZCORP. And because the loan sales were conditional on the performance of the loans, generally accepted accounting principles (GAAP) prohibited EZCORP from recognizing any revenue from these loan sales. EZCORP disregarded this prohibition and recognized tens of millions of dollars in gains on the sales. Plaintiff claims the improper accounting for the sale of the loans had the effect of artificially boosting EZCORP's reported income in

the 2014 fiscal year by 45% and its reported income during the first quarter of 2015 by 32%.

**II. Alleged False and Misleading Misstatements**
The statements Plaintiff identifies as misleading are taken from EZCORP's press releases, conference calls, and SEC forms disclosing EZCORP's financial results during the Class Period. These statements deal with EZCORP's financial results during the fourth quarter of 2013 (4Q13), the 2014 fiscal year (FY2014), and the first quarter of 2015 (1Q15). In general, the statements fall into two categories (1) statements relating to the overstatement of EZCORP's financial results, as a result of EZCORP's failure to properly account for the Loan Sales and Non-Performing Loans, and (2) statements relating to the nature of the Loan Sales. According to Plaintiff, Kuchenrither knew all of the statements described above were materially false and misleading at the time they were made.

Between April 2015 and November 2015, Defendants issued a series of corrective disclosures concerning Grupo Finmart's loan portfolio and its effect upon EZCORP's reported financials. For example, on April 30, 2015, EZCORP announced the release of its 2Q15 financial results would be delayed "due to an ongoing review of certain elements of its Grupo Finmart loan portfolio, which is not yet completed." *Id.* ¶ 96. In that same press release, EZCORP further stated it "did not undertake any asset sales in Grupo Finmart this quarter" and "noted some differences in the performance of parts of our Grupo Finmart loan portfolio that prompted a more thorough review and analysis of our loan reserves[.]" *Id.* ¶ 96. Following this announcement, EZCORP's stock fell $ 0.79 per share to close at $ 8.41 per share on May 1, 2015. *Id.* ¶ 97. Further corrective disclosures also coincided with declines in the value of EZCORP's stock.

**\*445** On November 9, 2015, EZCORP filed its restated financials from 2Q12 through 1Q15. The Restatement revealed, among other things, EZCORP's operating income was overstated by $ 90.7 million, or 27.3%, during the restated periods, and its earnings per share were overstated by $ 0.78, or 36.8%, during the restated periods. Following the filing of its restated financial results, EZCORP's stock declined $ 0.29 per share to close at $ 6.51 per share on November 9, 2015.

**III. Procedural Posture**
Plaintiff filed this lawsuit on July 20, 2015, alleging that Defendants' false and misleading statements caused EZCORP's stock to trade at artificially inflated prices and that Plaintiff suffered financial losses following the release of EZCORP's restated financial reports. *See* Compl. [# 1]. Plaintiff now moves for class certification under Federal Rule of Civil Procedure 23(b)(3). Mot. Certify [# 113]. Plaintiff specifically seeks (1) certification of a class consisting of "all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby"; and (2) the appointment of Plaintiff as representative and the appointment of Block & Leviton LLP and Glancy Prongay & Murray LLP as Class Counsel and Kendall Law Group, PLLC as Liaison Counsel. Mot. Certify [# 113-1] at 7. This pending motion is ripe for review.

**Analysis**

[1] Plaintiffs seeking to certify a class under Rule 23 bear the burden of establishing the prerequisites to certification have been met. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S.Ct. 1184, 1192, 185 L.Ed.2d 308 (2013). Rule 23(a) sets forth four such prerequisites: numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23(a)(1)–(4). In addition to these baseline prerequisites, plaintiffs seeking to certify a class action under Rule 23(b)(3) must also establish that questions common to the class predominate over those questions affecting individual class members (the "predominance" requirement) and that class adjudication is superior to other available methods of fairly and efficiently adjudicating the controversy (the "superiority" requirement). FED. R. CIV. P. 23(b)(3). The Court proceeds by examining each of these requirements in turn.

