# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE APACHE CORP. SECURITIES LITIGATION | Civil Action No. 4:21-cv-00575<br><br>District Judge George C. Hanks, Jr.<br><br>Magistrate Judge Andrew M. Edison |

# DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

TABLE OF CONTENTS

**Page**

Nature & Stage of the Proceedings ............................................................................ 1

Introduction & Summary of the Argument ............................................................... 1

Statement of the Issue ............................................................................................... 2

Argument ................................................................................................................... 3

    I.      Plaintiffs make only a partial challenge to the M&R. ................................. 3

    II.     The M&R correctly found that the October 25, 2019 news of Keenan's resignation did not demonstrate price impact from the earlier challenged statements ............................................................................................................ 3

          A.     The M&R properly applied the preponderance of the evidence standard in assessing this alleged corrective disclosure. ........................... 3

          B.     The weight of the evidence strongly supports the M&R's finding that Defendants severed the link as to this alleged corrective disclosure. ................................................................................................. 6

               1.     All credible evidence linked the October 25, 2019 stock reaction to concern over Suriname—not Alpine High. ................. 7

               2.     Plaintiffs' supposition that Apache's October 25, 2019 clarification dispelled *all* Suriname concern is counterintuitive and counterfactual ............................................. 11

               3.     Plaintiffs still cannot articulate the new, corrective information concerning Alpine High revealed by this disclosure. .................................................................................... 14

    III.    The M&R properly assessed the price impact of each alleged misrepresentation individually ............................................................................ 17

Conclusion ................................................................................................................. 20

i

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................. 13

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ..................................................................... 6

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
879 F.3d 474 (2d Cir. 2018) ................................................................. 4

*City of Bristol Pension Fund v. Vertex Pharms. Inc.*,
12 F. Supp. 3d 225 (D. Mass. 2014) ..................................................... 12

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
322 F. Supp. 3d 676 (D. Md. 2018) ....................................................... 18

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
No. CV H-21-2045, 2023 WL 6300569 (S.D. Tex. Sept. 27, 2023) ........... 4

*Ferris v. Wynn Resorts Ltd.*,
2023 WL 2337364 (D. Nev. Mar. 1, 2023) ............................................. 14

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021) .......................................................... 4, 5, 13, 14, 18, 19

*Greenberg v. Crossroads Sys., Inc.*,
364 F.3d 657 (5th Cir. 2004) ................................................................. 9

*Freeman v. Cnty. of Bexar*,
142 F.3d 848, 852 (5th Cir. 1998) ......................................................... 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ............................................................................. 17

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
No. CV 20-4660-KSM, 2023 WL 7285167 (E.D. Pa. Nov. 3, 2023) ......... 4

*Heck v. Orion Grp. Holdings, Inc.*,
468 F. Supp. 3d 828 (S.D. Tex. 2020) ................................................... 14

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
    818 F.3d 775 (8th Cir. 2016) ...................................................................... 17

*In re Allergan PLC Sec. Litig.*,
    No. 18CIV12089-CM-GWG, 2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) ............... 4

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015) ............................................................ 10

*In re Neurotrope, Inc. Sec. Litig.*,
    315 F. Supp. 3d 721 (S.D.N.Y. 2018) .......................................................... 10

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
    424 F. Supp. 2d 880 (N.D. Tex. 2005) ........................................................ 14

*In re Reliant Sec. Litig.*,
    No. H-02-1810, 2005 WL 8152605 (S.D. Tex. Feb. 18, 2005) ...................................... 4

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    No. 15cv1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017) .................................... 18

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*,
    322 F.3d 847 (5th Cir. 2003) ...................................................................... 8

*Ramirez v. Exxon Mobil Corp.*,
    No. 3:16-CV-03111-K,
    2023 WL 5415315 (N.D. Tex. Aug. 21, 2023) ...................................... 4, 6, 10, 11, 13

*Silverman v. Motorola, Inc.*,
    798 F. Supp. 2d 954 (N.D. Ill. 2011) ...................................................... 4, 13

*Sterlin v. Biomune Sys.*,
    154 F.3d 1191 (10th Cir. 1998) ................................................................ 12

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ....................................................................... 18

## NATURE & STAGE OF THE PROCEEDINGS

This is a putative class action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 thereunder. Plaintiffs sought to certify a class with a class period of September 7, 2016 through March 16, 2020. Judge Edison recommended granting that motion in part and certifying a class with a class period of September 7, 2016 through February 22, 2018. Plaintiffs objected to part of Judge Edison's recommendation.

## INTRODUCTION & SUMMARY OF THE ARGUMENT

Plaintiffs have secured certification of a class of those who purchased Apache stock between September 7, 2016 and February 22, 2018. Now they are quibbling about whether the class period should end on February 22, 2018, as Judge Edison ruled, or be extended until October 25, 2019. Plaintiffs are overreaching.

