**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE APACHE CORP. SECURITIES LITIGATION | Case No. 4:21-cv-00575 |
| | District Judge George C. Hanks, Jr. |
| | Magistrate Judge Andrew M. Edison |
| | CLASS ACTION |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS, AND SUPPORTING MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................... 1

II.    STATEMENT OF ISSUES TO BE RULED UPON ............................................. 2

III.    SUMMARY OF THE ARGUMENT ....................................................................... 2

IV.    FACTUAL BACKGROUND ................................................................................. 4

    A.    OVERVIEW OF THE ACTION ................................................................. 4

    B.    THE PARTIES' SETTLEMENT NEGOTIATIONS AND TERMS OF THE PROPOSED SETTLEMENT ............................................................. 7

V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ............................ 9

    A.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ........................................................................................ 9

    B.    THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE PROPOSED SETTLEMENT UNDER RULE 23(e)(2) ............................. 10

        1.    Lead Plaintiffs and Lead Counsel Have Zealously Represented the Settlement Class ....................................... 10

        2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel ..................... 12

        3.    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation .............. 13

        4.    The Settlement Does Not Unjustly Favor Any Settlement Class Member .................................................................................... 15

        5.    The Anticipated Request for Attorneys' Fees Is Reasonable .......... 16

        6.    Lead Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ...................................................... 17

VI.    THE SETTLEMENT CLASS IS APPROPRIATE FOR CERTIFICATION ....... 18

    A.    THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a) ........................................................................................ 19

        1.    The Settlement Class Members Are Numerous .............................. 19

        2.    The Settlement Class Satisfies the Commonality Requirement ....... 19

i

   3. Lead Plaintiffs Satisfy the Typicality Requirement ......................... 20

   4. Lead Plaintiffs Satisfy the Adequacy Requirement ......................... 21

  B. THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS
   OF RULE 23(b)............................................................................................. 22

VII. NOTICE OF THE SETTLEMENT SHOULD BE APPROVED ........................... 23

IX. CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ......................................................... 10, 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ................................................................................................ 22

*In re BP PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2020) ..................................................................... 21

*Buettgen v. Harless*,
2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ...................................................... 15

*Celeste v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) .................................................. 22, 24

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .................................................................................... 15

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................... 17-18

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
2015 WL 965693 (W.D. La. Mar. 3, 2015) ............................................................. 13

*Claudet v. Cytec Ret. Plan*,
2020 WL 3128611 (E.D. La. June 12, 2020) ............................................................. 9

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ................................................................................. 13

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ..................................................................................... 9

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
2023 WL 6300569 (S.D. Tex. Sept. 27, 2023), *leave to appeal denied*,
2023 WL 8794620 (5th Cir. Nov. 17, 2023) ............................................................ 20

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................... 14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................ 12, 17, 25

*In re EZCORP, Inc. Sec. Litig.*,
    2019 WL 6681962 (W.D. Tex. Dec. 6, 2019) .......................................... 24

*Farrar v. Workhorse Grp., Inc.*,
    2023 WL 5505981 (C.D. Cal. July 24, 2023) ......................................... 15

*Howard v. Liquidity Servs. Inc.*,
    2018 WL 4853898 (D.D.C. Oct. 5, 2018) ................................................ 15

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 5632673 (S.D. Cal. Nov. 20, 2021) ......................................... 12

*Lea v. Tal Educ. Grp.*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ......................................... 15

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004) ............................................................. 20

*Marcus v. J.C. Penney Co., Inc.*,
    2016 WL 8604331 (E.D. Tex. Aug. 29, 2016), *R&R adopted*, 2017 WL
    907996 (E.D. Tex. Mar. 8, 2017) ......................................................20-21

*Marcus v. J.C. Penney Co., Inc.*,
    2017 WL 6590976 (E.D. Tex. Dec. 18, 2017), *R&R adopted*, 2018 WL
    307024 (E.D. Tex. Jan 4, 2018) ................................................................ 9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ................................................................................. 23

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
    2016 WL 3369534 (S.D.N.Y. May 2, 2016) ........................................... 17

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
    2019 WL 2352837 (N.D. Tex. June 3, 2019) .......................................... 24

*Prause v. TechnipFMC, PLC*,
    2020 WL 3549686 (S.D. Tex. Mar. 9, 2020) ............................... 19, 20, 21

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ................................................................... 10

*Rooney v. EZCORP, Inc.*,
    330 F.R.D. 439 (W.D. Tex. 2019) ............................................................................... 19

*Rougier v. Applied Optoelectronics, Inc.*,
    2019 WL 6111303 (S.D. Tex. Nov. 13, 2019), *R&R adopted*, 2019 WL
    7020349 (S.D. Tex. Dec. 20, 2019) ............................................................................ 19

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................. 11, 17, 25

*In re Valeant Pharms, Int'l, Inc. Third-Party Payor Litig.*,
    2022 WL 525807 (D.N.J. Feb. 22, 2022) ................................................................... 13

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...................................................................................................... 24

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................................*passim*

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ................... 21

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2020) ........................................ 9

