**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE APACHE CORP. SECURITIES LITIGATION | Case No. 4:21-cv-00575 |
| | District Judge George C. Hanks, Jr. |
| | Magistrate Judge Andrew M. Edison |
| | <u>CLASS ACTION</u> |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND LITIGATION EXPENSES,
AND SUPPORTING MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.     NATURE AND STAGE OF THE PROCEEDINGS.................................................1

II.    STATEMENT OF ISSUES TO BE RULED UPON ...............................................2

III.   SUMMARY OF THE ARGUMENT........................................................................2

IV.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS
       REASONABLE AND SHOULD BE APPROVED ...................................................5

       A.    Lead Counsel Are Entitled to a Reasonable Fee from the Common
             Fund.............................................................................................................5

       B.    The Court Should Award a Reasonable Percentage of the Common
             Fund.............................................................................................................6

       C.    The Requested Fee Is Reasonable Under the Percentage Method...............7

       D.    The *Johnson* Factors Confirm the Requested Fee Is Fair and
             Reasonable...................................................................................................8

             1.   The Time and Labor Expended...........................................................9

             2.   The Novelty and Difficulty of the Issues ........................................11

             3.   The Amount Involved and the Results Achieved ............................14

             4.   The Skill Required to Perform the Legal Services Properly,
                  and the Experience, Reputation, and Ability of the Attorneys ........15

             5.   The Preclusion of Other Employment...............................................16

             6.   The Customary Fee and Awards in Similar Cases...........................16

             7.   The Contingent Nature of the Fee ....................................................16

             8.   The Undesirability of the Case.........................................................17

             9.   Other Factors Considered by Courts Further Support the
                  Requested Fee as Fair and Reasonable .............................................18

                  a.   Public Policy Considerations ................................................18

                  b.   Lead Plaintiffs Have Approved the Requested Fee ..............19

                  c.   The Settlement Class's Reaction to Date..............................19

       E.    A Lodestar Cross-Check Confirms the Reasonableness of the
             Requested Fee.............................................................................................20

i

V.    PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE
      REASONABLE AND SHOULD BE APPROVED .............................................. 21

VI.   LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE
      COSTS UNDER THE PSLRA................................................................................. 23

VII.  CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ................................................................. 8

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .................................................................................. 17

*In re Apple Comput. Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................. 17

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ..................................................................................... 17

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub
nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir.
2012) ....................................................................................................................... 17

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ..................................................................................... 5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ............................................................................................ 6, 18

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................ 19, 21

*Bentley v. Legent Corp.*,
849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom. Herman v. Legent
Co.*, 50 F.3d 6 (4th Cir. 1995) ............................................................................... 17

*Billitteri v. Sec. Am. Inc.*,
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ....................................................... 9, 22

*Blackmon v. Zachary Holdings, Inc.*,
2022 WL 2866411 (W.D. Tex. July 21, 2022) ......................................................... 23

*Blackmon v. Zachary Holdings, Inc.*,
2022 WL 3142362 (W.D. Tex. Aug. 5, 2022) ........................................................... 7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ....................................................................................... 5

*Burford v. Cargill, Inc.*,
    2012 WL 5471985 (W.D. La. Nov. 8, 2012) ........................................... 8, 16

*Burnett v. CallCore Media, Inc.*,
    2024 WL 3166453 (S.D. Tex. June 25, 2024) ........................................... 6, 7

*Celeste v. Intrusion Inc.*,
    2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) .................................. 7, 8, 15

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................... 16-17

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
    2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ............................................ 25

*In re Combustion, Inc.*,
    968 F. Supp. 1116 (W.D. La. 1997) ........................................................... 8

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................................ 20

*Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*,
    2021 WL 118288 (N.D. Tex. Jan. 12, 2021) ............................................. 25

*In re Dell Inc., Sec. Litig.*,
    2010 WL 2371834 (W.D. Tex. June 11, 2010), *aff'd sub nom. Union*
    *Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F3d 632 (5th Cir. 2012) ....................... 14

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................... 21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...................................*passim*

*Farrar v. Workhorse Grp., Inc.*,
    2023 WL 5505981 (C.D. Cal. July 24, 2023) ........................................... 15

*Forbush v. J.C. Penney Co.*,
    98 F.3d 817 (5th Cir. 1996) ...................................................................... 20

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................... 21

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................................. 6

*Howard v. Liquidity Servs. Inc.*,
  2018 WL 4853898 (D.D.C. Oct. 5, 2018) ................................................................. 15

*Jenkins v. Trustmark Nat'l Bank*,
  300 F.R.D. 291 (S.D. Miss. 2014) .......................................................... 6, 8, 9, 18-19

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ........................................................................ *passim*

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) .......................................................................... 9

*Lea v. Tal Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................................................ 15

*Leroy v. City of Houston*,
  831 F.2d 576 (5th Cir. 1987) .................................................................................... 21

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................................................................ 13

*Miller v. Glob. Geophysical Servs. Inc.*,
  2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ......................................................... 25

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .................................................................................................. 21

*In re Myford Touch Consumer Litig.*,
  2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) .......................................................... 21

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
  2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ......................................................... 14-15

*In re OCA, Inc. Sec. & Deriv. Litig.*,
  2009 WL 512081 (E.D. La. Mar. 2, 2009) ................................................................ 11

*Parmelee v. Santander Consumer USA Holdings Inc.*,
  2019 WL 2352837 (N.D. Tex. June 3, 2019) .............................................................. 8

