# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE APACHE CORP. SECURITIES LITIGATION | Case No. 4:21-cv-00575<br><br>District Judge George C. Hanks, Jr.<br><br>Magistrate Judge Andrew M. Edison<br><br><u>CLASS ACTION</u> |

### DECLARATION OF JEFFREY J. ANGELOVICH ON BEHALF OF NIX PATTERSON, LLP IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

I, Jeffrey J. Angelovich, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a partner of the law firm of Nix Patterson, LLP ("Nix Patterson" or "NP"). I submit this declaration in support of Lead Counsel's motion for an award of attorneys' fees in connection with services rendered by Plaintiffs' Counsel in the above-captioned securities class action ("Action"), as well as for payment of Litigation Expenses incurred in connection with the Action.[1] Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2. My firm served as additional Plaintiffs' Counsel in the Action. I am the partner who oversaw and/or conducted NP's day-to-day work in this Action. In this capacity, my firm assisted in the preparation and review of pleadings, provided assistance in the discovery process, provided assistance with certain witnesses in the Action and

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation and Agreement of Settlement dated May 7, 2024. Dkt. 162-2.

1

served as liaison settlement counsel. The information in this declaration regarding Nix Patterson's time is based upon records maintained by NP in the ordinary course of business and the input of each NP attorney for whom time is submitted ("Reporting Attorneys"). This declaration was prepared with the assistance of other lawyers and staff at Nix Patterson with knowledge of the matters reflected herein and reviewed in detail by me before signing. Any errors or mistakes herein are unintentional.

3. Prior to submitting this declaration, I asked each Reporting Attorney[2] to report to me regarding the time they spent prosecuting this matter, as explained in more detail below. I have been provided with access to material information supporting the fee requests that are the subject of this declaration and have reviewed such materials. As a result of this review, reductions were made to time in the exercise of "billing judgment." As a result of the review and the adjustments made, I believe the time set forth below is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the Action.

4. For purposes of preparing this declaration, each Reporting Attorney relied on a combination of contemporaneous records and contemporaneous time entries. Thus, the time reported herein is supported either by records with contemporaneous entries or based on a review of the Reporting Attorney's notes, records, calendars, pleadings, case files, emails and the like—all contemporaneous records—to determine how much they worked

---

[2] While NP paralegals provided work in the Action, NP is not submitting that time in the exercise of billing judgment.

2

on this case at each stage of the litigation. As stated above, these estimated hours were reduced based on "billing judgment" and represent a conservative estimate.

5. Based on my work in the Action, as well as the review of the records described in paragraphs 3 and 4, *supra*, which reflect work performed by other Reporting Attorneys, as reported by those Reporting Attorneys, I directed the preparation of the table set forth as Exhibit A hereto. The table in Exhibit A: (i) identifies the names and employment positions (i.e., titles) of the Reporting Attorneys who devoted ten (10) or more hours to the Action; (ii) provides the number of hours that each Reporting Attorney expended in connection with work on the Action, from the time when potential claims were being investigated through August 1, 2024; (iii) provides each Reporting Attorney's current hourly rate unless otherwise noted; and (iv) provides the lodestar of each Reporting Attorney and the entire firm. The table in Exhibit A was prepared from a combination of contemporaneous records and contemporaneous time entries, both of which are records regularly maintained by my firm in the ordinary course of business, which are available at the request of the Court. All time expended in preparing this application for attorneys' fees and expenses has been excluded.

6. The number of hours expended by Nix Patterson in the Action, from inception through August 1, 2024, as reflected in Exhibit A, is 329 hours. The lodestar for my firm, as reflected in Exhibit A, is $277,725.00, which is comprised entirely of attorneys' time.

7. The hourly rates for the Reporting Attorneys, as set forth in Exhibit A, are their standard rates. My firm's hourly rates are largely based upon a combination of the

title, the specific years of experience for each attorney, as well as market rates for practitioners in the field. These hourly rates are the same as, or comparable to, rates submitted by Nix Patterson and accepted by courts in other complex contingent class actions for purposes of "cross-checking" lodestar against a proposed fee based on the percentage-of-the-fund method, as well as determining a reasonable fee under the lodestar method. These cases include *Baker v. SeaWorld Enter., Inc.*, Case No. 3:14-cv-2129-MMA-AGS (S.D. Cal.), *Cline v. Sunoco*, Case No. CIV-17-313-JAG (E.D. Okla.), *Reirdon v. XTO Energy, Inc.*, No. CIV-16-00087-KEW (E.D. Okla.) and *DDL Oil & Gas, LLC, v. Diversified Production, LLC.*, Case No. CJ-2019-17 (Dist Ct. Blaine County, Okla.).

