United States District Court
Southern District of Texas
**ENTERED**
November 25, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE APACHE CORP. § <br> SECURITIES LITIGATION § <br> § <br> § <br> § | CIVIL ACTION NO. 4:21-cv-00575 |

## OPINION AND ORDER

This is a securities class action brought against Apache Corp. and several of its high-ranking officials. Lead Plaintiffs Plymouth County Retirement Association and Trustees of the Teamsters Union No. 142 Pension Fund allege that Defendants made statements from September 7, 2016, through March 13, 2020, that misled investors regarding the production capabilities and commercial viability of Alpine High, a purported major oil and gas play in the Permian Basin.

At the outset of this matter I appointed Saxena White P.A. and Kessler Topaz Meltzer & Check, LLP as Lead Counsel. I also appointed Ajamie LLP as Liaison Counsel. As is par for the course in securities fraud cases, Defendants filed a motion to dismiss. After the motion to dismiss was denied, discovery formally commenced in December 2022. For a little more than a year, the parties exchanged written discovery, participated in extensive document production, and deposed 16 fact witnesses. The parties also briefed class certification issues and participated in a day-long class certification hearing. In March 2024, with the help of a mediator, Lead Plaintiffs agreed to settle all claims in this action in exchange for an all-cash payment of $65 million, subject to the court's approval.

In orders to be issued separately today, I approve the proposed settlement and plan of allocation of net settlement fund as fair, adequate, and reasonable. In this Opinion and Order, I address Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses. Dkt. 165.

Lead Counsel asks me to approve attorneys' fees in the amount of $21,666,666.00, which represents 33.33% of the $65 million settlement fund.

Lead Counsel also requests an award from the settlement fund in the amount of $1,555,388.49 for litigation expenses incurred by counsel in prosecuting this action, and $17,014.22 in costs directly related to Lead Plaintiffs' representation of the settlement class.

## ATTORNEYS' FEE AWARD

**A.   GENERAL PRINCIPLES GOVERNING AN ATTORNEYS' FEE AWARD IN COMMON FUND CASES**

Several renowned law professors have perfectly captured the dilemma I presently face:

> When a class action settles . . . , the court is faced with the job of awarding an appropriate attorneys' fee. The issue is important. If fees are set too low, counsel will not receive fair compensation for their services to the class. Worse yet, if fees are too low, then qualified counsel will not bring these cases in the first place. Injured parties will receive no redress, and potential wrongdoers will no longer be deterred out of fear of potential class action liability. If fees are set too high, attorneys will receive an unjustified windfall, and some of the benefits that should have gone to class members will be diverted to class counsel. Excessive class counsel fees might also induce class counsel to bring weak cases. Setting an appropriate counsel fee is thus crucial to the effective functioning of class action litigation.

Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U.L. REV. 937, 937–38 (2017).

So, how am I to determine the appropriate attorneys' fee to award?

Too often, in my estimation, district courts simply rubber stamp the attorneys' fees requested by the plaintiffs' lawyers. Although that is unquestionably the easy thing to do, I am unwilling to take that route. As the trial judge handling this class action case, I am required to act as a fiduciary for the absent class members by ensuring, in part, that the attorneys' fees awarded are reasonable. *See United States v. City of Miami*, 614 F.2d 1322, 1330–31 (5th Cir. 1980). My role as a fiduciary emanates directly from the language of Federal Rule of Civil Procedure 23(e), which requires a court to approve any class action settlement. The purpose of this rule is "to protect the nonparty members of the class from unjust

or unfair settlements affecting their rights." *Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807, 818 (5th Cir. 1989) (quotation omitted). Because I must act as a fiduciary, the lack of objection to Lead Counsel's proposed fee award is of no consequence.

In deciding what fee to award those attorneys who have worked on the plaintiffs' side of this matter, I cannot simply rely, as I do in most cases, "on adversarial presentation to inform [me] of the possibilities for decision." Eisenberg, *supra*, at 938. This is because "class counsel has a potential conflict with their own clients because each dollar that goes to the attorneys is a dollar that does not go to class members." *Id.* And "Defendants, for their part, have no stake in how the settlement amounts are distributed between class counsel and class members." *Id.* Understandably, all Defendants want is to pay the agreed settlement amount and put this matter behind them. The obligation thus falls squarely on my shoulders to ensure that the interests of both the class members and class counsel are taken into account in determining a reasonable attorneys' fee to award.