**I. Numerosity**
[2] To meet the numerosity requirement, the plaintiff must establish "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Here, Plaintiff seeks to certify a class consisting of all purchasers of EZCORP's publicly traded securities during the proposed class period. Mot. Certify [# 113-1] at 7. Although the exact number of class members is unknown, EZCORP had more than 50 million shares of Class A common stock outstanding

during the class period, and the average weekly trading volume on the NASDAQ Stock Market during the class period was roughly 2.7 million shares. Mot. Certify [# 113-4] Ex. A (Coffman Report) at 13. Absent any argument to the contrary, the Court concludes this evidence is sufficient to establish the proposed class is so numerous as to render joinder impracticable.[2]

[2] Cf. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) ("The [numerosity] prerequisite ... is generally assumed to have been met in class action suits involving nationally traded securities.")

## II. Commonality

[3] To meet the commonality requirement, the plaintiff must establish "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). In this case, Plaintiff alleges Defendants made uniform representations and omissions to the class concerning the accuracy of EZCORP's publicly reported financial results during the class period. Mot. Certify [# 113-1] at 11. These allegations implicate multiple questions common to the class, including whether Defendants' statements or omissions violated federal securities law, whether Defendants' acted with scienter, and the extent to which the market price of EZCORP's Class A shares was affected by various public statements and disclosures **\*446** made by Defendants. Accordingly, the Court concludes that Plaintiff has shown there are common questions of law and fact sufficient to establish commonality.

## III. Typicality

[4] To meet the typicality requirement, the plaintiff must establish that "the claims or defenses of the representative part[y] are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Here, Plaintiff's claims and defenses are typical of those of the class. All putative class members, including Plaintiff, allegedly purchased EZCORP stock during the class period at prices inflated by Defendants' misstatements and omissions. Mot. Certify [# 113-1] at 7, 11. Further, Plaintiff has presented a classwide legal theory and does not appear to be subject to any unique defense inapplicable to the class as a whole. *See, e.g.*, *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 597–99 (3d Cir. 2009) ("[The typicality inquiry] properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims."). In sum, the interests and incentives of Plaintiff and the members of the proposed class appear to be aligned, and absent any argument to contrary from Defendants, the Court concludes that Plaintiff has established his claims are typical of those of the class.

## IV. Adequacy

[5] [6] [7] To meet the adequacy requirement, the plaintiff must establish that he will "fairly and adequately protect the interests of the class" in his capacity as class representative. FED. R. CIV. P. 23(a)(4). The purpose of this requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Moreover, in the Fifth Circuit,[3] the plaintiff must show that he is willing and able to "vigorously prosecute the interests of the class through qualified counsel." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482–84 (5th Cir. 2001) (quoting *Gonzales v. Cassidy*, 474 F.2d 67, 72–73 (5th Cir. 1973)). And although class representatives "need not be legal scholars and are entitled to rely on counsel," the plaintiff must at least "know more than that they were involved in a bad business deal." *Berger*, 257 F.3d at 483.

[3] Compare *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484–85 (5th Cir. 1982) ("The adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." (relying on *Jaurigui v. Ariz. Bd. of Regents*, 82 F.R.D. 64 (D. Ariz. 1979); *Klein v. Miller*, 82 F.R.D. 6, 8 (N.D. Tex. 1978))), with *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) ("Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."), *In re Gen. Motors Corp.*

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995) ("The adequacy of representation inquiry ... considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of counsel to represent the class."), and *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) ("To determine whether plaintiffs will adequately represent a class, ... [courts must ask whether] named plaintiffs and their counsel have any conflicts of interests with other class members and ... [whether] the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class[.]" (internal quotation marks and citation omitted) ).