The issue comes down to a dispute governed by the preponderance of the evidence standard: whether the October 25, 2019 news of Keenan's resignation was a proper corrective disclosure that demonstrated price impact. For context, long before October 25, 2019, Apache had already disclosed that its Alpine High play in the Permian Basin (the topic of the alleged misrepresentations in this case) had a gassier mix of hydrocarbons than expected, and analysts had well publicized the underperformance of the play. Further, by October 25, 2019, the market was well aware that Apache had ceased production from Alpine High back in March of that year. Meanwhile, the market also knew that Apache was on the verge of drilling what one analyst described as "one of the most highly-anticipated exploration wells of the year" in the South American country of Suriname

1

(wholly unrelated to this case), Dkt. 142-5 at ECF p. 269, and Keenan's name was associated with those efforts. Judge Edison evaluated and weighed the evidence on this question—which included the article announcing Keenan's resignation and analyst reports reacting to it—and found that the preponderance of the evidence supported that the news of the resignation was not corrective of any alleged misrepresentation, but rather that the resulting price movement was associated with concern that Apache's Suriname well was unsuccessful. Judge Edison therefore concluded that the October 25 disclosure did not demonstrate price impact. Plaintiffs now attempt to relitigate that finding by imposing a summary-judgment-like standard on Defendants that would require them to conclusively show the absence of any price impact "as a matter of law." That simply is not the law. The Supreme Court has been clear that price impact is a question of fact governed by the preponderance of the evidence standard. Defendants more than met that evidentiary burden.

Plaintiffs also mount a second effort to obtain their desired extension of the class period by assaulting the equally clear law that each alleged misrepresentation's price impact must be demonstrated individually. But that, too, fails in light of the law and logic.

The Court should reject Plaintiffs' overreach, overrule Plaintiffs' Objections, and adopt Judge Edison's Memorandum and Recommendation ("M&R"). That will leave Plaintiffs with a victory, but one within the bounds of the facts and law.

## STATEMENT OF THE ISSUE

The only issue presented is whether Judge Edison properly concluded that Defendants demonstrated lack of price impact under the preponderance of the evidence

standard and thus properly recommended denying Plaintiffs' motion for class certification in part. A magistrate judge's class certification recommendation is reviewed de novo. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). "[B]ut the district court should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge." *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998).

ARGUMENT

## I. Plaintiffs make only a partial challenge to the M&R.

Before diving into Plaintiffs' challenges, it is important to note what Plaintiffs are not challenging. Plaintiffs of course take no issue with the M&R certifying a class. And they make no "objecti[on] … to Judge Edison's findings with respect to the April 23, 2019 and March 16, 2020 alleged corrective disclosures," for which he also found Defendants met their preponderance-of-the-evidence burden. Obj. 1 n.1. Instead, Plaintiffs ask that the class period be extended to October 25, 2019 and mount two arguments in support: (1) the M&R erred in finding that the October 25, 2019 news of Keenan's resignation was not a proper corrective disclosure that demonstrated price impact; and (2) the M&R erred by assessing the price impact of each alleged misrepresentation individually.

## II. The M&R correctly found that the October 25, 2019 news of Keenan's resignation did not demonstrate price impact from the earlier challenged statements.

### A. The M&R properly applied the preponderance of the evidence standard in assessing this alleged corrective disclosure.

Plaintiffs first attack the M&R's finding that the October 25, 2019 news of Keenan's resignation was not a viable corrective disclosure by moving the evidentiary goalposts. According to Plaintiffs, because "a price drop [need only be] caused in part" by revelation

3

of the alleged fraud, and because Plaintiffs claim to have presented *some* conflicting evidence linking the October 25, 2019 disclosure to Alpine High, Judge Edison "improperly concluded, *as a matter of law*, that none of Apache's stock price drop on October 25, 2019, was related to Alpine High, and that all of the price decline was attributable to Suriname." Obj. 3 (emphasis modified); *id.* (claiming evidence was not "sufficient to show" lack of price impact "as a matter of law"); *id.* at 12 ("Judge Edison erred in determining, as a matter of law, that Keenan's resignation was not a corrective disclosure.").

There is just one problem—Judge Edison did not find *anything* "as a matter of law"[1] because that is unequivocally not the evidentiary standard for assessing price impact. As the Supreme Court confirmed just three years ago (and as Plaintiffs' Objections elsewhere confess, Obj. 11), the standard is simply that Defendants "carry th[e] burden by a *preponderance of the evidence*" to prove "that an alleged misrepresentation did not actually affect the market price." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 119, 126 (2021) (citation omitted) (emphasis added). In response to that unambiguous command, Plaintiffs deploy phrases from the case law like "***complete*** lack of price impact" or "***at least contribute*** to the price drop," as if isolating and bolding those terms describing the nature of the *factual* question somehow transforms *Goldman*'s mere-preponderance

---

[1] In fact, the only time the words "matter of law" appear in the M&R is as part of a *plaintiff-friendly* observation: "As a matter of law, [t]he lack of statistically significant proof that a statement affected the stock price is not statistically significant proof of the opposite, *i.e.*, that it did not actually affect the stock price." M&R 20 (citation omitted & alterations in original).

evidentiary burden into a summary-judgment standard that requires conclusive, matter-of-law proof. Obj. 3, 13-14.