Lead Plaintiffs Plymouth County Retirement Association ("Plymouth County") and the Trustees of the Teamsters Union No. 142 Pension Fund ("Teamsters No. 142"), on behalf of themselves and the Settlement Class (defined below), respectfully move, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule(s)"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") submitted herewith. The Preliminary Approval Order will, among other things, grant preliminary approval of the proposed $65 million all-cash, non-reversionary settlement ("Settlement") reached in this action ("Action").[1]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a securities class action asserting claims under Sections 10(b) and 20(a) of the Exchange Act against Defendants Apache Corp. and its successor APA Corporation, a Delaware corporation listed on Nasdaq under the symbol APA ("Apache" or the "Company"), John J. Christmann IV, Timothy J. Sullivan, and Stephen J. Riney. The Action was brought on behalf of a class of investors who purchased or acquired Apache common stock from September 7, 2016, through March 13, 2020, inclusive, and were damaged thereby ("Settlement Class"). After three years of litigation, the Parties have agreed to resolve the Action. At this time, Lead Plaintiffs seek the Court's preliminary approval of the Parties' proposed Settlement under Rule 23 so that notice of the Settlement

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 7, 2024 ("Stipulation" or "Stip."), which is attached as Exhibit 1 to the accompanying Declaration of Thomas R. Ajamie ("Ajamie Decl."). Internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

1

can be provided to the Settlement Class and the final Settlement Hearing can be scheduled.

## II.     STATEMENT OF ISSUES TO BE RULED UPON

1.      Whether the Court will likely be able to approve the proposed $65 million all-cash Settlement of this Action under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Settlement Class;

2.      Whether the Court will likely be able to certify the Settlement Class for purposes of effectuating the Settlement;

3.      Whether the proposed form and content of the notices and Claim Form and the manner for disseminating them to the Settlement Class should be approved; and

4.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's forthcoming motion for attorneys' fees and Litigation Expenses.

## III.    SUMMARY OF THE ARGUMENT

After three years of hard-fought litigation, Lead Plaintiffs have agreed to resolve the Settlement Class's claims against Defendants for a $65 million cash payment pursuant to the terms of the Stipulation. Lead Plaintiffs and Lead Counsel believe the Settlement is an excellent result for the Settlement Class. In agreeing to settle, Lead Plaintiffs and Lead Counsel made a fully-informed evaluation of the risks of continuing to litigate this complex case—including risks related to a ruling by the Court on class certification, discovery (including expert discovery), anticipated summary judgment motions, trial, and potential appeals—against the benefits of a sizable and certain recovery at this time.

Indeed, at the time of settlement, the Parties were awaiting the Court's decision on

Lead Plaintiffs' motion for class certification ("Class Certification Motion") and related objections. If the Court were to adopt Magistrate Judge Andrew M. Edison's Memorandum and Recommendation granting in part and denying in part the Class Certification Motion ("Report") over Lead Plaintiffs' pending objections, three of the five alleged corrective disclosures would be eliminated—shortening the Class Period by more than half, and substantially decreasing the Settlement Class's potential recoverable damages. Moreover, an adverse ruling for the Settlement Class later, at summary judgment or trial, could have precluded *any* recovery, let alone a recovery greater than the Settlement Amount.

When the Settlement was reached, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the case, as a result of their: (i) extensive investigation, including a detailed review of publicly available information, interviews with over 50 former Apache employees, and consultation with multiple experts; (ii) briefing on Defendants' motion to dismiss; (iii) substantial discovery efforts, including reviewing over one million pages of documents produced by Defendants and nonparties, taking/defending 20 depositions, and litigating several discovery disputes; (iv) briefing Lead Plaintiffs' Class Certification Motion and objections to Judge Edison's Report; and (v) preparing for and participating in a lengthy evidentiary hearing on class certification, which included direct testimony and cross examination of the Parties' economic experts. Further, the Parties engaged in arm's-length negotiations facilitated by Jed Melnick, Esq. of JAMS—a highly experienced mediator of securities class actions and other complex litigation—including participation in a full-day, in-person mediation session and the preparation of detailed mediation statements supported by voluminous discovery materials.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the Preliminary Approval Order will begin this process by, among other things: (i) preliminarily approving the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) approving the form and content of the notices and Claim Form; (iv) approving the plan for disseminating notice of the Settlement to the Settlement Class; (v) approving A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator for the Settlement; and (vi) setting a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses. *See* Appendix A hereto (summarizing proposed schedule).[2]

Lead Plaintiffs respectfully submit that the Settlement warrants the Court's preliminary approval and respectfully request entry of the Preliminary Approval Order.

## IV.   FACTUAL BACKGROUND

### A.   OVERVIEW OF THE ACTION

This Action began on February 23, 2021, with the filing of the initial complaint by Plymouth County, styled *Plymouth County Retirement System v. Apache Corporation, et al.*, No. 4:21-cv-00575. Dkt. 1.[3] A related complaint, *Brian Schwegel v. Apache*

---

[2]    As set forth in Appendix A, Lead Plaintiffs request that the Settlement Hearing be scheduled for 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow time for mailing of notice and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), *et seq*.

[3]    On September 15, 2021, this case was referred to United States Magistrate Judge Andrew M. Edison under 28 U.S.C. § 636(b)(1). Dkt. 42.

4

*Corporation, et al.*, No. 4:21-cv-00722, was filed on March 4, 2021.