*Robbins v. Koger Props. Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................................................ 17

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................................... 7, 16

*Shen v. Exela Techs., Inc.*,
    2023 WL 8518901 (N.D. Tex. Dec. 7, 2023) ......................................................... 24-25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ....................................................................................................... 6

*In re Waste Mgmt., Inc. Sec. Litig.*,
    2002 WL 35644013 (S.D. Tex. May 10, 2002) ......................................................... 19

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................................................... 24

15 U.S.C. § 78u-4(a)(6) ........................................................................................................... 7

15 U.S.C. § 77z-1(a)(4) .......................................................................................................... 24

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ................... 19

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Rule(s)"), Court-appointed Lead Counsel Kessler Topaz Meltzer & Check, LLP and Saxena White P.A. (together, "Lead Counsel") hereby respectfully move for: (i) an award of attorneys' fees for Plaintiffs' Counsel[1] in the amount of 33⅓% of the Settlement Fund; (ii) payment of $1,555,388.49 for expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (iii) reimbursement in the aggregate amount of $17,014.22 to Court-appointed Lead Plaintiffs Plymouth County Retirement Association and the Trustees of the Teamsters Union No. 142 Pension Fund (together, "Lead Plaintiffs") for costs directly related to their representation of the Settlement Class in the Action, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In a separate, contemporaneous motion, Lead Plaintiffs seek final approval of a proposed $65 million all-cash, non-reversionary Settlement with Apache Corp. and its successor APA Corporation, a Delaware corporation listed on Nasdaq under the symbol APA ("Apache" or "Company") and John J. Christmann IV, Timothy J. Sullivan, and Stephen J. Riney ("Individual Defendants" and collectively with Apache, "Defendants").

---

[1] Plaintiffs' Counsel consists of Lead Counsel Kessler Topaz Meltzer & Check, LLP and Saxena White P.A., Court-appointed Liaison Counsel Ajamie LLP, and additional counsel for Lead Plaintiffs Daniels & Tredennick PLLC and Nix Patterson, LLP.

[2] All capitalized terms not defined herein have the meanings set forth in the Stipulation and Agreement of Settlement dated May 7, 2024 (Dkt. 162-2) and in the Joint Declaration of David R. Kaplan and Joshua E. D'Ancona ("Joint Declaration" or "Joint Decl.") filed herewith. Citations to "¶ _" refer to paragraphs in the Joint Declaration and citations to "Ex. _" refer to exhibits to the Joint Declaration. All internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

If approved, the Settlement will resolve all claims in this securities class action. By this Motion, Lead Counsel move for an award of attorneys' fees and expenses to Plaintiffs' Counsel and PSLRA awards to Lead Plaintiffs.

## II.      STATEMENT OF ISSUES TO BE RULED UPON

1.      Whether the Court should approve Lead Counsel's request for an award of attorneys' fees.

2.      Whether the Court should approve Lead Counsel's request for litigation expenses.

3.      Whether the Court should approve awards to Lead Plaintiffs for costs incurred directly related to their prosecution of the Action on behalf of the Settlement Class, as permitted by the PSLRA.

## III.     SUMMARY OF THE ARGUMENT

Plaintiffs' Counsel vigorously litigated this case for over three years on an entirely contingent basis against highly experienced and well-respected defense counsel. The $65 million cash Settlement, if approved by the Court, will resolve this Action in its entirety. The Settlement is an excellent result—providing substantial, certain near-term compensation to Settlement Class Members while avoiding the significant risks and delay that Lead Plaintiffs would face in attempting to obtain a larger recovery through continued litigation.

As detailed in the Joint Declaration,[3] the Settlement was reached only after Lead Counsel conducted a far-reaching investigation (including locating and attempting to contact over 150 potential witnesses and interviewing over 50 of them), drafted the detailed Complaint, briefed and defeated in its entirety a motion to dismiss the Complaint (before both Magistrate Judge Andrew M. Edison and District Judge George C. Hanks, Jr.), briefed and argued a motion for class certification, including an evidentiary hearing, and pursued myriad sources of discovery, including propounding document subpoenas on dozens of relevant nonparties and conferring on numerous occasions with Defendants and nonparties regarding discovery disputes (two of which required the Court's intervention). As a result of these efforts, Lead Counsel obtained and analyzed over one million pages of documents and deposed 16 fact witnesses (while preparing to depose at least seven more). Lead Counsel also engaged in protracted settlement negotiations with Defendants, including the exchange of detailed mediation statements and participation in a full-day formal mediation session followed by two months of continued negotiations with the assistance of a highly-experienced mediator of complex securities and shareholder litigation, Jed D. Melnick, Esq. of JAMS. ¶¶ 8, 24-89.

Lead Counsel undertook these efforts and achieved the proposed Settlement in the face of significant litigation risks. For example, as detailed in the Joint Declaration (¶¶ 93-

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Lead Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, *inter alia*: the history of the Action and Lead Counsel's extensive litigation efforts (¶¶ 24-84); the settlement negotiations (¶¶ 88-90); and the risks of continued litigation (¶¶ 93-107).