8.    I believe that the number of hours expended and the services performed by the attorneys at Nix Patterson were reasonable and necessary for the effective and efficient prosecution and resolution of the Action.

9.    Expense items are reported separately and are not duplicated in my firm's hourly rates. As set forth in Exhibit B hereto, Nix Patterson is seeking payment for $3,852.44 in expenses incurred in connection with the prosecution and resolution of the Action. In my judgment, these expenses were reasonable and expended for the benefit of the Settlement Class in this Action.

10.   The expenses incurred by Nix Patterson in the Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. I believe these expenses were reasonable and expended for the benefit of the Settlement Class in the Action.

11. With respect to the standing of my firm, attached hereto as Exhibit C is a firm summary résumé, which includes information about my firm and biographical information concerning the firm's attorneys.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on August 12, 2024.

_____
JEFFREY J. ANGELOVICH

# EXHIBIT A

*In re Apache Corp. Securities Litigation*
Case No. 4:21-cv-00575 (S.D. Tex.)

## NIX PATTERSON, LLP

### TIME REPORT

From Inception Through August 1, 2024

| NAME | CURRENT HOURLY RATE | HOURS | LODESTAR |
|---|---:|---:|---:|
| **Partners** | | | |
| Jeffrey J. Angelovich | $1,000.00 | 85.00 | $85,000.00 |
| Bradley E. Beckworth | $1,000.00 | 97.50 | $97,500.00 |
| **Counsel / Associates** | | | |
| Cody L. Hill | $650.00 | 146.50 | $95,225.00 |
| | | | |
| **TOTALS** | | **329.00** | **$277,725.00** |

# EXHIBIT B

*In re Apache Corp. Securities Litigation*
Case No. 4:21-cv-00575 (S.D. Tex.)

**NIX PATTERSON, LLP**

**EXPENSE REPORT**

| CATEGORY | AMOUNT |
|---|---:|
| Pacer Service Center | $5.20 |
| Online Legal / Factual Research | $293.07 |
| Out of Town Travel (Transportation, Hotels & Meals) | $3,554.17 |
|  |  |
| **TOTAL EXPENSES:** | **$3,852.44** |

**EXHIBIT C**

*In re Apache Corp. Securities Litigation*
Case No. 4:21-cv-00575 (S.D. Tex.)



**SUMMARY**
**RESUME**

Detailed information regarding Nix Patterson, LLP ("Nix Patterson" or "NP") may be found on the firm's website: www.nixlaw.com. The firm's website contains a wide variety of information, including the history of the firm, highlights of current and previous successes, photographs of facilities, and biographies of each attorney.

For convenience, a *concise* overview of the firm is as follows:

Nix Patterson is a national contingency fee law firm providing litigation strategies and solutions for individuals, companies, investors, whistleblowers, and sovereigns. We have extensive experience handling large-scale, complex cases that require creative and bold action. Nix Patterson's skilled, innovative and hardworking attorneys have achieved record-breaking litigation success. Because Nix Patterson only works on a contingency fee basis, our clients pay us nothing unless we win.

Although Nix Patterson may be best known as one of the firms who obtained a $17.2 billion settlement for the State of Texas in the historic tobacco litigation, we have also recovered billions more in jury verdicts and settlements in diverse and complex cases across a wide range of practice areas. Across the United States, we handle almost every type of complex and critical litigation and arbitration for consumers, investors, whistleblowers, governmental entities and business entities. Our successful and uniquely diverse litigation practice has been

driven by one constant: our talented attorneys achieve extraordinary results through hard work and innovation. Our clients choose us because they know we devote all resources necessary to achieve their goals.