Rule 23(h) permits me to award, as part of a class action settlement, "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Under the common fund doctrine, a lawyer who has secured a benefit on behalf of others is entitled to retain a reasonable portion of the fund as attorneys' fees and costs. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). "The common fund doctrine ensures that attorneys are fairly compensated for their efforts and encourages them to undertake risky litigation for which no reward is guaranteed." *Celeste v. Intrusion Inc.*, No. 4:21-cv-307, 2022 WL 17736350, at *10 (E.D. Tex. Dec. 16, 2022).

**B.    PERCENTAGE METHOD V. LODESTAR METHOD**

In common fund cases, the Fifth Circuit has endorsed two approaches for establishing the reasonableness of an attorneys' fee award:

> (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). District courts are given wide latitude to determine whether to utilize the percentage method or the lodestar method. *See id.* at 644 ("We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases.").

Both methods for calculating attorneys' fees have their virtues and their drawbacks. The lodestar approach "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). "[T]he lodestar method is readily administrable, . . . objective, . . . permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 551–52 (quotation omitted). On the flip side, the lodestar method has been criticized for generating avoidable hours, discouraging early settlement, and burdening district judges with the tedious task of auditing time records. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000) (noting that the lodestar approach "resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits").

The percentage method likewise has its share of proponents and critics. On the positive side, the percentage method has several distinct benefits. First, because a counsel's fee increases with the recovery of the class, the percentage method ensures that the interests of the class are aligned with the interests of

counsel. *See* 5 William B. Rubenstein, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 15:65 (6th ed. Nov. 2024). Second, the percentage method disincentivizes counsel from "run[ning] up their hours to increase the fee request," resulting in efficient litigation. *Id.* Third, the percentage method is relatively easy to administer, "sav[ing] valuable judicial and party resources." *Id.* Alas, the percentage method is not without its faults. It has been criticized for being arbitrary and resulting in a windfall for class counsel. *See id.* ("The percentage method may yield extraordinary results for class counsel—if they recover a large sum quickly, or an enormous sum in the ordinary course of litigation.").

Although a district court enjoys the flexibility to utilize either the lodestar method or percentage method to calculate an attorneys' fee award in a common fund case, the reality is that there has been a "near-universal adoption of the percentage method in securities cases." *Dell*, 669 F.3d at 643. This stems, in large part, from the language of the Private Securities Litigation Reform Act ("PSLRA"), the statute that places certain requirements on securities fraud class actions. The PSLRA contemplates the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.").

After much thought and consideration, I select the percentage method as the means by which to award attorneys' fees in common fund cases like this one. The percentage method is preferable because it not only furthers Congress's clear intent, but it also encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class they represent.

C.   **THE APPROPRIATE BENCHMARK PERCENTAGE**

Having decided to use the percentage method, I must next determine a benchmark percentage to award. This is the hard part. There is no magic number. The Manual for Complex Litigation states that "[a]warding attorneys 25% of a common fund represents a typical benchmark." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2004). The Ninth Circuit has adopted a benchmark of 25% in common fund cases. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (noting that "courts typically calculate 25% of the fund as the benchmark for a reasonable fee award" (quotation omitted). The Eleventh Circuit "direct[s] district courts to view [20%–30%] as a benchmark which may be adjusted in accordance with the individual circumstances of each case." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (quotation omitted).