[8] As an initial matter, Defendants argue that Plaintiff is not an adequate class representative because, as an individual with a small amount of purported damages, Plaintiff is not the PSLRA's preferred type of class representative. Resp. [# 114] at 17; *see also id.* at 11 (arguing the adequacy inquiry must be "particularly searching" in securities class actions implicating the PSLRA). This argument misses the mark because the PSRLA's provisions governing the selection of class representatives do not affect the inquiry into whether a proposed class representative has met Rule 23 (a)(4)'s adequacy requirement. *See Berger v. Compaq Computer Corp.*, 279 F.3d 313, 313–14 (5th Cir. 2002) (per curiam) (noting the PSLRA did not "change the law ... regarding the standard for conducting a rule 23(a)(4) adequacy inquiry"); **\*447** *see also In re Cavanaugh*, 306 F.3d 726, 736 (9th Cir. 2002) ("[T]he [PSLRA] did not change the standard for adequacy[ ] ....").[4]

---

[4] But see *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 146 (N.D. Tex. 2014) (interpreting the original panel decision in *Berger* to require a "particularly searching" investigation into adequacy of the proposed class representative").

[9] Defendants also suggest Plaintiff is an inadequate class representative because he lives in Dublin, Ireland. Resp. [# 114] at 16–17. Defendants do not, however, clearly explain why or how living in Dublin might affect Plaintiff's ability to serve as a class representative. *See* Resp. [# 114] at 16 (stating only that Plaintiff's residence in Dublin is a "relevant factor[ ]" that "undermine[s] his ability to protect the interests of absent class members"). And in any event, the Court concludes Plaintiff's residence in Ireland does not affect his ability to protect the interests of the class or his ability to prosecute this action through qualified counsel. Plaintiff can easily correspond with counsel through email, telephone, and video chat to stay abreast of developments in the case. There is also little reason to believe Plaintiff's residence in Ireland poses an obstacle to his ability to appear in court as needed. Not only has Plaintiff declared he will be available to travel to trial in Austin as necessary, but Plaintiff has already flown to Boston to sit for a deposition on February 9, 2018. Rooney Decl. at 6; Mot. Certify [# 113-1] at 13. The Court therefore concludes that Plaintiff's Irish residency would not render Plaintiff an inadequate class representative.

[10] Finally, Defendants contend Plaintiff is not an adequate class representative because Plaintiff has no idea what is going on in this lawsuit. Resp. [# 114] at 15. To be sure, Plaintiff could have a better grasp on the specifics of this lawsuit, *see* Resp. [# 114] at 15 (detailing the things that Plaintiff did not know at his deposition), and he is not the Platonic ideal of a class representative. Yet he has also demonstrated that he knows more than that he was involved in a bad business deal. *Berger*, 257 F.3d at 483. Plaintiff testified at his deposition that he bought shares of EZCORP on the basis of its past performance, that the value of his EZCORP stock dropped precipitously after he purchased it, and that he attributes this drop in value to EZCORP's restatements of its financials. Mot. Certify Class [# 113-8] Ex. A at 10 ("[I]t wasn't just, you know, ... that they hoped to get a new customer and they just missed out.... Those things I understand. But just having to restate accounts, it just seemed, I just felt that I was taken in and then ended up losing[ ] ...."). Plaintiff also testified at his deposition that he believed EZCORP violated federal securities law by misleadingly classifying some of the company's loans in order to report a profit instead of a loss. *Id.* at 11–13. In light of this testimony and additional declarations made by Plaintiff in conjunction with his motion for class certification, *see* Rooney Decl. at 1–7, the Court concludes Plaintiff has demonstrated sufficient knowledge regarding the subject matter of this litigation to serve as an adequate class representative.

[11] Having dispensed with Defendants' objections, the Court concludes Plaintiff has established that he will fairly and adequately protect the interests of the class. The Court is aware of no conflicts between Plaintiff and the members of the proposed class, and as best the Court can tell, Plaintiff's interests are aligned with those of the class as a whole.

*Amchem*, 521 U.S. at 625, 117 S.Ct. 2231. Moreover, Plaintiff has demonstrated he is both willing and able to vigorously prosecute[5] the interests of the class through qualified counsel. *Gonzales*, 474 F.2d at 72–73. In brief, the Court finds Plaintiff has met the adequacy requirement.