None of Plaintiffs' cases supports that conflation,[2] and courts have repudiated attempts to require defendants to "conclusively" prove a "complete absence of price impact." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 485 (2d Cir. 2018) (vacating class certification order "[b]ecause the District Court concluded its findings with these words," making "it … unclear … whether the court required more of defendants than a preponderance of the evidence"); *see, e.g.*, *Ramirez v. Exxon Mobil Corp.*, No. 3:16-CV-03111-K, 2023 WL 5415315, at *16-20 (N.D. Tex. Aug. 21, 2023) (repeatedly weighing competing evidence before finding defendants rebutted the *Basic* presumption as to multiple corrective disclosures). Instead, *Goldman* itself explicitly acknowledges that the starting point for class-certification battles in "most securities-fraud class actions" is "*competing* expert evidence on price impact." 594 U.S. at 126 (emphasis added). "The district court's task is simply to assess *all* the evidence of price impact—direct and indirect—and determine whether it is *more likely than not* that the alleged

---

[2] *See Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, No. CV H-21-2045, 2023 WL 6300569, at *6-10 (S.D. Tex. Sept. 27, 2023) (reiterating *Goldman*'s "preponderance of the evidence" and "more likely than not" standard, before addressing the battle of competing expert evidence, "decid[ing] which sides' expert is more likely correct," and assessing the "probative value" of certain evidence); *In re Allergan PLC Sec. Litig.*, No. 18CIV12089-CM-GWG, 2021 WL 4077942, at *12-13 (S.D.N.Y. Sept. 8, 2021) (reiterating *Goldman*'s "preponderance of the evidence" standard, assessing evidence, and concluding that "Allergan has … failed to persuade the Court" regarding price impact); *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. CV 20-4660-KSM, 2023 WL 7285167, at *20 (E.D. Pa. Nov. 3, 2023) (not involving a challenge to price impact at all, but rather an argument that "Plaintiff's damages methodology fails to match Plaintiff's theory of liability"); *In re Reliant Sec. Litig.*, No. H-02-1810, 2005 WL 8152605, at *3 (S.D. Tex. Feb. 18, 2005) (not addressing price impact at all); *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 983 (N.D. Ill. 2011) (ruling on motion for summary judgment under the distinct standard of whether "Plaintiffs have introduced *sufficient evidence to support a reasonable jury finding* that the alleged misstatements artificially inflated Motorola's stock price") (emphasis added).

misrepresentations had a price impact." *Id.* at 127 (emphases added). Far from the insuperable hurdle Plaintiffs envision, that "burden of persuasion will have bite only when the Court finds the evidence in equipoise—a situation that should rarely arise." *Id.*

The evidentiary record here was lightyears from "equipoise." As demonstrated below, *infra* § II.B, the evidentiary scales tipped emphatically in favor of Defendants' showing of no price impact—both with respect to the "compelling evidence that the market reacted to the news of Keenan's departure for a reason wholly unrelated to Alpine High" and the evidentiary void regarding "any *new* information revealed by the news of Keenan's resignation" that was corrective of the alleged fraud. M&R 17. The M&R is a textbook application of factfinding under the *Goldman* standard, with Judge Edison properly holding Defendants to their burden to "rebut[] the *Basic* presumption by a preponderance of the evidence." *Id.* at 18. The Court should reject Plaintiffs' efforts to misconstrue the M&R and the relevant evidentiary burden.

**B.     The weight of the evidence strongly supports the M&R's finding that Defendants severed the link as to this alleged corrective disclosure.**

Having dispensed with Plaintiffs' contortion of the proper evidentiary burdens, the question simply becomes: Did Judge Edison correctly assess the weight of the testimony and documentary proof rebutting the *Basic* presumption by a preponderance of the evidence? The answer is a resounding "yes"—both in terms of evidence affirmatively demonstrating that the October 25, 2019 price reaction related to concerns about Suriname, and a patent lack of connection between the Keenan resignation disclosure and any new news revealing a corrective truth about Alpine High. Plaintiffs' Objections cannot

meaningfully grapple with that compelling evidence negating price impact, so they continue to misconstrue or ignore it.

> 1. **All credible evidence linked the October 25, 2019 stock reaction to concern over Suriname—not Alpine High.**

Start with what analysts actually said in the aftermath of the October 25, 2019 announcement, repeatedly and explicitly linking Apache's stock movement to investor concerns over what Keenan's resignation meant for the company's Suriname exploration efforts. *See Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 104 (2d Cir. 2023) ("market commentary can provide insight into the kind of information investors would rely upon in making investment decisions" "and therefore can serve as indirect evidence of price impact"); *Ramirez*, 2023 WL 5415315, at *17 (analyst commentary showed that "confounding factors likely explain" stock price movement on date in question). Plaintiffs downplay Judge Edison's reliance on "certain analysts," Obj. 7, but the resounding chorus of analyst commentary—including from all reports issued on the day of the October 25, 2019 disclosure—speaks for itself:

- Credit Suisse (10/25/19): ***Resignation of Exploration Head Highlights Suriname Risk to Share Price*** […] Timing of resignation is concerning. While Mr. Keenan's exact role in Suriname is not clear (APA claims the resignation is not connected to the exploration prospect), APA is underperforming peers by >5% today given the timing of the departure of the head of Worldwide Exploration when the company is on the 31st day of drilling the Suriname well, i.e. is now within the expected 30-60 day spud-to-TD window. ***Today's sell-off nonetheless highlights the high expectations for the well already baked into APA's stock price*** [….] Dkt. 117-10 at 1 (emphasis modified).