Following briefing, and pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on October 6, 2021, the Court: (i) appointed Plymouth County and Teamsters No. 142 as Lead Plaintiffs for the Action and approved their selection of Kessler Topaz Meltzer & Check, LLP and Saxena White P.A. as co-Lead Counsel and Ajamie LLP as liaison counsel for the class; and (ii) consolidated the two related cases as *In re Apache Corp. Securities Litigation*, No. 4:21-cv-00575. Dkt. 45.

On December 17, 2021, Lead Plaintiffs filed the operative Consolidated Class Action Complaint ("Complaint") on behalf of all persons or entities that purchased or otherwise acquired Apache common stock during the period from September 7, 2016 through March 13, 2020, inclusive, and were damaged thereby. Dkt. 65. Lead Plaintiffs asserted: (i) claims under Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, against all Defendants; and (ii) claims under Section 20(a) of the Exchange Act against the individual Defendants. Lead Plaintiffs alleged that, during the Class Period, Defendants issued materially false and misleading statements about the production capabilities and commercial viability of Apache's purported "world class [oil-and-gas] resource play" in the Texas panhandle known as "Alpine High." Dkt. 65 at ¶ 1. Lead Plaintiffs further alleged that the price of Apache common stock was artificially inflated due to Defendants' allegedly false and misleading statements, and declined when the alleged corrective disclosures were made. The Complaint was the product of an extensive investigation by Lead Plaintiffs, including detailed accounts from 24 former Apache employees, a forensic analysis of Apache's production data from Alpine High, and the

review of SEC filings, investment analyst reports, news articles, and regulatory filings with the Railroad Commission of Texas ("RRC").

On February 15, 2022, Defendants moved to dismiss the Complaint. Dkt. 71. Following full briefing on the motion (Dkts. 74 & 75), Judge Edison issued a Memorandum and Recommendation on September 15, 2022, recommending that Defendants' motion to dismiss be denied in its entirety (Dkt. 76). After the Parties fully briefed Defendants' objection to Judge Edison's recommendation (Dkts. 79 & 80), the Court, on November 29, 2022, adopted the recommendation, and denied Defendants' motion in its entirety (Dkt. 81). Accordingly, Defendants answered the Complaint on January 10, 2023. Dkt. 87.

From January 2023 through March 2024, the Parties engaged in extensive fact discovery. Lead Plaintiffs: (i) prepared and served initial disclosures, multiple sets of requests for production of documents, and multiple sets of interrogatories on Defendants; (ii) exchanged correspondence with Defendants concerning a host of discovery issues; and (iii) served document subpoenas on more than 25 nonparties. Defendants and nonparties produced a total of more than one million pages of documents to Lead Plaintiffs. In turn, Lead Plaintiffs produced a significant number of documents to Defendants in response to their discovery requests. Lead Plaintiffs also sat for depositions, took 16 fact witness depositions, with eight more scheduled to occur at the time of settlement, and took or defended two expert depositions. The Parties also litigated discovery and scheduling disputes before Judge Edison, certain of which included oral argument.

During the same time, Lead Plaintiffs moved for class certification. Lead Plaintiffs' April 7, 2023 Class Certification Motion (Dkt. 101) was accompanied by a report from

their economic expert, Zachary Nye, Ph.D., on market efficiency and a proposed common damages methodology (Dkt. 101-3). On June 16, 2023, Defendants filed their opposition to the Class Certification Motion (Dkt. 117), along with an expert rebuttal report from Lucy P. Allen (Dkt. 117-2). Lead Plaintiffs filed a reply in further support of their Class Certification Motion on August 11, 2023 (Dkt. 120), and Defendants filed a sur-reply on September 8, 2023 (Dkt. 126). An evidentiary hearing on the Class Certification Motion was held on December 6, 2023. Dkt. 151.

On February 9, 2024, Judge Edison issued the Report, which recommended that the Court grant in part and deny in part the Class Certification Motion by certifying a class of Apache investors for the truncated period of September 7, 2016, through February 22, 2018. Dkt. 158. Lead Plaintiffs filed objections to the Report on February 23, 2024 (Dkt. 159), and Defendants filed their response to Lead Plaintiffs' objections on March 8, 2024 (Dkt. 161). The Parties were awaiting the Court's ruling when the Settlement was reached.

### B. THE PARTIES' SETTLEMENT NEGOTIATIONS AND TERMS OF THE PROPOSED SETTLEMENT

While discovery was ongoing and Lead Plaintiffs' Class Certification Motion was pending, the Parties began discussing the possibility of resolving the Action through settlement, and engaged Mr. Melnick to assist in those efforts. In advance of the mediation session on January 10, 2024, the Parties prepared and exchanged detailed mediation statements, which were accompanied by voluminous discovery materials. At the mediation, the Parties shared further information addressing their views on liability and damages and engaged in vigorous settlement discussions. Although the Parties were unable

to reach agreement at this session, they continued to negotiate with Mr. Melnick's assistance for approximately two months, and ultimately reached an agreement in principle to resolve the Action on March 7, 2024. The next day, the Parties notified the Court regarding their agreement. Dkt. 160. The Parties executed a Term Sheet on March 15, 2024.