106) and summarized below, there were substantial risks, among others, that Lead Plaintiffs would be unable to: (i) prove the falsity of Defendants' alleged misstatements; (ii) prove Defendants' scienter; or (iii) establish that the alleged misstatements caused Lead Plaintiffs' losses. Notably, this was not a case in which counsel benefited from an SEC prosecution or investigation or a restatement of Company financials. Defendants steadfastly denied that any of their statements were false or that they were involved in any wrongdoing. ¶¶ 95, 125. These risks further demonstrate that the $65 million Settlement is an excellent result for the Settlement Class.

As compensation for these efforts, as well as the risk of prosecuting and funding this Action with no guarantee of recovery, Lead Counsel, on behalf of Plaintiffs' Counsel, seek attorneys' fees in the amount of 33⅓% of the Settlement Fund. As set forth herein, the requested fee is within the range of fees awarded in other securities class action settlements. Lead Counsel also request payment from the Settlement Fund of $1,572,402.71 in Litigation Expenses (which includes the amounts requested by Lead Plaintiffs). Notably, Lead Plaintiffs—sophisticated, institutional investors and precisely the type of fiduciaries envisioned by Congress when enacting the PSLRA—fully endorse these requests.[4]

The favorable reaction of the Settlement Class to date also supports Lead Counsel's requested fees and expenses. Pursuant to the Court's Preliminary Approval Order (Dkt.

---

[4] *See* Declaration of Padraic P. Lydon, Esq. on behalf of Plymouth County (Ex. 1 to Joint Decl.), at ¶¶ 13-16 and Declaration of Jay Smith on behalf of Teamsters No. 142 (Ex. 2 to Joint Decl.), at ¶¶ 9-11.

163), over 418,000 notices have been mailed or emailed to potential Settlement Class Members and nominees.[5] These notices advise recipients that Lead Counsel would be applying to the Court for attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund and Litigation Expenses in an amount not to exceed $1.9 million, plus interest. Exs. A-C to Ex. 3. While the August 29, 2024 objection deadline has not yet passed, to date, there have been **no** objections to the fee and expense amounts set forth in the notices. ¶¶ 14, 121.[6]

For the reasons discussed herein, Lead Counsel respectfully request that their Motion be granted in full.

## IV.  LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A.  Lead Counsel Are Entitled to a Reasonable Fee from the Common Fund

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the 'common benefit' or 'common fund' equitable doctrine allows for the assessment of attorneys' fees against a

---

[5] *See* Declaration of Adam D. Walter Regarding: (A) Dissemination of Postcard Notice and Notice Packet; (B) Publication of the Summary Notice; (C) Establishment of Call Center Services and Settlement Website; and (D) Report on Requests for Exclusion Received to Date (Ex. 3 to Joint Decl.), ¶ 9.

[6] If any objections are received after this submission, Lead Counsel will address them in their September 12, 2024 reply.

common fund created by the attorneys' efforts."). Fee awards from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

Further, the Supreme Court has emphasized that private securities actions such as this provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 313, 318-19 (2007). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.   The Court Should Award a Reasonable Percentage of the Common Fund**

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained. Although the Court has discretion to apply either a percentage or lodestar method in calculating a fee award, the percentage method is generally "the preferred method" in this Circuit "because it aligns the interests between class counsel and the class members, encouraging successes and penalizing failure." *Burnett v. CallCore Media, Inc.*, 2024 WL 3166453, at *5 (S.D. Tex. June 25, 2024).

6

Accordingly, courts in this Circuit regularly use the percentage method, accompanied by an analysis of the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*"). *See* § IV.D *infra*; *see also Blackmon v. Zachary Holdings, Inc.*, 2022 WL 3142362, at *4 (W.D. Tex. Aug. 5, 2022) (explaining that percentage method is commonly used in the Fifth Circuit "so long as the *Johnson* framework is utilized to ensure that the fee awarded is reasonable"); *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *10 (E.D. Tex. Dec. 16, 2022) (similar).

In light of the merits of the percentage method, a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery" has developed. *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8, 2005); *see also Burnett*, 2024 WL 3166453, at *5 (applying percentage method as supported by *Johnson* factors). Moreover, the percentage method is particularly appropriate in securities cases like this one, as the PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also Celeste*, 2022 WL 17736350, at *11 ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). Here, the Court should use the percentage method in calculating Lead Counsel's fee award.

### C.    The Requested Fee Is Reasonable Under the Percentage Method

Lead Counsel's one-third fee request falls within the range of percentage fees routinely awarded in the Fifth Circuit. *See Celeste*, 2022 WL 17736350, at *11

("Recognizing that common fund litigation is risky for counsel, on the one hand, and beneficial to the public, on the other, courts frequently award attorney's fees ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund."); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (noting one-third to be "oft-awarded percentage in common fund class action settlements in this Circuit"); *Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third").

Moreover, ample precedent exists in this Circuit for granting percentage-based fees in class actions at the level requested here. *See, e.g.*, *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2352837, at *1-2 (N.D. Tex. June 3, 2019) (awarding 33⅓% of $9.5 million settlement); *Al's Pals*, 2019 WL 387409, at *4 (awarding one-third of $15 million settlement); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) (awarding 33⅓% of $100 million settlement and stating "[c]ompared to other common fund cases in this Circuit, Class Counsel is not asking for an unusually large or high fee"); *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *6 (W.D. La. Nov. 8, 2012) (awarding 33.3% of $27.5 million settlement); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1156 (W.D. La. 1997) (awarding 36% of $127 million settlement).