Born in Texas over 40 years ago, Nix Patterson has long been at the forefront of the small group of firms with nationwide contingency practices. We have a well-deserved reputation for excellence and innovation in groundbreaking litigation. Every day, each attorney at Nix Patterson strives to be second to none. We believe there is no better place to achieve justice for our clients than the courtroom—and no better lawyers to pursue your claims and maximize your recovery than Nix Patterson.

Below is a representative sample of some of the most recent matters and results Nix Patterson has achieved on behalf of its clients:

***State of Oklahoma v. Purdue Pharma, L.P., et al.***

On June 30, 2017, Nix Patterson, led by lead trial attorney, Brad Beckworth, and co-counsel, filed a lawsuit in Cleveland County, Oklahoma on behalf of the State of Oklahoma and Oklahoma Attorney General Mike Hunter against several major pharmaceutical companies that manufacture highly addictive and often deadly opioid painkillers. The lawsuit alleged that the defendants— including Purdue Pharma, Johnson & Johnson, and Teva—intentionally misled Oklahoma healthcare providers and residents about the addictive and harmful nature of opioid medications to increase sales of their drugs in the State. These companies advertised opioids as being essentially non- addictive and harmless, which caused massive volumes of unnecessary drugs to be prescribed to Oklahomans, creating a severe public health nuisance.

On January 11, 2018, Cleveland County District Court Judge Thad Balkman ordered that the trial in this matter would begin on May 28, 2019, marking the first state lawsuit against opioid manufacturers to go to trial in the Nation.

On June 13, 2018, the Purdue defendants filed a Notice of Removal, removing the case from Cleveland County to the United States District Court for the Western District of Oklahoma. The remaining manufacturer defendants consented to the removal. The very next day, on June 14, the State of Oklahoma filed its Motion to Remand the case. The State argued in its Motion that the

defendants breached a written agreement to not remove the case, waived any opportunity to remove the case, lacked any basis for asserting federal court jurisdiction, and removed the case solely as a delay tactic to avoid ongoing discovery in the state court case. Due to the urgency and unprecedented scope of the opioid addiction epidemic, the State argued the Motion should be expedited. As such, the State filed its reply brief in support of the Motion overnight, within six hours of the defendants filing their opposition to the State's Motion. On August 3rd, after considering the extensive briefing by the parties, the Honorable Judge Vicki Miles-LaGrange, granted the State's Motion to Remand.

On March 25, 2019, the Oklahoma Supreme Court denied Defendants' request to delay the start of the trial in this matter by 100 days.

On March 26, 2019, the State of Oklahoma announced that Purdue Pharma had agreed to pay $270 million to settle the claims brought against it in this matter. Under the terms of the settlement, Purdue immediately contributed $102.5 million to establish a world class foundation for addiction treatment and research at Oklahoma State University, with additional payments of
$15 million each year for the next five years beginning in 2020. The company will also provide $20 million of addiction treatment and opioid rescue medications to the center over the same five-year time frame. And, $12.5 million from the settlement will be used directly to help cities and counties struggling with the opioid crisis. The Sackler family, who founded and own Purdue Pharma, will also contribute $75 million over the next five years to the treatment and research center.

On May 26, 2019, and on the eve of trial, Teva agreed to pay $85 million to settle the claims brought against it in this matter. In a news release announcing the settlement, Attorney General Mike Hunter stated that the money from the Teva settlement will be "used to abate the opioid crisis in Oklahoma." Hunter further stated that the Teva settlement is a testament to the state's legal team's "dedication and resolve to hold the defendants in this case accountable for the ongoing opioid overdose and addiction epidemic that continues to claim thousands of lives each year."

On May 28, 2019, this case proceeded to a bench trial against Johnson & Johnson on the sole equitable claim of public nuisance. The trial spanned approximately seven weeks, and included testimony from 43 witnesses, 935 exhibits admitted into evidence, and numerous hearings.

Following trial, the trial court found Johnson & Johnson had created a public nuisance and ordered it to pay $465,026,711.00 to abate the nuisance. NP was named 2019 Trial Team of the Year by The National Trial Lawyers in recognition of this verdict. Although the Oklahoma Supreme Court reversed the verdict on a legal ground, NP continues to pursue other claims against J&J and certain opioid distributors in Oklahoma, as well as in the State of Washington.