The Fifth Circuit has never adopted a set percentage to award in common fund cases, choosing instead to give district courts wide latitude in making that determination. When it comes to choosing a benchmark percentage, district courts within the Fifth Circuit are all over the map. *See, e.g., Dell*, 669 F.3d at 643 (affirming an 18% attorneys' fee in a securities class action); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152, 2018 WL 1942227, at *10 (N.D. Tex. Apr. 25, 2018) (approving 33.33% attorneys' fee in a securities class action); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *20 (E.D. La. Mar. 2, 2009) (awarding 27% attorneys' fee in a securities class action); *Schwartz v. TXU Corp.*, No. 3:02-cv-2243, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) (awarding 22.2% fee award of a common fund); *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001 WL 34633373, at *8 (S.D. Tex. Dec. 19, 2001) (awarding 30% attorneys' fee in securities class action); *In re Harrah's Ent., Inc.*, No. 95-3925, 1998 WL 832574, at *7 (E.D. La. Nov. 25, 1998) (awarding 26% attorneys' fee from a common fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1156 (W.D La. 1997) (approving 36% attorneys' fee from a common fund).

6

"Particularly in extremely large recovery cases, percentage recoveries have often been well below twenty-five percent." *Di Giacomo*, 2001 WL 34633373, at *8 (collecting cases).

"District courts increasingly consider empirical studies analyzing class-action-settlement fee awards to set the appropriate percentage benchmark or to test the reasonableness of a given benchmark. . . . Using these studies alleviates the concern that the number selected is arbitrary." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1080–81 (S.D. Tex. 2012). The most recent empirical study of attorneys' fee awards in class actions available is by Professors Eisenberg, Geoffrey Miller, and Roy Germano. *See* Eisenberg, *supra*, at 937. They examined data from 458 common-fund settlements between 2009 and 2013, concluding that, "[o]n average, fees were 27% of gross recovery during the 2009–2013 period, which is higher than the average fee percentage of 23% that [they] reported in [their] analyses of the 1993–2008 period." *Id.* at 947. They noted that "as recovery amount increases, the ratio of the size of the attorneys' fee relative to the size of the recovery (i.e., the fee percentage) tends to decrease." *Id.* at 948. For those cases, like the instant one, in which class recovery was between $23.5–$67.5 million, the average fee percentage awarded amounted to roughly 24%. *See id.*

I am confident that I could easily rationalize an attorneys' fee award of anywhere in the 20%–35% range for securities fraud class actions. Based on the empirical study referenced above, a thorough review of fee awards made in similar cases, and the size of the $65 million settlement in this case, I find that a benchmark of 25% is appropriate.

D.   THE *JOHNSON* FACTORS

The Fifth Circuit has held that district courts utilizing the percentage method to calculate attorneys' fees in common fund class actions must "cross-check[]" those results with the so-called *Johnson* factors. *Dell*, 669 F.3d at 644. In *Johnson v. Georgia Highway Express, Inc.*, the Fifth Circuit devised a twelve-

factor test to assess the fairness and reasonableness of an attorneys' fee award. *See* 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The so-called *Johnson* factors are: (1) "time and labor required"; (2) "novelty and difficulty" of the legal issues; (3) "skill requi[red] to perform the legal service properly"; (4) "preclusion of other employment by the attorney" as a result of taking the case; (5) "customary fee"; (6) "[w]hether the fee is fixed or contingent"; (7) "[t]ime limitations imposed by the client or [other] circumstances"; (8) monetary "amount involved and the results obtained"; (9) "experience, reputation, and ability of the attorneys"; (10) whether the case is undesirable; (11) "nature and length of the professional relationship with the client"; and (12) "[a]wards in similar cases." *Johnson*, 488 F.2d at 717–19.

A district court is required to explain how the *Johnson* factors affect its fee award. *See In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F3d 220, 228 (5th Cir. 2008). At the same time, the Fifth Circuit "will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." *Id.* at 228–29 (quotation omitted). After considering the *Johnson* factors, a district court must determine whether the benchmark percentage should be adjusted upward or downward. *See Dell*, 669 F.3d at 644.

Applying the *Johnson* factors here, I conclude that a fee award of 25% of the common fund is appropriate, and no upward or downward adjustment is warranted. I will briefly address each *Johnson* factor.