[5] Indeed, this lawsuit has been vigorously contested by both sides for the better part of two years.

## V. Predominance

**[12]** To meet the predominance requirement, the plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). This inquiry tests whether the proposed class is "sufficiently cohesive to warrant ***448** adjudication by representation." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231.

Defendants suggest two ways in which Plaintiff has failed to establish predominance. First, Defendants argue that some class members will have to demonstrate reliance on an individual basis and that these individual inquiries will predominate over common questions as to those class members. Resp. [# 114] at 19–26. Second, Defendants argue that Plaintiff cannot demonstrate predominance because Plaintiff has not "articulate[d] how alleged damages could be calculated on a class-wide basis." Resp. [# 114] at 17. The Court evaluates both arguments and then turns to the ultimate question of whether Plaintiff has met the predominance requirement.

### A. Reliance

**[13]** **[14]** In securities law cases, predominance often hinges upon whether or not class members will need to individually demonstrate they relied upon a misrepresentation or omission made by the defendant. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S.Ct. 1184, 1193–96, 185 L.Ed.2d 308 (2013) (noting plaintiffs seeking to recover damages under § 10(b) must prove they relied on such a misrepresentation or omission when purchasing or selling a security). If the securities at issue traded in an efficient market, the class members may sometimes invoke a rebuttable presumption of reliance. *See Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), 573 U.S. 258, 134 S.Ct. 2398, 2408, 189 L.Ed.2d 339 (2014) ("[W]henever the investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations ... may be presumed for purposes of a Rule 10b-5 action.'" (alteration in original) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) ) ). This presumption is of particular use in class actions because to the extent the class members are able to invoke the presumption, reliance becomes a common question capable of resolution on a classwide basis. Conversely, if the class members cannot establish they are entitled to rely on the presumption, or if the defendant successfully rebuts it, class members must individually establish reliance, and in practice, such individual inquiries almost inevitably prevent the plaintiff from establishing predominance by overwhelming whatever common questions may exist. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 322 (5th Cir. 2005) ("Absent an efficient market, individual reliance by each plaintiff must be proven, and the proposed class will fail the predominance requirement.").

The Court proceeds by first assessing whether Plaintiff is entitled to rely on the presumption. It then considers whether Defendant has rebutted the presumption.

#### 1. The *Basic* Presumption

**[15]** To establish the class is entitled to rely on the *Basic* presumption, the plaintiff must demonstrate (1) "the alleged misrepresentations were publicly known"; (2) the alleged misrepresentations were material; (3) "the stock traded in an efficient market"; and (4) putative class members "traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 134 S.Ct. at 2408.

**[16]** Here, Plaintiff has met all four prerequisites to invoking the presumption at the class certification stage.[6] First, the alleged misrepresentations were publically known. As detailed in the Court's previous orders, the alleged misrepresentations and corrective statements made by Defendants were contained within EZCORP's press releases, SEC forms, and conference calls with analysts and investors. *See* Order of July 26, 2018 [# 102] at 4. Second, the alleged misrepresentations are presumed to be material at the class certification stage. *See Amgen*, 133 S.Ct. at

1191, 1195-96 ("Proof [of materiality] is not a prerequisite to class certification."). Third, EZCORP's stock traded in an efficient market. EZCORP's stock traded in the NASDAQ Stock Market, one of the largest markets in the world, and perhaps for this reason, Defendants have not contested that **\*449** EZCORP stock trades in an efficient market. Hr'g Tr. [# 119] at 4. Nevertheless, the Court has reviewed the expert report submitted by Plaintiff in support, *see* Coffman Report at 12-34, and applying the *Cammer* factors,[7] the Court concludes Plaintiff has established EZCORP's stock traded in an efficient market. Fourth and finally, Plaintiff and the rest of the proposed class traded the stock between the time the misrepresentations were made and when they were corrected. *See* Third Am. Compl. [# 106] at 28 (specifying that first alleged misrepresentation was contained within press release issued by EZCORP on January 28, 2014); Order of July 26, 2018 [# 102] (outlining timing of corrective disclosures); Mot. Certify [# 113] at 2 (defining class as "all persons and entities that purchased or otherwise acquired [EZCORP stock] between January 28, 2014 and October 20, 2015). In sum, the Court concludes Plaintiff has established the class is entitled to a presumption of reliance at the class certification stage.