- RBC Capital Markets (10/25/19): We think APA share weakness is a reaction to ***investor concern that the resignation is related to the outcome of APA's Maka-1 exploration well in Suriname***. Dkt. 117-11 at 1 (emphasis added).

- <u>SunTrust Robinson Humphrey (10/25/19)</u>: Apache's stock underperformed this morning (down ~5.5% vs. XOP up ~1%) on ***investor speculation that a SVP's resignation […] is linked to an upcoming unsuccessful Suriname Maka-1 exploration well*** in Block 58. Dkt. 117-12 at 1 (emphasis added).

- <u>Bloomberg (10/25/19)</u>: The geologist's departure may ***fuel concerns about the fate of Apache's search for Crude in Suriname***, adjacent to an Exxon Mobil Corp. discovery that's one of the world's biggest finds in years. Dkt. 117-9 at 1 (emphasis added).

- <u>RBC Capital Markets (10/30/19)</u>: Recent APA share weakness reflected ***concern on the Suriname program*** following a management departure. Dkt. 142-5 at ECF p. 269 (emphasis added).

- <u>Credit Suisse (10/31/19)</u>: Expectations for the well are exceedingly high, underscored by the sharp selloff in the stock last Friday after news broke that APA's head of Worldwide Exploration had departed the company—supposedly unrelated to Suriname, though with APA in the middle of drilling the well the ***timing nonetheless spooked investors***. Dkt. 142-6 at ECF p. 6 (emphasis added).

- <u>Wall Street Journal (12/2/19)</u>: In late October, Apache shares fell 5% in a day after it was reported that the company's senior vice president of world-wide exploration, Steve Keenan, had resigned, ***prompting concern about Suriname***. Dkt. 142-6 at ECF p. 17 (emphasis added).

Precisely as the M&R put it, "[t]h[is] abundance of analyst speculation about what Keenan's resignation meant for Suriname suggests that Apache's prospects in Suriname are what the market considered significant." M&R 17.

Against that wall of analyst commentary, the Objections offer precious little. Plaintiffs point to supposedly "indisputable evidence" from "numerous analysts" (actually, just two) that they say "directly attributed the stock price decline accompanying Keenan's resignation to Alpine High." Obj. 12-13. The first is an October 28, 2019 Bloomberg article. *Id.* at 13 (Compl. ¶ 103). The second is a user-generated February 28, 2020 article on the website "Seeking Alpha." *Id.* at 10 (Dkt. 120-3 ¶ 40). Neither compels a finding contrary to the M&R, much less renders Judge Edison's "finding … clear error." *Id.* at 12.

***October 28, 2019 Bloomberg Article.*** Judge Edison could not have "ignored" the October 28, 2019 Bloomberg article, *id.*, because Plaintiffs ***never presented it*** as part of the evidentiary record for class certification. In fact, Plaintiffs referred to that article only in their Complaint (¶ 103); it appears nowhere in Plaintiffs' class certification briefing, in their expert's multiple reports, or in their expert's testimony.[3] Plaintiffs "may not … use the magistrate judge as a mere sounding-board for the sufficiency of the evidence" only to then criticize Judge Edison for ignoring evidence they never raised. *See, e.g.*, *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (affirming district court's denial of attempt to raise evidence not presented to the magistrate judge).

In any event, the Bloomberg article absolutely does not "directly attribute[] the stock price decline accompanying Keenan's resignation to Alpine High." Obj. 13. The article merely observes that "[t]he geologist credited with the Alpine High resigned last week, sending shares and bonds plummeting," Compl. ¶ 103—it does not say that the resignation-driven "plummeting" was *due to* new information about Alpine High.  Indeed, many of the analyst and news reports discussed above that affirmatively link the October 25, 2019 stock movement to concerns about Suriname (not Alpine High) likewise repeat that Keenan "oversaw the discovery of the Alpine High play," Dkt. 117-10 at 1; Dkt. 117-12 at 1 (similar)—something the market had known *for years*. *See* Obj. 5 ("When announcing Alpine High [in 2017], Apache publicly credited the Company's 'star' geologist, Steve

---

[3] The Objections cite various lines of Dr. Nye's written direct testimony as support for quoting the Bloomberg article. Obj. 9 (citing Dkt. 143 at 48:16-49:15, 113:19-114:24, 116:11-117:19). But none of that testimony says anything about this Bloomberg article.