Thereafter, the Parties engaged in further negotiations over the specific terms of their agreement and executed the Stipulation on May 7, 2024.[4] The Stipulation provides that Defendants will pay or cause to be paid the Settlement Amount into an interest-bearing escrow account maintained on behalf of the Settlement Class. The Settlement is not claims-made and is non-reversionary. Accordingly, if approved, the Settlement Class will receive the full benefit of the $65 million Settlement Amount, plus interest, after deducting Court-approved attorneys' fees, expenses and costs ("Net Settlement Fund"), without regard to the number of Claims submitted. After the Settlement becomes Final, the Net Settlement Fund will be distributed among eligible Settlement Class Members who submit valid Claims in accordance with a Court-approved plan of allocation. *See* Stip., ¶¶ 21, 27.

Further, for settlement purposes only, the Parties have agreed to certification of the Settlement Class. *See* Stip., ¶¶ 1.(qq), 2. As discussed below, the Settlement Class satisfies all requirements of Rules 23(a) and 23(b)(3), and it is likely that, in connection with final approval, the Court will certify the Settlement Class for purposes of settlement.

If the Court grants final approval to the Settlement, upon the Effective Date,

---

[4] On the same day, Lead Plaintiffs and Defendants also entered into a confidential Supplemental Agreement, which gives Defendants the right to terminate the Settlement if valid requests for exclusion received from Settlement Class Members exceed an agreed-upon amount. *See* Section V.B.6 herein.

Settlement Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount and the right to participate in the distribution of the Net Settlement Fund. Stip., ¶ 1.(ll). The scope of this release is limited to claims related to Class Period transactions in Apache common stock and the allegations at issue in the Action.

## V.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Settlement is a strongly favored method for resolving class action litigation. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "overriding public interest in favor of settlement that [the Fifth Circuit has] recognized [p]articularly in class action suits"); *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong judicial policy in favor of settlements, particularly in the class action context."), *R&R adopted*, 2018 WL 307024 (E.D. Tex. Jan 4, 2018).

Rule 23(e) requires judicial approval of class action settlements. Such approval is a two-step process. First, the court performs a preliminary review to determine whether the terms of the proposed settlement are sufficient to warrant notice of the settlement to the class and a hearing; and second, after notice has been provided and a hearing held, the court determines whether to grant final approval of the settlement. *See Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, at *3 (E.D. La. June 12, 2020) (describing two-step process as required under Rule 23 and applied in the Fifth Circuit); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2020).

With respect to the first step, a court should grant preliminary approval and

authorize notice to the class upon a finding that the court "*will likely be able*" to: (i) finally

approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the

settlement. Fed. R. Civ. P. 23(e)(1)(B). In considering whether final approval is likely,

Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented
> the class; (B) the proposal was negotiated at arm's length; (C) the relief
> provided for the class is adequate, taking into account: (i) the costs, risks,
> and delay of trial and appeal; (ii) the effectiveness of any proposed method
> of distributing relief to the class, including the method of processing class-
> member claims; (iii) the terms of any proposed award of attorney's fees,
> including timing of payment; and (iv) any agreement required to be
> identified under Rule 23(e)(3); and (D) the proposal treats class members
> equitably relative to each other.[5]

All of these factors support approval of the Settlement and, thus, preliminary

approval is appropriate here.

### B.   THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE PROPOSED SETTLEMENT UNDER RULE 23(e)(2)

#### 1.   Lead Plaintiffs and Lead Counsel Have Zealously Represented the Settlement Class

In determining whether to approve a class action settlement, a court should consider

whether "the class representatives and class counsel have adequately represented the

---

[5]     Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent
they do not overlap, the Fifth Circuit approval factors: "(1) the existence of fraud or
collusion behind the settlement; (2) the complexity, expense, and likely duration of the
litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the
probability of plaintiffs' success on the merits; (5) the range of possible recovery; and
(6) the opinions of the class counsel, class representatives, and absent class members."
*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Rule 23(e)(2) factors
are not intended to "displace any factor" traditionally used by courts to assess settlement
approval, but rather to focus on core concerns to guide the approval decision. Fed. R. Civ.
P. 23 advisory committee's note to 2018 Amendment; *see also, e.g.*, *Al's Pals Pet Care v.
Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering
"the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's *Reed* factors").

class." Fed. R. Civ. P. 23(e)(2)(A).

Here, Lead Plaintiffs, both sophisticated institutional investors, have been active and informed participants in the litigation since its inception. Lead Plaintiffs consulted with Lead Counsel on litigation strategy and case developments, oversaw the drafting of the Complaint and reviewed briefing on Defendants' motion to dismiss and their Class Certification Motion, and actively participated in discovery, producing a significant number of documents to Defendants and sitting for depositions. Lead Plaintiffs also conferred with Lead Counsel during the Parties' settlement negotiations, were aware of both sides' principal arguments, and reviewed and approved the terms of the Settlement. Additionally, Lead Plaintiffs have claims that are typical of other Settlement Class Members and, as such, have an interest in obtaining the largest possible recovery from Defendants.

Likewise, Lead Counsel, who are experienced in prosecuting complex class actions, had a clear view of the strengths and risks of the case and were equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) ("where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case"). Prior to reaching the Settlement, Lead Counsel developed a deep understanding of the case through, among other things: (i) a comprehensive investigation, including interviewing over 50 former Apache employees (of which 24 were included in the Complaint) and conducting a forensic

11

analysis of Apache's drilling and production data from Alpine High over its entire lifespan; (ii) opposing Defendants' motion to dismiss; (iii) engaging in extensive discovery, including taking/defending 20 fact and expert depositions, and reviewing over one million pages of documents produced by Defendants and relevant nonparties[6] in consultation with multiple industry experts; and (iv) briefing and arguing the Class Certification Motion at an evidentiary hearing. In consultation with Lead Plaintiffs' damages expert, Lead Counsel evaluated the potential damages and negotiated vigorously with Defendants to secure the $65 million recovery.