## D.    The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable

An analysis of the factors identified by the Fifth Circuit in *Johnson* confirms that a 33⅓% fee is fair and reasonable in this case. The *Johnson* factors are:

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to

> acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee
> is fixed or contingent…[;] (7) Time limitations imposed by the client or the
> circumstances…[;] (8) The amount involved and the results obtained…[;] (9)
> The experience, reputation, and ability of the attorneys…[;] (10) The
> "undesirability" of the case…[;] (11) The nature and length of the
> professional relationship with the client…[; and] (12) Awards in similar
> cases.[7]

*Id.* (quotation marks in original); *see also Billitteri v. Sec. Am. Inc.*, 2011 WL 3585983, at

*3 (N.D. Tex. Aug. 4, 2011) (applying *Johnson* factors). In addition, courts may consider

other factors, such as: (i) public policy considerations, (ii) plaintiffs' approval of the fee,

and (iii) the reaction of the class. *See, e.g.*, *Jenkins*, 300 F.R.D. at 309 ("Public policy

concerns—in particular, ensuring the continued availability of experienced and capable

counsel to represent classes of injured plaintiffs holding small individual claims—support

the requested fee."); *Klein*, 705 F. Supp. 2d 632, 661–62, 678 (noting proposed settlement,

including requested fee, was supported by "virtually all class members"). Consideration of

these factors here provides further confirmation that the requested fee is reasonable.

### 1.   The Time and Labor Expended

The substantial time and effort expended by Plaintiffs' Counsel in prosecuting this

Action and achieving the Settlement amply supports the requested fee. As detailed in the

Joint Declaration, Lead Counsel among other things:

- conducted a thorough legal and factual investigation into the Settlement Class's
  claims, which included interviewing over 50 former Apache employees as well
  as the review of: (i) Apache's public filings with the SEC; (ii) press releases and
  public statements issued by Apache, including during earnings calls and

---

[7] Two of the *Johnson* factors—the "time limitations imposed by the client or the circumstances"
and the "nature and length of [counsel's] professional relationship with the client"—are not
relevant in this case. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 676 (N.D. Tex. 2010) ("not
every factor need be necessarily considered").

conference calls with analysts and investors and in investor slide presentations; (iii) shareholder communications, conference and investor presentations; (iv) research reports by securities and financial analysts; (v) publicly available news articles, press releases, documents, and other online and media reports regarding Defendants; (vi) data and other information regarding Apache securities; (vii) expert analyses of Apache's drilling and production data from Alpine High; and (ix) Fifth Circuit law applicable to the claims asserted and Defendants' potential defenses (¶¶ 24-26);

- consulted extensively with experts across a variety of disciplines, including oil and gas exploration and production ("E&P"), geology, reservoir engineering and hydraulic fracking, as well as economics and class-wide damages (¶¶ 27, 85-87);

- drafted the 146-page operative Complaint based on Lead Counsel's comprehensive investigation (¶¶ 28);

- opposed and defeated in its entirety Defendants' motion to dismiss the Complaint (¶¶ 29-34), before both Judge Edison and Judge Hanks;

- engaged in extensive discovery efforts, which included serving document requests and interrogatories on Defendants, serving document subpoenas on dozens of relevant nonparties, reviewing over one million pages of documents produced in response thereto, participating in numerous meet and confer sessions with Defendants and various nonparties regarding a host of disputed discovery issues, and deposing 16 fact witnesses and preparing to depose at least seven more, including many of the Company's current and former senior-most executives (¶¶ 35-76);

- briefed and argued the Class Certification Motion, including participation in an evidentiary hearing, which included cross examination of the Parties' economic experts (¶¶ 77-84);

- prepared and filed objections to the Class Certification Report (¶ 84);

- assisted Lead Plaintiffs in responding to Defendants' discovery requests, including lengthy interrogatories and 35 unique document requests resulting in the production of 196 documents (4,822 pages) from Lead Plaintiffs and over 1,300 documents from Lead Plaintiffs' outside investment managers which Lead Counsel reviewed for privilege and relevance (¶¶ 64-66);

- defended the depositions of representatives for the proposed class representatives, Lead Plaintiffs Plymouth County and Teamsters No. 142 (¶¶ 67-70, 78);

- deposed Defendants' economic expert, Lucy P. Allen, and defended the deposition of Lead Plaintiffs' expert, Zachary Nye, Ph.D. of Stanford Consulting Group, Inc. ("Stanford Consulting"), in connection with the Class Certification Motion (¶¶ 79, 81);

- engaged in arm's-length settlement negotiations facilitated by Mr. Melnick, including an exchange of mediation briefs, a formal in-person mediation in January 2024, and continuing settlement discussions for two months thereafter (¶¶ 88-89); and

- negotiated the final terms of the Settlement with Defendants and drafted, finalized, and filed the Stipulation and related Settlement documents (¶ 90).

Lead Counsel *alone* expended over 46,000 hours prosecuting this Action (resulting in a so-called *negative* lodestar as discussed below).[8] This time and effort was critical in obtaining the excellent result represented by the Settlement and confirms the reasonableness of the fee requested here.

## 2. The Novelty and Difficulty of the Issues

The difficulty of questions presented by the litigation is also considered in determining the reasonableness of a requested fee. *See Johnson*, 488 F.2d at 718. Courts have long recognized that securities class actions are complex and challenging, and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult." *In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009). This case was no exception. It involved not only the complexities of a securities class action generally but also highly technical concepts as

---

[8] Lead Counsel will continue to perform legal work on behalf of the Settlement Class should the Court approve the Settlement. Additional resources will be expended assisting Settlement Class Members with their Claims and related inquiries and working with A.B. Data, Ltd. to ensure the smooth progression of claims processing. ¶ 134, n. 20.

well as customs and practices unique to the oil and gas industry. ¶ 63.