### *Cline v. Sunoco*

On August 27, 2020, Nix Patterson obtained a final judgment following the verdict of more than $150 million on behalf of Oklahoma royalty owners. The Honorable Judge John Gibney ruled in favor of the Plaintiff, Perry Cline, and the Class of owners he represented following a four-day bench trial led by NP partners Brad Beckworth and Drew Pate. Judge Gibney awarded the Plaintiff and Class in the amount of $80,691,486.00 in actual damages and $75,000,000.00 in punitive damages.

The lawsuit alleged Sunoco violated Oklahoma law by withholding interest owed on late royalty payments unless an owner specifically requests it. In October 2019, the Court certified the case as a class action. Nix Patterson then strategically filed a motion for partial summary judgment that, if granted, would substantially narrow the issues for trial. The Court granted the motion one week before trial and ruled that Sunoco must pay the interest automatically under Oklahoma law. This verdict is the largest class action verdict in Oklahoma history.

### *SeaWorld Securities Litigation*

On February 11, 2020, Nix Patterson announced a $65,000,000.00 settlement on behalf of its client, the Arkansas Public Employees Retirement System (APERS), and all members of a certified class of investors in SeaWorld Entertainment, Inc.'s common stock. The settlement was reached after more than 5 years of hard-fought litigation and just one week prior to jury selection.

The case alleged that SeaWorld and its senior executives, as well as the private equity firm that took SeaWorld public and acted as its controlling shareholder— The Blackstone Group— repeatedly misled the market about the negative effects the documentary film, *Blackfish*, was having on SeaWorld's business. The matter

was litigated in the U.S. District Court for the Southern District of California, San Diego Division, before the Honorable Judge Michael Anello.

In the 5-plus years of litigation prior to reaching the settlement, Nix Patterson and its co-counsel successfully: defeated defendants' motions to dismiss under the PSLRA; obtained an Order certifying the class as a class action; defeated defendants' appeal of the class certification Order under Rule 23(f) at the U.S. Court of Appeals for the Ninth Circuit; took and/or defended over 40 depositions; defeated defendants' motions for summary judgment by obtaining a 100-plus page Order by the District Court, published at 423 F. Supp. 3d 878; and fully prepared the case for jury trial, which was set to begin in San Diego one week before the settlement was reached. Nix Patterson's prosecution of the case was led by trial lawyers, Jeffrey Angelovich, Susan Whatley and Cody Hill.

### *In re MGM Mirage Securities Litigation*

Nix Patterson, led by partners, Jeff Angelovich, Brad Beckworth, Susan Whatley, and Lisa Baldwin, served as Co-Lead Counsel in this action, representing a class of investors in MGM securities in the United States District Court for the District of Nevada. The class alleged MGM falsely misled the market regarding MGM's ability to survive and thrive during the U.S. financial crisis and obtain adequate capital to finance its unprecedented CityCenter project. After zealously litigating this action for almost six years, NP obtained a settlement of $75 million on behalf of the class. The settlement was the largest securities class action recovery in the history of the District of Nevada at the time—exceeding the combined amount of the next three largest class action recoveries. This result is particularly notable because it was obtained in the absence of a financial restatement by MGM or a regulatory or governmental agency investigation related to the same conduct.

### *MoneyGram Securities Litigation*

Nix Patterson, led by partners, Jeff Angelovich, Brad Beckworth, and Susan Whatley, served as Lead Counsel for Lead Plaintiff, Oklahoma Teachers Retirement System, in this matter filed in the United States District Court for the District of Minnesota. This litigation involved alleged false and misleading statements surrounding the quality and nature of asset-backed securities held in MoneyGram's investment portfolio. This case was unique in the fact that it is only one of a few "subprime" cases brought against an entity that is neither a bank,

Wall Street investment bank, nor originator of asset backed securities. Indeed, this is one of the few cases brought—and we believe the first case successfully resolved—based upon a company's failure to properly disclose the quality and nature of the asset-backed securities it purchased. NP reached an $80 million settlement with MoneyGram and the individual defendants, which has been granted final approval by the Court. The settlement ranks as one of the top settlements in all "subprime" cases.