**(1) Time and Labor Required:** As to this factor, "the trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717. According to declarations submitted with the fee request, Lead Counsel spent more than 46,000 hours on this matter. *See* Dkts. 166-4 at 10–11 (42 timekeepers at Kessler Topaz Meltzer & Check, LLP spent a total of 21,604.70 hours on this matter); 166-5 at 10–11 (38 timekeepers at Saxena White P.A. spent a total of

24,948.25 hours on this matter). Liaison Counsel Ajamie LLP contends it had five timekeepers spend an additional 323.8 hours on the case.[1] *See* Dkt. 166-6 at 6. Taken together, Lead Counsel and Liaison Counsel contend that this amount of labor reflects a lodestar of more than $27 million. That is a large sum. There is no question that this case required Lead Counsel and Liaison Counsel to commit considerable resources to the prosecution of the case. But given that discovery in this case only lasted a tad over one year, and the case did not proceed past the class certification stage, these hours and fees are a bit on the high side.

**(2) Novelty and Difficulty of Issues:** I recognize that class action securities cases are, by their very nature, "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). Yet, the lawyers in this case are all experienced practitioners who specialize in handling securities class action litigation. Sure, the lawyers had to explore a myriad of legal issues to advance their clients' interests, but many of those issues—scienter, materiality, loss causation, and calculation of damages—are common to all securities fraud cases. This case was no more complex or more challenging than the other securities fraud cases that are litigated across the country each and every day.

**(3)    Skill Required to Perform the Legal Services:** A securities fraud class action is not a run-of-the-mill lawsuit. It requires lawyers who are familiar with the legal framework surrounding such claims. As I noted early on in this case, Lead Counsel and Liaison Counsel "have substantial experience in securities class action lawsuits and possess the resources necessary to pursue this action." *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 721 (S.D. Tex. 2021).

---

[1] Also attached to the fee request are declarations from lawyers at Daniels & Tredennick PLLC and Nix Patterson, LLP, claiming their firms spent a total of 371.5 hours on the case (amounting to $305,350 in fees). *See* Dkts. 166-7 at 6, 166-8 at 7. Although I personally know and have great admiration for the lawyers at those two firms, I do not understand why they have sought an award of attorneys' fees in this case when neither firm has been appointed to represent the plaintiffs in this litigation.

9

**(4) Preclusion from Other Employment:** This factor has always perplexed me, mainly because I do not think it adds much to the fee equation. That said, Lead Counsel undoubtedly spent many hours working on this matter. By committing significant time to this case, Lead Counsel was likely precluded from assuming other representation. The same cannot be said for Liaison Counsel given the relatively limited number of hours (323.8) they expended on this matter.

**(5) Customary Fee:** I have already discussed the typical attorneys' fee award in securities fraud cases. The 25% benchmark is within the range for fees awarded in similar cases.

**(6) Fixed or Contingent Fee:** Lead Counsel and Liaison Counsel assumed representation in this case on contingency. Although the lawyers invested significant time and resources with no guaranteed return, the 25% benchmark adequately compensates counsel for pursuing this matter.

**(7) Time Limitations:** As Lead Counsel recognizes, this factor is "not relevant in this case." Dkt. 165 at 16 n.7.

**(8) Monetary Amount Involved and Results Obtained:** According to Plaintiffs' expert, if Plaintiffs prevailed at trial, the maximum amount they could obtain in damages would be roughly $1.48 billion for the entire class period. Lead Counsel has secured a $65 million settlement, which represents approximately 4.4% of the potential estimated damages for the class period. Although the amount at issue and the amount of the settlement are both significant, the 25% benchmark adequately compensates Lead Counsel and Liaison Counsel for their efforts.

**(9) The Experience, Reputation, and Ability of the Lawyers:** As already noted, Lead Counsel and Liaison Counsel did a good job in this case. They are skilled, reputable, and accomplished practitioners, who zealously represented the class throughout this litigation. It was a pleasure to preside over a case where the lawyers on both sides focused on the core issues (as opposed to trivial matters) and did so in a professional and dignified manner.

**(10) The Undesirability of the Case:** Although there are always substantial risks in financing and prosecuting a class action securities fraud case, there was a fierce battle to be appointed lead plaintiff in this case. This, taken alone, demonstrates that various lawyers, entities, and individuals viewed this case as a desirable one. I applaud Lead Counsel for readily acknowledging that this case was not, by any definition, "undesirable." Dkt. 165 at 24.