[6] Indeed, Defendants do not contend that Plaintiff has failed to establish any of the prerequisites to invoking the *Basic* presumption. *See* Resp. [# 114] at 17–26 (seeking to rebut presumption but declining to contest Plaintiff's ability to invoke the presumption in the first place).

[7] Though neither the Supreme Court nor the Fifth Circuit has adopted a formal test for market efficiency, district courts routinely apply a list of factors derived from *Cammer v. Bloom*, 711 F.Supp. 1264 (D.N.J. 1989). *See, e.g., In re Petrobras Sec. Litig.*, 3121 F.R.D. 354, 364–65 (S.D.N.Y. 2016).

### 2. Rebutting the *Basic* Presumption

[17] [18] The *Basic* presumption relies upon indirect evidence of price impact to establish reliance; direct evidence that the misrepresentation did not affect the price of the stock severs that link. *Halliburton II*, 134 S.Ct. at 2414. Thus, in *Halliburton II*, the Supreme Court held that defendants can defeat the *Basic* presumption at the class certification stage "through evidence that the misrepresentation did not in fact affect the stock price." *Id.* Here, Defendants argue they have partially rebutted the presumption by showing there was no statistically significant price adjustment following two of the corrective disclosure dates identified by Plaintiff. *See* Resp. [# 114] at 19–26 (asserting there was no statistically significant price adjustment following disclosures on July 17, 2015 and October 20, 2015). As explained by Defendants, if there was no statistically significant price adjustment following the disclosures, any price adjustment that did occur must be due to "random chance," and thus, the misrepresentation could not have affected the stock price. *Id.* at 22. This line of reasoning suffers from several flaws.

[19] [20] As an initial matter, Defendant have failed to rebut the *Basic* presumption because Defendants have only pointed to evidence that there was no statistically significant price adjustment following two of the *corrective disclosure* dates. Resp. [# 114] at 21. By contrast, *Halliburton II* allows defendants to defeat the *Basic* presumption "through evidence that the *misrepresentation* did not in fact affect the stock price." 134 S.Ct. at 2414. Defendants argue they should be able to rebut the presumption by showing the absence of a statistically significant price adjustment following either the misrepresentation *or* the corrective disclosure. Resp. [# 114] at 22–23. But the Court concludes *Halliburton II* only allows defendants to rebut the *Basic* presumption by showing a lack of price impact following a misrepresentation, and not following a corrective disclosure. *Compare Halliburton II*, 134 S.Ct. at 2414, 2416 (holding defendants may rebut *Basic* presumption by showing lack of "price impact"), *with Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 814, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011) (defining "price impact" as "the effect of a misrepresentation on a stock price" and holding that the question of whether a misrepresentation "caused a subsequent economic loss" when corrected is a matter of loss causation that need not be established by plaintiff at the class certification stage).[8]

8
Defendants protest that *Halliburton II* "made clear" the *Basic* presumption could be rebutted " 'by evidence that the asserted misrepresentation (*or its correction* ) did not affect the market price of the defendant's stock.' " Resp. [# 114] at 22–23 (quoting *Halliburton II*, 134 S.Ct. at 2414) (emphasis added) ). This is undoubtedly true—at the merits stage. But this case is currently at the class certification stage, and because the language from *Halliburton II* relied upon by Defendants is quite clearly discussing the means by which Defendants can rebut the *Basic* presumption *at the merits stage*, it has no bearing here. *Halliburton II*, 134 S.Ct. at 2414 ("There is no dispute that defendants may introduce such evidence at the merits stage to rebut the *Basic* presumption[ ] ... including evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock.").