Keenan, with discovering it."). References to Keenan's long-publicized association with Alpine High simply are not a "direct[] attribut[ion]" of the October 25, 2019 stock price movement to new news concerning Alpine High. Obj. 13; *see Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 665-66 (5th Cir. 2004) ("confirmatory information has already been digested by the market and will not cause a change in stock price").

 *February 28, 2020 Seeking Alpha Post.* That leaves Plaintiffs with a *single* source supposedly linking the October 25, 2019 stock movement with Alpine High—a *Seeking Alpha* post remarking that "[t]he departure of Steve Keenan, Apache's SVP of World Wide Exploration did not pass without notice last fall. The stock dropped in part because Keenan was the Godfather of Alpine High." Dkt. 120-3 ¶ 40.[4] On a more-than-cursory examination, however, the *Seeking Alpha* post (a) was authored by an anonymous "analyst" who goes only by "Fluidsdoc,"[5] (b) was issued on February 28, 2020, the *day after* Apache's disclosure of a $3 billion write down of Alpine High and based on more than four months of post-October 25, 2019 hindsight, and (c) cited only another *Seeking Alpha* article for support on this point—an article that does not even mention Alpine High and instead explicitly links the October 25, 2019 stock "weakness" to "speculation on how this management change could affect the prospects of *the company's activities in Suriname*."[6]

---

[4] Available at https://seekingalpha.com/article/4328202-apache-corporation-look-out-below.

[5] *See In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1158 (D. Or. 2015) (describing Seeking Alpha as an "online investment advice website," in which users, even those identified only by aliases, can post); *In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 736 (S.D.N.Y. 2018) (concluding that "*Seeking Alpha* is not authoritative or reliable" and noting that the article at issue "is written by an 'analyst' who goes by a pseudonym").

[6] Available at https://seekingalpha.com/news/3509781-apache-chopped-on-word-of-key-execs-departure?hasComeFromMpArticle=true (emphasis added).

In a word, Plaintiffs' reliance on the February 2020 *Seeking Alpha* post as explanatory evidence of the October 25, 2019 price reaction was unpersuasive. Judge Edison was plainly correct in surveying *all* the evidence and finding that the more "compelling evidence" demonstrates that the October 25, 2019 stock price "moved out of concern about Apache's prospects in Suriname," not Alpine High. M&R 17-18; *see, e.g.*, *Ramirez*, 2023 WL 5415315, at \*16-17 (concluding that the "Defendants have rebutted the *Basic* presumption by a preponderance of evidence" based on "the dearth of analyst commentary" regarding the topic of the alleged fraud as to one disclosure, and "confounding factors likely explain[ing] the [stock price] movement" for another).

> ### 2.   Plaintiffs' supposition that Apache's October 25, 2019 clarification dispelled *all* Suriname concern is counterintuitive and counterfactual.

Without persuasive counterexamples to the "abundance" of analyst commentary tying Apache's stock price movement to Suriname concerns, M&R 17, the Objections switch gears. Plaintiffs declare that none of that Suriname-related commentary matters because Apache's "own prior clarification" on October 25, 2019 that Keenan's resignation was not related to Suriname "necessarily" means that any remaining 5% price drop on that day "cannot be attributed exclusively to Suriname concerns." Obj. 13. And Plaintiffs go further by accusing Judge Edison of "remarkably" ignoring this argument and "the residual 5% price decline." *Id.*

That is nonsense. The M&R *block quotes* Plaintiffs' exact argument that "any Suriname-related price impact was removed well before the market closed" and "could not have caused *the* statistically significant *decline* … found in Apache's stock price at market

close on October 25." M&R 17 (emphasis added) (quoting Dkt. 120 at 28). It then promptly debunks that argument as "overlook[ing] that at the same time RBC Capital Markets disabused the public of the notion that Keenan's resignation concerned Suriname, it also speculated—in the very same report—that '[Apache] share weakness is a reaction to investor concern that the resignation is related to the outcome of [Apache]'s Maka-1 exploration well in Suriname.'" *Id.* at 18 (quoting Dkt. 117-11 at 2). Plaintiffs conveniently skip over this part of the M&R.

The M&R's conclusion on this point aligns with both common sense and the evidence. Contrary to Plaintiffs' naked hypothesis that a company's "clarification" "necessarily" results in "the market's … acceptance" of that clarification, Obj. 13, there exists no principle of economics or case law that compels investors to uncritically accept what a company reports, or that persistent investor skepticism in the face of company statements cannot contribute to stock drops. *See, e.g.*, *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1204 (10th Cir. 1998) (observing that "stock 'suffered a slide' after [an] article was published" that "expressed skepticism about [a company's] assertions"); *City of Bristol Pension Fund v. Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 233 (D. Mass. 2014) ("News coverage of the results indicated that 'investor skepticism' about the data 'sparked a sharp selloff of company shares.'").

Look no further than this case, where the analysts, even when reporting Apache's clarification that Keenan's resignation was not related to Suriname, either themselves questioned that clarification or highlighted the persistence of some investor skepticism about Suriname that "nonetheless" impacted the stoke price:

- <u>RBC Capital Markets 10/25/2019</u>: Repeating Apache's clarification that "the resignation was related to other matters" but reporting that "share weakness is a reaction to ***investor concern*** that the resignation ***is related to … Suriname***." Dkt. 117-11 at 1 (emphases added).