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In assessing a proposed settlement, courts must also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In conducting this assessment, courts recognize that the involvement of an experienced, neutral mediator "strongly suggests that the settlement was not the result of improper dealings." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018).

Here, the Parties engaged in a rigorous negotiation process aided by Mr. Melnick, an "experienced, neutral mediator" who has mediated over one thousand disputes with an aggregate value in the billions of dollars.[7] *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *4 (S.D. Cal. Nov. 20, 2021) (approving settlement reached with the

---

[6]     These nonparties included dozens of former and current Apache employees, Apache's outside auditor, its petroleum reserves auditor, its underwriter and strategy business partner, key Apache service providers, peer E&P companies, and the RRC.

[7]     *See* https://www.jamsadr.com/melnick/.

assistance of Mr. Melnick, "an experienced, neutral mediator"); *In re Valeant Pharms, Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *2 (D.N.J. Feb. 22, 2022) (approving settlement where "Plaintiffs and [Defendant] ultimately agreed to mediate their claims before Jed Melnick of JAMS, a nationally recognized alternative dispute resolution firm"). As noted above, the Settlement was achieved only after the Parties' preparation of comprehensive mediation statements, a full-day mediation session with Mr. Melnick, and several weeks of continued back-and-forth. The nature of these negotiations demonstrate that the Settlement is procedurally fair and is not the product of fraud or collusion.

### 3. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor in assessing whether to approve a class action settlement is a plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. *See* Fed. R. Civ. P. 23(e)(2)(C).[8] Here, the Settlement provides for a substantial and certain, near-term cash recovery of $65 million to be allocated among Settlement Class Members following deduction of Court-approved fees and costs.

In comparison, if the Action had continued, Lead Plaintiffs would face numerous factual and legal risks that could have substantially decreased the Settlement Class's potential recovery, or eliminated it altogether. Most immediately, Lead Plaintiffs faced the risk of an adverse ruling by the Court on their pending Class Certification Motion. If the

---

[8]     "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Further, courts repeatedly recognize federal securities litigation to be an "extremely complex" and "highly technical and specialized area of the law." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015).

Court adopted Judge Edison's Report, three of Lead Plaintiffs' five alleged corrective disclosures would have been eliminated—slashing the Class Period by more than half and decreasing the Settlement Class's estimated recoverable damages by roughly two thirds. If the Court, however, declined to adopt the Report and granted the Class Certification Motion in full, Defendants likely would have responded with a Rule 23(f) petition and the Parties may have continued to litigate these issues on appeal, facing an uncertain outcome.

Further, Defendants adamantly deny any wrongdoing. As they did at the motion to dismiss stage and during mediation, Defendants undoubtedly would have argued at summary judgment and trial that the statements at issue were not false at the time they were made and Defendants legitimately believed them to be true. As highlighted by Judge Edison's recommendation on Defendants' motion to dismiss, the issue of scienter was a "very close call" and Lead Plaintiffs recognized that this issue (and others) could be decided differently by the Court at summary judgment or trial. *See* Dkt. 76, p. 13 ("Turning to the inference of scienter in this case, I concede that this is a close call. A very close call. As I examined the scienter issue, I went back and forth as to whether Lead Plaintiffs' scienter allegations pass muster.").

Lead Plaintiffs also faced challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Had the Action continued, Defendants would likely assert that Lead Plaintiffs would be unable to demonstrate that many (or all) of Defendants' alleged misrepresentations directly or proximately caused the economic losses incurred.

14

Ultimately, resolution of these issues would come down to a "battle of experts" with no guarantee as to which expert's testimony or methodology would be more compelling to a jury. *See Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013) ("One cannot predict which expert's testimony or methodology a jury would find reliable."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts, with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

For the full Class Period, Lead Plaintiffs' damages expert has estimated class-wide damages of approximately $1.48 billion using a commonly accepted trading model. Under the same model, estimated damages for a class period ending on February 22, 2018 are $519 million. Using this estimated range, the Settlement represents approximately 4.4%-12.5% of the Settlement Class's potential estimated damages, which exceeds damages recoveries in similar cases.[9] Thus, the Settlement provides a significant recovery for Settlement Class Members.

### 4. The Settlement Does Not Unjustly Favor Any Settlement Class Member

The Court must also assess the Settlement's effectiveness in equitably distributing

---

[9]   While each securities class action reflects its own unique risks, the recovery obtained at this stage of this Action compares favorably to recoveries achieved in other securities cases and approved by courts. *See, e.g., Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving securities class action settlement where recovery represented 3% of estimated damages); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving securities class action settlement where recovery represented "5.3% of the Settlement's Class's maximum estimated damages"); *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *5 (D.D.C. Oct. 5, 2018) (approving securities class action settlement "constitut[ing] approximately 4% of the ***maximum*** realistic recoverable damages") (emphasis in original).

relief to the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). The proposed Plan of Allocation ("Plan"), set forth in the Notice and developed in consultation with Lead Plaintiffs' damages expert, provides a fair and effective means of distributing the Net Settlement Fund and treats Settlement Class Members equitably relative to each other.