*First*, Lead Plaintiffs faced substantial challenges to establishing Defendants' liability. To this end, Lead Plaintiffs would be required to show that the statements at issue in the Action were materially false or misleading when made. In their defense, Defendants would have argued, among other things, that: (i) their statements were factually true and honestly believed when made based on available data; (ii) it is normal for oil and gas plays to be less productive during the exploration and development phase, and projecting estimates of total hydrocarbons amounts in place and recoverable through fracking operations is a highly technical matter requiring numerous assumptions; and (iii) many of the statements at issue were either protected by the safe harbor provision of the PSLRA or non-actionable opinions. ¶ 97.

At summary judgment and trial, Defendants would also continue to challenge Lead Plaintiffs' ability to establish scienter. Defendants likely would have asserted that: (i) the Individual Defendants believed their statements and opinions about Alpine High were true when made; (ii) Apache would not have continued to invest billions of dollars in Alpine High if it did not believe in the play's commercial viability; (iii) the Individual Defendants did not engage in suspicious insider trading or possess other financial motives to commit fraud; and (iv) Apache continued to believe Alpine High could be viable after the end of the Class Period, operating wells at select locations based on prevailing commodity prices. ¶ 98. Notably, Judge Edison already recognized the challenges of proving scienter, noting in his Memorandum and Recommendation on Defendants' motion to dismiss that he "went back and forth" on the "very close call" of whether to dismiss for lack of a strong inference

of scienter. *See* Dkt. 76 at 13. In addition, certain of these scienter facts would not change by further discovery, such as the absence of any substantial and suspicious insider trading. ¶ 99.

*Third*, Lead Plaintiffs faced formidable challenges with respect to proving loss causation and damages. On these issues, Lead Plaintiffs would ultimately have to prove through expert testimony that the revelation of the alleged fraud through the alleged partial corrective disclosures proximately caused declines in Apache's stock price, and that other information released around the same time played little or no role in the price declines. ¶¶ 101-104. Defendants, on the other hand, likely would have argued with the assistance of their experts that Lead Plaintiffs could not prove that the declines in Apache's stock price based upon the alleged partial corrective disclosures were statistically significant and/or resulted from the disclosure of any previously misrepresented or concealed fact. *Id*. These contested issues would ultimately come down to a battle of the experts. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) ("On the issue of damages, a trial would likely have turned heavily on a battle of the experts between the parties' respective economists. It is impossible to predict which party's model of damages—if either—the jury would credit.").

*Finally*, the Settlement came at a moment of substantial uncertainty in the Action. Were Judge Hanks to adopt Judge Edison's Class Certification Report over Lead Plaintiffs' pending objections, three of the five alleged corrective disclosures in the case would be eliminated, shortening the Class Period by more than half, to end on February 22, 2018, and substantially decreasing the Settlement Class's potential recoverable damages. Such a

13

ruling would have re-shaped the landscape of the Action going forward. ¶¶ 9, 95.

Notwithstanding these difficulties and uncertainties regarding the outcome of the case, Plaintiffs' Counsel zealously prosecuted this Action in order to secure the best result for the Settlement Class. Accordingly, this factor weighs in favor of the requested fee.

### 3.    The Amount Involved and the Results Achieved

Courts have consistently recognized that the result achieved is a significant factor to be considered in awarding attorneys' fees. *See, e.g., In re Dell Inc.*, *Sec. Litig.*, 2010 WL 2371834, at *18 (W.D. Tex. June 11, 2010) ("The United States Supreme Court and the Fifth Circuit have held the most critical factor in determining the reasonableness of a fee award is the degree of success obtained."), *aff'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F3d 632 (5th Cir. 2012). Lead Counsel secured a $65 million Settlement that will provide payment to Settlement Class Members in the near term while avoiding the serious risks of continued litigation.

Here, the Settlement provides a meaningful recovery of damages—representing approximately 4.4% to 12.5% of the Settlement Class's potential estimated damages of $1.48 billion (for the full Class Period) and $519 million (for a class period ending on February 22, 2018). ¶¶ 12, 123. This result reflects the informed assessment by Lead Counsel and Lead Plaintiffs of the strengths of the Settlement Class's claims and the risks of litigating this complex case through a ruling by the Court on class certification, the remainder of discovery, trial, and appeals and is in-line with or exceeds damage-percentage recoveries in similar cases. *See, e.g., In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *13 (E.D.N.Y. Jan. 26, 2024) (approving settlement recovering 2.3% of

14

maximum damages); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement recovering 3% of estimated damages); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving settlement recovering "5.3% of the Settlement's Class's maximum estimated damages"); *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *5 (D.D.C. Oct. 5, 2018) (approving settlement "constitut[ing] approximately 4% of the ***maximum*** realistic recoverable damages") (emphasis in original). Thus, this factor supports the requested fee.