### *British Petroleum/Deepwater Horizon Oil Spill Litigation*

In 2015, Nix Patterson obtained a historic settlement for the State of Florida against British Petroleum arising out of the Deepwater Horizon oil spill. Nix Patterson represented the State of Florida in its effort to recover economic losses from this disaster. Ultimately, the firm recovered $2 billion for the State of Florida.

In addition, Nix Patterson represented more than 20 other governmental entities in litigation against BP, and more than 1,000 businesses, ranging from small restaurants to publicly traded corporations, in their claims against BP related to the Deepwater Horizon oil spill. In total, the settlements obtained by Nix Patterson in this matter exceed $3 billion.

### *Pummill, et al. v. Cimarex Energy Co., et al.*

Nix Patterson, led by lead trial attorney, Brad Beckworth, served as co-counsel in this declaratory judgment action requesting the court declare the rights of royalty owners and the obligations of lessees on four key issues of Oklahoma royalty law relating to oil and gas lease interpretation, payment of royalty on gas used as fuel off the lease, payment of royalty under different form gas marketing agreements and payment of statutory interest on late royalty payments. In 2012, NP and its co-counsel achieved favorable declaratory summary judgment rulings for the plaintiffs on all four issues. The court's declaratory summary judgment ruling on the payment of statutory interest was affirmed by the Oklahoma Court of Appeals, Division 1, and the Oklahoma Supreme Court. In October 2015, NP and its co-counsel successfully tried the remaining three declaratory judgments and the defendants' counterclaim to the court in a full bench trial and achieved a favorable judgment for the plaintiffs on all four issues. The Oklahoma Court of Civil Appeals, Division 4, issued a 31-page published decision affirming the trial court's judgment on January 5, 2018. The Oklahoma Supreme Court denied the

oil company's petition for certiorari on May 21, 2018. NP is one of the only firms to try a case to judgment concerning these critical issues of Oklahoma royalty law—a judgment that will benefit over a million Oklahoma royalty owners.

### *The Chickasaw Nation and The Choctaw Nation v. United States Dept. of Interior, et al.*

NP partners Brad Beckworth, Lisa Baldwin, Susan Whatley, and Trey Duck represented the Chickasaw Nation and the Choctaw Nation in an historic settlement with the federal government. This litigation involved allegations that the federal government mismanaged over 1.3 million acres of the timber lands belonging to the Chickasaw and Choctaw Nations. Along with co-counsel, NP conducted comprehensive fact and expert discovery—including analyzing millions of pages of historical trust-related documents and taking or defending 37 depositions across the country. NP also played an integral role in settlement negotiations and the mediation process, which was overseen by court-appointed Special Master and former federal judge, John Robertson (Ret.). Ultimately, the case settled for $186 million, the fifth largest settlement out of 86 tribal trust actions that have been filed. The settlement also represented a significant milestone in the tribal trust relationship between the United States and the Chickasaw and Choctaw Nations.

### *Chieftain Royalty Co. v. SM Energy Co., et al.*

Nix Patterson, led by partners, Jeff Angelovich, Brad Beckworth, Susan Whatley, and Lisa Baldwin, represented a class of underpaid royalty owners in this action against SM Energy Co. and its successors, EnerVest and FourPoint. After vigorously prosecuting this action as class cocounsel for over four years, NP obtained a partial settlement with respect to the claims against EnerVest and FourPoint totaling nearly $55 million on behalf of the class. This settlement consisted of a $52 million cash payment (which alone represents approximately 100% of the class' principle claim for royalty underpayment) and contractually guaranteed future benefits that ensure EnerVest and FourPoint will not deduct certain specific costs from royalty payments for a period of 36 months. These binding changes to the Settling Parties' royalty payment methodology have a present value of at least $2.9 million. On December 23, 2015, the United States District Court for the Western District of Oklahoma granted final approval of the settlement.

### *Chieftain Royalty Co. v. QEP Energy Co.*

Nix Patterson, led by partners, Brad Beckworth, Jeff Angelovich, Susan Whatley, and Lisa Baldwin, served as co-class counsel in this action alleging QEP, an energy company with oil and gas operations in Oklahoma, secretly and systematically made unlawful deductions from a class of royalty owners' monthly royalty payments. After more than two years of litigation, NP and its co-counsel obtained a $155 million settlement for the class. This settlement consisted of a $115 million cash payment (which alone represents more than 100% of the class' principle claim for royalty underpayment) and contractually guaranteed future benefits that ensure QEP will not resume its previous practice of improper cost deductions. On May 31, 2013, the United States District Court for the Western District of Oklahoma granted final approval of the settlement.