**(11) The Nature and Length of the Relationship with the Client:** This factor is, as Lead Counsel concedes, inapplicable to this case. *See* Dkt. 165 at 16 n.7.

**(12) Awards in Similar Cases:** As already discussed, the 25% benchmark is within the range of typical fee awards in similar securities fraud cases.

* * *

After considering all the *Johnson* factors, I conclude that a 25% attorneys' fee adequately compensates counsel for their efforts on behalf of the class. No upward or downward adjustment in the benchmark percentage is warranted.

**LITIGATION EXPENSES**

**A.     PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES**

Lead Counsel seeks reimbursement of expenses in the amount of $1,555,388.49. The largest component of the expenses—$1,179,914.10 or approximately 76% of total expenses—is for experts and consultants. Other expenses incurred by counsel include mediation fees, research, court reporting fees and deposition transcripts, document review and production fees, and travel-related expenses.

As a general rule, reasonable litigation expenses may be recovered from a common fund as part of a class action settlement. This makes sense because "one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses." *Hinton v. Fed. Nat. Mortg. Ass'n*, No. 96-21155, 1998 WL 92439, at *2 (5th Cir. Feb. 11, 1998) (quotation omitted). In my role as a fiduciary for the absent class members,

I must review the estimated expenses for which reimbursement is sought and determine whether those sums are fair to the settlement class.

Having reviewed the declarations in support of the reimbursement of expenses, I find that most of the expenses sought are reasonable. I am, however, unwilling to award the $3,852.44 in expenses that Nix Patterson, LLP seeks for travel, legal research, and PACER fees. I never appointed Nix Patterson, LLP as counsel in this case, and I will not allow the class members' recovery to be depleted to pay for these unwarranted expenses—no matter how small in comparison to the overall settlement. I thus award a total of $1,551,536.05 in expenses from the common fund to Lead Counsel and Liaison Counsel.

### B.  LEAD PLAINTIFFS' LITIGATION EXPENSES

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made "to any representative party serving on behalf of a class." 15 U.S.C. § 78u–4(a)(4). In accordance with this statutory provision, Lead Plaintiffs seek reimbursement for the time their employees devoted to supervising this action. The requested reimbursement totals $17,014.22—$7,234.22 for Plymouth County Retirement Association and $9,780.00 for Trustees of the Teamsters Union No. 142 Pension Fund. These figures are based on the number of hours that each of the Lead Plaintiffs' employees committed to supervising this action and a reasonable hourly rate for their time, based on their annual compensation. I find that the requested amounts are reasonable costs and expenses directly related to Lead Plaintiffs' representation of the class, which should be recovered from the common fund.

## CONCLUSION

For the reasons discussed above, I award out of the common fund:

- $1,551,536.05 to Lead Counsel and Liaison Counsel for reasonable litigation expenses;
- $7,234.22 to Plymouth County Retirement Association and $9,780.00 to Trustees of the Teamsters Union No. 142 Pension

Fund for reasonable costs and expenses directly related to Lead Plaintiffs' representation of the class; and

- $15,857,862.43 to Lead Plaintiff and Liaison Counsel for attorneys' fees.[2]

SIGNED this 25th day of November 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] A percentage fee award should be calculated against "the value received from the settlement by the members of the class"—that is, the net common fund after deduction of litigation expenses and payments to the Lead Plaintiffs for reasonable costs and expenses directly related to Lead Plaintiffs' representation of the class. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014). Accordingly, the $65 million settlement fund must be reduced by $1,568,550.27 (the $1,551,536.05 payment to Lead Counsel and Liaison Counsel for reasonable litigation expenses, the $7,234.22 to Plymouth County Retirement Association for reasonable costs and expenses directly related to their representation of the class, and the $9,780.00 to Trustees of the Teamsters Union No. 142 Pension Fund for reasonable costs and expenses directly related to their representation of the class), leaving a $63,431,449.73 net common fund. Multiplying the $63,431,449.73 net common fund times the 25% benchmark leads to an attorneys' fee of $15,857,862.43.