**\*450** Defendants' attempt to rebut the *Basic* presumption is also flawed from a statistical perspective. Defendants suggest the lack of a statistically significant price adjustment following a corrective disclosure shows that whatever price adjustment has occurred must be due to "random chance" rather than a predicate misrepresentation. Resp. [# 114] at 22. But that is not how hypothesis testing works. A statistically significant price adjustment following a corrective disclosure is evidence the original misrepresentation did, in fact, affect the stock price. The converse, however, is not true—the absence of a statistically significant price adjustment does *not* show the stock price was unaffected by the misrepresentation.[9] Nor does it indicate that what price adjustment did occur must be attributed to "random chance." Resp. [# 114] at 22.

9
See generally *In re Petrobras Sec.*, 862 F.3d 250, 278–79 & n.30 (2d Cir. 2016) (observing that " 'the failure of the price to react so extremely as to be detectable ... mean[s] only that' the effect size was not large enough to be detected in the available sample" and that " '[w]hile some courts have been sensitive to this distinction ..., other courts have remained inattentive to this fact, which has generated inaccurate findings in some securities cases.' " (quoting Alon Brav & J.B. Heaton, *Event Studies in Securities Litigation: Low Power, Confounding Effects, and Bias*, 93 WASH. U. L. REV. 583, 602 (2015) ) ).

Here, Plaintiff's expert, Chad Coffman, submitted an expert report indicating the two corrective disclosure dates at issue here returned p-values of 0.234 and 0.233, respectively. Resp. [# 114-3] Ex. 2 at 9–11. These p-values suggest there is a 77 percent chance the corrective disclosures identified by Plaintiff negatively impacted EZCORP's stock price on these dates. *See id*. What they do not suggest is that the misrepresentation "did not affect the stock price."[10]

10
Defendants suggest that even though there is a 77 percent chance the corrective disclosures negatively impacted EZCORP'S stock price, they should nevertheless be allowed to rebut the *Basic* presumption by pointing to the absence of a statistically significant price impact at a 95-percent confidence interval. Resp. [# 114] at 21–22. But the practical effect of such a maneuver would be to require plaintiffs to show loss causation at the class certification stage, and *Halliburton I* held that plaintiffs need only make such a showing *after* class certification. See *Halliburton I*, 563 U.S. at 813, 131 S.Ct. 2179 ("Loss causation ... requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss[ ] ... [and] has nothing to do with whether an investor relied on the misrepresentation in the first place."); *cf. In re Petrobras Sec.*, 862 F.3d at 278–279 (suggesting district courts should not rely solely upon directional event studies at the class certification stage because "methodological constraints limit their utility in the context of single-firm analyses").

In brief, the Court concludes that Defendants have failed to rebut the *Basic* presumption because they have not pointed to any evidence that the alleged misrepresentations did not affect the stock price. As a result, Plaintiff is entitled to rely on the presumption at the class certification stage. And insofar as the class can rely on the presumption to establish reliance, the class's ability to demonstrate reliance remains a common question capable of classwide resolution.

### B. Damages Calculations

[21] In order to establish that the calculation of damages is a common question "susceptible of measurement" on a classwide basis, plaintiffs must demonstrate that their theory of damages is consistent with their theory of liability. *See* *Ludlow v. BP, PLC*, 800 F.3d 674, 688–89 (5th Cir. 2015) (interpreting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) ), cert denied, ––– U.S. ––––, 136 S.Ct. 1824, 194 L.Ed.2d 829 (2016); *see also* *Comcast*, 569 U.S. at 35, 133 S.Ct. 1426 ("[A] model purporting to serve as evidence of damages" suffered by the class "must measure only those damages attributable to that theory [of liability relied on by the plaintiff].").