- <u>Credit Suisse (10/25/2019)</u>: Stating that "APA ***claims*** the resignation is not connected to [Suriname's] prospects" but concluding that "[t]oday's sell-off ***nonetheless*** highlights the ***high expectations for the [Suriname] well***." Dkt. 117-10 at 1 (emphases added).

- <u>Credit Suisse (10/31/2019)</u>: Reporting that Keenan's resignation was "***supposedly*** unrelated to Suriname, though with APA in the middle of drilling the well the timing ***nonetheless spooked investors***." Dkt. 142-6 at ECF p.6 (emphases added).

The evidence strongly supports the M&R's conclusion that Suriname concerns remained priced into Apache's stock at the close of October 25, 2019, M&R 18, and it throttles Plaintiffs' insistence that the "market[] … accept[ed]" Apache's "clarification" in a manner that eliminated all Suriname-related impact to the stock price. Obj. 13.[7]

Plaintiffs therefore find themselves clinging to the bare fact that the remaining 5% decline at the October 25 close was statistically significant and thus "evidence of new information." Obj. 14, 16 (citing *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954 (N.D. Ill. 2011)). But the M&R's unrebutted finding that "the market moved out of concern about Apache's prospects in Suriname" supplies a ready answer to that purported dilemma—*that* was the "new information." M&R 18. Contrary to Plaintiffs' insinuation, a statistically

---

[7] Of course, as the M&R explains, whether or not Keenan's resignation was *in fact* related to Suriname is "entirely irrelevant to determining whether the market was reacting to *public* information that revealed some truth about Defendants' alleged misrepresentations." M&R 18 (citing *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) ("Only information known to the market can cause a loss")). Plaintiffs do not dispute this truism but nevertheless critique Judge Edison for disregarding internal, nonpublic Apache documents regarding Keenan's resignation. Obj. 9 n.2. As Plaintiffs correctly point out, *Goldman* instructs that courts should consider "all probative evidence," 594 U.S. at 122—but the key word is "probative," and the M&R properly focused the analysis on evidence actually bearing on the stock price's reaction to public news.

significant price decline does not intractably result in a finding of price impact, especially when, as here, "confounding factors likely explain the movement." *See Ramirez*, 2023 WL 5415315, at *16-17 ("statistically significant negative price movement … was not likely attributable to alleged corrective information").

### 3. Plaintiffs still cannot articulate the new, corrective information concerning Alpine High revealed by this disclosure.

The M&R relied on more than just evidence attributing the October 25, 2019 stock drop to Suriname concerns, but also on the "preponderance of the evidence … showing that the news of Keenan's resignation *did not reveal anything new about Alpine High*." M&R 18 (emphasis added). That correctiveness piece of the price-impact puzzle is important, because when "it is less likely" that a disclosure "actually corrected" a misrepresentation, "there is less reason to infer front-end price inflation—that is, price impact—from the back-end price drop." *Goldman*, 594 U.S. at 123. And, as the M&R explains, "a disclosure is considered corrective only when it 'reveals *new facts* that, taken as true, render some aspect of the defendant's prior statements false or misleading.'" M&R 16 (quoting *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *9-11 (D. Nev. Mar. 1, 2023)).

The evidence regarding the October 25, 2019 disclosure flunks this correctiveness test—just like many prior attempts to twist an executive's resignation into a corrective disclosure.[8] As Judge Edison explained, "Plaintiffs cannot point to any *new* information

---

[8] *See* Dkt. 117 at 19 (citing, *e.g., Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 861-62 (S.D. Tex. 2020) ("[A]nnouncement of [the CFO's] resignation" was not a corrective disclosure because there was no "connect[ion]" between it and "any of the alleged misrepresentations"); *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 887-88 (N.D. Tex. 2005) (resignation of company's president and

revealed by the news of Keenan's resignation" or "elaborate on what aspect of the defendants' prior statements was rendered false or misleading that was not already known by the market." M&R 16-17. Undeterred, the Objections declare—without citation—that "the evidentiary record demonstrates that Keenan's resignation revealed to the market that Alpine High's performance was materially worse than Defendants had publicly portrayed, and its prospects of being a successful, long-term play were likely doomed." Obj. 15. That is a striking reimagining of the simple news that Keenan had resigned. Compl. ¶ 313. And it clashes with Plaintiffs' own expert's concession that "nothing new about the state of affairs at Alpine High was disclosed on October 25 other than Mr. Keenan's resignation." Dkt. 142-6 at ECF p.292.