Specifically, the Plan provides for distribution of the Net Settlement Fund to Settlement Class Members who submit timely and valid Claims demonstrating a loss on their transactions in Apache common stock during the Class Period.[10] The Plan is based on the estimated amount of artificial inflation in the price of Apache common stock during the Class Period that was allegedly caused by Defendants' alleged misconduct. In order to have a loss under the Plan, a Class Member must have held Apache common stock purchased or acquired during the Class Period through one of the alleged corrective disclosures that removed artificial inflation from the stock price. The Plan treats all Settlement Class Members equitably and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund based on the amount of their recognized losses. Here, too, the Court can readily find the Settlement will likely earn approval.

### 5. The Anticipated Request for Attorneys' Fees Is Reasonable

The proposed notices to the Settlement Class advise that Lead Counsel, on behalf

---

[10]    The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved to serve as Claims Administrator, A.B. Data will employ a standard and well-tested protocol for processing claims in securities class actions. Namely, Settlement Class Members will submit Claims, either by mail or electronically and, based on the information submitted, A.B. Data will determine each Claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip., ¶ 21. Claimants will be notified of (and given the chance to remedy) any defects in their Claims, and will also have the opportunity to contest a rejection. *Id*., ¶ 25(d). Any Claim disputes that cannot be resolved will be presented to the Court. *Id*., ¶ 25(e).

of Plaintiffs' Counsel, will apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, plus payment of Litigation Expenses. In light of Plaintiffs' Counsel's efforts over the past three years without any payment whatsoever, a fee of up to 33⅓% is reasonable and falls within the range of attorneys' fees regularly awarded in this Circuit. *See, e.g.*, *Al's Pals Pet Care*, 2019 WL 387409, at *4 (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 (granting one-third fee); *Schwartz*, 2005 WL 3148350, at *27 (courts "regularly" award fees of "30% or more of the total recovery").[11] Settlement Class Members will have an opportunity to address the fee request before the Settlement Hearing, and after Lead Counsel have made submissions in support of their request.

### 6.    Lead Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the Term Sheet and Stipulation, the Parties have entered into a standard, confidential Supplemental Agreement that gives Defendants the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon conditions. Stip., ¶ 36. "This type of agreement is common in securities fraud actions and does not weigh against [settlement] approval." *Cheng*

---

[11]    Additionally, the proposal that Lead Counsel receive their fee award upon issuance of an order awarding such fees is appropriate and consistent with common practice in cases of this nature as the Stipulation (*see* Stip., ¶ 16) provides that if the Settlement is ultimately terminated, or the fee award is later reduced or reversed, Lead Counsel will refund or repay the subject amount to the Settlement Fund. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (approving settlement with such a provision and noting "Plaintiffs' Counsel's obligation to repay all such amounts with interest" as provided in the parties' settlement agreement).

*Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).[12]

## VI.    THE SETTLEMENT CLASS IS APPROPRIATE FOR CERTIFICATION

The Parties have stipulated to certification of the Settlement Class for settlement purposes only. Stip., ¶ 2. The Settlement Class is the same class that Lead Plaintiffs asserted in the Complaint and sought to certify in their Class Certification Motion—*i.e.*, all persons or entities who purchased or otherwise acquired Apache common stock from September 7, 2016, through March 13, 2020, inclusive, and were damaged thereby. Stip., ¶ 1(qq).[13]

Certification of a proposed settlement class is appropriate if the proposed class and proposed class representatives meet Rule 23(a)'s four requirements of numerosity, commonality, typicality, and adequacy, and Rule 23(b)(3)'s two requirements of predominance and superiority. At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the Settlement Class at final approval. *See* Fed. R. Civ. P. 23(e)(1)(B). Here, the proposed Settlement Class meets all requirements of Rules 23(a) and 23(b).

---

[12]    Also, as is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

[13]    Excluded from the Settlement Class are Defendants, the officers and directors of Apache, members of their immediate families and their legal representatives, heirs, agents, affiliates, successors or assigns, Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof, and any entity in which Defendants or their immediate families have or had a controlling interest. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. *Id*.

### A.     THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)[14]

#### 1.     The Settlement Class Members Are Numerous

Under Rule 23(a)(1), a class may be certified only if joinder of all members is impracticable. Courts have found "the numerosity prerequisite is generally assumed to have been met in class action suits involving nationally traded securities." *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445 n.2 (W.D. Tex. 2019) (alterations omitted).

During the Class Period, Apache common stock actively traded on the Nasdaq, NYSE, and Chicago Stock Exchange, and had between 375.4 and 382.5 million shares outstanding with an average weekly trading volume of over 21.5 million shares. *See* Dkts. 101, at 10; 101-3 at ¶¶ 14, 22-27, 30. *See also Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *5 (S.D. Tex. Nov. 13, 2019) (finding numerosity where company traded on the Nasdaq and had over 18 million shares outstanding), *R&R adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019). Thus, numerosity is established.

#### 2.     The Settlement Class Satisfies the Commonality Requirement

Rule 23(a)(2) requires a finding of commonality, or a question of law or fact common to the proposed class. Courts have found that Rule 23 commonality is met by a showing that class members "have suffered the same injury" and involves "an issue that is central to the validity of each one of the [class member's] claims." *Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *3 (S.D. Tex. Mar. 9, 2020) (alterations omitted).