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The *Johnson* factors also consider the skill required to litigate the Action and "the experience, reputation and ability of the attorneys" involved. *See Johnson*, 488 F.2d at 719 (emphasis omitted). Lead Counsel prosecuted the Action vigorously, provided high-quality legal services, and obtained a favorable result for the Settlement Class. Plaintiffs' Counsel's experience in the field of securities class actions and other complex litigation, along with their effort and skill in surviving Defendants' motion to dismiss, developing the evidentiary record, obtaining and digesting the voluminous discovery in the Action, and presenting a strong case at mediation and during the settlement discussions that followed were essential to achieving a meaningful resolution.[9]

Courts have also recognized the quality of opposing counsel in assessing plaintiffs' counsel's efforts. *See, e.g.*, *Celeste*, 2022 WL 17736350, at *12 ("class counsel obtained a favorable settlement against formidable legal opposition—a fact demonstrating the

---

[9] *See* Exs. 4 through 8 to the Joint Declaration for Plaintiffs' Counsel's resumes.

superior quality of [the class] representation"). In this Action, Defendants were represented by highly experienced and well-respected counsel from Baker Botts L.L.P., an international law firm rooted in Houston with deep experience in the energy industry, that aggressively litigated this Action at every step of the way. In the face of this formidable opposition, Lead Counsel were able to persuade Defendants to settle the case on terms that were favorable to the Settlement Class. This factor strongly supports the requested fee.

### 5.   The Preclusion of Other Employment

As noted above, Lead Counsel *alone* spent over 46,000 hours prosecuting this Action. Those hours were time that counsel could have devoted to other matters. Further, Lead Counsel dedicated this time despite the significant risks of no recovery or payment of their fees and expenses. ¶¶ 126-127. Accordingly, this factor also supports the requested fee. *See, e.g.*, *Johnson*, 488 F.2d at 718; *Cargill, Inc.*, 2012 WL 5471985, at *3.

### 6.   The Customary Fee and Awards in Similar Cases

As discussed above, Lead Counsel's fee request falls within the range of fees awarded in similar cases on a percentage basis. *See* § IV.C above. This factor supports the reasonableness of the requested fee. *See Johnson*, 488 F.2d at 717-19.

### 7.   The Contingent Nature of the Fee

Lead Counsel undertook this Action on a contingent basis, assuming a substantial risk that the Action would yield no recovery and leave counsel uncompensated. Courts have consistently recognized that "the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one

16

expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

Even with the most vigorous and skillful of efforts, success in contingent-fee, complex securities fraud litigation such as this is never assured.[10]  Any fee award has always been at risk, and completely dependent on the result achieved. Accordingly, the contingent risk also supports the requested fee.

### 8.    The Undesirability of the Case

Although Lead Counsel did not consider this case to be "undesirable," it bears emphasis that this Action was not a "strike suit" filed on the heels of a company disclosure and ensuing stock price drop. To the contrary, no other investor filed securities fraud claims against Apache based on the underlying facts despite the fact that the final corrective disclosure (which caused a 45% stock price decline) occurred nearly one full year before

---

[10] There have been many hard-fought lawsuits where excellent professional efforts produced no fee for counsel. *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting defendants' judgment as a matter of law following plaintiff's jury verdict); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities class action jury verdict for plaintiffs' in case filed in 1973 and tried in 1988); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom. Herman v. Legent Co.*, 50 F.3d 6 (4th Cir. 1995) (entering judgment as a matter of law for defendants after plaintiffs' presentation of their case to the jury); *In re Apple Comput. Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (after jury verdict for plaintiffs following an extended trial, the court overturned the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after eleven years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

the Action was filed, and the first corrective disclosure (which caused a more than 7% stock price decline) occurred approximately 3½ years before the Action was filed.  Further, there were substantial risks in financing and prosecuting this highly technical Action, including the fact that Lead Counsel would need to devote substantial resources to the case—without any assurance of being compensated for their efforts—in order to generate a successful outcome. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *12 (the "risk of non-recovery and undertaking expensive litigation against . . . well-financial corporate defendants on a contingent fee" has been held to make a case undesirable, warranting a higher fee") (ellipsis in original). This factor supports the requested fee.

### 9.   Other Factors Considered by Courts Further Support the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, courts often consider certain other factors in determining an appropriate fee in a class action. The below factors also confirm the reasonableness of the fee request.

### a.   Public Policy Considerations

A recognized public policy interest favors rewarding firms that bring successful securities litigation. As noted above, the Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman*, 472 U.S. at 310. Here, that public policy was advanced, as Lead Counsel achieved a meaningful recovery for investors, notwithstanding the absence of any recovery for Apache investors from the SEC or any other regulatory agency. *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns— in particular, ensuring the continued availability of experienced and capable counsel to

represent classes of injured plaintiffs holding small individual claims—support the requested fee.").

### b.     Lead Plaintiffs Have Approved the Requested Fee

Lead Plaintiffs are large, institutional investors who played an active role in the prosecution and resolution of the Action. As such, each has a sound basis for assessing the reasonableness of the fee request.[11] Lead Plaintiffs, after considering the extensive time and effort dedicated to the case by Plaintiffs' Counsel and the considerable risks of the litigation, have endorsed the requested fee as fair and reasonable. *See* Ex. 1, ¶¶ 13-15; Ex. 2, ¶ 9; *see also In re Waste Mgmt., Inc. Sec. Litig.*, 2002 WL 35644013, at *25 (S.D. Tex. May 10, 2002) (finding fee request "fair and reasonable" where lead plaintiff, who was "heavily involved in each facet of this litigation, including the settlement negotiations, fully support[ed] the fee requested"); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (where "sophisticated lead plaintiff possessing a large stake in the litigation . . . endorses the [fee] application following close supervision of the litigation, the court should give [this] great weight").