### *Drummond et al. v. Range Resources-Midcontinent, LLC, et al.*

Nix Patterson, led by partners, Brad Beckworth, Jeff Angelovich, Susan Whatley, and Lisa Baldwin, represented a class of royalty owners in this action against Range Resources, an energy company with substantial interests in Oklahoma oil and gas wells. As in *QEP*, the class members in this case alleged Range unlawfully deducted certain pre-marketing costs from the class members' royalty payments. NP prosecuted this action for over two years, overcoming Range's initial dispositive motions, conducting comprehensive fact and expert discovery—such as analyzing the thousands of oil and gas leases involved—and obtaining class certification. As Range was preparing to appeal the court's class certification order, the parties began settlement negotiations and a mediation process with highly respected mediator and former federal judge, Layn Phillips. After multiple mediation sessions in Oklahoma City and New York City, NP and its co-counsel achieved an $87.5 million cash settlement for the class, which has been approved by the Court.

### *CompSource et al. v. BNY Mellon, N.A. et al.*

Nix Patterson, led by partners, Jeff Angelovich, Brad Beckworth, Susan Whatley, and Lisa Baldwin, filed suit in the Eastern District of Oklahoma on behalf of CompSource Oklahoma—a statutorily-created state workers compensation insurance company—and other participants in BNY Mellon's securities lending

program, alleging that BNY Mellon breached its fiduciary duties (under both common law and ERISA), breached its securities lending agreements, and was negligent in connection with its investment of its clients' funds in medium-term notes of Sigma Finance, Inc. After three and a half years of hard fought, intense litigation, which included nearly five million pages of documents produced and reviewed; a total of 59 depositions taken or defended (which took place in seven different states and resulted in 16,483 pages of recorded testimony and the inclusion of 1,738 exhibits), the parties reached a settlement in this matter for $280,000,000. The Court has granted final approval of this settlement.

### *AFTRA v. JPMorgan*

Nix Patterson, led by partners, Jeff Angelovich, Brad Beckworth, Susan Whatley, and Lisa Baldwin, filed suit in the Southern District of New York on behalf of AFTRA and other participants in JPMorgan's securities lending program alleging that JPMorgan violated its fiduciary duties (under both common law and ERISA) to AFTRA and the class in connection with the same investments in Sigma as those at issue in *CompSource*. On the eve of trial, and after the Court granted class certification, the parties reached a settlement in the amount of $150,000,000. The Court has granted final approval of this settlement.

Below is biographical information of the Nix Patterson attorneys who were involved in this matter:

### **Jeffrey J. Angelovich**

Jeffrey J. Angelovich, Partner, graduated *magna cum laude* from Baylor Law School (J.D. 1993). Jeff is the Co-Head of Nix Patterson's Complex Litigation Group. He concentrates his practice on securities fraud, derivative, and complex litigation, but has successfully tried lawsuits in a variety of cases, including a $15.6 million antitrust verdict, which was featured by the *New York Times*, and a $7 million verdict in a sexual molestation case. Jeff also was a key team member in Nix Patterson's representation of the State of Texas in its $17 billion-plus recovery in the *Texas Tobacco Litigation*. Prior to joining Nix Patterson, Jeff served as judicial law clerk to Justice Hightower of the Texas Supreme Court and has served several terms as an adjunct professor for Baylor Law School, teaching trial advocacy. Areas of Concentration: Securities Fraud; Derivative and Corporate Governance Litigation; Antitrust Litigation; Business Litigation; Oil &

Gas Litigation; Intellectual Property Litigation; Strategic Planning and Crisis Management. Professional Activities and Memberships: State Bar of Texas; Oklahoma Bar Association; Arkansas Bar Association; American Bar Association; American Association for Justice. Professional Honors: Briefing Attorney to Justice Jack Hightower, Justice of the Supreme Court of Texas; Texas Young Lawyers Association (Director); *Adjunct* Professor, Baylor University School of Law; Texas Super Lawyer, Securities Litigation (numerous years). Bar Admissions: Arkansas; Oklahoma; Texas; Montana; United States Supreme Court; U.S. Court of Appeals for the Fifth, Eighth, Ninth and Tenth Circuits; USDC Eastern District of Texas; USDC Western District of Arkansas; USDC Western District of Oklahoma.