[22] Defendants argue that Plaintiff's proposed theory of damages "fails to articulate how alleged damages could be calculated on a class-wide basis" consistent with the proposed theory of liability. Resp. [# 114] at **451** 17. Specifically, Defendants contend that Plaintiff's expert, Chad Coffman, has "failed to articulate a means to": (1) "disaggregate from damages price declines resulting from non-actionable confounding information"; (2) "isolate the impact of materialization of known risks from the impact of allegedly concealed risks"; (3) "calculate damages on a class-wide basis if Plaintiff is able to prevail only on claims relating to certain of the remaining alleged misstatements"; and (4) "account for how stock-price inflation varied during the purported class term." Resp. [# 114] at 19.

In fact, Coffman's expert report considered all of these things. In his report, Coffman explains that he conducted an event study and used regression analysis to assess the effect of EZCORP's disclosures upon the company's stock. Coffman Report at 22–23. Specifically, for each trading day analyzed, Coffman constructed a regression model using data from the prior 120 trading days and leveraged this " 'rolling' estimation window" to discern the relationship between EZCORP's common stock, industry and market factors, and firm-specific price volatility. *Id.* at 23–30. Using this methodology, Coffman calculated the abnormal returns attributable to "new material news and changes in the market price of EZCORP Common Stock." *Id.* at 30. Coffman explains in his report that these abnormal returns can be used to calculate damages on a classwide basis using the "out-of-pocket" method, "which measures damages as the artificial inflation per share at the time of purchase less the artificial inflation at the time of sale." Coffman Report at 34–35. In this way, damages for individual class members can "be calculated formulaically based on information collected in the claims process ...." *Id.*

As far as the Court can discern, this analysis quite clearly articulates the means by which Coffman intends to go about calculating damages on a classwide basis. And given Defendants' complete failure to expand on any of their extremely conclusory complaints regarding Coffman's report, the Court concludes that Plaintiff's theory of damages is consistent with the proposed theory of liability and that Plaintiff has established the calculation of damages is a common question susceptible of measurement on a classwide basis.

### C. Conclusion

The Court concludes this lawsuit implicates a host of common questions, including: whether the class may invoke the *Basic* presumption at the merits stage to establish reliance; the calculation of damages; whether Defendants' statements or omissions violated federal securities law; whether Defendants acted with scienter; and the extent to which the market price of EZCORP's Class A shares was affected by various public statements and disclosures made by Defendants. In light of these common questions identified by Plaintiff, the Court finds that Plaintiff has established common questions predominate over questions affecting only individual members. Accordingly, Plaintiff has met the predominance requirement.

## VI. Superiority

[23] To establish superiority, the plaintiff must demonstrate that class certification is "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Rule 23 sets forth several "matters pertinent" to a finding of superiority, including: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A)–(D).

Here, Plaintiff argues that there is no other ongoing litigation concerning this controversy; that the individual class

members have little interest in controlling the prosecution because the cost of bringing individual suits to seek recovery would in most cases outweigh the recovery obtained; that this forum is as desirable a forum as any given the geographic dispersal of investors and EZCORP's headquarters in Austin, Texas; and that this putative class action presents **\*452** no likely management difficulties. Mot. Certify [# 113-1] at 25–26. Defendants have not put forward any argument in response, and the Court concludes that Plaintiff has established that class certification is superior to other available methods of adjudication.

## Conclusion

The Court concludes that Plaintiff's motion for class certification should be granted because Plaintiff has met all predicate requirements for bringing a class action under Rule 23(b)(3).

Accordingly,

> IT IS ORDERED that Plaintiff's Motion for Class Certification [# 113] is GRANTED.

IT IS FURTHER ORDERED that the Court CERTIFIES a class consisting of "all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest."

IT IS FURTHER ORDERED that the Court APPOINTS Lead Plaintiff John Rooney as Class Representative.

IT IS FINALLY ORDERED that the Court APPOINTS the law firms of Block & Leviton LLP and Glancy Prongay & Murray LLP as Class Counsel and The Kendall Law Group, PLLC as Liaison Counsel for the Class.

**All Citations**

330 F.R.D. 439

---

End of Document　　　　　　　　　　© 2023 Thomson Reuters. No claim to original U.S. Government Works.