Apart from empty rhetoric, all Plaintiffs can muster is analyst commentary reiterating, in the wake of Keenan's resignation, that Alpine High's performance had been disappointing or predicting that Apache would shift activity away from Alpine High. Obj. 15-16. Never mind that some of those same sources explicitly attributed the October 25, 2019 price reaction to Suriname concerns, *supra* § II.B.1, *all* of them were, as Judge Edison explained, "clearly repeating old news." M&R 17.

| *Compare* Plaintiffs' Cited Sources: | *With* Pre-October 25, 2019 Commentary |
|---|---|
| SunTrust Robinson Humphrey 10/25/2019:<br><br>"Apache will soon signal a strategy shift away from Alpine High." Dkt. 117-12 at 1. | Cowen Equity Research 10/7/2019:<br><br>"Likely that APA looks to redeploy capital away from Alpine High." Dkt. 142-5 at ECF p.155. |

CEO "in light of … operational challenges" "lack[ed] the requisite specificity to be taken as corrective of any more specific alleged misstatements").

| RBC Capital Markets 10/25/2019: | SunTrust Robinson Humphrey 9/23/2019: |
|---|---|
| "[W]e expect that APA could allocate activity away from Alpine high." Dkt. 117-11 at 1. | We "would not be surprised to see the company shift capital away from [Alpine High] should NGL/gas prices remain around current levels." Dkt. 142-5 at ECF p.140. |
| Reuters 10/25/2019: | JP Morgan 10/14/2019: |
| "However more recently Alpine High has struggled due to lower gas prices, with the company saying it would reassign capital expenditure to other areas." Dkt. 120-3 ¶ 39. | "Given the retrenchment in gas and NGL prices, we expect [Apache] to reduce capital allocation to the Alpine High play in 2020." Dkt. 142-5 at ECF p.168. |
| Bloomberg 10/25/2019: | BoA Merrill Lynch 02/08/2019: |
| "Apache's stock has underperformed rival producers since it first touted the Alpine High find, which turned out to be far richer in gas than more valuable crude." Dkt. 120-3 ¶ 39. | "Retain Underperform … [W]e continue to see as challenged versus oil levered peers where our constructive outlook for oil and cautious view on US natural gas leaves APA's forward multiple compression amongst the lowest in the sector with incremental cash flow growth per share diluted by the swing in US production mix towards gas." Dkt. 142-4 at ECF p.983. |

*See also* Dkt. 142-1 ¶¶ 70-75 (testimony of Defendants' expert further elaborating on the lack of new, corrective Alpine High information).

The lack of correctiveness is therefore not based on "[t]he *mere fact* that Alpine High had previously underperformed expectations," Obj. 16 (emphasis added), but rather on Plaintiffs' abject failure to point to *any* evidence—much less a preponderance of the evidence—that the October 25, 2019 "disclosure revealed *new* information as to the extent and seriousness of those [Alpine High] shortcomings." *Id.* (internal quotation marks and

citation omitted) (emphasis added). When coupled with the "compelling evidence" tying the price reaction to Suriname concerns, *supra* § II.B.1, that lack of correctiveness emphatically "severs the link" between the October 25, 2019 disclosure and any alleged misrepresentation, and Judge Edison was on solid footing in striking this alleged corrective disclosure from the Class Period. M&R 12, 18.

## III.   The M&R properly assessed the price impact of each alleged misrepresentation individually.

Plaintiffs then shift to calling into question the whole enterprise of assessing the correctiveness of the October 25, 2019 news of Keenan's resignation. According to them, because Defendants "conceded price impact . . . from … September 7, 2016 … through … February 22, 2018," Defendants somehow could not challenge price impact for the fifteen alleged misstatements and three alleged corrective disclosures (including the October 25, 2019 news of Keenan's resignation) that postdate that period. Obj. 17. That cannot be squared with the well-established law governing the price-impact inquiry (or with Plaintiffs' concession that Judge Edison was right to make that finding with respect to the April 23, 2019 and March 16, 2020 alleged correctives disclosures). Defendants' decision to not challenge price impact pre-February 22, 2018 in no way forecloses their price-impact challenge concerning the fifteen distinct alleged misrepresentations or three alleged corrective disclosures after February 22, 2018.

Defendants' price impact challenge has two parts: there was no front-end positive price impact at the time the alleged misrepresentations were made, and the back-end stock drops are not evidence of pre-existing price impact from any earlier alleged

17

misrepresentation. Front-end price impact may be evidenced by a "discernible impact on [the] stock price" at the time the alleged misrepresentation is made. *IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 779, 782 (8th Cir. 2016); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 279-80 (2014) (can demonstrate lack of price impact with "evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock"); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15cv1249, 2017 WL 2062985, at *4 (S.D.N.Y. May 15, 2017) (noting that a "defendant may rebut the presumption with evidence that the alleged misstatements were not associated with abnormal, positive stock-price returns ('front-end price impact')"). Alternatively, a decrease in price following a claimed corrective disclosure may be evidence that an earlier alleged misstatement had price impact if, among other things, the alleged corrective disclosure actually corrected the alleged misstatement. *See Goldman*, 594 U.S. at 123. Defendants can rebut back-end price impact with "any showing that severs the link between the alleged misrepresentation and … the price received (or paid) by the plaintiff." *Waggoner v. Barclays PLC*, 875 F.3d 79, 99 (2d Cir. 2017) (citation omitted).