---

[14]     The Rule 23(a) requirements are more fully detailed in the memorandum supporting Lead Plaintiffs' Class Certification Motion (Dkt. 101), and Lead Plaintiffs' memorandum and exhibits are incorporated herein by reference.

Lead Plaintiffs' claims present common questions of law and fact, including whether: (i) Defendants' statements were materially false or misleading; (ii) Defendants acted with scienter; and (iii) the price of Apache common stock was artificially inflated due to Defendants' alleged conduct. *See, e.g.*, *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *7 (S.D. Tex. Sept. 27, 2023) ("Whether [defendant's] representations were materially false and impacted the stock price are common questions of law and fact."), *leave to appeal denied*, 2023 WL 8794620 (5th Cir. Nov. 17, 2023).

### 3. Lead Plaintiffs Satisfy the Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The test for typicality is "not demanding," and is "satisfied where the representative plaintiffs' claims arise out of the same event or course of conduct as the other members' claims and are based on the same legal theory." *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004); *see also Prause*, 2020 WL 3549686, at *3 (similar).

As alleged, Lead Plaintiffs, like other Settlement Class Members, purchased Apache common stock during the Class Period at artificially inflated prices and suffered damages when the relevant truth was disclosed and the stock price declined. The evidence Lead Plaintiffs would present to prove their claims would also prove the Settlement Class's claims. *See Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *3 (E.D. Tex. Aug. 29, 2016) (typicality where plaintiff's and the class's "claims both arise from the same alleged misconduct by Defendants: knowingly or recklessly making material misrepresentations or omissions that artificially inflated the value of [the company's] securities."), *R&R*

20

*adopted*, 2017 WL 907996 (E.D. Tex. Mar. 8, 2017). Thus, typicality is established.

### 4.    Lead Plaintiffs Satisfy the Adequacy Requirement

Under Rule 23(a)(4)'s adequacy prerequisite, courts examine whether "the representative parties will fairly and adequately protect the interests of the class." Determining adequacy requires courts to consider three factors: "(1) the zeal and competence of the representative[s'] counsel; (2) the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Prause*, 2020 WL 3549686, at *4 (alterations in original).

Lead Plaintiffs are sophisticated institutional investors that have represented and will continue to represent the interests of the Settlement Class fairly and adequately, and there is no antagonism or conflict of interest between Lead Plaintiffs and the other Settlement Class Members. Further, Lead Plaintiffs are precisely the kind of investors Congress intended to lead securities class actions when enacting the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see also In re BP PLC Sec. Litig.*, 758 F. Supp. 2d 428, 439 (S.D. Tex. 2020) ("the PSLRA expresses a strong preference for institutional investors to serve as lead plaintiffs"). In addition, Lead Counsel have substantial expertise in the litigation of securities class actions, and effectively prosecuted this Action on behalf of the Settlement Class while facing a formidable national law firm based in Texas. *See* Dkts. 101-4, 101-5 (Lead Counsel resumes). Thus, adequacy is satisfied.

21

### B.     THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)

To certify a class under Rule 23(b)(3), the Court must also find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Both criteria are satisfied.

Predominance under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" which, as the Supreme Court has held, "is a test readily met in certain cases alleging . . . securities [claims]." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594, 625 (1997). Where common questions of law or fact outnumber those affecting only individual class members, predominance is satisfied. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)*.* Indeed, as the above commonality analysis demonstrates, there are various questions of law and fact common to Lead Plaintiffs and the Settlement Class that predominate over individual issues. Further class adjudication is clearly superior here as "[m]any class members would be unmotivated to prosecute their claims" given that cost of bringing individual suits likely outweigh the recovery obtained." *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *9 (E.D. Tex. Dec. 16, 2022) (noting that "[c]lass adjudication is especially preferred for securities fraud cases" for these reasons). And moreover "class adjudication resolves the claims quickly and more efficiently than deciding each claim on an individual basis." *Id*.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and there are no issues that would prevent the Court from certifying the Settlement Class for settlement

22

purposes, appointing Lead Plaintiffs as class representatives, and appointing Lead Counsel as class counsel pursuant to Rule 23(g).

## VII.   NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). Similarly, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Moreover, notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the proposed notices here will collectively apprise recipients of (among other disclosures): (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the claims and issues involved; (iv) that a Settlement Class Member may enter an appearance through an attorney if desired; (v) that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and the procedures and deadlines for doing so); and (vi) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B). The Notice also satisfies the PSLRA's additional notice requirements by stating: (i) the Settlement amount in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Lead Counsel intend to apply for attorneys' fees and expenses (including the amount of such fees and estimated expenses on an average per share basis); (iv) Lead Counsel's

23

contact information; and (v) the reasons for the Settlement. 15 U.S.C. § 78u-4(a)(7).