### c.     The Settlement Class's Reaction to Date

The reaction of the Settlement Class also supports the requested fee. To date, a total of 237,676 Postcard Notices and 4,944 Notices have been mailed to potential Settlement

---

[11] The PSLRA was intended to encourage institutional investors like Lead Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731.

Class Members and nominees and an additional 176,191 potential Settlement Class Members have received notice via email informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $1.9 million, plus interest. *See* Exs. A-C to Ex. 3. To date, there have been no objections. ¶¶ 14, 121.

### E.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Finally, courts in this Circuit may "cross-check" a proposed percentage fee for reasonableness by considering counsel's lodestar. Under the lodestar method, the court takes the recorded hours worked by the attorneys and multiplies them by a "reasonable hourly rate." *See, e.g., Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). "The resulting lodestar amount may then be adjusted upward or downward depending on the court's application of the *Johnson* factors." *Halliburton*, 2018 WL 1942227, at *13. In securities class actions, fees representing multiples above the lodestar are typically awarded to reflect contingency fee risks and other relevant factors. *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. . . . The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.").

Here, if the Court were to perform a lodestar cross-check, it would reveal that the requested fee represents ***less*** than the value of Lead Counsel's time. Specifically, Kessler Topaz and Saxena White spent a total of 46,552 hours of attorney and other professional

support time prosecuting this Action. ¶ 134. Based on current hourly rates, Lead Counsel's total lodestar is $27,157,676.00. *See id*.[12] This lodestar is a function of the vigorous prosecution of the case over the past three years as described in detail in the Joint Declaration. The requested fee, which amounts to $21,666,666 (before interest), represents a "*negative*" (or fractional) multiplier of approximately 0.80 on Lead Counsel's lodestar. *See In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) ("[T]he negative multiplier … suggests the request is reasonable"); *Bear Stearns*, 909 F. Supp. 2d at 271 (approving fee with negative multiplier and noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee").[13] Thus, a lodestar cross-check confirms the reasonableness of Lead Counsel's fee request.

## V.  PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel also respectfully request that this Court approve payment of Plaintiffs' Counsel's litigation expenses. These expenses, which are set forth in Plaintiffs'

---

[12] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 763 (S.D. Tex. 2008) (similar). In addition, "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." (Alterations omitted.) *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012). Here, Lead Counsel's per-hourly rates range from $825-$1,195 for partners, $400-$795 for counsel and associates, and $325-$460 for other attorneys, which are reasonable. Indeed, Lead Counsel's rates have been accepted by other federal courts in the context of a lodestar cross-check. *See* Kessler Topaz Fee and Expense Decl., ¶ 5; Saxena White Fee and Expense Decl., ¶ 5.

[13] Additional Plaintiffs' Counsel have spent an additional 695 hours in connection with the Action. These hours have not been factored into the lodestar calculation.

Counsel's declarations (Exs. 4-8 to Joint Decl.), were reasonably necessary for the prosecution and settlement of this Action and are properly recovered by counsel. *See Halliburton*, 2018 WL 1942227, at *14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."); *Billitteri*, 2011 WL 3585983, at *10 (same).

Plaintiffs' Counsel incurred an aggregate of $1,555,388.49 in litigation expenses in the prosecution of the Action. ¶ 138.[14] The largest component of Plaintiffs' Counsel's expenses—$1,179,914.10 or approximately 76% of total expenses—was for experts and consultants, including Lead Plaintiffs' economic expert, Dr. Nye of Stanford Consulting, who assisted Lead Counsel with their Class Certification Motion, during the mediation and settlement negotiations with the Defendants, and in developing the proposed Plan of Allocation. ¶¶ 85-86, 116, 141-142. Lead Counsel also retained several highly experienced industry experts and consultants to assist them in understanding Apache's myriad regulatory filings, public statements throughout the Class Period, and highly technical internal documents, as well as documents produced by various nonparties. ¶ 87.

The second largest component of Plaintiffs' Counsel's expenses—$151,873.88 or roughly 10% of total expenses—reflects the costs for an outside vendor to host the document database that enabled Lead Counsel to effectively and efficiently search and review over one million pages of documents produced in the Action. ¶ 143. The ability to code, search, and pull documents to be utilized as exhibits at depositions was of the utmost

---

[14] These expense items are not duplicated in the firms' hourly rates.

importance to the development of the record of evidence in this Action. *Id*. Lead Counsel also utilized this vendor to host and review Lead Plaintiffs' own documents for potential production.

In addition to the foregoing expenses, Plaintiffs' Counsel also incurred: (i) $21,800.00 for Lead Plaintiffs' portion of the costs for formal mediation and ongoing settlement negotiations with Mr. Melnick; (ii) $75,544.62 for online research; (iii) $29,809.87 for travel-related expenses; (iv) $54,098.60 for court reporters, videographers, and transcripts in connection with the 20 depositions Lead Counsel took or defended in the Action; and (v) $19,415.51 for document-reproduction costs. ¶¶ 144-147; *see also* Exs. 4-8.[15] The notices informed recipients that Lead Counsel would seek payment of Litigation Expenses (including reimbursement of the reasonable costs incurred by Lead Plaintiffs as discussed below) in an amount not to exceed $1.9 million, plus interest. The total amount of expenses requested is below this maximum amount and, to date, no objections have been received. ¶ 138. As such, Lead Counsel's request for expenses should be approved.