**Bradley E. Beckworth**

Bradley E. Beckworth, Partner, graduated *magna cum laude* from Texas A&M University (B.A. 1994) and *cum laude* from Baylor Law School (J.D. 1997). Brad is the Co-Head of Nix Patterson's Complex Litigation Group. He focuses primarily on securities fraud and other complex litigation, but also has successfully tried lawsuits in a diverse range of cases, including the opioid litigation, oil and gas litigation, commercial disputes and intellectual property infringement. For example, Brad just recently completed a seven- week trial as the lead trial attorney in Cleveland County, Oklahoma against pharmaceutical giant, Johnson & Johnson, regarding the opioid crisis. In 2015, Brad was the lead trial attorney in *Pummill v. Cimarex*, where Nix Patterson won a judgment for the plaintiff in one of the most significant oil and gas cases ever tried in the State of Oklahoma; and, in 2012, Brad was lead counsel in successfully defending the 2012 Heisman Trophy winner against the NCAA Enforcement Division. Brad has given presentations to numerous boards of trustees of public funds and has been quoted in news articles by several publications, including *The Wall Street Journal*, *New York Times*, and *Bloomberg*. He has served as a member of the Rules Committee of the United States District Court for the Eastern District of Texas and served several terms as an adjunct trial advocacy professor for Baylor Law School. An article written by Steve Stecklow, *Setting the Date: How One Tech Company Played With the Timing of Stock Options*, WALL ST. J, July 20, 2006 at A1, featured one of Nix Patterson's securities litigation cases (referencing Brad's and Nix Patterson's role in the case) and received the Pulitzer Prize for Public Service Journalism. Prior to joining Nix Patterson, Brad served as judicial law clerk to Judge Richard Schell, Chief Judge for the United States District Court

for the Eastern District of Texas. Areas of Concentration: Securities Fraud Litigation; Commercial Class Action Litigation; Business Litigation, Intellectual Property Litigation; Oil & Gas Litigation; Strategic Planning and Crisis Management. Professional Activities and Memberships: State Bar of Texas; Oklahoma Bar Association; Arkansas Bar Association; New York Bar Association; American Association for Justice; American Bar Association. Professional Honors: Law Clerk to the Hon. Richard A. Schell, Chief Justice, USDC Eastern District of Texas; *Adjunct* Professor, Baylor University School of Law. Bar Admissions: Texas; Oklahoma; Arkansas; New York; U.S Court of Appeals for the Fifth, Ninth and the Tenth Circuits, USDC Eastern District of Texas; USDC Eastern District of Arkansas; USDC Western District of Arkansas; USDC Western District of Oklahoma; USDC Eastern District of Oklahoma; USDC Northern District of Illinois.

**Cody L. Hill**

Cody L. Hill, Senior Associate, graduated from the University of Texas (B.S. 2011), and from Baylor Law School (J.D. 2015). While at Baylor, Cody competed as an active member of the school's mock trial and moot court teams in a number of national trial and appellate advocacy competitions. Cody also served as an Associate Editor of the Baylor Law Review, was named the Bracewell & Giuliani LLP 3L Baylor Law Review Student of the Year, and co-authored an article, along with Professor Jim Wren, published as *Resolving the Quandary of Conflicting Mandatory Venue Statutes in Texas*, 68 Baylor L. Rev. 85 (2016). Cody was named to the National Order of the Barristers and received a scholarship to be 1 of 8 U.S. Law students to attend The Advanced School of the Trial at the Academy of the Advocate at the University of St. Andrews in Scotland, where he received the Top Advocate award. He is admitted to practice in all state courts in the State of Texas and the U.S. District Court for the Eastern District of Oklahoma. Cody also is a member of the Austin Bar Association, Austin Young Lawyers Association, Texas Trial Lawyers Association, Capital Area Trial Lawyers Association, American Association for Justice and the American Association for Justice's Securities Litigation Group, Class Action Litigation Group and *Qui Tam* Litigation Group.