As for the front-end price impact challenge here, there is no dispute that none of the fifteen post-February 22, 2018 alleged misrepresentations moved the market when they were made. M&R 10. Instead, Plaintiffs put forth a novel theory that those alleged misrepresentations could piggy-back on the front-end price impact demonstrated by the earlier alleged misrepresentations. Obj. 20-22. Plaintiffs cite no authority in support of that radically different approach to price impact. Nor would that make any sense. Each alleged misrepresentation must be judged on its own merits and cannot borrow price impact from

other alleged misrepresentations in the case. *See City of Cape Coral Mun. Firefighters'*
*Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 682 (D. Md. 2018)
("Because the Court is required at the class certification stage to limit the proposed Class
based on the alleged misrepresentations found to be actionable, the Court will at this time
certify the proposed Class based on the shortened Class Period").

That leaves the back-end stock drops following supposed corrective disclosures as
the only available option to demonstrate price impact after February 22, 2018. That makes
sense, because Plaintiffs concede that the fifteen alleged misrepresentations that occurred
during this period merely confirmed what the market already thought. Obj. 20-22. Since,
by definition, there is no front-end price impact when an alleged misrepresentation only
maintains an inflated price, the existence of price impact during this period must be shown
on the back end: "Plaintiffs [must] try to prove the amount of inflation indirectly: They
point to a negative disclosure about a company and an associated drop in its stock price;
allege that the disclosure corrected an earlier misrepresentation; and then claim that the
price drop is equal to the amount of inflation maintained by the earlier misrepresentation."
*Goldman*, 594 U.S. at 123. Thus the only way to the assess the post-February 22, 2018
price impact is to analyze the three alleged corrective disclosures during that period—
including the October 25, 2019 news of Keenan's resignation—which is precisely what the
M&R did.

Weighing the evidence, Judge Edison properly found that "[t]here was no front-end
price impact attributable to the 15 alleged misrepresentations made during the [post-
February 22, 2018] Focus Period, and Defendants have rebutted the *Basic* presumption as

to each of the three corrective disclosures alleged during th[at] Focus Period." M&R at 25. Defendants' evidence, including the testimony of its expert Lucy P. Allen, who found that "[a] detailed analysis of each of the [three] alleged partial corrective disclosures Plaintiffs claim were made during the Focus Period shows no price impact and no link to any of the alleged misrepresentations during the Class Period," Dkt. 117-2 at 5, supported Judge Edison's finding. And Plaintiffs do not object to that finding with respect to two of the three alleged corrective disclosures.

In sum, this argument in Plaintiffs' Objections consists of legal assertions that are wholly at odds with established price-impact law. Plaintiffs cite no authority whatsoever that supports their proposed upending of the price-impact inquiry. Nor do they even attempt to justify the radical implications of their arguments—namely, that a plaintiff need only demonstrate price impact for a single alleged misrepresentation to effectively immunize all that follow from price-impact scrutiny. Accordingly, the M&R correctly assessed the price impact of each alleged misrepresentation individually, and that analysis properly included determining whether the October 25, 2019 news of Keenan's resignation constituted a valid alleged corrective disclosure.

## CONCLUSION

The Court should overrule Plaintiffs' Objections and adopt the M&R.

Dated:  March 8, 2024                    Respectfully submitted,

                                         BAKER BOTTS L.L.P.

                                         By:  */s/ David D. Sterling*
                                              David D. Sterling
                                              Attorney-In-Charge
                                              State Bar No. 19170000
                                              Federal I.D. No. 07079
                                              Amy Pharr Hefley
                                              State Bar No. 24046046
                                              J. Mark Little
                                              State Bar No. 24078869
                                              Federal I.D. No 1487508
                                              Anthony J. Lucisano
                                              State Bar No. 24102118
                                              Federal I.D. No. 3369146
                                              Frank Mace
                                              State Bar No. 24110609
                                              Federal I.D. No. 3385915
                                              910 Louisiana Street
                                              Houston, Texas 77002
                                              (713) 229-1946
                                              (713) 229-7946 (Fax)
                                              david.sterling@bakerbotts.com
                                              amy.hefley@bakerbotts.com
                                              mark.little@bakerbotts.com
                                              anthony.lucisano@bakerbotts.com
                                              frank.mace@bakerbotts.com

                                              John B. Lawrence
                                              Texas Bar No. 24055825
                                              S.D. Tex. No. 3124414
                                              2001 Ross Avenue, Suite 900
                                              Dallas, Texas 75201
                                              (214) 953-6873
                                              (214) 661-4873 (Fax)
                                              john.lawrence@bakerbotts.com

                                         ATTORNEYS FOR DEFENDANTS APACHE
                                         CORPORATION, JOHN J. CHRISTMANN IV,
                                         TIMOTHY J. SULLIVAN, AND STEPHEN J.
                                         RINEY

21

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via ECF on all counsel of record on this 8th day of March, 2024.

*/s/ Amy Pharr Hefley*
Amy Pharr Hefley