As outlined in the Preliminary Approval Order, if the Settlement is preliminarily approved, the Claims Administrator[15] will provide direct notice via mail and/or email (*see* Postcard Notice, Ex. A-1 to the Stipulation) to those Settlement Class members set forth in the records to be provided by Defendants, or who otherwise may be identified through further reasonable effort, including through a network of banks, brokerage firms, and other nominees.[16] The Postcard Notice provides important information regarding the Settlement, along with the rights of Settlement Class Members in connection therewith, and directs recipients to the website (*i.e.*, www.ApacheSecuritiesSettlement.com) and detailed long-form Notice for more information regarding the Action and Settlement.[17] The Claims Administrator will post downloadable copies of the Notice and Claim Form (Exs. A-2 & A-4 to the Stipulation), as well as other important documents, on the Settlement website

---

[15]    Lead Plaintiffs also request the Court's approval to retain A.B. Data as the Claims Administrator. A.B. Data was selected following a formal bidding process and is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements throughout the country. *See* A.B. Data resume (attached as Exhibit 2 to the Ajamie Decl.; *see also* www.ApacheSecuritiesSettlement.com.

[16]    A.B. Data will utilize its proprietary list of the largest and most common banks, brokerage firms, and nominees ("Nominees") to facilitate the dissemination of notice. A.B. Data will send notice to all Nominees on its list. Nominees who purchased or otherwise acquired shares of Apache common stock during the Class Period on behalf of other beneficial owners will be required to either mail the Postcard Notice to their customers or provide the names and addresses of the beneficial owners to A.B. Data, which will then promptly send the Postcard Notice by first-class mail (or email, if provided) to such identified beneficial owners.

[17]    Courts routinely allow notice by postcard as proposed here. *See, e.g.*, *Celeste*, 2022 WL 17736350, at *8 (approving notice though mailing of postcard, posting of long-form notice on website, and publishing a summary notice); *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6681962, at *2 (W.D. Tex. Dec. 6, 2019) (same); *Parmelee v. Santander Consumer USA Holdings, Inc.*, 2019 WL 2352837, at *2 (N.D. Tex. June 3, 2019) (same).

and will cause the Summary Notice (Ex. A-3 to the Stipulation) to be published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See* Stip., Ex. A ¶ 7(d). Lead Counsel will also post copies of the Notice and Claim Form on their websites.

The proposed plan for providing notice here is the same method used in numerous other securities class actions. Courts routinely find that comparable notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of Rule 23 and due process. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *3 (holding that notices delivered though similar procedures—*i.e.*, mailed notice, publication notice, and website—satisfied the Rule 23 requirements); *Schwartz*, 2005 WL 3148350, at *10-11 (same). Accordingly, Lead Plaintiffs respectfully submit that the Court should approve the proposed manner and form of providing notice to Settlement Class Members.

## IX. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court (i) preliminarily approve the Settlement; (ii) provisionally certify the Settlement Class for settlement purposes; (iii) approve the proposed form and manner of providing notice to Settlement Class Members; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: May 8, 2024                    Respectfully Submitted,

**AJAMIE LLP**

*s/Thomas R. Ajamie*
Thomas R. Ajamie, Attorney-in-Charge
Texas Bar No. 00952400
S.D. Tex. No. 6165

25

John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
S.D. Tex. No. 38095
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Liaison Counsel for Lead Plaintiffs*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted *pro hac vice*)
Johnston de F. Whitman, Jr. (admitted *pro hac vice*)
Joshua E. D'Ancona (admitted *pro hac vice*)
Richard A. Russo, Jr. (admitted *pro hac vice*)
Evan R. Hoey (admitted *pro hac vice*)
Austin W. Manning (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jwhitman@ktmc.com
jdancona@ktmc.com
rrusso@ktmc.com
ehoey@ktmc.com
amanning@ktmc.com

**SAXENA WHITE P.A.**
David R. Kaplan (admitted *pro hac vice*)
Wolfram T. Worms (admitted *pro hac vice*)
Emily R. Bishop (admitted *pro hac vice*)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com

26

wworms@saxenawhite.com
ebishop@saxenawhite.com

-and-

Steven B. Singer (*pro hac vice* forthcoming)
Joshua H. Saltzman (admitted *pro hac vice*)
Sara DiLeo (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com
sdileo@saxenawhite.com

-and-

Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White, III (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Co-Lead Counsel for Lead Plaintiffs*

**DANIELS & TREDENNICK PLLC**
Douglas A. Daniels
Texas State Bar No. 00793579
6363 Woodway, Suite 700
Houston, TX 77057
Telephone: (713) 917-0024
Facsimile: (713) 917-0026
Doug.Daniels@DTLawyers.com

*Additional Counsel for Lead Plaintiffs*

27

## APPENDIX A

### Proposed Schedule of Settlement Events

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") and posting the Notice and Claim Form on the Settlement website | Not later than 20 business days after entry of Preliminary Approval Order ("PAO") (PAO ¶ 7(b)) |
| Deadline for publishing the Summary Notice | Not later than 10 business days after Notice Date (PAO ¶ 7(d)) |
| Deadline for filing papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses) | 35 calendar days prior to Settlement Hearing (PAO ¶ 28) |
| Deadline for receipt of requests for exclusion or objections | 21 calendar days prior to Settlement Hearing (PAO ¶¶ 14, 17, 20) |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing (PAO ¶ 28) |
| Settlement Hearing | 110 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (PAO ¶ 5) |
| Postmark deadline for Claim Forms | 120 calendar days after Notice Date (PAO ¶ 11) |

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 8, 2024, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

<u>*s/ Thomas R. Ajamie*</u>
Thomas R. Ajamie