## VI. LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER THE PSLRA

Lastly, in connection with their request for Litigation Expenses, Lead Counsel also seek reimbursement of a total of $17,014.22 in costs incurred by Lead Plaintiffs directly related to their representation of the Settlement Class. The PSLRA specifically provides

---

[15] *See Blackmon v. Zachary Holdings, Inc.*, 2022 WL 2866411, at *5 (W.D. Tex. July 21, 2022) (approving filing fees, mediation expenses, expert fees, copying, delivery, and telecommunications charges, computer-based research and database charges and noting all were "associated with Class Counsel's investigation, discovery, and mediation, and other activities necessary to effectively prosecute this case.").

that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4). Here, Lead Plaintiffs seek awards based on the time dedicated by their employees in furthering and supervising the Action. Specifically, Plymouth County seeks reimbursement of $7,234.22 in costs and Teamsters No. 142 seeks $9,780.00 in costs. *See* Ex. 1, ¶¶ 17-18; Ex. 2, ¶¶ 12-14.

Each of the Lead Plaintiffs took an active role in the Action and has been committed to pursuing the Settlement Class's claims. Lead Plaintiffs' employees expended substantial time overseeing the Action including communicating with Lead Counsel concerning significant developments in the litigation and case strategy; reviewing significant pleadings and briefs filed in the Action; assisting Lead Counsel in preparing Lead Plaintiffs' responses to Defendants' discovery requests; collecting documents for production in response to Defendants' discovery requests; preparing for and providing testimony at depositions; consulting with Lead Counsel regarding settlement negotiations; and evaluating and approving the proposed Settlement. *See* Ex. 1, ¶¶ 7-8; Ex. 2, ¶¶ 5-7. These efforts required Lead Plaintiffs' staff to dedicate time and resources to the Action that they would have otherwise devoted to their regular duties. The requested reimbursement amounts are based on the number of hours that each of the Lead Plaintiffs' employees committed to these activities and a reasonable hourly rate for their time, based on their annual compensation. *See* Ex. 1, ¶ 18; Ex. 2, ¶ 14.

Courts routinely grant awards to plaintiffs for their time and effort spent in similar cases. *See, e.g., Shen v. Exela Techs., Inc.*, 2023 WL 8518901, at *2 (N.D. Tex. Dec. 7,

2023) (awarding $25,000 to lead plaintiff); *Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*, 2021 WL 118288, at *2 (N.D. Tex. Jan. 12, 2021) (awarding approximately $37,000 in total to lead plaintiffs); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL 6043440, at *2 (S.D. Tex. Feb. 13, 2019) (awarding over $56,000 to four institutional plaintiffs); *Halliburton*, 2018 WL 1942227, at *14 (awarding $100,000 as "compensation for the time [lead plaintiff] dedicated in supervising this action"); *Miller v. Glob. Geophysical Servs. Inc*., 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to lead plaintiff). Accordingly, the awards sought by Lead Plaintiffs are reasonable and justified and should be granted.

## VII.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court award: (i) attorneys' fees in the amount of 33⅓% of the Settlement Fund; (ii) $1,555,388.49 for Plaintiffs' Counsel's reasonable expenses, plus interest; and (iii) a total of $17,014.22 to Lead Plaintiffs for costs related to their representation of the Settlement Class.[16]

Dated: August 15, 2024                    Respectfully Submitted,

**AJAMIE LLP**

*s/ Thomas R. Ajamie*
Thomas R. Ajamie, Attorney-in-Charge
Texas Bar No. 00952400
S.D. Tex. No. 6165
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851

---

[16] A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

25

S.D. Tex. No. 38095
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Liaison Counsel for Lead Plaintiffs*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Gregory M. Castaldo (admitted *pro hac vice*)
Johnston de F. Whitman, Jr. (admitted *pro hac vice*)
Joshua E. D'Ancona (admitted *pro hac vice*)
Richard A. Russo, Jr. (admitted *pro hac vice*)
Evan R. Hoey (admitted *pro hac vice*)
Austin W. Manning (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
jwhitman@ktmc.com
jdancona@ktmc.com
rrusso@ktmc.com
ehoey@ktmc.com
amanning@ktmc.com

**SAXENA WHITE P.A.**
David R. Kaplan (admitted *pro hac vice*)
Wolfram T. Worms (admitted *pro hac vice*)
Emily R. Bishop (admitted *pro hac vice*)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
dkaplan@saxenawhite.com
wworms@saxenawhite.com
ebishop@saxenawhite.com

-and-

Steven B. Singer (*pro hac vice* forthcoming)
Joshua H. Saltzman (admitted *pro hac vice*)
Sara DiLeo (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com
sdileo@saxenawhite.com

-and-

Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White, III (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Co-Lead Counsel for Lead Plaintiffs*

**DANIELS & TREDENNICK PLLC**
Douglas A. Daniels
Texas State Bar No. 00793579
6363 Woodway, Suite 700
Houston, TX 77057
Telephone: (713) 917-0024
Facsimile: (713) 917-0026
Doug.Daniels@DTLawyers.com

*Additional Counsel for Lead Plaintiffs*

27

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 15, 2024, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Thomas R. Ajamie*
Thomas R. Ajamie
